1

MELISSA MARTIN McBEATH
2
3463 E. TERRA ALTA BLVD.
3
TUCSON, AZ 85716
Ph: (520) 449-9753
4
*mel.mcbeath@cox.net*
5

6   Pro Se

7

8

9                    UNITED STATES DISTRICT COURT
10            DISTRICT OF ARIZONA, TUCSON DIVISION

11            CV 16-0462 TUC           BPV
12                                Case No. _____

13   MELISSA MARTIN MCBEATH,
14     an individual,

15              Plaintiff,                      **VERIFIED COMPLAINT**

16        v.

17   TUCSON TAMALE COMPANY,
18     an Arizona corporation,

19
              Defendant.
20

21

22

23

24

25

26

27

28

10171.1

## THE PARTIES

1.      Plaintiff MELISSA MARTIN MCBEATH (***"Plaintiff"***) brings this action against her former employer for age discrimination. Plaintiff seeks general, special, compensatory and punitive damages, attorneys' fees, costs, pre-judgment interest, post-judgment interest, and other appropriate relief.

2.      Plaintiff is an individual who resides in Pima County, Arizona.

3.      TUCSON TAMALE COMPANY (***"TTC"***), is and, at all times mentioned in this Verified Complaint, was authorized to operate by the State of Arizona and qualified to do business in Pima County, Arizona. *See* AZ Corporation Commission File No. 14604539. TTC has a place of business and offices located at 2550 N. Dragoon Street, Suite 120, Tucson, Arizona 85745.

## JURISDICTION AND VENUE

4.      The Court has jurisdiction over the alleged violation of the Age Discrimination in Employment Act under 29 U.S.C § 621 *et seq.* and 28 U.S.C. § 1331.

5.      The demand in controversy in this Verified Complaint, exclusive of interest and costs, exceeds the minimum jurisdictional requirements.

6.      Venue is proper in this Court under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391(b)(1).

## EXHAUSTION OF
## ADMINISTRATIVE REMEDIES

7.      On or about April 20, 2016, Plaintiff filed a complaint with the Equal Employment Opportunity Commission, alleging that the acts described in this Verified Complaint violated the Age Discrimination in Employment Act.

8.      Plaintiff waited more than 60 days after she filed her discrimination complaint with the EEOC before commencing this civil action, as required under 29 U.S.C. § 626(d). *See* 29 CFR § 1626.18(c).

**FACTUAL BACKGROUND**

9.      Todd Russell Martin and Sherry Martin (husband and wife) are the principals and officers of TTC. They own three restaurants in Tucson, Arizona and operate a tamale wholesale sale and distribution business from a separate production facility.

10.      Lisa Martin is Todd's sister and is employed by TTC.[1]

11.      Plaintiff began the interview process with Toddy, Sherry and Lisa in February 2015.

12.      Todd, Sherry and Lisa met at least six times over the course of several weeks, and talked for hours about the business and the vision they had to grow TTC's tamale wholesale business. They expressed to Plaintiff that she would be ideally suited for the position of Business Development Manager because of her close to twenty years' experience in wholesale sales and distribution. The sole focus of the person who assumed this position would be to grow and to manage TTC's expanding wholesale business.

13.      Todd, Sherry and Lisa explained to Plaintiff that they were actively searching for a production facility to lease and therefore were not yet ready to hire her as a Business Development Manager.

14.      Todd, Sherry and Lisa pleaded with Plaintiff to temporarily assume the Area Manager position ($45,000 annual salary) to oversee their three other affiliated restaurant and food service businesses until the production facility was operational. Plaintiff stated that she needed an annual base salary of $75,000.

15.      Todd and Sherry assured Plaintiff that after she completed the 90-day probationary period, her annual salary would be reviewed and increased to at least $50,000, based on performance. They told her this salary would be

---

[1]   To avoid confusion, Todd Russell Martin, Sherry Martin and Lisa Martin are referred to by their first name. While Plaintiff shares a similar name with these individuals, she is not related to them in any way.

1    temporary, pending the opening of the new production facility. At that point,

2    Plaintiff would transition into the new role of Business Development Manager at

3    an increased annual salary.

4         16.    Todd, Sherry and Lisa unequivocally represented to Plaintiff that

5    the new position of Business Development Manager would allow her an

6    opportunity to make more money.

7         17.    Todd, Sherry and Lisa further assured Plaintiff that she would not

8    remain in the Area Manager position for more than six months at the lower

9    annual salary of $50,000.

10        18.    During the interview process, Todd, Sherry and Lisa informed

11   Plaintiff that TTC did not offer health benefits yet, but would shortly make them

12   available.

13        19.    In light of the promises made to her regarding the terms of her

14   employment, Plaintiff agreed to join TTC.

15        20.    Plaintiff turned down a more lucrative job offer she had received

16   because she looked forward to the exiting and promising opportunities for

17   professional growth at TTC that Todd, Sherry and Lisa described to her.

18        21.    Plaintiff started working for TTC on April 20, 2015.

19        22.    Plaintiff was made a part of TTC's executive management team and

20   in that capacity reported to Todd, Sherry, and Lisa. Plaintiff oversaw monthly

21   sales of over $400,000 (approximatly $5,000,000 annually) and managed a team of

22   over 30 TTC employees.

23        23.    Todd, Sherry and Lisa further told Plaintiff, and put in her offer

24   letter, that she would be paid up to $2,500 under TTC's quarterly incentive plan.

25   Plaintiff would be eligible to participate in the incentive plan after 90 days.

26        24.    After Plaintiff successfully completed the 90-day probationary

27   period, she requested the salary review as promised and inquired about the

28   health benefits she was also promised. She was told to wait.

25.     In a written evaluation titled "90 Day Assessment," dated September 1, 2015, Plaintiff received glowing reviews in every area of responsibility because she performed her job in an an exceptionally professional and exemplary manner. This evaluation should have been conducted in July 2015.

26.     In September 2015, her annual salary was finally raised to $50,000, two months after the promised review.

27.     Plaintiff's first quarterly bonus was due by October 22, 2015. When Plaintiff asked Todd and Sherry in an email when she would be paid the bonus, they responded that the bonus would be paid as soon as they finalized "the industry metrics used to evaluate performance."

28.     Plaintiff asked about the payment of her bonuses several times over the next few weeks but was told to wait until after the holidays because Todd and Sherry were too busy to be bothered with what was obviously not a priority to them.

29.     In November 2015, Plaintiff began to report solely to Sherry due to an internal TTC restructuring of management roles.

30.     When TTC senior staff was notified about the change in roles, one of the general managers expressed great concern to Plaintiff. Having worked with Sherry for several years, this general manager lamented to Plaintiff in tears: "You won't last long. She [Sherry] runs all the good people off."

31.     At the end of January 2016, when the second quarterly bonus was due, Todd, Sherry and Lisa failed even to acknowledge that Plaintiff was owed this money.

32.     Refusing to wait any longer, Plaintiff confronted Sherry via email on February 15, 2016, and insisted that she and Todd address her promised bonuses, compensation and Business Development Manager position before the end of the week. In response, Sherry scheduled a meeting at the TTC corporate office on Friday, February 19, 2016.

33.     The meeting did not go well. Sherry snidely asked Plaintiff: "Do you think you deserve your bonuses?" The tone of her voice clearly communicated to Plaintiff that TTC had no intention of paying her this money. Plaintiff revisited the issue of TTC's obligation to pay not just her bonuses, but the bonuses owed to the general managers.

34.     Finally, Plaintiff expressed her dismay that TTC did not honor their promise to make her the Business Development Manager for the wholesale business, which was the reason she had agreed to work at TTC in the first place. Instead, TTC gave the position to someone much younger and who had none of the experience required to do the job.

35.     On Monday, February 22, 2016, three days after they met, Todd and Sherry terminated Plaintiff's employment. The only reason they gave: "Our *definition of success is different than yours.*"

36.     The remark reminded Plaintiff of something Sherry once said when Plaintiff informed her that TTC was going to purchase an inexpensive rod and curtain to give some privacy to a nursing mother, returning to work, who needed to express milk postpartum: "I'm not fucking paying for that! If she wants to pay for it, that's up to her." Plaintiff purchased the rod and curtain at her own expense.

37.     Todd and Sherry's definition of success apparently means that not only will they refuse their employees even the smallest of professional courtesies if it will cost them anything, but they will lie, cheat and steal from their employees to avoid paying them even the wages they've earned, deserve and were promised.

38.     In Plaintiff's case, Todd and Sherry reneged on their promise to give her the higher-paying Business Development Manager position because they preferred someone younger, attractive and white like them.

# FIRST CAUSE OF ACTION

## Violation of the Age Discrimination in Employment Act

### (29 U.S.C. § 621 *et seq.*)

39.    Plaintiff realleges the preceding paragraphs and incorporates them by reference as though fully set forth herein.

40.    Plaintiff is a member of a protected class in that she is over the age of 40 years.

41.    In or around September 2015, TTC hired Lindsay Welch (she is in her early 30s) for the position of Business Development Manager that had been promised to Plaintiff.

42.    Lindsay Welch had no experience with:

      (a)    wholesale distribution

      (b)    wholesale sales

      (c)    wholesale supplier management

      (d)    restaurant management and operations

      (e)    supply chain management and logistics

      (f)    food production

      (g)    catering sales

43.    In fact, Lindsay Welch had no experience whatsoever operating any for-profit business because all her experience was in the non-profit sector.

44.    Plaintiff has experience working in every aspect of wholesale sales and distribution. She previously owned her own three-tier wholesale distribution company (based in Phoenix, Arizona) that sold highly sought-after and top-rated consummable products throughout Arizona.

45.    Plaintiff had direct contact and strong relationships with wholesale restaurant and grocery retail vendors locally and nationally in the course of her entire career spanning two decades, and particularly when she was growing her own small business.

46.     Plaintiff was prepared and ready to leverage her extensive network of long-term vendor partners to launch TTC into new markets and channels to which Todd, Sherry and Lisa had no way of accessing and Lindsay Welch had even less.

47.     Plaintiff is more qualified than Lindsay Welch to be TTC's Business Development Manger, but was denied the position because of Plaintiff's age and Hispanic national origin.

48.     Plaintiff is informed and believes that TTC subjected her to discrimination due to her age and Hispanic national origin. (Plaintiff is Mexican American).

49.     As a direct, foreseeable and proximate result of TTC's discrimination, Plaintiff has suffered substantial damages, including lost salary, benefits, bonuses, loss of employment-related opportunities for growth, humiliation, and embarrassment, all in an amount according to proof at time of trial.

50.     Plaintiff will amend this Verified Complaint to allege an additional claim for national origin discrimination if the EEOC elects to issue a right-to-sue letter in Plaintiff's pending national origin discrimination charge.

## DEMAND FOR JURY TRIAL

*Plaintiff Melissa Martin McBeath hereby demands trial of this matter by jury.*

## PRAYER FOR RELIEF

Plaintiff Melissa Martin McBeath prays for judgment as follows:

1.     Back pay, front pay, and health benefits;

2.     Punitive damages;

3.     All statutory damages;

4.     Attorneys' fees;

5.     Pre-judgment and post-judgment interest on all damages awarded;

6.     Costs of suit incurred; and

7.     For such other and further relief as the Court deems just and proper.

Dated:  July 11, 2016

Melissa Martin McBeath

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**VERIFICATION**

MELISSA MARTIN McBEATH, being first duly sworn, upon her oath deposes and says:

I am the plaintiff in this matter. I have read and know the contents of the foregoing:

VERIFIED COMPLAINT

The facts alleged in the Verified Complaint are within my own knowledge and I know those facts to be true, except as to those matters stated upon my information and belief, and as to those matters I also believe them to be true.

I declare (or certify, verify or state) under penalty of perjury under the laws of the State of Arizona that the foregoing is true and correct. Executed on July 11, 2016.

Melissa Martin McBeath

10171.1

VERIFIED COMPLAINT                                    -9-