FARHANG & MEDCOFF

4801 E. Broadway Boulevard, Suite 311
Tucson, Arizona 85711
T: 520.790.5433

Ali J. Farhang (#019456)
afarhang@fmazlaw.com
Roberto C. Garcia (#026246)
rgarcia@fmazlaw.com
Travis L. Tufts (#029373)
ttufts@fmazlaw.com

Attorneys for Defendant

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Melissa Martin McBeath, | NO. 4:16-cv-00462-BPV |
| Plaintiff, | **DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS** |
| v. | |
| Tucson Tamale Company, | Assigned to Bernando P. Velasco |
| Defendant. | |

In unmistakable furtherance of her efforts to litigate Defendant Tucson Tamale Company ("TTC") into submission, Plaintiff Melissa Martin McBeath ("McBeath") filed the instant suit asserting claims arising from the same circumstances, core set of facts, and subject matter alleged in a separately filed action in Pima County Superior Court. Although she is appearing *pro se* in this matter, McBeath—who is improperly receiving legal advice and assistance from a disbarred California attorney at the apparent cost of $2,000—is unquestionably aware that such claim splitting is impermissible. (See Application to Proceed in Dist. Ct. without Prepaying Fees or Costs, July 11, 2016, p. 5 at No. 10.) Rather than amend her Superior Court Complaint to assert her age discrimination claim, McBeath instead vexatiously filed a separate lawsuit in this Court, forcing TTC to litigate in two venues. McBeath's notably vindictive litigation strategy should not proceed unabated, as

00280895.1

the doctrine against splitting a single cause of action precludes her from proceeding with this action.

As such, TTC, by and through undersigned counsel and pursuant to Fed. R. Civ. P. 12(c), submits the following memorandum of points and authorities, together with the pleadings and papers on file with the clerk, in support of its Motion for Judgment on the Pleadings.  TTC additionally requests the Court take judicial notice of the Superior Court matter, Pima County Superior Court Case No. C20161794, the docket, and pleadings on file in that case,[1] which TTC incorporates herein by reference.

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.   <u>PROCEDURAL AND FACTUAL BACKGROUND</u>**

On April 16, 2016, McBeath filed her Verified Complaint against TTC, its owners, and a TTC employee in the Pima County Superior Court as Case No. C20161794 (the "Superior Court Action").  <u>See</u> Exhibit 1, <u>State Ct. Compl.</u> at ¶ 1.  Therein, McBeath alleges seven separate causes of action related to her former employment with TTC.  <u>See generally id.</u>  Many of the allegations in Superior Court Action are identical or substantially similar to the allegations raised in the case at bar (the "Federal Court Action").  <u>Compare id.</u> at ¶¶ 11-37, <u>with</u> (<u>Federal Ct. Compl.</u> at ¶¶ 15-17, 19-38, 42-45.)

In both actions McBeath alleges that TTC unlawfully refused to hire or promote her to the position of Business Development manager.  <u>Compare</u> <u>State Ct. Compl.</u> at ¶¶ 20, 133, <u>with</u> (<u>Fed. Ct. Compl.</u> at ¶¶ 34, 38, 47.)  She asserts a similar factual background related to her interview process and alleged representations of the terms and conditions of her employment.  <u>Compare</u> <u>State Ct. Compl.</u> at ¶¶ 15-22, <u>with</u> (<u>Fed. Ct. Compl.</u> at ¶¶ 11-18.) Indeed, McBeath posits identical defamatory, superfluous, and immaterial allegations about

---

[1] The Court may take judicial notice of matters of public record, both within and without the federal judicial system, if the facts are not subject to a reasonable dispute.  <u>See</u> Fed. R. Evid. 201(b); <u>see also</u> <u>United States v. Black</u>, 482 F.3d 1035, 1041 (9th Cir. 2007) (noting a court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue."); <u>Asdar Group v. Pillsbury, Madison & Sutro</u>, 99 F.3d 289, 290 (9th Cir. 1996) (providing a court may take judicial notice of pleadings and court orders in related proceedings).  It is incontrovertible McBeath filed a separate action in the Pima County Superior Court and that the pleadings and orders entered in that matter are public record and directly relate to the relief sought herein.

00280895.1

1    TTC's owner in both Complaints.  <u>Compare</u> <u>State Ct. Compl.</u> at ¶¶ 34, 44-45, <u>with</u> (<u>Fed.</u>

2    <u>Ct. Compl.</u> at ¶¶ 30, 36-37.)  She claims TTC unlawfully failed to raise her salary.  <u>Compare</u>

3    <u>State Ct. Compl.</u> at ¶¶ 19-23, <u>with</u> (<u>Fed. Ct. Compl.</u> at ¶¶ 16-19.)  She alleges she was

4    unlawfully denied bonuses under the quarterly incentive plan.  <u>Compare</u> <u>State Ct. Compl.</u>

5    at ¶¶ 20, 133, <u>with</u> (<u>Fed. Ct. Compl.</u> at ¶¶ 23-24, 34.)  Finally, she claims TTC's bases for

6    terminating her employment were unlawful.  <u>Compare</u> <u>State Ct. Compl.</u> at ¶¶ 109-126 , <u>with</u>

7    (<u>Fed. Ct. Compl.</u> at ¶¶ 39-50.)

8    **II.    <u>RELEVANT LAW</u>**

9    **A.  Rule 12(c)**

10        "Federal Rule of Civil Procedure 12(c) is 'functionally identical' to Rule 12(b)(6).

11   The same legal standard therefore applies to motions brought under either rule … In

12   deciding a motion to dismiss, the Court must construe the facts alleged in the complaint in

13   the light most favorable to the drafter of the complaint and must accept all well-pleaded

14   allegations as true … Nonetheless, the Court does not have to accept as true a legal

15   conclusion couched as a factual allegation … The Court may dismiss a complaint for failure

16   to state a claim for … lack of a cognizable legal theory …." <u>Loos v. Lowe's HIW, Inc.</u>,

17   796 F.Supp.2d 1013, 1016-1017 (D. Ariz. 2011) (signs and citations omitted).  On a motion

18   to dismiss or motion for judgment on the pleadings, a Court "must determine whether the

19   factual allegations in the … complaint 'plausibly give rise to an entitlement to relief.'"

20   <u>Snyder v. HSBC Bank, USA, N.A.</u>, 913 F.Supp.2d 755, 766 (D. Ariz. 2012) (citations

21   omitted).

22   **B.  The Claim-Splitting Doctrine**

23        The doctrine of claim-splitting provides that a party is "not at liberty to split up his

24   demand, and prosecute it by piecemeal, or present only a portion of the grounds upon which

25   special relief is sought, and leave the rest to be presented in a second suit, if the first fails.

26   There would be no end to litigation if such a practice were permissible." <u>United States v.</u>

27   <u>Haytian Republic</u>, 154 U.S. 118, 125 (1894) (quoting <u>Stark v. Starr</u>, 94 U.S. 477, 482

28   (1876)).  The ultimate objective of this rule against claim-splitting is to "protect the

00280895.1

Defendant from being harassed by repetitive actions based on the same claim" and to promote judicial economy and convenience." Clements v. Airport Auth. of Washoe Cnty., 69 F.3d 321, 328 (9th Cir. 1995); see also Restatement (Second) of Judgments § 24.

"The rule against splitting a cause of action generally requires 'that all claims arising out of or relating to the same transactional circumstances or core set of facts, or arising from a single wrong, or involving the same subject matter be joined in a single action.'" Meritage Homes Corp. v. Hancock, 522 F.Supp.2d 1203, 1214 (9th Cir. 2007) (citing 1A C.J.S. Actions § 229; Haphey v. Linn County, 924 F.2d 1512, 1517 (9th Cir. 1991)). Claim preclusion applies where: 1) the causes of action and relief are the same in the two matters; and 2) the parties or privies to the action are the same in the two matters. Adams v. Cal. Dept. of Health Services, 487 F.3d 684, 689 (9th Cir. 2007). "To ascertain whether successive causes of actions are the same, [Courts] use the transaction test developed in the context of claim preclusion." Id. "Whether two events are part of the same transaction or series depends on whether they are related to the same set of facts and whether they could conveniently be tried together." Id. (citing Western Sys., Inc. v. Ulloa, 958 F.2d 864, 871 (9th Cir. 1992)); see also Meritage Homes Corp., 522 F.Supp.2d at 1215. In applying the transaction test Courts examine four criteria:

> (1) whether the two suits arise out of the same transactional nucleus of facts;
> (2) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (3) whether the two suits involve infringement of the same right; and; (4) whether substantially the same evidence is presented in the two actions.

Mpoyo v. Litton Electro-Optical Sys., 430 F.3d 985, 987 (9th Cir. 2005); see also Adams, 487 F.3d at 689. Whether the two suits arise out of the same transactional nucleus of facts is the most important criteria. See Adams, 487 F.3d at 689.

/ / /

/ / /

/ / /

1    **III.    ANALYSIS AND APPLICATION**

2          **A. The Causes of Action are the same in the Two Matters**

3                   1.      The Superior Court Action and the Federal Court Action Arise

4                   out of the Same Nucleus of Facts.

5          The allegations of McBeath's Complaints clearly establish both of her actions arise

6    from the same nucleus of facts.  Fundamental to each Complaint is McBeath's allegation

7    TTC wrongfully terminated her employment.  While McBeath asserts alternative causes of

8    actions flowing from the termination decision, the nucleus of facts forming the bases of the

9    termination decision are similar, if not identical, in the Superior Court Action and the

10   Federal Court Action.  Specifically, factors leading to her termination such as her poor job

11   performance, insubordination, and detrimental impact on TTC's business will be relevant

12   in both cases, irrespective of the liability potentially accruing from those facts.

13         The facts related to the terms and conditions of her employment are likewise similar.

14   McBeath claims she was denied bonuses, a promotion, and health care benefits.  While she

15   asserts these facts as purported adverse employment decisions or discriminatory acts in the

16   Federal Court Action she utilizes the same facts to support alleged violations of a purported

17   employment contract, fraud, and/or negligent misrepresentations in the Superior Court

18   Action.  Despite the alternative causes of action, the inexorable conclusion based on her

19   pleadings is that the same nucleus of facts form the bases for all of her claims – i.e. purported

20   statements, representations, and employment conditions leading to allegedly improper

21   employment decisions.

22         The mere fact McBeath asserts alternative causes of action does not render the

23   Superior Court Action and Federal Court Action separate claims.  In Adams, a job applicant

24   filed suit in state court asserting seven separate causes of actions against a prospective

25   employer related to her application process, offer of employment, and the subsequent

26   withdrawal of the offer.  See generally 487 F.3d at 686-687.  The job applicant subsequently

27   moved to amend her Complaint to add additional causes of action for violations of the Fair

28   Credit Reporting Act and state privacy law supported by factual allegations raised in her

00280895.1

1    initial Complaint but not plead as separate causes of action.  See id. at 687.  After the federal

2    court denied her request to amend as being untimely, the job applicant filed a separate

3    lawsuit alleging claims she sought to add by amendment.  See id.  The Ninth Circuit

4    concluded the job applicant's second cause of action was duplicative of her first cause of

5    action, finding that her second cause of action differed only in that it better identified the

6    parties involved, added additional parties, and raised two new legal theories of recovery.

7    See id. at 690.  Despite the addition of new legal theories, the Court found "the claims in

8    both Complaints relate to the same set of facts and form a convenient trial unit because they

9    'disclose [ ] a cohesive narrative' of [the applicant's] relationship with [the employer]."  Id.

10        McBeath's employment conditions and the claims asserted in both actions form a

11   convenient trial unit.  The narrative of her employment provides the foundational predicate

12   for each of her causes of action.  Even though certain factors will be more or less relevant

13   in proving the distinct causes of action, critical evidence relating to TTC's employment

14   decisions unquestionably overlaps.  Namely, McBeath's belief she was entitled to bonuses,

15   a promotion, and other benefits contrasted with TTC's bases for not owing or providing

16   those benefits.  Simply, the narrative of her employment and the overlap of critical facts

17   fulfils the transactional-nucleus criterion.  See Mpoyo, 430 F.3d at 987 (considering

18   whether common nucleus of facts exists with Title VII, FLSA and FMLA claims and

19   finding they form a convenient trial unit that discloses a cohesive narrative of an employee-

20   employer relationship and a controversial termination).

21        McBeath's Federal Court Action and Superior Court Action unquestionably involve

22   the same nucleus of facts.  Satisfaction of this criteria controls and is sufficient to assure the

23   two suits involve the same claim or cause of action.  Id. at 988.

24                    2.    TTC's Rights or Interests would be Destroyed or Impaired by

25                          Separate Prosecution of this Action.

26        Concurrent lawsuits place TTC in jeopardy of contradicting findings of law or fact,

27   increasing prospective liability on the same issues.  The facts being identical in both cases,

28   there is a strong likelihood of diverging findings of fact or law through dispositive motion

00280895.1

1   practice or trial.  While claim preclusion doctrines such issue-preclusion or *res judicata*

2   may protect against divergence, TTC would nonetheless be forced to incur additional

3   expenses and costs to enforce preclusion or face re-litigation of the same issue.  Courts

4   adopted the claim-splitting doctrine to avoid this scenario in particular and to shield a TTC

5   from re-litigating identical issues.  See Clements, 69 F.3d at 330 (the private interest of

6   preclusion doctrine "include[s] shielding litigants from the burden of re-litigating identical

7   issues with the same party.").  Furthermore, contrasting findings potentially impugn the

8   confidence of the judicial process.  See id. ("the 'most purely public purpose' served by

9   preclusion rules is that of 'preserving the acceptability of judicial dispute resolution against

10   the corrosive disrespect that would follow if the same matter were twice litigated to

11   inconsistent results.'") (internal citations omitted).

12       McBeath's duplicative litigation further burdens the judicial system and unjustly

13   raises the TTC's costs.  By litigating in two venues, McBeath forces TTC to incur separate

14   filing fees as well as incur additional expenses preparing responsive pleadings, complying

15   with two scheduling orders, and preparing other papers similar to that which TTC is

16   required to prepare in the Superior Court Action.  Moreover, as the Superior Court docket

17   clearly reflects, McBeath has already engaged in vexatious litigation tactics, including the

18   filing of a multitude of procedurally improper motions requiring judicial intervention and

19   resources.  McBeath unquestionably views the District Court as a separate venue where she

20   can replicate her efforts, drive up TTC's costs, and ultimately exact concessions from TTC.

21              3.    McBeath Seeks Enforcement of the Same Rights.

22       The relief sought by McBeath in both suits is identical.  In the Superior Court Action

23   she seeks to recover "lost salary, benefits, bonuses, loss of employment related

24   opportunities for growth, humiliation, and embarrassment" as a direct and proximate cause

25   of TTC's alleged wrongful termination.  See State Ct. Compl. at ¶ 124.  Indeed she seeks

26   identical damages for the alleged wrongful termination in violation of the Age

27   Discrimination in Employment Act ("ADEA").  See Fed. Ct. Compl. at ¶ 49.  Although the

28   Arizona Employment Protection Act ("AEPA") – the statutory basis for her wrongful

00280895.1

- 7 -

termination claim in the Superior Court Action – and the ADEA establish distinct rights, this factor alone does not differentiate the causes of action sufficient to avoid the application of the claim splitting doctrine.  See Adams, 487 F.3d at 691 ("although the [Fair Credit Reporting Act] and [California Investigative Consumer Reporting Agencies Act] establish different rights enforceable by litigants, this factor alone does not differentiate the causes of action.").  As the Ninth Circuit recognized in Adams, the common nucleus of facts coupled with the request for similar relief in both actions demonstrates McBeath impermissibly split her claim.

The fact that McBeath was unable to bring an age discrimination claim when she filed her Superior Court Action is unavailing.  An individual alleging violations of the ADEA must exhaust administrative remedies.  See 29 U.S.C. § 626(d)(1) ("No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission.").  Though McBeath may argue she was unable to enforce her rights pursuant to the ADEA when she filed the Superior Court Action, the requirement to exhaust administrative remedies is no excuse for claim splitting.  See Barr v. Bd. of Trustees of W. Illinois Univ., 796 F.3d 837, 840 (7th Cir. 2015) (stating "the requirement to exhaust administrative remedies is no excuse for claim-splitting…").  Moreover, TTC does not suggest McBeath lacks standing or ability to bring an ADEA claim.[2]  Rather, she cannot assert the claim in a separate venue when the bases of the claim arise out of the same transactional nucleus as her previously filed suit.  There being no bar for her to assert these claims in the Superior Court Action, she must bring the ADEA claims in that venue.  See Mpoyo, 430 F.3d at 988 (quoting "different theories in support of the same claim for relief must be brought in the initial action" and finding "there was no bar to Mpoyo presenting these claims in the original suit.").

---

[2] TTC does not deny McBeath is over 40 years old and therefore part of a protected class.  However, by acknowledging she is part of a protected class, TTC does not waive, and hereby expressly preserves, its additional affirmative defenses under Fed. R. Civ. P. 8 and 12 and Ariz. R. Civ. P. 8 and 12 until further discovery is conducted.

1    Unequivocally, McBeath new she should have amended her Superior Court Action

2  to include her ADEA claims.[3]  Because she has not, the claim-splitting doctrine bars

3  duplicative claims "which could have been asserted, whether they were or not, in a prior

4  suit between the same parties…on the same cause of action." Ross v. Int'l Bhd. Of Elec.

5  Workers, 634 F.2d 453, 457 (9th Cir. 1980).

6               4.    Substantially Similar Evidence is Relevant in the Superior

7                   Court Action and Federal Court Action.

8    The evidence adduced in support or defense of McBeath's claims will be

9  substantially similar.  TTC's employment termination decision is relevant and anticipated

10  testimony in both matters.  The basis for the decision is unquestionably relevant in

11  determining whether TTC's decision was based on impermissible discriminatory animus,

12  legitimate business purposes, in retaliation for her alleged reporting of violations of Arizona

13  law[4], and/or related to the parties' obligations under a purported "employment agreement."

14  Likewise, documentary evidence and testimony related to McBeath's bonuses, benefits, and

15  terms and conditions of employment are critical components of both cases.  Specifically,

16  the statements, representations, and the course of dealing between the parties is

17  unquestionably relevant in determining whether TTC's employment actions were

18  discriminatory, fraudulent, or in violation of the purported employment agreement.  The

19  mere fact some of her claims require proof of slightly different facts does not alter the

20  conclusion the evidence is substantially the same.  See Int'l Union of Operating Engineers-

21  Employers Const. Indus. Pension, Welfare & Training Trust Funds v. Karr, 994 F.2d 1426,

22  1430 (9th Cir. 1993) (analyzing whether subsequently filed action involved the same

23  evidence and stating "[t]he fact some different evidence may be presented in this

24  [subsequent] action…does not defeat the bar of res judicata.").

25  _____

26  [3] While pro se litigants are held to less stringent pleading standards than attorneys, McBeath's "counsel" unquestionably knew of and ignored the claim-splitting doctrine in drafting and/or

27  supporting the filing of the Federal Court Action. See Haines v. Kerner, 404 U.S. 519, 520 (1972) (holding the pleadings of a pro se litigant "to less stringent standards than formal pleadings drafted by lawyers…").

28  [4] In the Superior Court Action McBeath alleges TTC terminated her employment after she reported alleged violations of Arizona law – a prima facie violation of the AEPA.

00280895.1

**B.  The Parties and Privies are the same in Both Actions.**

McBeath's causes of action are not only similar but they involve the same party or persons in privity with that party.  McBeath's Federal Court Action involves claims against TTC only.  However, reference to the parties involved in the Superior Court Action appear ubiquitously throughout McBeath's federal court Complaint.  (See, e.g., Fed. Ct. Compl. at ¶¶ 9-18, 27-32.)  As the owners and employees of TTC,[5] Todd Martin, Sherry Martin, and Lisa Martin maintain a close relationship with TTC and are aligned with its interests.  See Adams, 487 F.3d at 691 (finding the same parties were involved in duplicative suits where separately named employee-defendants had a close relationship with employer involved in the original action and where liability was predicated on employees wrongdoing).  Similar to the employees in Adams, Todd Martin, Sherry Martin, and Lisa Martin have taken opposing positions to McBeath in the Superior Court Action through various pleadings and motions, including their Answer, Motion to Dismiss, and Motion to Strike allegations of McBeath's Superior Court Complaint.  (See, e.g., Superior Court Action Answer; Superior Court Action Mot. to Dismiss; Superior Court Action Mot. to Strike.)

**IV.   CONCLUSION**

In filing her Federal Court Action, McBeath seeks to harass TTC with vexatious, duplicative actions filed in separate venues.  Her efforts, however, are foreclosed by the rule against claim-splitting.  The promotion of judicial economy and convenience are subserved by dismissing the Federal Court Action without prejudice, enabling McBeath to amend and refile her ADEA claim in the Superior Court Action where TTC will not object to the amendment.

/ / /

/ / /

/ / /

/ / /

---

[5] TTC does not deny Todd Martin and Sherry Martin are the owners and that Lisa Martin is Todd's sister and employed by TTC.  (See Fed. Ct. Action Compl. at ¶¶ 9-10; see also Fed. Ct. Action Am. Answer at ¶¶ 9-10.)

00280895.1

1

RESPECTFULLY SUBMITTED this 25th day of August 2016.

2

FARHANG & MEDCOFF

3

4

By /s/ Travis L. Tufts

5

Ali J. Farhang
Roberto C. Garcia
Travis L. Tufts

6

7

Attorneys for Defendant

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

00280895.1

1

2

## CERTIFICATE OF SERVICE

3

I hereby certify that the foregoing document was filed electronically with the Clerk

4

of the United States District Court for the District of Arizona, with notice of case activity

5

generated and sent electronically this 25th day of August 2016 to:

6

7     Melissa Martin McBeath
      3463 E. Terra Alta Blvd.
8     Tucson, AZ 85716
      Mel.mcbeath@cox.net
9

10    /s/Letitia L. Wright

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

00280895.1