FARHANG & MEDCOFF
4801 E. Broadway Blvd., Ste. 311
Tucson, Arizona 85711
T: 520.790.5433

Ali J. Farhang (#019456)
afarhang@fmazlaw.com
Roberto C. Garcia (#026246)
rgarcia@fmazlaw.com
Travis L. Tufts (#029373)
ttufts@fmazlaw.com

Attorneys for Defendant

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Melissa Martin McBeath,<br><br>             Plaintiff,<br><br>    v.<br><br>Tucson Tamale Company,<br><br>             Defendant. | NO. 4:16-cv-00462-BPV<br><br>**REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Assigned to Bernando P. Velasco |

By failing to address or even attempt to distinguish the identical nucleus of facts underlying her Pima County Superior Court lawsuit ("Superior Court Action") and this federal court action ("Federal Court Action"), Plaintiff Melissa Martin McBeath ("McBeath") offers no basis to deny Defendant Tucson Tamale Company's ("TTC") relief from her impermissible claim-splitting. The singular distinction she draws between the complaints–that the instant suit provides a separate legal theory of liability–completely discounts well-established precedent and does not overcome the clear evidence of claim-splitting. Similarly unavailing, McBeath's alternative argument–that a final judgment must be reached before the application of *res judicata*–likewise ignores the fundamental function of the claim-splitting doctrine and its rationale. Simply, McBeath cannot escape the application of the claim-splitting doctrine despite the conclusive and unsupported statement that TTC's request for relief is based on a "fundamental misapplication" of the doctrine.

TTC, by and through undersigned counsel, hereby submits its Reply in Support of Motion for Judgment on the Pleadings together with the pleadings and papers on file with the Clerk, which TTC incorporates herein by reference.

### A. McBeath's recitation of the procedural background is irrelevant and misleading.

McBeath's procedural summary lends nothing to the Court's analysis and indeed serves only to disguise the similarities between her complaints.  McBeath cites the procedural history related to her alleged exhaustion of administrative remedies, the act of filing of her Superior Court Action, and TTC's allegedly retaliatory counterclaims.[1]  This procedural background distracts from the first and most important inquiry in determining impermissible claim splitting; whether the lawsuits arise from the same transactional nucleus of facts.  See Adams v. Cal. Dept. of Health Services, 487 F.3d 684, 689 (9th Cir. 2007).  That she fails to distinguish the same facts supporting her separate complaints is telling and a tacit admission her claims are identical.

The cursory summary of the factual allegations, found in just five lines of McBeath's Opposition (see McBeath's Opp'n at 1:6-11 (Doc. No. 19)), confirms the similarities between the Superior Court Action and the Federal Court Action.  McBeath states her claim relates to her hiring in April 2015 as Area Manager of TTC's three restaurants.  (See id. at 1:8.)  Both Complaints posit allegations relating to McBeath's hiring as Area Manager.  (Compare State Ct. Compl. at ¶¶ 17, 21, 23 with Fed. Ct. Compl. at ¶ 17, 19).  McBeath acknowledges her claim involves the termination of her employment in 2016, allegedly after confronting management about myriad adverse employment decisions.  (See McBeath's Opp'n at 1:9-12 (Doc. No. 19).)  Indeed, the termination and the allegedly adverse decisions related to promotions and bonuses form the basis of both Complaints.  (Compare State Ct. Compl. at ¶¶ 35-38 with Fed. Ct. Compl. at ¶¶ 31-34 (regarding bonuses)); (compare State Ct. Compl. at ¶ 43 with Fed. Ct. Compl. at ¶ 35 (stating the same

---

[1] TTC disputes its valid, compulsory, and well supported Counterclaims were lodged in retaliation. See Ariz. R. Civ. P. 13(a) (addressing compulsory counterclaims).  Indeed, the more persuasive inference would be that McBeath retaliated against TTC and its owners after they lawfully terminated her employment by harassing them in multiple venues, filing a Complaint littered with superfluous and defamatory allegations, and employing a strategy to litigate them into submission.

00284286.2

allegations related to her termination of employment); (compare State Ct. Compl. at ¶ 42 with Fed. Ct. Compl. at ¶ 38 (claiming unlawful refusal to promote her to Business Development Manager)).

The facts underlying McBeath's Complaints unquestionably relate to the terms and conditions of her employment and the employment decisions flowing from that relationship. McBeath's acknowledgment of the similar nucleus of facts and complete inability to explain why the suits cannot conveniently be tried together supports the conclusion she impermissibly split her claims. See Mpoyo v. Litton Electro-Optical Systems, 430 F.3d 985, 987 (9th Cir. 2005) ("Because both sets of [Plaintiff's] claims arise from [Defendant's] conduct while [Plaintiff] was an employee and specifically from the events leading to his termination, his claims relate to the same set of facts.").

**B. Asserting separate legal theories in different venues does not preclude application of the claim-splitting doctrine.**

McBeath argues, unavailingly, that the Federal Court Action is not duplicative of the Superior Court Action because the former involves claims of discrimination arising under federal law. (See McBeath's Opp'n at 3:16-20 (Doc. No. 19).)  Her argument ignores well-settled precedent.  The Ninth Circuit in Adams unequivocally established that different rights enforceable by litigants does not adequately differentiate concurrently filed lawsuits for purposes of claim-splitting analysis. See Adams, 487 F.3d at 961 ("although the [Fair Credit Reporting Act] and [California Investigative Consumer Reporting Agencies Act] establish different rights enforceable by litigants, this factor alone does not differentiate the causes of action.")  Here, although McBeath asserts violations of separate rights in the Federal Court Action–discrimination in violation of the Age Discrimination Employment Act ("ADEA") as opposed to wrongful termination under Arizona law in the Superior Court Action–this distinction alone is insufficient to overcome the conclusion that the alternative theories are part of the same claim. Because McBeath's ADEA cause of action is merely a different theory of liability based upon the same claim for relief, it is duplicative and should have been raised in the earlier filed Superior Court Action. See Mpoyo, 430 F.3d at 988

00284286.2

1  ("Different theories in support of the same claim for relief must be brought in the initial
2  action.").

### C. The law does not permit McBeath to maintain concurrent suits in state and federal court.

Contrary to law, McBeath claims a right to maintain concurrent state and federal court actions arising from the same set of facts and circumstances against the same Defendant. (See McBeath's Opp'n at 2:18-21 (Doc. No. 19).) As the Ninth Circuit pointed out in Adams, "Plaintiffs generally have 'no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant.'" Adams, 487 F.3d at 688 (internal citations omitted).

McBeath cites a number of inapposite cases in an effort to support her claim-splitting. She cites the Arizona appellate court decision, Tonnemacher v. Touche Ross & Co., analyzing the applicability of Arizona's doctrine of abatement.[2] See 186 Ariz. 125, 920 P.2d 5 (Ariz. Ct. App. 1996). First, TTC does not seek redress under the abatement doctrine. Thus, the applicability of abatement, the remedies pursuant to that doctrine, and the cases analyzing *Arizona's* doctrine of abatement are irrelevant. Second, regardless of whether the abatement doctrine precludes duplicative lawsuits, the claim-splitting doctrine expressly prohibits the maintenance of concurrent state and federal court actions. Claim-splitting protects a Defendant, as here, from being harassed by repetitive actions in separate courts based on the same claim and empowers the Court to dismiss the duplicative action. See Clements v. Airport Auth. of Washoe Cnty., 69 F.3d 321, 328 (9th Cir. 1995); see also Adams, 487 F.3d at 622 ("district court did not abuse its discretion in electing to dismiss the second action…"). Last, and contrary to McBeath's reading, Tonnemacher does not condone concurrent federal and state court actions. Rather, the Arizona appellate court was simply powerless to preclude the concurrent actions under the abatement doctrine. See id.

---

[2] The doctrine of abatement can operate to stay a subsequently filed action when a prior suit has been filed and is pending. See Tonnemacher, 186 Ariz. at 128, 920 P.2d at 8 ("the pendency of a prior action sometimes abates a subsequently filed action."). The rule does not apply, however, to actions pending in different jurisdictions. See id. For example, where the cases are pending in state and federal courts. See id.

00284286.2

at 128, 129, 920 P.2d at 8, 9 ("[w]hile the state and federal courts 'co-exist in the same space,' they are part of two different and independent systems" and finding "[b]ecause the state and federal courts operate under different sovereigns, an action pending in a federal court does not abate an action subsequently commenced in state court." (internal citations omitted)).

McBeath's ambiguous and cherry-picked citation from Scottsdale Ins. Co. v. Detco Industries, Inc., is likewise unable to help save her impermissible claim-splitting. (See McBeath's Opp'n at 3:21-23 (Doc. No. 19)) (quoting Scottsdale Ins. Co. v. Detco Industries, Inc., 426 F.3d 994, 999 (8th Cir. 2005) for the proposition: "[I]n the absence of parallel state court proceedings, it is less likely that the claims of all parties in interest can satisfactorily be adjudicated in the state court proceeding.") McBeath not only fails to explain why her claims cannot be satisfactorily adjudicated in the Superior Court Action, but Scottsdale Ins. Co. is readily distinguishable. Scottsdale Ins. Co. involved a coverage dispute between an insurer and its insured after injured third-parties filed suit against the insured. See 426 F. 3d 994 (8th Cir. 2005). There, the parties to the federal and state court lawsuits were not the same nor were there similar issues involved between the suits. See id. at 996 ("Scottsdale is not a party to those [class action] lawsuits, and Scottsdale's obligations to [its insured] Detco under the insurance policies are not at issue in those actions."). Here, the parties to the Federal Court Action and the Superior Court Action are identical. Similarly, the employment relationship and the bases for employment decisions are at issue in both cases. Additionally, the legal issue before the Eighth Circuit in Scottsdale Ins. Co. is not in front of the Court here. The issue there was whether the district court abused its discretion when it abstained from exercising jurisdiction over a declaratory judgment action regarding insurance coverage obligations. Here, TTC does not seek abstention or declaratory relief.

McBeath's reliance upon the Northern District of Illinois' decision in Tank v. T-Mobile USA, Inc. is similarly misplaced. In Tank, an employee filed an initial suit alleging the employer terminated his employment in violation of the Civil Rights Act § 1981. See

00284286.2

2013 WL 4401375 at * 2.  After the Court denied leave to amend the initial suit to add additional Title VII claims and a separate claim under the Telecommunications Act ("TCA"), Plaintiff filed a second suit.  See id. at * 1.  On claim-splitting grounds, the court dismissed the additional Title VII claims raised in the second action, holding that those claims were based on the same facts underlying the Section 1981 claims.  See id. at *8 ("Because the Title VII claims here and the Section 1981 claims in *Tank I* involve the same parties and same core of operative facts and because final judgment was entered on the merits…[they] are barred by *res judicata*.")  However, because the facts underlying the TCA claim <u>involved a separate set of operative facts not specifically raised or relied upon as part of the initial suit</u>, the TCA claim survived.  See generally id. at *6.

Assuming Tank carries some persuasive value,[3] it does not suggest as McBeath contends that "courts consider factual differences between two separate lawsuits that may look the same on the surface." (Doc. No. 19 at 6:20-21.)  Rather, it suggests claim-splitting does not apply <u>where the core operative facts are different on their face</u>.  In Tank, the initial lawsuit related to discriminatory employment termination while the subsequent lawsuit related to the employer's impermissible access of personal data.  Importantly, the Plaintiff did not allege the impermissible access of personal data as the core set of facts underlying the discriminatory employment decision.  Indeed, when the Plaintiff attempted to bring additional causes of action for Title VII violations arising out of the core facts as the earlier claim, the Court dismissed those claims for violating the claim-splitting doctrine.  See 2013 WL 4401375 at * 8 ("A plain reading of the FAC in comparison to the complaint from *Tank I* demonstrates that, for purposes of *res judicata* and claim-splitting, the Title VII claims arise from the same facts as the Section 1981 claims.").  Because the core set of operative facts underlying the employment discrimination claim and the TCA claim were distinct–i.e.

---

[3] This Court is not bound by another district court's decision where there is controlling Ninth Circuit precedent.  See Hart v. Massanari, 266 F.3d 1155, 1170 (9th Cir. 2001) ("an opinion of [the Ninth Circuit] is binding within our circuit…").  Moreover, the issue before the Court is not a novel issue requiring consideration of how other courts have ruled on the same issue.  See id. at 1155 (9th Cir. 2001) ("When ruling on a novel issue of law, [courts] will generally consider how other courts have ruled on the same issue.").  Because the Ninth Circuit has applied the claim-splitting doctrine in multiple decisions, including Adams, and TTC's motion does not raise a novel issue, the persuasive value of Tank is limited.

not part of the same transactional nucleus–the Court declined to apply the claim-splitting doctrine. See id. at * 7

Here, McBeath points to no set of operative facts that differentiate her Superior Court Action and Federal Court Action. Both actions undeniably relate to the terms and conditions of her employment and the employment decisions that flowed therefrom. Moreover, McBeath does not face the same prejudice as the Plaintiff in Tank. Here, a move to amend her complaint in the Superior Court Action to add ADEA claims will be uncontested by TTC.

### D. TTC's affirmative defense of *res judicata* is not at issue for purposes of this motion.

McBeath's arguments related to *res judicata* are immaterial. McBeath cites TTC's affirmative defenses as a prelude to her analysis of the doctrine of *res judicata*. (See McBeath's Opp'n at 4:2-6 (Doc. No. 19).) However, TTC's motion does not raise the applicability of *res judicata*. Although TTC asserts the doctrine as an affirmative defense, it serves as an alternative claim preclusion doctrine that protects TTC from McBeath's duplicative suits. Additionally, TTC cites cases applying *res judicata* because Courts utilize the transactional test for purposes of applying the doctrines of claim-splitting and *res judicata*. See Mpoyo, 430 F.3d at 987 (applying the four factor transactional test to determine applicability of *res judicata*); see also Adams, 487 F.3d at 689 (utilizing the four factor transactional test to determine the applicability of claim-splitting doctrine). Finally, unlike *res judicata*, the viability of the claim-splitting defense does not depend upon the entry of a final judgment nor is the Defendant limited to the remedy of *res judicata*. See Cook v. C.R. England, Inc., 2012 WL 2373258, at *1 (C.D. Cal. 2012) ("in claim-splitting, a litigant is able to move for dismissal *without* demonstrating that 'a court of competent jurisdiction as entered a final judgment on the merits' in the first action." (internal citations omitted) (emphasis in original). Indeed, Plaintiff admits a final judgment is not necessary here. (See McBeath's Opp'n at 5:17-19 (Doc. No. 19).)

/ / / /

**E.  Conclusion**

McBeath's ability to vindicate her supposed downtrodden rights simply does not permit her to harass TTC in two separate venues at the same time for claims involving the same set of facts and circumstances and against the same Defendant. McBeath intentionally and impermissibly split her claims, meriting dismissal of this suit.

RESPECTFULLY SUBMITTED this 6th day of September 2016.

FARHANG & MEDCOFF

By /s/ Travis L. Tufts
  Ali J. Farhang
  Roberto C. Garcia
  Travis L. Tufts

Attorneys for Defendant

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was filed electronically with the Clerk of the United States District Court for the District of Arizona, with notice of case activity generated and sent electronically this 6th day of September 2016 to:

Melissa Martin McBeath
3463 E. Terra Alta Blvd.
Tucson, AZ 85716
Mel.mcbeath@cox.net

/s/Travis L. Tufts

00284286.2