1   MELISSA MARTIN McBEATH
2   3463 E. TERRA ALTA BLVD.
    TUCSON, AZ 85716
3   Ph:  (520) 449-9753
4   *mel.mcbeath@cox.net*

5   Pro Se
6

7

8                   UNITED STATES DISTRICT COURT
9           DISTRICT OF ARIZONA, TUCSON DIVISION
10

11

12  MELISSA MARTIN McBEATH,            Case No. 4:16-cv-0462-BPV
13    an individual,
14                                     **PLAINTIFF'S MOTION FOR LEAVE
                                       TO AMEND THE COMPLAINT**
             Plaintiff,
15        v.                           _____
16
17  TUCSON TAMALE COMPANY,             [Fed. R. Civ. P. 15(a)]
      an Arizona corporation,
18
19                   Defendant.        Assigned to Hon. Bernardo P. Velasco
20                                     Complaint filed:  July 11, 2016
21

22

23

24

25

26

27

28

10254.1

1

## LEGAL ARGUMENT

2     Plaintiff Melissa Martin McBeath requests leave to amend her complaint so

3   that she may add a claim for discrimination based on national origin, race and

4   ancestry (Hispanic).

5     Fed. R. Civ. P. 15(a) governs amendments to pleadings and provides that,

6   absent stipulation, after a responsive pleading has been filed subsequent

7   amendments are permitted only with leave of the court. Under Rule 15(a), "leave

8   shall be freely granted when justice so requires." The United States Supreme

9   Court and the Ninth Circuit repeatedly have reaffirmed that leave to amend is to

10   be granted with "extreme liberality." *DCD Programs, Ltd. v. Leighton,* 833 F.2d 183,

11   186 (9th Cir. 1987).

12     In the absence of any apparent or declared reason—such as undue delay,

13   bad faith or dilatory motive on the part of the movant, repeated failure to cure

14   deficiencies by amendments previously allowed, undue prejudice to the opposing

15   party by virtue of allowance of the amendment, futility of amendment, etc.—the

16   leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis,* 371

17   U.S. 178, 182 (1962).

18     Plaintiff did not allege discrimination based on national origin, race and

19   ancestry in the initial complaint because the Equal Employment Opportunity

20   Commission did not issue the right-to-sue letter until November 2, 2016.

21     Plaintiff requests leave to amend because Defendant Tucson Tamale

22   Company refused to stipulate to the filing of the proposed First Amended

23   Complaint attached as Exhibit A.

24

25   Dated:  December 12, 2016          Respectfully submitted,

26

27                                     Melissa Martin McBeath

28

10254.1

**CERTIFICATE OF SERVICE**

I hereby certify that the above document was filed electronically with the Clerk of the United States District Court for the District of Arizona, and was served via hyperlink generated by the court's CM/ECF system, which was sent electronically to:

Roberto C. Garcia
*rgarcia@fmazlaw.com*
Travis L. Tufts
*ttufts@fmazlaw.com*
Farhang & Medcoff PLLC
4801 E Broadway Blvd., Ste. 311
Tucson, AZ 85711
520-790-5433

I declare under penalty of perjury, under the laws of the State of Arizona and the United States of America that the foregoing is true and correct.

Dated:  December 12, 2016    _____

Melissa Martin McBeath

10254.1

14-CV-01358-EJD

# Exhibit A

1

2
MELISSA MARTIN McBEATH
3463 E. TERRA ALTA BLVD.

3
TUCSON, AZ 85716

4
Ph:  (520) 449-9753
*mel.mcbeath@cox.net*

5

6
Pro Se

7

8

9
UNITED STATES DISTRICT COURT

10
DISTRICT OF ARIZONA, TUCSON DIVISION

11

12
Case No. 4:16-cv-0462-BPV

13
MELISSA MARTIN MCBEATH,
  an individual,

14

15
          Plaintiff,
**FIRST AMENDED COMPLAINT**

16
       v.

17
TUCSON TAMALE COMPANY,

18
  an Arizona corporation,

19
          Defendant.

20

21

22

23

24

25

26

27

28

10253.1

**THE PARTIES**

1.      MELISSA MARTIN MCBEATH (*"Plaintiff"*) brings this action against her former employer for **discrimination based on** age, **national origin, race and ancestry** ~~discrimination~~. Plaintiff seeks general, special, compensatory and punitive damages, attorneys' fees, costs, pre-judgment interest, post-judgment interest, and other appropriate relief.

2.      Plaintiff is an individual who resides in Pima County, Arizona.

3.      TUCSON TAMALE COMPANY (*"TTC"*), is and, at all times mentioned in this verified Complaint, was authorized to operate by the State of Arizona and qualified to do business in Pima County, Arizona. *See* AZ Corporation Commission File No. 14604539. TTC has a place of business and offices located at 2550 N. Dragoon Street, Suite 120, Tucson, Arizona 85745.

**JURISDICTION AND VENUE**

4.      The Court has jurisdiction over the alleged violation of the Age Discrimination in Employment Act under 29 U.S.C § 621 *et seq.* and 28 U.S.C. § 1331.

5.      The demand in controversy in this Verified Complaint, exclusive of interest and costs, exceeds the minimum jurisdictional requirements.

6.      Venue is proper in this Court under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391(b)(1).

**EXHAUSTION OF**

**ADMINISTRATIVE REMEDIES**

7.      On or about April 20, 2016, Plaintiff filed a complaint with the Equal Employment Opportunity Commission, alleging that the acts described in this Verified Complaint violated the Age Discrimination in Employment Act.

8.      Plaintiff waited more than 60 days after she filed her discrimination complaint with the EEOC before commencing this civil action, as required under 29 U.S.C. § 626(d). *See* 29 CFR § 1626.18(c).

10253.1

FIRST AMENDED COMPLAINT                                    -1-                                    4:16-cv-0462-BPV

1      9.      **The EEOC issued a right-to-sue letter on November 2, 2016.**

2                              **FACTUAL BACKGROUND**

3      10.     Todd Russell Martin and Sherry Martin (husband and wife) are the

4  principals and officers of TTC. They own three restaurants in Tucson, Arizona

5  and operate a tamale wholesale sale and distribution business from a separate

6  production facility.

7      11.     Lisa Martin is Todd's sister and is employed by TTC. [1]

8      12.     Plaintiff began the interview process with Toddy, Sherry and Lisa in

9  February 2015.

10     13.     Todd, Sherry and Lisa met at least six times over the course of

11 several weeks, and talked for hours about the business and the vision they had to

12 grow TTC's tamale wholesale business. They expressed to Plaintiff that she

13 would be ideally suited for the position of Business Development Manager

14 because of her close to twenty years' experience in wholesale sales and

15 distribution. The sole focus of the person who assumed this position would be to

16 grow and to manage TTC's expanding wholesale business.

17     14.     Todd, Sherry and Lisa explained to Plaintiff that they were actively

18 searching for a production facility to lease and therefore were not yet ready to

19 hire her as a Business Development Manager.

20     15.     Todd, Sherry and Lisa pleaded with Plaintiff to temporarily assume

21 the Area Manager position ($45,000 annual salary) to oversee their three other

22 affiliated restaurant and food service businesses until the production facility was

23 operational. Plaintiff stated that she needed an annual base salary of $75,000.

24     16.     Todd and Sherry assured Plaintiff that after she completed the

25 90-day probationary period, her annual salary would be reviewed and increased

26 _____

27      [1]    To avoid confusion, Todd Russell Martin, Sherry Martin and Lisa Martin
   are referred to by their first name. While Plaintiff shares a similar name with
28 these individuals, she is not related to them in any way.

1    to at least $50,000, based on performance. They told her this salary would be

2    temporary, pending the opening of the new production facility. At that point,

3    Plaintiff would transition into the new role of Business Development Manager at

4    an increased annual salary.

5         17.     Todd, Sherry and Lisa unequivocally represented to Plaintiff that

6    the new position of Business Development Manager would allow her an

7    opportunity to make more money.

8         18.     Todd, Sherry and Lisa further assured Plaintiff that she would not

9    remain in the Area Manager position for more than six months at the lower

10    annual salary of $50,000.

11         19.     During the interview process, Todd, Sherry and Lisa informed

12    Plaintiff that TTC did not offer health benefits yet, but would shortly make them

13    available.

14         20.     In light of the promises made to her regarding the terms of her

15    employment, Plaintiff agreed to join TTC.

16         21.     Plaintiff turned down a more lucrative job offer she had received

17    because she looked forward to the exiting and promising opportunities for

18    professional growth at TTC that Todd, Sherry and Lisa described to her.

19         22.     Plaintiff started working for TTC on April 20, 2015.

20         23.     Plaintiff was made a part of TTC's executive management team and

21    in that capacity reported to Todd, Sherry, and Lisa. Plaintiff oversaw monthly

22    sales of over $400,000 (approximatly $5,000,000 annually) and managed a team of

23    over 30 TTC employees.

24         24.     Todd, Sherry and Lisa further told Plaintiff, and put in her offer

25    letter, that she would be paid up to $2,500 under TTC's quarterly incentive plan.

26    Plaintiff would be eligible to participate in the incentive plan after 90 days.

27         25.     After Plaintiff successfully completed the 90-day probationary

28    period, she requested the salary review as promised and inquired about the

1  health benefits she was also promised. She was told to wait.

2      26.    In a written evaluation titled "90 Day Assessment," dated

3  September 1, 2015, Plaintiff received glowing reviews in every area of respon-

4  sibility because she performed her job in an an exceptionally professional and

5  exemplary manner. This evaluation should have been conducted in July 2015.

6      27.    In September 2015, her annual salary was finally raised to $50,000,

7  two months after the promised review.

8      28.    Plaintiff's first quarterly bonus was due by October 22, 2015. When

9  Plaintiff asked Todd and Sherry in an email when she would be paid the bonus,

10  they responded that the bonus would be paid as soon as they finalized "the

11  industry metrics used to evaluate performance."

12      29.    Plaintiff asked about the payment of her bonuses several times over

13  the next few weeks but was told to wait until after the holidays because Todd

14  and Sherry were too busy to be bothered with what was obviously not a priority

15  to them.

16      30.    In November 2015, Plaintiff began to report solely to Sherry due to

17  an internal TTC restructuring of management roles.

18      31.    When TTC senior staff was notified about the change in roles, one of

19  the general managers expressed great concern to Plaintiff. Having worked with

20  Sherry for several years, this general manager lamented to Plaintiff in tears:

21  "You won't last long. She [Sherry] runs all the good people off."

22      32.    At the end of January 2016, when the second quarterly bonus was

23  due, Todd, Sherry and Lisa failed even to acknowledge that Plaintiff was owed

24  this money.

25      33.    Refusing to wait any longer, Plaintiff confronted Sherry via email on

26  February 15, 2016, and insisted that she and Todd address her promised bonuses,

27  compensation and Business Development Manager position before the end of the

28  week. In response, Sherry scheduled a meeting at the TTC corporate office on

1   Friday, February 19, 2016.

2       34.    The meeting did not go well. Sherry snidely asked Plaintiff:

3   "Do you think you deserve your bonuses?" The tone of her voice clearly

4   communicated to Plaintiff that TTC had no intention of paying her this money.

5   Plaintiff revisited the issue of TTC's obligation to pay not just her bonuses, but

6   the bonuses owed to the general managers.

7       35.    Finally, Plaintiff expressed her dismay that TTC did not honor their

8   promise to make her the Business Development Manager for the wholesale

9   business, which was the reason she had agreed to work at TTC in the first place.

10   Instead, TTC gave the position to someone much younger and who had none of

11   the experience required to do the job.

12       36.    On Monday, February 22, 2016, three days after they met, Todd and

13   Sherry terminated Plaintiff's employment. The only reason they gave:  "Our

14   ***definition of success is different than yours.***"

15       37.    The remark reminded Plaintiff of something Sherry once said when

16   Plaintiff informed her that TTC was going to purchase an inexpensive rod and

17   curtain to give some privacy to a nursing mother, returning to work, who

18   needed to express milk postpartum:  "I'm not fucking paying for that! If she

19   wants to pay for it, that's up to her." Plaintiff purchased the rod and curtain at

20   her own expense.

21       38.    Todd and Sherry's definition of success apparently means that not

22   only will they refuse their employees even the smallest of professional courtesies

23   if it will cost them anything, but they will lie, cheat and steal from their

24   employees to avoid paying them even the wages they've earned, deserve and

25   were promised.

26       39.    In Plaintiff's case, Todd and Sherry reneged on their promise to give

27   her the higher-paying Business Development Manager position because they

28   preferred someone younger, attractive and white like them.

# FIRST CAUSE OF ACTION

## Violation of the Age Discrimination in Employment Act

(29 U.S.C. § 621 *et seq.*)

40.     Plaintiff realleges the preceding paragraphs and incorporates them by reference as though fully set forth herein.

41.     Plaintiff is a member of a protected class in that she is over the age of 40 years.

42.     In or around September 2015, TTC hired Lindsay Welch (she is white and in her early 30s) for the position of Business Development Manager that had been promised to Plaintiff.

43.     Lindsay Welch had no experience with:

    (a)     wholesale distribution

    (b)     wholesale sales

    (c)     wholesale supplier management

    (d)     restaurant management and operations

    (e)     supply chain management and logistics

    (f)     food production

    (g)     catering sales

44.     In fact, Lindsay Welch had no experience whatsoever operating any for-profit business because all her experience was in the non-profit sector.

45.     Plaintiff has experience working in every aspect of wholesale sales and distribution. She previously owned her own three-tier wholesale distribution company (based in Phoenix, Arizona) that sold highly sought-after and top-rated consummable products throughout Arizona.

46.     Plaintiff had direct contact and strong relationships with wholesale restaurant and grocery retail vendors locally and nationally in the course of her entire career spanning two decades, and particularly when she was growing her own small business.

1        47.     Plaintiff was prepared and ready to leverage her extensive network

2  of long-term vendor partners to launch TTC into new markets and channels to

3  which Todd, Sherry and Lisa had no way of accessing and Lindsay Welch had

4  even less.

5        48.     Plaintiff is more qualified than Lindsay Welch to be TTC's Business

6  Development Manger, but was denied the position because of Plaintiff's age and

7  Hispanic national origin, **race and ancestry**.

8        ~~49.     Plaintiff is informed and believes that TTC subjected her to~~

9  ~~discrimination due to her age and Hispanic national origin. (Plaintiff is Mexican~~

10  ~~American).~~

11        50.     As a direct, foreseeable and proximate result of TTC's discrimina-

12  tion, Plaintiff has suffered substantial damages, including lost salary, benefits,

13  bonuses, loss of employment-related opportunities for growth, humiliation, and

14  embarrassment, all in an amount according to proof at time of trial.

15        ~~51.     Plaintiff will amend this Verified Complaint to allege an additional~~

16  ~~claim for national origin discrimination if the EEOC elects to issue a right-to-sue~~

17  ~~letter in Plaintiff's pending national origin discrimination charge.~~

18  <center>**SECOND CAUSE OF ACTION**</center>

19  <center>**National Origin, Race and Ancestry Discrimination**</center>

20  <center>**(42 U.S.C. § 2000e-2(a))**</center>

21        **52.     Plaintiff realleges the preceding paragraphs and incorporates**

22  **them by reference as though fully set forth herein.**

23        **53.     Plaintiff is Mexican American.**

24        **54.     Plaintiff is informed and believes that her national origin played a**

25  **substantial role in TTC's willingness to discriminate against her.**

26        **55.     During the course of Plaintiff's employment, Plaintiff was**

27  **subjected to employment discrimination based on her national origin.**

28        **56.     TTC's conduct constitutes unlawful discrimination based on**

1    **Plaintiff's national origin, race and ancestry in violation of  Title VII Civil**

2    **Rights Act of 1964.**

3         57.    **As a direct, foreseeable and proximate result of TTC's wrongful**

4    **acts, Plaintiff has suffered substantial damages, including lost salary, benefits,**

5    **bonuses, loss of employment-related opportunities for growth, humiliation,**

6    **embarrassment, and mental and emotional distress and discomfort, all in an**

7    **amount according to proof at time of trial.**

8         58.    **Defendants' acts as herein described were committed maliciously,**

9    **fraudulently, or oppressively with the intent of injuring Plaintiff, and/or with**

10   **a willful and conscious disregard of Plaintiff's right to work in an**

11   **environment free from retaliation. Because these acts were carried out by**

12   **managerial employees in a despicable, deliberate and intentional manner,**

13   **Plaintiff is entitled to recover punitive damages in a sum sufficient to punish**

14   **and deter future such conduct.**

15                          **DEMAND FOR JURY TRIAL**

16    *Plaintiff Melissa Martin McBeath hereby demands trial of this matter by jury.*

17

18

19

20

21

22

23

24

25

26

27

28

10253.1

FIRST AMENDED COMPLAINT                        -8-                        4:16-cv-0462-BPV

## PRAYER FOR RELIEF

Plaintiff Melissa Martin McBeath prays for judgment as follows:

1.    Back pay, front pay, and health benefits;

2.    Punitive damages;

3.    All statutory damages;

4.    Attorneys' fees;

5.    Pre-judgment and post-judgment interest on all damages awarded;

6.    Costs of suit incurred; and

7.    For such other and further relief as the Court deems just and proper.


Dated:  December ___ , 2016          _____

                                     Melissa Martin McBeath

10253.1

FIRST AMENDED COMPLAINT                    -9-                        4:16-cv-0462-BPV

1

**VERIFICATION**

2       I, MELISSA MARTIN McBEATH, declare as follows:

3       I am the plaintiff in this matter. I have read and know the contents of the

4   foregoing:

5           FIRST AMENDED COMPLAINT

6

7       The facts alleged in the above complaint are within my own knowledge

8   and I know those facts to be true, except as to those matters stated upon my

9   information and belief, and as to those matters I also believe them to be true.

10

11      I declare under penalty of perjury, under the laws of the State of Arizona

12  and the United States of America that the foregoing is true and correct.

13  Dated:  December 12, 2016          _____

14                                      Melissa Martin McBeath

15

16

17

18

19

20

21

22

23

24

25

26

27

28

10253.1