MELISSA MARTIN McBEATH
3463 E. TERRA ALTA BLVD.
TUCSON, AZ 85716
Ph: (520) 449-9753
*mel.mcbeath@cox.net*

Pro Se

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA, TUCSON DIVISION

| | |
|---|---|
| MELISSA MARTIN McBEATH, an individual, <br><br> Plaintiff, <br> v. <br><br> TUCSON TAMALE COMPANY, an Arizona corporation, <br><br> Defendant. | Case No. CV 16-462-TUC-DCB (BPV) <br><br> **MOTION FOR A PROTECTIVE ORDER THAT PROTECTS DEFENDANT'S EMPLOYEES FROM INTIMIDATION AND DECLARES THAT PLAINTIFF MAY HAVE EX PARTE CONTACT WITH THEM** <br> _____ <br> [Fed. R. Civ. P. 26(c)] <br><br> Assigned to: Hon. David C. Bury <br><br> Complaint Filed: July 11, 2016 |

10358.1

**LEGAL DISCUSSION**

Plaintiff Melissa Martin McBeath moves under Fed. R. Civ. P. 26(c) for a protective order (a) that shields employees who work for Tucson Tamale Company (*"TTC"*) from harassment, intimidation and retaliatory adverse actions for speaking with McBeath; and (b) declares that she, as a *pro se* litigant, may have *ex parte* contact with TTC's employees.

McBeath files this motion, not to obtain the Court's permission to contact TTC's employees—she does not need it—but to assure these individuals that it is not unethical or illegal for them to speak with her.

    A.    <u>Arizona's rule of professional ethics that prohibits lawyers from having *ex parte* communications with represented parties does not apply to *pro se* litigants</u>.

TTC has threatened McBeath with sanctions if she contacts TTC's current and former employees. TTC contends that she is acting as a lawyer (and presumably practicing law) by representing herself and therefore cannot have *ex parte* communications with TTC's employees.

McBeath is fully aware that she is bound by, and must comply with, all statutes and rules that govern a tribunal.[1] No legal authority exists, however, to support TTC's contention that non-lawyer *pro se* litigants are bound by the same ethical rules or codes of professional conduct that apply to lawyers.

"In Arizona, one who acts only for himself in legal matters is not considered to be engaged in the practice of law."[2]

The Arizona Court of Appeals explained that the no-contact rule that prohibits lawyers from communicating with represented parties "is intended to (1) prevent unprincipled attorneys from exploiting the disparity in legal skills

---

[1]  *Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 382 (9th Cir. 1997) ("[P]ro se litigants are not excused from following court rules.").

[2]  *State ex rel. Frohmiller v. Hendrix*, 59 Ariz. 184, 190, 124 P.2d 768, 772 (1942).

between attorneys and lay people, (2) preserve the integrity of the attorney-client relationship, (3) help to prevent the inadvertent disclosure of privileged information, and (4) facilitate settlement."[3]

*Pro se* litigants do not implicate the policy concerns for which this rule was created.[4]

Even if the Arizona Rules of Professional Conduct were to apply to McBeath, Rule 4.2 permits opposing counsel to initiate *ex parte* contact with unrepresented current and former employees (other than officers, directors or managing agents) of a corporate party.

The manner in which Rule 4.2 was drafted makes clear that attorneys may communicate with a represented party's employees as long as the discussions do not involve anything employees did or failed to do in connection with a matter that may bind their employer, be imputed to them, or constitute an admission of the employer for purposes of establishing liability.

"That the testimony of the employee may be detrimental to the employer is not determinative." Ariz. State Bar Ethics Opinion 95-07 (Communication with Represented Party; Communication with Corporate Employees).[5]

None of the witnesses McBeath wishes to contact are officers, directors or managing agents.

Even if an employee currently holds (or has held) a supervisory positions that is not enough to bring the employee under the no-contact prohibition of Rule 4.2.[6]

---

[3]   *Lang v. Superior Court*, 170 Ariz. 602 (1992).

[4]   *See Taliaferro v. Hoogs*, 236 Cal. App. 2d 521, 527, 46 Cal. Rptr. 147 (1965) ("Attorneys are governed by prescribed rules of ethics and professional conduct, and, as officers of the court, are subject to disbarment, suspension, and other disciplinary sanctions not applicable to litigants in propria persona.")

[5]   www.azbar.org/Ethics/EthicsOpinions/ViewEthicsOpinion?id=459

[6]   *See Snider v. Superior Court,* 113 Cal. App. 4th 1187, 1209 (2003) ("In sum,

Whatever restrictions the rules of ethics or codes of professional conduct impose on lawyers, these restrictions do not apply to a *pro se* litigant like McBeath.

McBeath has limited financial resources and cannot afford to pay the deposition fees for all the witnesses that she wishes to interview to obtain written statements of testimony she will present at trial. Several current and former employees of TTC are her friends and colleagues who will gladly speak with her voluntarily on their time and without disrupting their work obligations. McBeath should be permitted to speak with these witnesses and they in turn should be assured that they will not be subject to discipline or retaliatory adverse employment actions as a result of this lawful conduct.

### B. McBeath's attorneys may contact any current or former TTC employee who is not represented by counsel.

McBeath is currently represented by counsel in a parallel state court action currently pending in Pima County Superior Court. After she completes discovery in this federal action, she will retain counsel, if she can afford it at that time, to represent her going forward as this case proceeds to trial.

Anticipating a strong objection from TTC, McBeath requests a ruling from this Court that states unequivocally that McBeath's attorneys may also contact TTC's current and former employees *that are not represented by counsel*. McBeath cannot afford the expense of the many depositions she would need to take if she and her attorneys are not permitted to speak informally with all the witnesses she may need to call at trial.[7]

---

we conclude that the term "managing agent" in rule 2–100 refers to those employees that exercise substantial discretionary authority over decisions that determine organizational policy.").

[7] In *Curley v. Cumberland Farms,* the plaintiffs sought informally to contact 80 former employees of the defendant to determine whether those employees had any relevant knowledge. If the plaintiffs had been forced to take a formal

TTC contends that its employees fall within the umbrella of the attorney-client relationship between TTC and its attorneys. Arizona courts have rejected such a broad reading of Rule 4.2. An employer cannot by fiat decide that all employees should be considered a represented party for purposes of Rule 4.2 because the employer deems it "inappropriate" for opposing counsel to interview non-managing employees.

Where a corporate defendant like TTC is involved, Rule 4.2 prohibits attorneys from communicating with three groups of individuals: "(1) those having a managerial responsibility on behalf of the organization; (2) any person whose act or omission in connection with the matter may be imputed to the organization; and (3) any person whose statement may constitute an admission on the part of the organization."[8]

Arizona State Bar Ethics Opinion 95-07 (Communication with Represented Party; Communication with Corporate Employees) explains that:[9]

> Although communications between an attorney for the employer and any current employee will be regarded as privileged under the statute, and the

---

deposition of the 80 employees, the cost of the endeavor would have been prohibitive. "Where such contacts are numerous and formalized, the cost of depositions becomes too great for some litigants to bear, the accessibility to the truth-finding process is impaired, and valuable litigation time is wasted before one even could learn whether the witness has relevant knowledge. It would render scant justice to these plaintiffs to say, in the present context, that their counsel may learn nothing of the locations and knowledge possessed by these 80 peripheral ex-employees without conducting expensive and time-consuming depositions. Routine informal interviews of such persons who are not believed to be central to the case are a staple of good, ethical trial preparation." 134 F.R.D. 77, 90 (D. N.J. 1990).

[8] *Lang v. Superior Court*, 170 Ariz. 602, 604, 826 P.2d 1228, 1230 (Ct. App. 1992).

[9]  www.azbar.org/Ethics/EthicsOpinions/ViewEthicsOpinion?id=459

employer's lawyer will not be required to reveal communications with employees, the statute's broadening the scope of the privilege has not broadened the scope of the representation; ***the lawyer acting on behalf of the corporation or employer is still only the lawyer for the corporation or employer.  The mere act of communicating with the employee does not mean that the lawyer has become the lawyer for the employee.***  Only if the lawyer has been retained by the employee, or the employee has consented to the lawyer's representation of her, will the lawyer be considered the lawyer for the employee.  It is only at such time as the lawyer begins to represent the employee that the proscriptions of ER 4.2 become operable. (Emphasis added.)

The TTC employees that McBeath's attorneys would like to interview do not fall within any of the three categories of employees that *Lang* held opposing counsel may not contact. [10]

The current and former TTC employees that McBeath wishes to contact are not represented by counsel.

The U.S. Supreme Court long ago held that a corporation's privilege extends to communications between corporate employees and corporate counsel as long as the communications are "made at the direction of corporate superiors in order to secure legal advice."[11]

Accordingly, McBeath's attorneys may interview any unrepresented current and former TTC employees who may provide useful testimony to support McBeath's claims or defenses.[12] TTC's opinion that this would be

---

[10]  *See Lang,* 170 Ariz. at 604.

[11]  *Upjohn Co.,* 449 U.S. a5 390-394; *United States v. Chen,* 99 F.3d 1495, 1502 (9th Cir. 1996).

[12]  *Curley,* 134 F.R.D. at 91 ("A rule that prevents opposing counsel from informally inter-viewing a possible witness because the witness is considered a

"inappropriate" is of no legal moment.[13]

Dated:  February 16, 2017         *Melissa Martin McBeath*
                                  Melissa Martin McBeath

---

'party' to the suit frustrates the search for truth . . . . In evaluating the scope of ex parte interviews, the value of discovering the truth should be balanced against the possible burdens and dangers that accompany the interview process.") (Citations omitted).

   [13]  *See Upjohn Co. v. United States,* 449 U.S. 383, 395-96 (1981) ("The protection of the [attorney-client] privilege extends only to communications and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing. The client cannot be compelled to answer the question, 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney.") (internal quotes and citations omitted); *United States v. Chen,* 99 F.3d 1495, 1501 (9th Cir. 1996) ("That a person is a lawyer does not, ipso facto, make all communications with that person privileged. The privilege applies only when legal advice is sought 'from a professional legal advisor *in his capacity as such.*'").

# DECLARATION

I, MELISSA MARTIN McBEATH, declare:

1. I am the Plaintiff in this action. I have personal, first-hand knowledge of all matters stated herein and, if called to testify as to these matters, I could and would do so competently.

2. I met and conferred with Travis L. Tufts, counsel for Tucson Tamale Company (*"TTC"*), regarding (a) my right to have *ex parte* contact with TTC's employees Mr. Tufts disagreed with everything I said, which left me no choice but to file this motion. Attached as Exhibit A is a true and correct copy of the correspondence and e-mail exchanges I had with Mr. Tufts regarding this issue.

3. I am informed and believe that TTC has threatened at least one of its employees not to speak with me regarding my case.

4. None of the current or former TTC employees I wish to contact have, or ever have had, substantial discretionary authority over decisions that determine company policy. For nine months, I was the direct supervisor of all the TTC employees I wish to contact and am very familiar with their job duties. None of my claims against TTC arise or relate to any act or omission by these current or former employees that may be imputed to the company, nor could any statement they may make be deemed an admission on the part of TTC.

5. The current and former TTC employees are my friends and colleagues who will gladly speak with me voluntarily on their time and without disrupting their work obligations.

I declare (or certify, verify or state) under penalty of perjury under the laws of the State of Arizona that the foregoing is true and correct. Executed on February 16, 2017.

*Melissa Martin McBeath*
Melissa Martin McBeath

EXHIBIT A

From: **Travis L. Tufts** <ttufts@fmazlaw.com>
Date: Wed, Feb 15, 2017 at 3:59 PM
Subject: RE: McBeath v. Tucson Tamale
To: Melissa Martin McBeath <mel.mcbeath@cox.net>
Cc: Robert Garcia <rgarcia@fmazlaw.com>

Ms. McBeath,

It is clear you are convinced on your interpretation of the law and that I will not convince you otherwise. It is telling, however, that you have purportedly not contacted any TTC employees during the seven-month course of discovery, despite your conviction that the law empowers you to exploit your unique position as a pro se litigant, simultaneously represented by attorneys on nearly identical state court claims. Now, after seven months in which you have taken zero depositions, conducted no third-party discovery, or advanced any of the claims for which you have the burden of proof, there is an urgency justifying a demand to file a motion by Thursday (or Friday?), *or else*. Your sudden urge to prosecute this case after seven months does not justify imposing a burden on my clients to file an emergency motion.

As I mentioned before, I will file the motion as soon as practicable, balancing the demands of my case load with due regard that this issue is ripe for the Court intervention. Should you choose to speak with TTC's current and former managerial employees we will find out, seek sanctions, and move to quash any evidence obtained because of your refusal to allow the federal court to decide this issue within a reasonable timeframe.

Travis

**Travis L. Tufts**
Profile | vCard
4801 East Broadway Boulevard | Suite 311 | Tucson, Arizona 85711
General: 520.790.5433 | Direct: 520.398.7466 | Fax: 520.790.5736
www.fmazlaw.com

**From:** Melissa Martin McBeath [mailto:mel.mcbeath@cox.net]
**Sent:** Wednesday, February 15, 2017 1:48 PM
**To:** Travis L. Tufts <ttufts@fmazlaw.com>
**Cc:** Robert Garcia <rgarcia@fmazlaw.com>
**Subject:** RE: McBeath v. Tucson Tamale

**Travis,**

**In my reading of relevant FEDERAL LAW, I see nothing that prevents me from meeting with the TTC employees I wish to contact. I invited you to provide any authority to the contrary, but to date you have provided NONE. Judge Aragon's order does not apply to the federal proceeding. As the Magistrate Judge made abundantly clear in his R & R to the District Judge, the state and federal action are independent and one does not have a bearing on the other. I will do nothing illegal or even inappropriate when I contact TTC current and former employees.**

**The same cannot be said of your clients. I've been told that they may have specifically instructed at least one employee not to speak with me. I will confirm that and will seek the court's intervention to protect these individuals from any further intimidation and reprisals.**

**I consider these individuals friends and wish to speak with them freely. The presence of counsel (including my own attorneys) will disrupt the flow of our conversation. Certainly if you attend, I may not even be able to talk at all.**

**I can think of no alternate proposal. I will meet with these employees alone, or maybe even as a group, but without counsel present. You're welcome to speak with them after we meet, and ask them yourself what we discussed.**

**If you don't file your motion for a protective order by close of business tomorrow, I will begin to contact the employees over the weekend.**

**Best Regards,**

**Melissa**

From: **Travis L. Tufts** <ttufts@fmazlaw.com>
Date: Tue, Feb 14, 2017 at 3:29 PM
Subject: RE: McBeath v. Tucson Tamale
To: Melissa Martin McBeath <mel.mcbeath@cox.net>
Cc: Robert Garcia <rgarcia@fmazlaw.com>

Ms. McBeath,

I understand the position outlined in your correspondence. As you know, we outlined our objections to your contacting TTC general managers and employees ex parte when you raised this same issue with Judge Aragon; see attached. In addition to those bases, among other things, your present efforts to contact TTC employees seems like an end around Judge Aragon's denial of your state court motion, not to mention additional concerns raised by the fact you are now represented by counsel in one of the lawsuits.

I am not asking to meet and confer so that you can explain your position further. Rather, the obligation to meet and confer also requires a good faith effort to resolve a dispute before filing a motion. To that end, do you have any proposals to resolve this issue before the need to file a motion? Understanding you are concerned with incurring costs taking depositions, we resubmit our offer to allow you to interview the employees informally but in the presence of counsel. You can record the interviews if you like, provided we received copies of the recordings.

Please let me know if you agree to our proposal or, alternatively, your proposal to resolve the matter short of motion practice.

Travis

**Travis L. Tufts**
Profile | vCard
4801 East Broadway Boulevard | Suite 311 | Tucson, Arizona 85711
General: 520.790.5433 | Direct: 520.398.7466 | Fax: 520.790.5736
www.fmazlaw.com

**From:** Melissa Martin McBeath [mailto:mel.mcbeath@cox.net]
**Sent:** Monday, February 13, 2017 7:44 PM
**To:** Travis L. Tufts <ttufts@fmazlaw.com>
**Cc:** Robert Garcia <rgarcia@fmazlaw.com>
**Subject:** RE: McBeath v. Tucson Tamale

**Travis,**

**Please construe my February 7, 2017 letter as my attempt to meet and confer with you regarding the propriety of ex parte communications with current and former TTC employees. I invite you to provide whatever federal legal authority you believe supports TTC's contrary position.**

**In my reading of the federal rules, the parties do not have to meet and confer in person. I want to avoid the confusion caused by the conflicting accounts of what exactly we discussed and agreed on following several of the in-person meetings I had with you and/or Robert in the past. So let's communicate in writing from now on.**

**As for the urgency for resolving this dispute promptly, this case has been languishing, without movement, for seven months. I don't want to waste any more time disputing a point that, in my view, shouldn't even be an issue.**

**Best Regards,**

**Melissa**

From: **Travis L. Tufts** <ttufts@fmazlaw.com>
Date: Mon, Feb 13, 2017 at 3:43 PM
Subject: RE: McBeath v. Tucson Tamale
To: Melissa Martin McBeath <mel.mcbeath@cox.net>
Cc: Robert Garcia <rgarcia@fmazlaw.com>

Ms. McBeath,

Thank you for your e-mail.  There are a couple issues underlying your demand.  First, I am not certain we have met and conferred on this issue.  As you are aware, the rules require me to try to resolve the issue before I can file anything.  Second, are you aware of any exigent circumstances impairing the ongoing availability of TTC employees?  I am unaware of any such circumstances.  Accordingly, I am curious what prejudice results if a motion cannot be filed by the end of this week.

We will prepare the motion as soon as practicable if it proves necessary after we meet and confer on this issue.  Shall we plan to meet at the Viscount this week to meet and confer?

Travis

**Travis L. Tufts**
Profile | vCard
4801 East Broadway Boulevard | Suite 311 | Tucson, Arizona 85711
General: 520.790.5433 | Direct: 520.398.7466 | Fax: 520.790.5736
www.fmazlaw.com

**From:** Melissa Martin McBeath [mailto:mel.mcbeath@cox.net]
**Sent:** Friday, February 10, 2017 4:14 PM
**To:** Travis L. Tufts <ttufts@fmazlaw.com>
**Cc:** Robert Garcia <rgarcia@fmazlaw.com>
**Subject:** Re: McBeath v. Tucson Tamale

**Travis,**

**Please file the motion for a protective order immediately so that we may resolve this issue promptly.**

**If it is not filed by February 17, 2017, I will begin to contact current and former TTC employees shortly thereafter.**

**Best Regards,**

 **-Melissa**

# CERTIFICATE OF SERVICE

I hereby certify that the above document was filed electronically with the Clerk of the United States District Court for the District of Arizona, and was served via hyperlink generated by the court's CM/ECF system, which was sent electronically to:

Roberto C. Garcia
*rgarcia@fmazlaw.com*
Travis L. Tufts
*ttufts@fmazlaw.com*
Farhang & Medcoff PLLC
4801 E Broadway Blvd., Ste. 311
Tucson, AZ 85711
(520) 790-5433

I declare under penalty of perjury, under the laws of the State of Arizona and the United States of America that the foregoing is true and correct.

Dated: February 16, 2017          *Melissa Martin McBeath*
                                                   Melissa Martin McBeath