MELISSA MARTIN McBEATH
3463 E. TERRA ALTA BLVD.
TUCSON, AZ 85716
Ph: (520) 449-9753
*mel.mcbeath@cox.net*

Pro Se

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA, TUCSON DIVISION

| | |
|---|---|
| MELISSA MARTIN MCBEATH, an individual, <br><br> Plaintiff, <br><br> v. <br><br> TUCSON TAMALE COMPANY, an Arizona corporation, <br><br> Defendant. | Case No. 4:16-cv-0462-BPV <br><br> **FIRST AMENDED COMPLAINT** |

10253.1

# THE PARTIES

1. MELISSA MARTIN MCBEATH ("*Plaintiff*") brings this action against her former employer for discrimination based on age, national origin, race and ancestry. Plaintiff seeks general, special, compensatory and punitive damages, attorneys' fees, costs, pre-judgment interest, post-judgment interest, and other appropriate relief.

2. Plaintiff is an individual who resides in Pima County, Arizona.

3. TUCSON TAMALE COMPANY ("*TTC*"), is and, at all times mentioned in this verified Complaint, was authorized to operate by the State of Arizona and qualified to do business in Pima County, Arizona. *See* AZ Corporation Commission File No. 14604539. TTC has a place of business and offices located at 2550 N. Dragoon Street, Suite 120, Tucson, Arizona 85745.

# JURISDICTION AND VENUE

4. The Court has jurisdiction over the alleged violation of the Age Discrimination in Employment Act under 29 U.S.C § 621 *et seq.* and 28 U.S.C. § 1331.

5. The demand in controversy in this Verified Complaint, exclusive of interest and costs, exceeds the minimum jurisdictional requirements.

6. Venue is proper in this Court under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391(b)(1).

# EXHAUSTION OF ADMINISTRATIVE REMEDIES

7. On or about April 20, 2016, Plaintiff filed a complaint with the Equal Employment Opportunity Commission, alleging that the acts described in this Verified Complaint violated the Age Discrimination in Employment Act.

8. Plaintiff waited more than 60 days after she filed her discrimination complaint with the EEOC before commencing this civil action, as required under 29 U.S.C. § 626(d). *See* 29 CFR § 1626.18(c).

1    9.    The EEOC issued a right-to-sue letter on November 2, 2016.

## FACTUAL BACKGROUND

10.    Todd Russell Martin and Sherry Martin (husband and wife) are the principals and officers of TTC. They own three restaurants in Tucson, Arizona and operate a tamale wholesale sale and distribution business from a separate production facility.

11.    Lisa Martin is Todd's sister and is employed by TTC.[1]

12.    Plaintiff began the interview process with Toddy, Sherry and Lisa in February 2015.

13.    Todd, Sherry and Lisa met with Plaintiff at least six times over the course of several weeks, and talked for hours about the business and the vision they had to grow TTC's tamale wholesale business. They expressed to Plaintiff that she would be ideally suited for the position of Business Development Manager because of her close to twenty years' experience in wholesale sales and distribution. The sole focus of the person who assumed this position would be to grow and to manage TTC's expanding wholesale business.

14.    Todd, Sherry and Lisa explained to Plaintiff that they were actively searching for a production facility to lease and therefore were not yet ready to hire her as a Business Development Manager.

15.    Todd, Sherry and Lisa pleaded with Plaintiff to temporarily assume the Area Manager position ($45,000 annual salary) to oversee their three other affiliated restaurant and food service businesses until the production facility was operational. Plaintiff stated that she needed an annual base salary of $75,000.

16.    Todd and Sherry assured Plaintiff that after she completed the 90-day probationary period, her annual salary would be reviewed and increased

---

[1]    To avoid confusion, Todd Russell Martin, Sherry Martin and Lisa Martin are referred to by their first name. While Plaintiff shares a similar name with these individuals, she is not related to them in any way.

1  to at least $50,000, based on performance. They told her this salary would be
2  temporary, pending the opening of the new production facility. At that point,
3  Plaintiff would transition into the new role of Business Development Manager at
4  an increased annual salary.

5  17. Todd, Sherry and Lisa unequivocally represented to Plaintiff that
6  the new position of Business Development Manager would allow her an
7  opportunity to make more money.

8  18. Todd, Sherry and Lisa further assured Plaintiff that she would not
9  remain in the Area Manager position for more than six months at the lower
10 annual salary of $50,000.

11 19. During the interview process, Todd, Sherry and Lisa informed
12 Plaintiff that TTC did not offer health benefits yet, but would shortly make them
13 available.

14 20. In light of the promises made to her regarding the terms of her
15 employment, Plaintiff agreed to join TTC.

16 21. Plaintiff turned down a more lucrative job offer she had received
17 because she looked forward to the exiting and promising opportunities for
18 professional growth at TTC that Todd, Sherry and Lisa described to her.

19 22. Plaintiff started working for TTC on April 20, 2015.

20 23. Plaintiff was made a part of TTC's executive management team and
21 in that capacity reported to Todd, Sherry, and Lisa. Plaintiff oversaw monthly
22 sales of over $400,000 (approximatly $5,000,000 annually) and managed a team of
23 over 30 TTC employees.

24 24. Todd, Sherry and Lisa further told Plaintiff, and put in her offer
25 letter, that she would be paid up to $2,500 under TTC's quarterly incentive plan.
26 Plaintiff would be eligible to participate in the incentive plan after 90 days.

27 25. After Plaintiff successfully completed the 90-day probationary
28 period, she requested the salary review as promised and inquired about the

1  health benefits she was also promised. She was told to wait.

2      26.    In a written evaluation titled "90 Day Assessment," dated
3  September 1, 2015, Plaintiff received glowing reviews in every area of respon-
4  sibility because she performed her job in an an exceptionally professional and
5  exemplary manner. This evaluation should have been conducted in July 2015.

6      27.    In September 2015, her annual salary was finally raised to $50,000,
7  two months after the promised review.

8      28.    Plaintiff's first quarterly bonus was due by October 22, 2015. When
9  Plaintiff asked Todd and Sherry in an email when she would be paid the bonus,
10 they responded that the bonus would be paid as soon as they finalized "the
11 industry metrics used to evaluate performance."

12     29.    Plaintiff asked about the payment of her bonuses several times over
13 the next few weeks but was told to wait until after the holidays because Todd
14 and Sherry were too busy to be bothered with what was obviously not a priority
15 to them.

16     30.    In November 2015, Plaintiff began to report solely to Sherry due to
17 an internal TTC restructuring of management roles.

18     31.    When TTC senior staff was notified about the change in roles, one of
19 the general managers expressed great concern to Plaintiff. Having worked with
20 Sherry for several years, this general manager lamented to Plaintiff in tears:
21 "You won't last long. She [Sherry] runs all the good people off."

22     32.    At the end of January 2016, when the second quarterly bonus was
23 due, Todd, Sherry and Lisa failed even to acknowledge that Plaintiff was owed
24 this money.

25     33.    Refusing to wait any longer, Plaintiff confronted Sherry via email on
26 February 15, 2016, and insisted that she and Todd address her promised bonuses,
27 compensation and Business Development Manager position before the end of the
28 week. In response, Sherry scheduled a meeting at the TTC corporate office on

1  Friday, February 19, 2016.

2      34.    The meeting did not go well. Sherry snidely asked Plaintiff:
3  "Do you think you deserve your bonuses?" The tone of her voice clearly
4  communicated to Plaintiff that TTC had no intention of paying her this money.
5  Plaintiff revisited the issue of TTC's obligation to pay not just her bonuses, but
6  the bonuses owed to the general managers.

7      35.    Finally, Plaintiff expressed her dismay that TTC did not honor their
8  promise to make her the Business Development Manager for the wholesale
9  business, which was the reason she had agreed to work at TTC in the first place.
10 Instead, TTC gave the position to someone much younger and who had none of
11 the experience required to do the job.

12     36.    On Monday, February 22, 2016, three days after they met, Todd and
13 Sherry terminated Plaintiff's employment. The only reason they gave: "Our
14 ***definition of success is different than yours.***"

15     37.    The remark reminded Plaintiff of something Sherry once said when
16 Plaintiff informed her that TTC was going to purchase an inexpensive rod and
17 curtain to give some privacy to a nursing mother, returning to work, who
18 needed to express milk postpartum: "I'm not fucking paying for that! If she
19 wants to pay for it, that's up to her." Plaintiff purchased the rod and curtain at
20 her own expense.

21     38.    Todd and Sherry's definition of success apparently means that not
22 only will they refuse their employees even the smallest of professional courtesies
23 if it will cost them anything, but they will lie, cheat and steal from their
24 employees to avoid paying them even the wages they've earned, deserve and
25 were promised.

26     39.    In Plaintiff's case, Todd and Sherry reneged on their promise to give
27 her the higher-paying Business Development Manager position because they
28 preferred someone younger, attractive and white like them.

# FIRST CAUSE OF ACTION

## Violation of the Age Discrimination in Employment Act

(29 U.S.C. § 621 *et seq.*)

40. Plaintiff realleges the preceding paragraphs and incorporates them by reference as though fully set forth herein.

41. Plaintiff is a member of a protected class in that she is over the age of 40 years.

42. In or around September 2015, TTC hired Lindsay Welch (she is white and in her early 30s) for the position of Business Development Manager that had been promised to Plaintiff.

43. Lindsay Welch had no experience with:
  (a) wholesale distribution
  (b) wholesale sales
  (c) wholesale supplier management
  (d) restaurant management and operations
  (e) supply chain management and logistics
  (f) food production
  (g) catering sales

44. In fact, Lindsay Welch had no experience whatsoever operating any for-profit business because all her experience was in the non-profit sector.

45. Plaintiff has experience working in every aspect of wholesale sales and distribution. She previously owned her own three-tier wholesale distribution company (based in Phoenix, Arizona) that sold highly sought-after and top-rated consummable products throughout Arizona.

46. Plaintiff had direct contact and strong relationships with wholesale restaurant and grocery retail vendors locally and nationally in the course of her entire career spanning two decades, and particularly when she was growing her own small business.

47. Plaintiff was prepared and ready to leverage her extensive network of long-term vendor partners to launch TTC into new markets and channels to which Todd, Sherry and Lisa had no way of accessing and Lindsay Welch had even less.

48. Plaintiff is more qualified than Lindsay Welch to be TTC's Business Development Manger, but was denied the position because of Plaintiff's age and Hispanic national origin, race and ancestry.

49. As a direct, foreseeable and proximate result of TTC's discrimination, Plaintiff has suffered substantial damages, including lost salary, benefits, bonuses, loss of employment-related opportunities for growth, humiliation, and embarrassment, all in an amount according to proof at time of trial.

## SECOND CAUSE OF ACTION

## National Origin, Race and Ancestry Discrimination

(42 U.S.C. § 2000e-2(a))

50. Plaintiff realleges the preceding paragraphs and incorporates them by reference as though fully set forth herein.

51. Plaintiff is Mexican American.

52. Plaintiff is informed and believes that her national origin played a substantial role in TTC's willingness to discriminate against her.

53. During the course of Plaintiff's employment, Plaintiff was subjected to employment discrimination based on her national origin.

54. TTC's conduct constitutes unlawful discrimination based on Plaintiff's national origin, race and ancestry in violation of Title VII Civil Rights Act of 1964.

55. As a direct, foreseeable and proximate result of TTC's wrongful acts, Plaintiff has suffered substantial damages, including lost salary, benefits, bonuses, loss of employment-related opportunities for growth, humiliation, embarrassment, and mental and emotional distress and discomfort, all in an

amount according to proof at time of trial.

56. TTC's acts as herein described were committed maliciously, fraudulently, or oppressively with the intent of injuring Plaintiff, and/or with a willful and conscious disregard of Plaintiff's right to work in an environment free from retaliation. Because these acts were carried out by managerial employees in a despicable, deliberate and intentional manner, Plaintiff is entitled to recover punitive damages in a sum sufficient to punish and deter future such conduct.

## DEMAND FOR JURY TRIAL

*Plaintiff Melissa Martin McBeath hereby demands trial of this matter by jury.*

## PRAYER FOR RELIEF

Plaintiff Melissa Martin McBeath prays for judgment as follows:

1. Back pay, front pay, and health benefits;
2. Punitive damages;
3. All statutory damages;
4. Attorneys' fees;
5. Pre-judgment and post-judgment interest on all damages awarded;
6. Costs of suit incurred; and
7. For such other and further relief as the Court deems just and proper.

Dated: February 23, 2017        *Melissa Martin McBeath*
                                Melissa Martin McBeath

10253.1

FIRST AMENDED COMPLAINT         -8-                    4:16-cv-0462-BPV

**VERIFICATION**

I, MELISSA MARTIN McBEATH, declare as follows:

I am the plaintiff in this matter. I have read and know the contents of the foregoing:

FIRST AMENDED COMPLAINT

The facts alleged in the above complaint are within my own knowledge and I know those facts to be true, except as to those matters stated upon my information and belief, and as to those matters I also believe them to be true.

I declare under penalty of perjury, under the laws of the State of Arizona and the United States of America that the foregoing is true and correct.

Dated: February 23, 2017            *Melissa Martin McBeath*
                                    Melissa Martin McBeath

# CERTIFICATE OF SERVICE

I hereby certify that the above document was filed electronically with the Clerk of the United States District Court for the District of Arizona, and was served via hyperlink generated by the court's CM/ECF system, which was sent electronically to:

>Roberto C. Garcia
>*rgarcia@fmazlaw.com*
>Travis L. Tufts
>*ttufts@fmazlaw.com*
>Farhang & Medcoff PLLC
>4801 E Broadway Blvd., Ste. 311
>Tucson, AZ 85711
>520-790-5433

I declare under penalty of perjury, under the laws of the State of Arizona and the United States of America that the foregoing is true and correct.

Dated: February 23, 2017        *Melissa Martin McBeath*
                                 Melissa Martin McBeath