FARHANG & MEDCOFF

4801 E. Broadway Boulevard, Suite 311
Tucson, Arizona 85711
T: 520.790.5433

Ali J. Farhang (#019456)
afarhang@fmazlaw.com
Roberto C. Garcia (#026246)
rgarcia@fmazlaw.com
Travis L. Tufts (#029373)
ttufts@fmazlaw.com

Attorneys for Defendant

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Melissa Martin McBeath,<br><br>            Plaintiff,<br><br>       v.<br><br>Tucson Tamale Company,<br><br>            Defendant. | NO. 4:16-cv-00462-TUC-DCB (BPV)<br><br>**OPPOSITION TO PLAINTIFF'S (SECOND) MOTION FOR A PROTECTIVE ORDER THAT PROTECTS EMPLOYEES FROM INTIMIDATION AND DECLARES THAT PLAINTIFF MAY HAVE EX PARTE CONTACT WITH THEM**<br><br>Oral Argument Requested<br><br>Assigned to Judge David C. Bury |

       With little more effort than cutting, pasting, and substituting the Federal Rules for Civil Procedure for the Arizona Rules, Plaintiff Melissa Martin McBeath ("McBeath") reasserts a nearly identical motion previously filed and denied in her separately filed, concurrently litigated Arizona Superior Court lawsuit (Case No. C20161749, the "Superior Court Matter").  That the Superior Court denied the very same motion is of no consequence to McBeath, and neither was this Court's ruling that, at a minimum, alerted McBeath to principles of abstention and *res judicata*.  See Doc. No. 29.  McBeath instead prefers to try her luck in this venue in furtherance of her efforts to render wary and weary Defendant Tucson Tamale Company ("TTC") and exhaust its legal resources in hopes it will acquiesce

00312603.1

1  to her vituperative, frivolous claims.  This Court should not allow McBeath to continue her

2  abuse of the legal process.

3      Here, as in the Superior Court Matter, McBeath seeks to exploit her supposed status

4  as a *pro se* litigant.  But McBeath is not and has never truly been a pro se litigant.  As she

5  alluded to in her application to proceed in forma pauperis (Doc. No. 3), and as has become

6  clear in the Superior Court Matter, McBeath is employing a team of shadow legal counsel

7  that assist her in the prosecution of her claims.  Spearheading this team is former lawyer

8  Francisco X. Marquez ("Marquez"), who the California State Bar disbarred in 2014 because

9  of, among other things, his penchant for refusing to follow the rules or Court orders.  See

10 Ex. A, attached hereto, and of which TTC requests this Court take judicial notice.  It is the

11 well-established involvement of McBeath's shadow legal team, and its coaching of

12 McBeath, that causes TTC pause and which forces it to take the position that this Court

13 should treat McBeath as a litigant serving as a mere extension of her disbarred counselor.

14     Accordingly, TTC, by and through undersigned counsel, hereby opposes McBeath's

15 Motion for a Protective Order (Doc. No. 30) and requests that the Court deny same.  The

16 following Memorandum of Points and Authorities, together with the pleadings and papers

17 on file with the Clerk of this Court and on file with the Clerk of the Arizona Superior Court

18 (Pima County) in the Superior Court Matter, which TTC requests the Court take judicial

19 notice of, support this Opposition.

20                  **MEMORANDUM OF POINTS AND AUTHORITIES**

21 **I.      PROCEDURAL AND FACTUAL BACKGROUND**

22          **A.  Relevant Procedural Background**

23     After awakening from a seven-month slumber, McBeath all-of-the-sudden has an

24 "immediate" need to conduct *ex parte* communications with TTC's general managers to

25 expedite her apparently "languishing" federal court case.  See Ex. B, M. McBeath Ltr., Feb.

26 9, 2017; see also Ex. C, M. McBeath E-mails, Feb. 13, 2017 (explaining "immediacy").

27 Interestingly, the sudden urgency to exploit her *pro se* status coincides with her failed efforts

28 to accomplish the same objective in her Superior Court Matter.

00312603.1

On December 15, 2016, McBeath sensed the same urgency to communicate with TTC's general managers and, after summarily refusing to engage in a good faith effort to resolve the dispute, filed a similarly titled "Motion for Protective Order that Protects Witnesses from Intimidation and Permits Plaintiff to Have Ex Parte Contact with Defendants' Employees" (the "Superior Court Motion").  See Ex. D, State Ct. Mot. Therein, McBeath asked the Superior Court to "declare that she, as a *pro se* litigant, may have *ex parte* contact with TTC's employees."[1]  Id. at 2:5-6.

After briefing–much of which, lamentably, must be duplicated in this filing–and oral argument, the Superior Court wholly denied the Superior Court Motion.  See Ex. F, State Ct. Minute Entry Order, Jan. 17, 2017.  The Court "FURTHER ORDERED that [P]laintiff may not have contact with defendants' employees or former employees except through defense counsel."[2]  Id. at 2.  Shortly thereafter, and in a telling instance of her vexatious litigation tactics, McBeath obstinately proclaimed the federal rules do not prevent her from achieving the same objective the Superior Court expressly rejected after considering TTC's position.  See, e.g., Ex. B; Ex. C.

Hoping to avoid another frivolous motion to compel,[3] the undersigned offered to meet with McBeath in an effort to resolve this duplicative issue notwithstanding the Superior Court's clear ruling on the issue.  See Ex. C.  McBeath refused to meet with counsel.  See id.  Notwithstanding, undersigned counsel again offered to allow McBeath to speak with TTC's managers informally but in the presence of counsel to save her the cost of taking depositions.[4]  See Ex. G, T. Tufts E-mail, Feb. 14, 2017.  McBeath rejected the

---

[1] In her Superior Court Motion, McBeath also asked the Court to permit her friend, and one of the critical fact witnesses establishing TTC's after-acquired evidence defense, Ehud Gavron ("Gavron"), to donate computers to charity to generate a tax deduction, despite the fact his computers have evidence reasonably calculated to lead to admissible evidence. In addition to communicating with McBeath throughout the course of her employment, Gavron also provides substantial legal and technical assistance to McBeath in the Superior Court Matter and, if the Motion addressed hereby foreshadows McBeath's intentions, Gavron will be the subject of countless motions seeking to shield him from TTC's discovery efforts.  See Ex. E, M. McBeath Ltr., March 2, 2017.

[2] The Court did not rule on McBeath's request to permit Gavron to donate his computers to charity.

[3] McBeath has filed five motions to compel in the course of roughly six months in the Superior Court Matter; the Superior Court has not granted any of these motions.  See, e.g., State Ct. Dock., Case No. C20161749.

[4] TTC questions the veracity of McBeath's claim of destitution.  In response to a subpoena in the Superior Court Matter, her accountant/co-conspirator disclosed McBeath's financial condition.  It appears she has more than adequate funds to conduct depositions.  Tellingly, she prefers instead to force TTC to expend funds continually fighting her vacillation between taking depositions or speaking to its general managers.  See, *infra*, at Sec. II.

00312603.1

1   overture, instead insisting TTC trust her and her shadow legal team.   See Ex. H, <u>M.</u>

2   <u>McBeath E-mail</u>, Feb. 15, 2017.  TTC, reasonably, declined McBeath's invitation.

3           **B.  <u>Relevant Additional Background</u>**

4         As noted above, and contrary to her protestations, McBeath is not the typical *pro se*

5   litigant.  As TTC noted in its Motion for Judgment on the Pleadings (Doc. No. 18) and in

6   similar Superior Court filings, McBeath enjoys the legal counsel and advice of Marquez.

7   This disbarred attorney is one of McBeath's supposed "experts", assists McBeath in drafting

8   her pleadings and papers, and, as TTC understands, generally advises on and/or directs

9   McBeath's litigation efforts.  McBeath also enjoys the assistance of two attorneys-of-record

10   in the Superior Court Matter – Ruchit Agrawal[5] ("Agrawal") (Cal. Bar No. 299290) and

11   Rafael Gallego ("Gallego") (Ariz. Bar No. 013726).   Additionally, McBeath receives

12   assistance from a computer "consulting expert" who moonlights as an expert on the Arizona

13   Rules of Civil Procedure and who ostensibly maintains a discovery spreadsheet for

14   McBeath.  <u>See</u> Ex. I, <u>E. Gavron E-mail</u>, June 28, 2016.

15         After originally petitioning the Superior Court for permission to take third-party

16   depositions (<u>see</u> Ex. J, <u>Mot. Leave to Take Third-Party Dep.</u>, July 8, 2016), McBeath *now*

17   – for the second time – claims she does not have the resources to take depositions and,

18   instead desires to have *ex parte* communications with TTC's general managers.   TTC

19   objected to such communications because McBeath could have such communications in an

20   informal meeting in the presence of TTC's counsel, TTC's counsel has had attorney-client

21   privileged communications with such employees (<u>see</u> Ariz. Rev. Stat. ("A.R.S.") § 12-2234,

22   clearly indicating communications with "an employee", regardless of position, are

23   privileged), Marquez and Gavron's involvement (the full extent of which McBeath

24   wrongfully refuses to disclose), and the recent involvement of Agrawal and Gallego.   TTC

25   is concerned McBeath will use the collective legal knowledge of two attorneys-of-record, a

26   disbarred attorney drafting and directing McBeath's campaign to exhaust TTC's resources,

27   and her informal "consulting expert" to accomplish that which Arizona law and the rules of

28   _____

[5] Agrawal is a recently admitted member of the California State Bar who, not coincidentally, lives in the same city as Marquez is known to reside – San Jose, California.

1    professionalism sought to prevent.

2        **II.    LEGAL ARGUMENT**

3            **A. McBeath's Motion is actually a request for a Preliminary Injunction**

4            McBeath is not entitled to a preliminary injunction.  Based on an apparent hearsay

5    statement[6] indicating TTC "has threatened" an employee (see M. McBeath Decl., Doc. No.

6    30, at ¶ 3), which it absolutely has not, McBeath seeks to enjoin TTC, a limited liability

7    company, from future, unsubstantiated, and ambiguously-defined conduct in an effort to

8    forge a procedural hammer she can wield against TTC based upon her subjective whims.

9    (See Motion at 1:3-5.)  McBeath's request for injunctive relief against TTC vis-à-vis her

10   Motion is both procedurally and substantively improper.  See Fed. R. Civ. P. 65.  McBeath's

11   request to enjoin TTC must comply with the Federal Rules of Civil Procedure, and must

12   otherwise satisfy the standards set forth in law.  See, e.g., Alliance for the Wild Rockies v.

13   Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011) (in order to obtain a preliminary injunction,

14   McBeath must show, at a minimum, that irreparable harm is likely).  Because McBeath did

15   not even attempt to satisfy the legal requirements for obtaining injunctive relief, this Court

16   must deny her Motion.  See id.

17           **B. The Superior Court Already Decided this Issue**

18           McBeath asks the Court to declare "she, as a *pro se* litigant, may have *ex parte*

19   contact with TTC's employees" then brazenly suggests in the very next sentence she "does

20   not need" the federal court's permission.  Given she supports her motion with nearly

21   identical legal support and argument (compare Motion at 1:10 – 3:11 with Ex. C at 1:19-

22   3:12), TTC assumes notwithstanding her contradictions that McBeath seeks approval from

23   this court for *ex parte* communications despite the fact this exact issue has already been

24   decided by the Superior Court.

25   _____

26   [6] McBeath's avowal she is "informed" that TTC "threatened" an employee appears to be a tacit admission she already
     conducted impermissible *ex parte* communications.  See Ex. H ("If you don't file your motion for a protective order

27   by close of business tomorrow, I will begin to contact the employees over the weekend")).  TTC again reserves its
     rights to pursue any available sanctions against McBeath for violating the Superior Court's Order on this matter and to

28   pursue sanctions, including moving to exclude any evidence obtained, for refusing to allow this Court to render a
     decision on the dispute.

00312603.1

Issue preclusion bars "'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." Taylor v. Sturgell, 553 U.S. 880, 892, (2008). "By 'precluding parties from contesting matters that they have had a full and fair opportunity to litigate,' [issue preclusion protects] against 'the expense and vexation attending multiple lawsuits, conserv[es] judicial resources, and foste[rs] reliance on judicial action by minimizing the possibility of inconsistent decisions.'" Id. (signs and citations omitted).

"Determining when to apply collateral estoppel [i.e., issue preclusion] requires three inquiries: (1) whether the issues presented are in substance the same in the present and prior litigation; (2) whether controlling facts or legal principles have changed significantly since the prior judgment; and (3) whether 'other special circumstances warrant an exception to the normal rules of preclusion.'" Richey v. U.S. I.R.S., 9 F.3d 1407, 1410 (9th Cir. 1993) (citation omitted). "[A] *fact, question* or *right* distinctly adjudged in the original action cannot be disputed in a subsequent action, even though the determination was reached upon an erroneous view or by an erroneous application of the law." Id. (emphasis in original, internal citations omitted).

In a telling forecast of what is to come in this case, [7] McBeath seeks to relitigate an issue on which failed in the Superior Court. McBeath, however, cannot relitigate an identical issue already firmly decided because the issue preclusion / collateral estoppel doctrine clearly applies here. First, McBeath's Motion is virtually identical to the Superior Court Motion. She relies on the same facts and legal principals in the Motion as she did in her Superior Court Motion. (Compare Motion at 1:10 – 3:11 with Ex. C at 1:19-3:12.) Second, neither the facts, including the vexatious motivations underlying her pursuit of multiple lawsuits, nor the underlying legal principles have changed since she failed to obtain her desired relief in the Superior Court. Indeed, the only fact that has changed – the

---

[7] One day after the Superior Court quashed McBeath's subpoena to TTC's liability insurance broker, Koty-Leavitt Insurance Agency, McBeath, unwavering in her defiance, notified TTC that she will now serve a subpoena through this Court. See Ex. E. McBeath's vexatious motivations could not be clearer.

1    retention of two attorneys in the Superior Court Matter – further supports TTC's position

2    that McBeath should not be permitted to speak *ex parte* with TTC's employees.  Finally,

3    McBeath cannot dispute she had a full and fair opportunity to litigate this same issue in the

4    Superior Court Matter.  Both parties presented arguments in support of their positions, and,

5    simply, McBeath failed to convince the Superior Court Judge that she should be permitted

6    to conduct *ex parte* communications.  Because she had a full and fair opportunity to litigate

7    this issue, no special circumstances exist to permit her to relitigate the same issue.  See

8    Richey, 9 F.3d at 1413 (noting the identical nature of the issues presented, no intervening

9    change in law, and a full and fair opportunity litigate the issue presented no special

10   circumstances precluding application of issue preclusion doctrine).

11                    **C.  This Court Should Abstain from Ruling on McBeath's Duplicative**

12                        **Motion**

13          In the alternative, if the Court declines to apply the issue-preclusion doctrine, it

14   should abstain from deciding the Motion.   "The inefficiencies produced by the rule

15   permitting simultaneous litigation in state and federal court are mitigated by a number of

16   abstention doctrines that permit, and often require, a federal court to abstain in favor of state

17   court litigation." Noel v. Hall, 341 F.3d 1148, 1159 (9th Cir. 2003).  "They include *Younger*

18   abstention, after Younger v. Harris, 401 U.S. 37 (1971); *Pullman* abstention, after Railroad

19   Commission of Texas v. Pullman Co., 312 U.S. 496 (1941); *Burford* abstention, after

20   Burford v. Sun Oil Co., 319 U.S. 315 (1943); and *Colorado River* abstention, after Colorado

21   River Water Conservation District v. United States, 424 U.S. 800 (1976)."  Id. at 1159-60.

22   "In addition, a federal court may stay its proceedings based on comity even when none of

23   the abstention doctrines requires that it do so."  Id. at 1160 (citing Deakins v. Monaghan,

24   484 U.S. 193, 202-03 (1988).

25          "Abdication of the obligation to decide cases can be justified under [the abstention]

26   doctrine only in the exceptional circumstances where the order to the parties to repair to the

27   state court would clearly serve an important countervailing interest."  Colorado River Water

28   Conservation Dist. v. U.S., 424 U.S. 800, 813 (1976) (internal citations omitted).  "The

00312603.1

- 7 -

1   circumstances permitting the dismissal of a federal suit due to the presence of a concurrent

2   state proceeding for reasons of wise judicial administration are considerably more limited

3   than the circumstances appropriate for abstention." Id. at 818.

4       In assessing the appropriateness of dismissal in the event of an exercise of concurrent

5   jurisdiction, a federal court may also consider such factors as the inconvenience of the

6   federal forum, the desirability of avoiding piecemeal litigation, and the order in which

7   jurisdiction was obtained by the concurrent forums. See id. No one factor is necessarily

8   determinative. Id.

9       Here, the circumstances overwhelmingly support abstaining from ruling on the

10  Motion. McBeath's Motion unquestionably exposes her true intent – to harass TTC with

11  vexatious litigation in two venues. By pursuing virtually identical claims in two venues

12  McBeath believes she will be able to appeal unfavorable decisions from the Superior Court

13  to this Court, and vice-versa, and generate further disputes that justify her frivolous, abusive

14  motion practice. Indeed, McBeath does not even disguise her efforts, as reflected by the

15  cut and paste job in this Motion, and her signaled intent from her most recent e-mailed letter.

16  See Ex. E (intimating an intent to issue a subpoena previously quashed by the Superior

17  Court and instigating discovery disputes already litigated in the Superior Court).

18      By exploiting her position in two forums, McBeath transparently and unquestionably

19  seeks to piecemeal litigate her dispute with TTC, driving up TTC's legal expenses at all

20  costs. McBeath's vexatious history cannot be disputed. A wrongful termination lawsuit by

21  a poorly performing mid-level manager of a small restaurant chain simply does not generate

22  the type of litigation activity unambiguously evinced by reference to the Superior Court

23  docket alone. McBeath and her team of shadow advisers are harassing TTC and forcing it

24  to piecemeal defend every discovery dispute, as clearly established by the duplicative nature

25  of the Motion and Superior Court Motion. TTC should not be forced to relitigate decisions

26  fully briefed and decided by the Superior Court. McBeath chose the Superior Court forum

27  first. She filed her Superior Court Motion first and waited until she failed to obtain the

28  relief sought before seeking what amounts to an appeal of the Superior Court Motion. This

court must send a clear message that this behavior will not be tolerated and abstain from ruling on duplicative issues.

### D. *Ex Parte* Communications between McBeath and TTC's General Managers and Employees are Innappropriate.

In the event this Court decides to consider McBeath's Motion on its merits, this Court should not allow McBeath to conduct *ex parte* communications with TTC's general managers and employees. McBeath, in this case, acts as the equivalent of an attorney because, among other reasons, she surreptitiously uses and takes advantage of the skills and knowledge of her friend and supposed legal "expert", Marquez, she receives counsel from her own attorneys-of-record, and because there is no doubt, based upon TTC's prior interactions with McBeath, that in any potential *ex parte* communication between McBeath and TTC's employees McBeath would simply stand in the stead of Marquez, Agrawal, and Gallego, seek to wade into impermissible territory, and/or attempt to uncover attorney-client privileged communications.

At its core, unless McBeath admits she has already spoken to TTC's general managers and employees, this Motion relies on pure speculation. McBeath has not been an employee of TTC for over a year. Her self-serving attempt to identify the discretionary authority of TTC's general managers in an effort to argue no attorney client-privilege exists relies on a perception of past practice that is entirely subjective. Moreover, even assuming this were true, which it is not, she has no direct knowledge of the context in which TTC's counsel communicated with the general managers, if it was at the direction of corporate superiors in order to secure legal advice, or for any other reason whatsoever. See Upjohn Co. v. U.S., 449 U.S. 383, 394 (protecting from disclosure communications made by employees at the direction of corporate superiors in order to secure legal advice from counsel."). If McBeath "declares" otherwise, she obtained that information in direct violation of the Superior Court Order and during the pendency of a discovery dispute and must be sanctioned.

00312603.1

Under both state and federal law, TTC has an attorney-client privilege protecting communications with the general managers that McBeath cannot effectively dispute through her self-serving declaration.  TTC's counsel has met with these general managers for purposes of securing legal advice in connection with both the Superior Court Matter and the underlying matter.  See generally id.  Arizona law expressly imputes an attorney-client privilege to these communications.  See A.R.S. § 12-2234.  McBeath should not be able to exploit her unique position as a *pro se* litigant, supported by licensed and unlicensed attorneys, to achieve what a licensed attorney cannot do and, indeed, is prohibited from doing.  See Ariz. R. Prof. Conduct 4.2, comm. 2 ("[i]n the case of an organization, this Rule prohibits communications by a lawyer for one party concerning the matter in representation with persons having a managerial responsibility on behalf of the organization, and with any other person whose act or omission in connection with the matter may be imputed to the organization for purposes of civil liability…").

The prohibition on an attorney's *ex parte* contact with a party known to be represented by counsel "is intended to (1) prevent unprincipled attorneys from exploiting the disparity between attorneys and lay people, (2) preserve the integrity of the attorney-client relationship, (3) help to prevent the inadvertent disclosure of privileged information, and (4) facilitate settlement."  Lang v. Superior Court, 170 Ariz. 602, 604, 826 P.2d 1228, 1230 (Ct. App. 1992).  Each of the factors articulated in Lang support a finding that McBeath's proposed *ex parte* communications with Defendant's general managers should not proceed.  See id.

Lang's first factor, to "prevent unprincipled attorneys from exploiting the disparity between attorneys and lay people" is of particular importance in this case.  Marquez was disbarred for serious violations of the rules of professionalism and California law.  See Ex. A.  McBeath, who channels Marquez, is simply his alter ego.  Given Marquez's record, and McBeath's failure to disclose his involvement and review of information exchanged in discovery, TTC has well-justified and substantial concerns regarding any communications between its employees and McBeath/Marquez.

00312603.1

Lang's second and third factors, the protection of the attorney-client relationship and privileged information, is also dispositive of the *ex parte* communications issue raised by McBeath.  The undersigned has had various communications regarding this case with TTC and each of the employees with which McBeath seeks to communicate.  McBeath already unfairly exploited an opportunity to obtain attorney-client privileged documents when she inspected TTC's e-mail servers in the Superior Court Matter and is likely to probe TTC's employees on such communications to gain an advantage.  This Court must not require TTC simply to take McBeath at her word that she will not "accidentally" wander into protected matters.

Finally, Lang's, fourth factor, that precluding *ex parte* communications will help facilitate settlement, also strongly favors a bar on McBeath having unsupervised discussions.  If TTC and its counsel cannot take advantage of their common law and statutorily-granted ability to have privileged, protected communications with key witnesses/employees, TTC and its counsel will be much less likely to have candid conversations regarding the merits of this case and will lack the benefit of the employees' impressions and understandings.  Having less information regarding the relevant facts is not conducive to settlement.

### E.  McBeath did not "Meet and Confer" in Good Faith.

McBeath has no regard for good faith efforts to resolve discovery disputes.  Her history of motion practice in the Superior Court speaks for itself.  Now, McBeath refuses to meet and confer in-person, presumably because it leaves her exposed to agreeing to reasonable solutions before her shadow legal team runs the rule over TTC's proposals.  Indeed, she refused TTC's reasonable offer to allow her to record informal conversations in the presence of counsel so that she could save money taking depositions.  McBeath's purported belief that these general managers are her friends and that counsel's presence will interrupt the "flow" is a transparently manufactured excuse to justify her refusal to consider reasonable solutions in order to file motions that she knows will increase TTC's legal costs. See Ex. H (minding the "flow").

00312603.1

1
2

      **F.  McBeath's Request to Permit Her *Future* Attorneys to Contact TTC's Employees**

3
4
5
6

     McBeath does not have counsel-of-record in this case and her request to allow an attorney – assuming one accepts her case – to be able to speak with TTC's general managers is unquestionably speculative, and not ripe for decision.  TTC asks the Court to summarily deny this request.

7

**III.     CONCLUSION**

8
9
10
11
12

     Given all the foregoing, this Court should either a) deny this motion based on issue-preclusion doctrine; b) abstain from exercising jurisdiction to rule on this duplicative Motion; or 3) bar McBeath from having *ex parte* communications with Defendant's employees.  Defendant respectfully requests an award of its attorney's fees and costs incurred in connection with filing this Opposition to McBeath's duplicative Motion.

13

     RESPECTFULLY SUBMITTED this 2nd day of March, 2017.

14

              FARHANG & MEDCOFF

15
16

              By /s/Travis L. Tufts

17

                 Ali J. Farhang
                 Roberto C. Garcia
                 Travis L. Tufts

18
19

              Attorneys for Defendant

20
21
22
23
24
25
26
27
28

00312603.1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

      I hereby certify that the foregoing document was filed electronically with the Clerk of the United States District Court for the District of Arizona, with notice of case activity generated and sent electronically this 2nd day of March, 2017 to:

Melissa Martin McBeath
3463 E. Terra Alta Boulevard
Tucson, Arizona 85716
Mel.mcbeath@cox.net

/s/Letitia L. Wright

00312603.1