MELISSA MARTIN McBEATH
3463 E. TERRA ALTA BLVD.
TUCSON, AZ 85716
Ph: (520) 449-9753
*mel.mcbeath@cox.net*

Pro Se

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA, TUCSON DIVISION

MELISSA MARTIN McBEATH, an individual,

Plaintiff,

v.

TUCSON TAMALE COMPANY, an Arizona corporation,

Defendant.

Case No. CV 16-462-TUC-DCB (BPV)

**PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER TO SHIELD EXPERTS CONSULTED INFORMALLY**

[Fed. R. Civ. P. 26(c)]

Assigned to Hon. David C. Bury

Complaint filed: July 11, 2016

## LEGAL DISCUSSION

Plaintiff Melissa Martin McBeath moves under Fed. R. Civ. P. 26(c) for a protective order to shield from discovery experts she consults informally. Under Fed. R. Civ. P. 26(b)(4)(B), Tucson Tamale Company (***"TTC"***) is not entitled to know the identity of any of these persons. McBeath's efforts to meet and confer with TTC' lawyers about this dispute were unsuccessful.[1]

For the reasons explained below, McBeath requests:

1. That the Court order TTC to cease all efforts to identify any expert(s) McBeath has or is consulting informally. TTC must further cease all efforts to discover the nature and content of the advice/services provided by these experts.

2. That the Court order TTC not to mention, nor comment on, individuals in their court filings whom McBeath has notified TTC she has consulted or may be consulting informally.

### A. TTC forced McBeath to reveal Ehud Gavron's identity, violating her right not to disclose any expert she consults informally to help her prepare for trial.

On July 15, 2016, McBeath referred TTC' lawyers to Ariz. R. Civ. P. 26(b)(4)(B) and the extensive discussion of case law found in the ethics opinions published by the State Bar of Arizona regarding experts informally consulted in preparation for trial, but not retained.[2] The law is clear and long-settled that "[n]o discovery may be had of the names or views of experts in this category."[3]

McBeath explained that if TTC is not entitled to know even the identity of experts she consults informally, TTC certainly may not inquire into the nature and scope of the services and advice they provide.

---

[1] Melissa Martin McBeath Declaration, dated March 10, 2017 (***"McBeath Dec."***) ¶ 5 (Exhibit D).

[2] McBeath Dec. ¶ 2 (Exhibit A).

[3] *See www.azbar.org/Ethics/EthicsOpinions/ViewEthicsOpinion?id=578*

B. The Arizona State Bar ethics rules and case law provide that an opposing party does not have the right to conduct discovery relating to any expert consulted informally who assists the other party prepare for trial.

Arizona State Bar Ethics Opinion 88-01 discusses whether and to what extent an opposing party may use discovery to learn the identity of an opponent's expert witnesses and the content of their communications. The discovery permissible depends on whether the expert will testify at trial. Many of the cases the Arizona State Bar cites are federal court opinions (probably because of the paucity of Arizona case law on this issue) and because the Arizona Rules of Civil Procedure are patterned after the federal rules.[4]

The content of McBeath's communications with experts she consults informally and their work product are protected from disclosure by Fed. R. Civ. P. 26(b)(4)(B) (expert retained only for trial preparation) and Fed. R. Civ. P. 26(b)(3) (expert work-product privilege). TTC has not been able to cite any exceptions to the protection afforded by these Rules if the party has not voluntarily waived any of the rights or privileges afforded by these rules.

McBeath has not waived any of her rights.

Non-testifying experts do not have to work under the direction of or for an attorney for their work to be protected from discovery. The protection that Rule 26(b)(4)(B) provides is independent, and does not flow from the attorney work-product doctrine or the attorney client privilege.[5]

---

4 *See Arizona Dept. of Revenue v. Superior Court*, 189 Ariz. 49, 53, 938 P.2d 98, 102 (App. 1997).

5 *U.S. v. Meyer*, 398 F.2d 66, 73-74 (9th Cir. 1968) (commenting that "the reasons [for rejecting as ill-considered the decisions which have sought to bring expert information within the work product doctrine] seem clear"); 8A Charles A. Wright, Arthur R. Miller, Mary K. Kane & Richard L. Marcus, Federal Practice and Procedure § 2029 (3d ed. 2010) ("The knowledge of an expert is not part of the [attorney] work product...").

The Advisory Committee Notes make clear that the drafters of Rule 26(b)(4) "reject[ed] as ill-considered [court] decisions which have sought to bring expert information within the work-product doctrine" and instead "adopt[ed] a form of the more recently developed doctrine of unfairness."[6] "The work that retained experts do in anticipation of litigation is not work product and its discoverability is governed by a separate rule [26(b)(4)]."[7]

The purpose of Rule 26(b)(4)(B) is "to protect trial strategy, prevent one party from having a free ride at the expense of the other party, and to promote fairness by precluding unreasonable access to an opposing party's diligent trial preparation.[8] "The Rule is also designed to prevent a party from building his case on the diligent preparation of his adversary."[9]

"Rule 26(b)(4)(B) thus creates a safe harbor whereby facts and opinions of non-testifying, consulting experts are shielded from discovery, except upon a showing of exceptional circumstances," which do not exist here.[10]

---

[6] Fed. R. Civ. P. 26 Advisory Committee's Note to Subdivision (b)(4), 1970 Amendments (citation omitted).

[7] *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 116 F.R.D. 533, 539 (N.D. Cal. 1987) *abrogated on other grounds by Advanced Cardiovascular Systems, Inc. v. C.R. Bard, Inc.*, 144 F.R.D . 372, 374 (N.D. Cal. 1992).

[8] *Klee v. Whirlpool Corp.*, 251 F.R.D. 507, 511 (S.D. Cal. 2006); *FMC Corp. v. Vendo Co.*, 196 F. Supp. 2d 1023, 1048 (E.D. Cal. 2002); *Durflinger v. Artiles*, 727 F.2d 888, 891 (10th Cir. 1984); Jack H. Friedenthal, *Discovery and Use of an Adverse Party's Expert Information*, 14 Stan. L. Rev. 455, 488 (1962) (concluding that "the work product doctrine should [not] be extended to cover expert information which [it] normally would not protect" and that "[i]f such discovery is to be denied, it should be done on the ground that disclosure would be unfair under the particular facts of the case")

[9] *In re Shell Oil Refinery*, 132 F.R.D. 437, 440 (E.D. La. 1990), citing Pielemeier, Discovery of Non-Testifying 'In-House' Experts Under Federal Rules of Civil Procedure, 58 Ind. L.J. 597, 607-08 (1984).

[10] *Plymovent Corp., v. Air Technology Soltns.*, 243 F.R.D. 139, 143 (D. N.J. 2007).

"Indeed, some courts have construed 26(b)(4)(B) as creating a privilege against disclosure." *Id.* "This Rule recognizes that with non-testifying experts, there is no need to obtain discovery for effective cross-examination."[11]

**CONCLUSION**

For the reasons explained above, McBeath requests that the Court issue a protective order that instructs TTC not to direct any discovery at anyone McBeath consults informally as an expert who has helped her prepare for trial.

Dated: March 10, 2017

Respectfully submitted,

*Melissa Martin McBeath*

Melissa Martin McBeath

---

[11] *Shell Oil,* 132 F.R.D. at 440.

## DECLARATION

I, MELISSA MARTIN McBEATH, declare:

1. I am the Plaintiff in this action. This declaration is submitted in support of my Motion for a Protective Order to Shield the Identity and Communications with Experts Consulted Informally. I have personal, first-hand knowledge of all matters stated herein and, if called to testify as to these matters, I could and would do so competently.

2. On July 15, 2016, I referred TTC's lawyers to Ariz. R. Civ. P. 26(b)(4)(B) and the extensive discussion of case law found in the ethics opinions published by the State Bar of Arizona regarding experts informally consulted in preparation for trial, but not retained. Attached as Exhibit A is a true and correct copy of my letter to Roberto Garcia and Travis Tufts.

3. On July 19, 2016, I sent another letter to opposing counsel and asked them to withdraw the subpoena duces tecum issued for Ehud Gavron. Attached as Exhibit B is a true and correct copy of my letter to Roberto Garcia and Travis Tufts.

4. On July 25, 2016, I provide additional legal authority via email to opposing counsel explaining that expert opinion does not fall within the attorney work-product doctrine. Attached as Exhibit C is a true and correct copy of my email to Roberto Garcia and Travis Tufts.

5. On March 2, 2017, I sent a letter to Mr. Tufts, asking him if TTC was going to continue to take the position that TTC is entitled to inquire into any communications I have had with any experts I consult informally. Mr. Tufts responded that TTC's position had not changed. Attached as Exhibit D is a true and correct copy of my letter to Mr. Tufts and his e-mail response sent on March 8, 2017.

I declare under penalty of perjury, 28 U.S.C. section 1746, that the foregoing is true and correct. Executed on March 10, 2017.

*Melissa Martin McBeath*

Melissa Martin McBeath

# Exhibit A

Melissa Martin McBeath

3463 E. Terra Alta Blvd. • Tucson, AZ 85716 • 520.449.9753 • *mel.mcbeath@cox.net*

SENT VIA E-MAIL ONLY

July 15, 2016

Robert C. Garcia
Travis L. Tufts
Farhang & Medcoff
4801 E. Broadway, Suite 311
Tucson, AZ 85711

Re: *McBeath v. Tucson Tamale Company et al.*
Pima County Superior Court Case No. C20161794

Gentlemen:

On July 13, 2016, your office filed a motion asking leave of court to effect alternative service of a subpoena duces tecum (STD) on Ehud Gavron "by posting the STD on the door to his residence and sending him copies of the STD via email (at his known email address), certified mail, return receipt requested, and First-Class U.S. Mail."

The motion accuses Mr. Gavron of (i) "providing substantial legal assistance" to me, and (ii) having "possession of documents and information that go to the heart of Defendants' claims and defenses."

I understand that you also filed a complaint against Mr. Gavron with the State Bar of Arizona for engaging in the unauthorized practice of law. Blair H. Moses, Atty/Consumer Assistance Program Bar Counsel, contacted Mr. Gavron to address the complaint. Neither Mr. Gavron nor I have a duty to disclose who he is. Because you persist in your efforts to communicate with him, however, I am now forced to tell you that I consult Mr. Gavron informally as an expert.

Mr. Gavron has extensive experience and knowledge of computer science, computer operations, computer networks, computer storage, computer security, network security, Internet technology, encryption, authentication, authorization, intrusion prevention, intrusion detection, logfile analysis, and the various regulations that apply to all of these in the United States.[1]

[1] *See* www.prnewswire.com/news-releases/rminet-names-new-chief-technology-officer-ehud-gavron-founder-of-aces-research-to-head-up-companys-technology-efforts-72200082.html

The relevance of Mr. Gavron's expertise is obvious. The Amended Counterclaims allege that I accessed Tucson Tamale Company's computer network without authorization to steal proprietary trade secrets and other confidential information, in violation of the Stored Communications Act (a federal anti-hacker statute) and Arizona's Uniform Trade Secrets Act.

Refer to Ariz. R. C. P. 26(b)(4)(B) and the extensive discussion of case law found in the ethics opinions published by the State Bar of Arizona regarding experts informally consulted in preparation for trial, but not retained. The law is clear and long-settled that "[n]o discovery may be had of the names or views of experts in this category." [2]

Stated briefly and bluntly: If you are not entitled to know even the identity of experts I consult informally, you certainly may not inquire into the nature and scope of the services and advice they provide.

Blair H. Moses of the State Bar will receive a copy of this letter via e-mail to ensure that everyone clearly understands my position on this matter. I trust this will be the last time we address this.

Best Regards,

Melissa Martin McBeath

cc: Blair H. Moses (via e-mail only)
Ehud Gavron (via e-mail only)

[2] *See* www.azbar.org/Ethics/EthicsOpinions/ViewEthicsOpinion?id=578.

# Exhibit B

# Melissa Martin McBeath

3463 E. Terra Alta Blvd. • Tucson, AZ 85716 • 520.449.9753 • *mel.mcbeath@cox.net*

SENT VIA E-MAIL ONLY

July 19, 2016

Robert C. Garcia
Travis L. Tufts
Farhang & Medcoff
4801 E. Broadway, Suite 311
Tucson, AZ 85711

Re: *McBeath v. Tucson Tamale Company et al.*
Pima County Superior Court Case No. C20161794

Gentlemen:

On July 13, 2016, your office filed a motion asking leave of court to effect alternative service of a subpoena duces tecum (SDT) on Ehud Gavron "by posting the SDT on the door to his residence and sending him copies of the SDT via email (at his known email address), certified mail, return receipt requested, and First-Class U.S. Mail."

On July 15, 2016, I was forced to disclose that I consult Mr. Gavron informally as an expert. I referred you to Ariz. R. C. P. 26(b)(4)(B) and the extensive discussion of case law found in the ethics opinions published by the State Bar of Arizona regarding experts informally consulted in preparation for trial, but not retained. The law is clear and long-settled that "[n]o discovery may be had of the names or views of experts in this category." [1]

All communications between me, Mr. Gavron and the various other experts I'm consulting to assist me with my case are privileged. Accordingly, I request that you withdraw the SDT motion because it is based on an e-mail Mr. Gavron sent by mistake on June 27, 2016, to the work e-mail I used when I worked at Tucson Tamale Company. The subpoena is also overbroad because it requests information that arises or relates to work and advice that Mr. Gavron has rendered in his capacity as an expert.

I further request that you destroy this email as well as the e-mail Mr. Gavron sent on July 14, 2016. *See* Ariz. R. C. P. 26.1(f)(2). ("If a party contends that information subject to a claim of privilege or of protection as trial-preparation material has been inadvertently disclosed or produced in discovery, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has made and may not use or disclose the information until the claim is resolved.").

Best Regards,

Melissa Martin McBeath

---

1 *See* www.azbar.org/Ethics/EthicsOpinions/ViewEthicsOpinion?id=578.

10181.1

# Exhibit C

From: Mel McBeath <mel.mcbeath@cox.net>
Date: Mon, Jul 25, 2016 at 3:53 PM
Subject: Re: McBeath v. TTC, et al.
To: Robert Garcia <rgarcia@fmazlaw.com>
Cc: Travis L. Tufts <ttufts@fmazlaw.com>, Autumn Bonnell <abonnell@fmazlaw.com>

Good Afternoon Robert,

Thank you for the recap of our conversation.
When we spoke, you told me that the attorney work-product doctrine may not apply to the experts I consult informally because I am pro se. My findings indicate otherwise.

I revisited the AZ State Bar Ethics Opinion 88-01 regarding the use of discovery to learn the identity of an o pponent's expert witnesses and the content of their communications. The discovery permissible depends on whether the expert will testify at trial.
Many of the cases the State Bar cites are federal court opinions (probably because of the paucity of AZ case law on this issue) and because the ARCPs are patterned after the federal rules.
As I explained, my position is that your clients are not entitled to know anything about the non-testifying experts I consult informally, even their identity.
The content of my communications with the experts I consult informally and their work product is protected from disclosure by ARCP 26(b)(4)(B)(expert retained only for trial preparation) and ARCP 26(b)(3)(expert work-product privilege). I could find no exceptions to the protection afforded by these Rules, and I have not waived any of my rights or privileges afforded by these rules.
Non-testifying experts do not have to work under the direction of or for an attorney for their work to be protected from discovery. The protection that Rule 26(b)(4)(B) provides is independent, and does not flow, from the attorney work-product doctrine or the attorney client privilege.
The Advisory Committee Notes to Rule 26(b)(4) make clear that the drafters of the Rule "reject[ed] as ill-considered [court] decisions which have sought to bring expert information within the work-product doctrine" and instead "adopt[ed] a form of the more recently developed doctrine of unfairness." Fed.R.Civ.P. 26 Advisory Committee's Note to Subdivision (b)(4), 1970 Amendments (citation omitted).
The purpose of Rule 26(b)(4)(B) is "to protect trial strategy, prevent one party from having a free ride at the expense of the other part y, and to promote fairness by precluding unreasonable access to an opposing party's diligent trial preparation. *Klee v. Whirlpool Corp.*, 251 F.R.D. 507, 511 (S.D. Cal. 2006); *FMC Corp. v. Vendo Co.,* 196 F. Supp. 2d 1023, 1048 (E.D. Cal. 2002); *Durflinger v. Artiles,* 727 F.2d 888, 891 (10th Cir. 1984).

"The Rule is also designed to prevent a party from building his case on the diligent preparation of his adversary." *In re Shell Oil Refinery,* 132 F.R.D. 437, 440 (E.D.La. 1990), citing Pielemeier, *Discovery of Non-Testifying 'In-House' Experts Under Federal Rules of Civil Procedure,* 58 Ind. L.J. 597, 607-08 (1984).

"Rule 26(b)(4)(B) thus creates a safe harbor whereby facts and opinions of nontestifying, consulting experts are shielded from discovery, except upon a showing of exceptional circumstances." *Plymovent Corp., v. Air Technology Solutions, Inc.,* 243 F.R.D. at 143 (D. N.J. 2007). "Indeed, some courts have construed 26(b)(4)(B) as creating a privilege against disclosure." *Id.* "This Rule recognizes that with non-testifying experts, there is no need to obtain discovery for effective cross-examination." *Shell Oil,* at 440.

Here is additional authority you may find helpful:
*U.S. v. Meyer*, 398 F.2d 66, 73-74 (9th Cir. 1968) (commenting that "the reasons [for rejecting as ill-considered the decisions which have sought to bring expert information within the work product doctrine] seem clear").
*Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 116 F.R.D. 533, 539 (N.D. Cal. 1987) (stating that "[t]he work that retained experts do in anticipation of litigation is not work product and its discoverability is governed by a se parate rule [26(b)(4)]"), *abrogated on other grounds by Advanced Cardiovascular Systems, Inc. v. C.R. Bard, Inc.*, 144 F.R.D . 372, 374 (N.D. Cal. 1992).
8A Charles A. Wright, Arthur R. Miller, Mary K. Kane & Richard L. Marcus, Federal Practice and Procedure § 2029 (3d ed. 2010) ("The knowledge of an expert is not part of the [attorney] work product...").
Jack H. Friedenthal, *Discovery and Use of an Adverse Party's Expert Information*, 14 Stan. L. Rev. 455, 488 (1962) (concluding that "the work product doctrine should [not] be extended to cover expert information which [it] normally would not protect" and that "[i]f such discovery is to be denied, it should be done on the ground that disclosure would be unfair under the particular facts of the case").
Let's talk again after you've had an opportunity to review.
Regarding Ehud Gavron's subpoena duces tecum, I spoke with him about this over the weekend. He will review his records and pull all information and/or e-mails he received from me during the time that I worked for Tucson Tamale Company. You will receive those before the end of the week.
Also, thank you for agreeing to postpone my deposition.
Best,
Mel

# EXHIBIT D

Melissa Martin McBeath

3463 E. Terra Alta Blvd. • Tucson, AZ 85716 • 520.449.9753 • *mel.mcbeath@cox.net*

SENT VIA E-MAIL ONLY

March 2, 2017

Travis L. Tufts
Farhang & Medcoff
4801 E. Broadway, Suite 311
Tucson, AZ 85711

Re: *Melissa Martin McBeath v. Tucson Tamale Company*
Ariz. U.S. District Court Case No. CV-16-462-TUC-DCB

Dear Mr. Tufts:

I write to meet and confer with you regarding the following discovery issues to avoid further delay in the prosecution of my federal case.

1. Tucson Tamale Company (TTC) has not served on me or filed with the District Court its Fed. R. Civ. Proc. 26(a) Initial Disclosures and accompanying documents and electronically stored information. Please do so no later than Monday, March 9, 2017.

2. I request that TTC produce all responsive Gmail e-mails in their native electronic format. Because I specify the manner in which these e-mails should be produced, e-mails that are transferred to Outlook or tampered with in any way that differs from the way that they are "kept in the usual course of business" will not comply with Fed. R. Civ. Proc. 34(b)(2)(E). As a gesture of good faith, I will agree to abide by the same terms and conditions of the Protective Order issued on December 8, 2016 in the state court action regarding any confidential information TTC discloses if all responsive documents and electronically stored information are produced no later than Monday, March 9, 2017.

3. Fed. R. Civ. Proc. 26(b)(4)(B) makes clear that TTC is not entitled to inquire into any communications I have had with any experts I consult informally. Will TTC serve written discovery on, or intend to take the oral deposition of, Ehud Gavron, Francisco Marquez, or anyone else whom TTC believes I have consulted informally as an expert to assist me with this case? Please state affirmatively whether TTC will take the same or similar position TTC has taken in the long-standing dispute the parties have had in the state court proceedings regarding this issue.

4. Lastly, insurance agreements are expressly discoverable under Fed. R. Civ. P. 26(a)(1)(A)(iv). I will serve a subpoena duces tecum on Koty-Leavitt Insurance Agency, Inc. because yesterday the Pima County Superior Court granted TTC's Motion to Quash the subpoena served on the insurance broker in connection with the state court action. In my reading of the federal rules, any items are properly discoverable if they relate to "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b).

The information sought need not be admissible at the trial if the information sought "appears reasonably calculated to lead to the discovery of admissible evidence." *Id.*

A relevant matter is "any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978). Because discovery is designed to define and clarify the issues, it is not limited to only those specific issues raised in the pleadings. *Id.* I believe I am entitled to all non-privileged information I seek from Koty-Leavitt that relates to my claims.

Please let me know no later than Monday, March 6, 2017, your client's response to the above issues so that I may determine what relief to seek from the Court next week. I invite you to call me if you wish to discuss any of these matters.

Best Regards,

Melissa Martin McBeath

Melissa Martin McBeath

From: Travis L. Tufts <ttufts@fmazlaw.com>
Date: Wed, Mar 8, 2017 at 5:00 PM
Subject: RE: McBeath v. Tucson Tamale Co. (federal case)
To: Melissa Martin McBeath <mel.mcbeath@cox.net>
Cc: Robert Garcia <rgarcia@fmazlaw.com>, Tish Wright <twright@fmazlaw.com>, Jamie Archibald <jarchibald@fmazlaw.com>

Ms. McBeath,

Responding to your March 2, 2017 letter:

1.   We served our initial disclosures in the federal court case on August 17, 2017.

2.   Your requests for production will be responded to within the time provided by the federal rules.

3.   With regards to your friends Mr. Gavron and Mr. Marquez, we take the position this issue has not been resolved.

4.   With respect to your intent to serve Koty-Leavitt with another subpoena, I believe the State Court already ruled on this issue and we will take a similar position in the federal court should you serve the subpoena you e-mailed earlier today.  This seems to me an exercise in futility given none of your claims (state or federal) remotely implicate insurance or the lack thereof.  Thus, it remains unclear to me how this subpoena will define or clarify the issues.

Regards,

Travis

**Travis L. Tufts**
Profile | vCard
4801 East Broadway Boulevard | Suite 311 | Tucson, Arizona 85711
General: 520.790.5433 | Direct: 520.398.7466 | Fax: 520.790.5736
www.fmazlaw.com

**From:** Melissa Martin McBeath [mailto:mel.mcbeath@cox.net]
**Sent:** Thursday, March 2, 2017 12:56 PM
**To:** Travis L. Tufts <ttufts@fmazlaw.com>
**Cc:** Robert Garcia <rgarcia@fmazlaw.com>; Tish Wright <twright@fmazlaw.com>; Jamie Archibald <jarchibald@fmazlaw.com>
**Subject:** McBeath v. Tucson Tamale Co. (federal case)

Please see attached letter.

Thank you.

-Melissa

**CERTIFICATE OF SERVICE**

I hereby certify that the above document was filed electronically with the Clerk of the United States District Court for the District of Arizona, and was served via hyperlink generated by the court's CM/ECF system, which was sent electronically to:

Roberto C. Garcia
*rgarcia@fmazlaw.com*
Travis L. Tufts
*ttufts@fmazlaw.com*
Farhang & Medcoff PLLC
4801 E Broadway Blvd., Ste. 311
Tucson, AZ 85711
520-790-5433

I declare under penalty of perjury, under the laws of the State of Arizona and the United States of America that the foregoing is true and correct.

Dated: March 10, 2017

*Melissa Martin McBeath*
Melissa Martin McBeath