# FARHANG & MEDCOFF

4801 E. Broadway Boulevard, Suite 311
Tucson, Arizona 85711
T: 520.790.5433

Ali J. Farhang (#019456)
afarhang@fmazlaw.com

Roberto C. Garcia (#026246)
rgarcia@fmazlaw.com

Travis L. Tufts (#029373)
ttufts@fmazlaw.com

Attorneys for Defendants / Counterplaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Melissa Martin McBeath, an individual, <br><br> Plaintiff, <br><br> v. <br><br> Tucson Tamale Company, an Arizona corporation; Todd Russel Martin; an individual; Sherry Martin, an individual; and Lisa Martin, an individual, <br><br> Defendants. | NO. CV-16-00462-TUC-DCB (BPV) <br><br> **ANSWER TO SECOND AMENDED COMPLAINT and COUNTERCLAIMS** <br><br> Assigned to Hon. David C. Bury and Hon. Bernardo P. Velasco |
| Tucson Tamale Company, an Arizona corporation, <br><br> Counterplaintiff, <br><br> v. <br><br> Melissa Martin McBeath and John/Jane Doe Martin McBeath, husband and wife, <br><br> Defendants. | |

00316177.1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>ANSWER</u>

Defendants Tucson Tamale Company ("TTC"), Todd Russel Martin ("TRM"), Sherry Martin ("SM"), and Lisa Martin ("LM") (collectively, the "Defendants"), for their Answer to Plaintiff Melissa Martin McBeath's ("Plaintiff") Second Amended Complaint (Doc. No. 44) (the "Complaint"), admit, deny, and allege as follows:

**THE PARTIES**

1.      Regarding the allegations in Paragraph 1 of the Complaint, Defendants admit only that Plaintiff seeks the relief set forth in Paragraph 1.  Defendants deny they are liable to Plaintiff as alleged or otherwise.

2.      Defendants admit the allegations in Paragraph 2 of the Complaint.

3.      Defendants admit the allegations in Paragraph 3 of the Complaint.

4.      Defendants admit the allegations in Paragraph 4 of the Complaint.

5.      Defendants admit the allegations in Paragraph 5 of the Complaint.

6.      Defendants admit the allegations in Paragraph 6 of the Complaint.

7.      Defendants admit the allegations in Paragraph 7 of the Complaint.

8.      Regarding the allegations in Paragraph 8 of the Complaint, Defendants admit only that they have been associated and affiliated with one another during the period at issue.  Defendants, however, deny they are liable to Plaintiff as alleged or otherwise.

9.      Defendants deny the allegations in Paragraph 9 of the Complaint.

**JURISDICTION AND VENUE**

10.     Regarding the allegations in Paragraph 10 of the Complaint, Defendants admit only that the U.S. Equal Employment Opportunity Commission issued Plaintiff a right-to-sue letter on or about November 2, 2016, in connection with her Title VII and age discrimination claims.  Defendants deny the remaining allegations of Paragraph 10.

11.     Defendants admit the allegations in Paragraph 11 of the Complaint.

12.     Defendants admit the allegations in Paragraph 12 of the Complaint.

00316177.1

13.     Regarding the allegations in Paragraph 13 of the Complaint, Defendants deny the existence or satisfaction of any "minimum jurisdictional requirements" in alleged monetary damages.  Defendants, accordingly, deny the allegations in Paragraph 13.

14.     Defendants admit venue is proper in this Court, but deny any wrongdoing.

## FACTUAL BACKGROUND

15.     Defendants admit the allegations in Paragraph 15 of the Complaint.

16.     Defendants admit the allegations in Paragraph 16 of the Complaint.

17.     Regarding the allegations in Paragraph 17 of the Complaint, Defendants admit only that Plaintiff began the interview process with TRM and SM in February 2015. Defendants deny the remaining allegations in Paragraph 17.

18.     Defendants deny the allegations in Paragraph 18 of the Complaint.

19.     Defendants deny the allegations in Paragraph 19 of the Complaint.

20.     Defendants deny the allegations in Paragraph 20 of the Complaint.

21.     Defendants deny the allegations in Paragraph 21 of the Complaint.

22.     Defendants deny the allegations in Paragraph 22 of the Complaint.

23.     Defendants deny the allegations in Paragraph 23 of the Complaint.

24.     Defendants deny the allegations in Paragraph 24 of the Complaint.

25.     Defendants admit the allegations in Paragraph 25 of the Complaint.

26.     Regarding the allegations in Paragraph 26 of the Complaint, Defendants admit only that Plaintiff was made part of TTC's executive management team and in that capacity reported to TRM and SM.  Defendants deny the remaining allegations in Paragraph 26.

27.     Regarding the allegations in Paragraph 27 of the Complaint, Defendants admit only that Plaintiff would be eligible to participate in TTC's incentive plan after completing a 90-day probationary period.  Defendants deny the remaining allegations in Paragraph 27.

28.     Defendants deny the allegations in Paragraph 28 of the Complaint.

29.     Defendants deny the allegations in Paragraph 29 of the Complaint.

00316177.1

30.     Regarding the allegations in Paragraph 30 of the Complaint, Defendants admit only that TTC raised Plaintiff's salary in September 2015 to $50,000 per year, but deny she had a reasonable expectation, contractual right, or any other guarantee to receive a raise.  Defendants deny the remaining allegations in Paragraph 30 of the Complaint.

31.     Defendants deny the allegations in Paragraph 31 of the Complaint.

32.     Defendants deny the allegations in Paragraph 32 of the Complaint.

33.     Defendants admit the allegations in Paragraph 33 of the Complaint.

34.     Defendants deny the allegations in Paragraph 34 of the Complaint.

35.     Regarding the allegations in Paragraph 35 of the Complaint, Defendants admit only that Plaintiff was not entitled a quarterly bonus, or any bonus whatsoever. Defendants deny the remaining allegations in Paragraph 35.

36.     Regarding the allegations in Paragraph 36 of the Complaint, Defendants admit only that a meeting occurred at TTC's corporate office on February 29, 2016, and that this meeting came at Plaintiff's request.  Defendants deny the remaining allegations in Paragraph 36 of the Complaint.

37.     Defendants deny the allegations in Paragraph 37 of the Complaint.

38.     Defendants deny the allegations in Paragraph 38 of the Complaint.

39.     Regarding the allegations in Paragraph 39 of the Complaint, Defendants admit only that TTC lawfully terminated Plaintiff's employment on or about February 22, 2016.  Defendants deny the remaining allegations in Paragraph 39 of the Complaint.

40.     Defendants deny the allegations in Paragraph 40 of the Complaint.

41.     Defendants deny the allegations in Paragraph 41 of the Complaint.

42.     Defendants deny the allegations in Paragraph 42 of the Complaint.

43.     Regarding the allegations in Paragraph 43 of the Complaint, Defendants admit only that TTC offered Plaintiff a severance payment in exchange for her execution of a full release.  Defendants deny the remaining allegations of Paragraph 43.

44.     Defendants deny the allegations in Paragraph 44 of the Complaint, and its subparts.

00316177.1

45.    Regarding the allegations in Paragraph 45 of the Complaint, Defendants admit only that Plaintiff declined to execute TTC's proposed release.  Defendants deny the remaining allegations in Paragraph 45.

46.    Defendants deny the allegations in Paragraph 46 of the Complaint.

47.    Defendants deny the allegations in Paragraph 47 of the Complaint.

48.    Defendants deny the allegations in Paragraph 48 of the Complaint.

49.    Regarding the allegations in Paragraph 49 of the Complaint, Defendants admit only that TTC does not take a "tip credit" under Arizona or federal law.  Defendants deny the remaining allegations in Paragraph 49.

50.    Defendants deny the allegations in Paragraph 50 of the Complaint.

51.    Defendants deny the allegations in Paragraph 51 of the Complaint.

52.    Defendants deny the allegations in Paragraph 52 of the Complaint.

53.    Defendants deny the allegations in Paragraph 53 of the Complaint.

54.    Defendants deny the allegations in Paragraph 54 of the Complaint.

55.    Defendants deny the allegations in Paragraph 55 of the Complaint.

56.    Defendants deny the allegations in Paragraph 56 of the Complaint.

57.    Defendants deny the allegations in Paragraph 57 of the Complaint.

58.    Defendants deny the allegations in Paragraph 58 of the Complaint.

59.    Defendants deny the allegations in Paragraph 59 of the Complaint.

60.    Defendants deny the allegations in Paragraph 60 of the Complaint.

61.    Defendants deny the allegations in Paragraph 61 of the Complaint.

62.    Defendants deny the allegations in Paragraph 62 of the Complaint.

63.    Defendants deny the allegations in Paragraph 63 of the Complaint.

64.    Defendants deny the allegations in Paragraph 64 of the Complaint.

65.    Defendants deny the allegations in Paragraph 65 of the Complaint.

66.    Defendants deny the allegations in Paragraph 66 of the Complaint.

67.    Defendants deny the allegations in Paragraph 67 of the Complaint.

68.    Defendants deny the allegations in Paragraph 68 of the Complaint.

00316177.1

69.   Defendants deny the allegations in Paragraph 69 of the Complaint.

70.   Defendants deny the allegations in Paragraph 70 of the Complaint.

71.   Defendants deny the allegations in Paragraph 71 of the Complaint.

72.   Defendants deny the allegations in Paragraph 72 of the Complaint.

73.   Defendants deny the allegations in Paragraph 73 of the Complaint.

74.   Defendants deny the allegations in Paragraph 74 of the Complaint.

75.   Regarding the allegations in Paragraph 75 of the Complaint, Plaintiff states legal conclusions to which no response is required.   To the extent a response may be required, Defendants deny the allegations in Paragraph 75.

76.   Defendants deny the allegations in Paragraph 76 of the Complaint.

77.   Defendants deny the allegations in Paragraph 77 of the Complaint.

78.   Regarding the allegations in Paragraph 78 of the Complaint, Defendants admit only that genetically modified organisms (GMOs) are prohibited in organic products. Defendants deny the remaining allegations in Paragraph 78.

79.   Regarding the allegations in Paragraph 79 of the Complaint, Defendants admit only that TTC's masa consists of non-GMO organic ingredients.   Defendants deny the remaining allegations in Paragraph 79.

80.   Defendants deny the allegations in Paragraph 80 of the Complaint.

81.   Defendants deny the allegations in Paragraph 81 of the Complaint.

82.   Defendants deny the allegations in Paragraph 82 of the Complaint.

83.   Defendants deny the allegations in Paragraph 83 of the Complaint, and its subparts.

84.   Defendants deny the allegations in Paragraph 84 of the Complaint.

85.   Defendants admit the allegations in Paragraph 85 of the Complaint.

86.   Defendants deny the allegations in Paragraph 86 of the Complaint.

87.   Defendants deny the allegations in Paragraph 87 of the Complaint.

88.   Defendants deny the allegations in Paragraph 88 of the Complaint.

89.   Defendants deny the allegations in Paragraph 89 of the Complaint.

90.     Defendants deny the allegations in Paragraph 90 of the Complaint.

91.     Defendants deny the allegations in Paragraph 91 of the Complaint.

92.     Defendants deny the allegations in Paragraph 92 of the Complaint.

93.     Defendants deny the allegations in Paragraph 93 of the Complaint.

94.     Defendants deny the allegations in Paragraph 94 of the Complaint.

95.     Defendants deny the allegations in Paragraph 95 of the Complaint.

96.     Defendants deny the allegations in Paragraph 96 of the Complaint.

97.     Defendants deny the allegations in Paragraph 97 of the Complaint.

98.     Defendants deny the allegations in Paragraph 98 of the Complaint.

99.     Defendants deny the allegations in Paragraph 99 of the Complaint.

100.    Defendants deny the allegations in Paragraph 100 of the Complaint.

101.    Defendants deny the allegations in Paragraph 101 of the Complaint, including its subparts.

102.    Defendants deny the allegations in Paragraph 102 of the Complaint.

103.    Defendants deny the allegations in Paragraph 103 of the Complaint.

**FIRST CAUSE OF ACTION**
**Violation of the Age Discrimination in Employment Act**
**(Against Tucson Tamale Company)**

104.    Defendants incorporate herein by this reference each and every preceding paragraph as through fully set forth herein.

105.    Regarding the allegations in Paragraph 105 of the Complaint, Defendants admit only that Plaintiff is over the age of 40.  Defendants deny the remaining allegations in Paragraph 105.

106.    Regarding the allegations in Paragraph 106 of the Complaint, Defendants admit only that TTC hired Lindsay Welch as its Business Development Manager in September 2015.  Defendants deny the remaining allegations in Paragraph 106 of the Complaint.

00316177.1

107.   Defendants deny the allegations in Paragraph 107 of the Complaint, and its subparts.

108.   Defendants deny the allegations in Paragraph 108 of the Complaint.

109.   Defendants are without knowledge or information sufficient to admit or deny the allegations contained in Paragraph 109 of the Complaint and therefore deny same.

110.   Defendants are without knowledge or information sufficient to admit or deny the allegations contained in Paragraph 110 of the Complaint and therefore deny same.

111.   Defendants deny the allegations in Paragraph 111 of the Complaint.

112.   Defendants deny the allegations in Paragraph 112 of the Complaint.

113.   Defendants deny the allegations in Paragraph 113 of the Complaint.

114.   Defendants deny the allegations in Paragraph 114 of the Complaint.

## SECOND CAUSE OF ACTION
### National Origin, Race, and Ancestry Discrimination
### (Against Tucson Tamale Company)

115.   Defendants incorporate herein by this reference each and every preceding paragraph as through fully set forth herein.

116.   Defendants are without knowledge or information sufficient to admit or deny the allegations contained in Paragraph 116 of the Complaint and therefore deny same.

117.   Defendants are without knowledge or information sufficient to admit or deny the allegations contained in Paragraph 117 of the Complaint and therefore deny same.

118.   Defendants deny the allegations in Paragraph 118 of the Complaint.

119.   Defendants deny the allegations in Paragraph 119 of the Complaint.

120.   Defendants deny the allegations in Paragraph 120 of the Complaint.

121.   Defendants deny the allegations in Paragraph 121 of the Complaint.

122.   Defendants deny the allegations in Paragraph 122 of the Complaint.

123.   Defendants deny the allegations in Paragraph 123 of the Complaint.

////

////

00316177.1

**THIRD CAUSE OF ACTION**
**Retaliatory Discharge**
**(Against All Defendants)**

124.   Defendants incorporate herein by this reference each and every preceding paragraph as through fully set forth herein.

125.   Regarding the allegations in Paragraph 125 of the Complaint, Plaintiff states legal conclusions to which no response is required.   To the extent a response may be required, Defendants deny the allegations in Paragraph 125.

126.   Regarding the allegations in Paragraph 126 of the Complaint, Plaintiff states legal conclusions to which no response is required.   To the extent a response may be required, Defendants deny the allegations in Paragraph 126.

127.   Regarding the allegations in Paragraph 127 of the Complaint, Plaintiff states legal conclusions to which no response is required.   To the extent a response may be required, Defendants deny the allegations in Paragraph 127.

128.   Defendants deny the allegations in Paragraph 128 of the Complaint.

129.   Defendants deny the allegations in Paragraph 129 of the Complaint.

130.   Defendants deny the allegations in Paragraph 130 of the Complaint, including its subparts.

131.   Defendants deny the allegations in Paragraph 131 of the Complaint.

132.   Defendants deny the allegations in Paragraph 132 of the Complaint.

133.   Defendants deny the allegations in Paragraph 133 of the Complaint.

134.   Defendants deny the allegations in Paragraph 134 of the Complaint.

135.   Defendants deny the allegations in Paragraph 135 of the Complaint.

**FOURTH CAUSE OF ACTION**
**FRAUD**
**(Against All Defendants)**

136.   Defendants incorporate herein by this reference each and every preceding paragraph as through fully set forth herein.

137.   Defendants deny the allegations in Paragraph 137 of the Complaint.

00316177.1

- 9 -

138.   Defendants deny the allegations in Paragraph 138 of the Complaint.

139.   Defendants deny the allegations in Paragraph 139 of the Complaint.

140.   Defendants deny the allegations in Paragraph 140 of the Complaint.

141.   Defendants deny the allegations in Paragraph 141 of the Complaint.

142.   Defendants deny the allegations in Paragraph 142 of the Complaint.

143.   Defendants deny the allegations in Paragraph 143 of the Complaint.

144.   Defendants deny the allegations in Paragraph 144 of the Complaint.

145.   Defendants deny the allegations in Paragraph 145 of the Complaint.

**FIFTH CAUSE OF ACTION**
**NEGLIGENT MISREPRESENATION**
**(Against All Defendants)**

146.   Defendants incorporate herein by this reference each and every preceding paragraph as through fully set forth herein.

147.   Defendants deny the allegations in Paragraph 147 of the Complaint.

148.   Defendants deny the allegations in Paragraph 148 of the Complaint.

**SIXTH CAUSE OF ACTION**
**FAILURE TO PAY EARNED WAGES**
**(Against Tucson Tamale Company)**

149.   Defendants incorporate herein by this reference each and every preceding paragraph as through fully set forth herein.

150.   Defendants deny the allegations in Paragraph 150 of the Complaint.

151.   Defendants deny the allegations in Paragraph 151 of the Complaint.

152.   Defendants deny the allegations in Paragraph 152 of the Complaint.

**SEVENTH CAUSE OF ACTION**
**BREACH OF EMPLOYMENT AGREEMENT**
**(Against Tucson Tamale Company)**

153.   Defendants incorporate herein by this reference each and every preceding paragraph as through fully set forth herein.

00316177.1

154.   Defendants deny the allegations in Paragraph 154 of the Complaint.

155.   Defendants deny the allegations in Paragraph 155 of the Complaint.

156.   Defendants deny the allegations in Paragraph 156 of the Complaint.

157.   Defendants deny the allegations in Paragraph 157 of the Complaint.

158.   Defendants deny the allegations in Paragraph 158 of the Complaint.

159.   Defendants deny the allegations in Paragraph 159 of the Complaint.

## EIGHTH CAUSE OF ACTION
### RESTITUTION / UNJUST ENRICHMENT
**(Against All Defendants)**

160.   Defendants incorporate herein by this reference each and every preceding paragraph as though fully set forth herein.

161.   Defendants deny the allegations in Paragraph 161 of the Complaint.

162.   Defendants deny the allegations in Paragraph 162 of the Complaint.

## GENERAL DENIAL

Defendants deny each and every allegation of the Complaint not explicitly and specifically admitted herein.

## JURY DEMAND

Defendants hereby demand a trial by jury on all causes of action or matters so triable.

## AFFIRMATIVE DEFENSES

As affirmative defenses to the allegations in the Complaint, and upon information and belief, Defendants state as follows:

1.   The Complaint fails to state a claim upon which relief can be granted, and by filing this Amended Answer, Defendants does not waive and hereby reserves the right to file an appropriate motion under Federal Rules of Civil Procedure Rule 12.

2.   Plaintiff fails to state a claim upon which relief can be granted or, alternatively, her claims are barred in whole or in part because of the rule against splitting a cause of action, requiring "that all claims between the same parties arising out of or relating to the same transactional circumstances or core set of facts, or arising from a single

00316177.1

wrong, or involving the same subject matter be joined in a single action." <u>See</u> <u>Meritage Homes Corporation v. Hancock</u>, 522 F.Supp.2d 1203, 1214 (2007); <u>see also</u> 1A C.J.S. Actions § 229; <u>Haphey v. Linn County</u>, 924 F.2d 1512, 1517 (9th Cir. 1991). Plaintiff previously filed and is currently litigating Pima County Superior Court Case No. C20161794 involving claims between the same parties arising out of or relating to the same transactional circumstances or core set of facts, the same alleged wrongs, and the same subject matter.

3.     The claims and allegations in the Complaint are frivolous, groundless, not made in good faith, not well-grounded in fact, and not based on a reasonable investigation of the facts, justifying an award of Defendants' attorneys' fees and costs under Federal Rules of Civil Procedure Rule 11, 28 U.S.C. § 1927, <u>Christiansburg Garment Co. v. EEOC</u>, 434 U.S. 412, 98 S.Ct. 694 (1978), and/or any other similar federal statute or the Court's inherent powers.

4.     Plaintiff's damages, if any, may have been the result of her own conduct and/or the acts of those other than Defendants or their employees.

5.     Plaintiff was capable of, and failed to, mitigate her damages.

6.     Plaintiff's claims are barred in whole or in part, pursuant to, without limitation, the doctrine of after-acquired evidence of wrongdoing. <u>See</u> <u>O'Day v. McDonnell Douglas Helicopter Co.</u>, 191 Ariz. 535, 959 P.2d 792 (1998); <u>see also</u> <u>McKennon v. Nashville Banner Publ'g Co.</u>, 513 U.S. 352 (1995).

7.     Plaintiff's claims are barred, in whole or in part, by the Arizona Employment Protection Act, A.R.S. § 23-1501, *et. seq*.

8.     Plaintiff's claims based on Arizona law are barred, in whole or in part, because Defendants had a good faith belief that their actions in relation to Plaintiff were proper and in accordance with law, which prevents the recovery of any additional and further relief including those provided under A.R.S. § 23-355 and A.R.S. § 12-341.01.

9.     Some or all of Plaintiff's claims are barred, in whole or in part, because of Defendant's good faith reliance on written administrative regulations, orders, rulings,

00316177.1

approvals, interpretations, and written and unwritten administrative practices of the Equal Employment Opportunity Commission.  See 42 U.S.C. § 2000e-12(b).

10.     Plaintiff's claims for punitive or exemplary damages are barred under applicable law.  See Almeyer v. Nevada Sys. of Higher Educ., 555 F.3d 1051 (9th Cir. 2009); see also Cancellier v. Federated Dept. Stores, 672 F.2d 1312 (9th Cir. 1982).

11.     No act or omission by Defendants was reckless or with willful and conscious disregard for the safety or rights of Plaintiff, despicable, oppressive, fraudulent, malicious, willful, outrageous, unconscionable or contemptible, or done with evil-minded intent, and Plaintiff's Complaint fails to state a claim upon which relief can be granted for punitive or exemplary damages.  Defendants assert any statutory or judicial protection from punitive or exemplary damages that is available under the applicable law, and any award of punitive or exemplarity damage is barred.

12.     Defendants specifically incorporate by reference any and all standards or limitations regarding the determination and enforceability of punitive or exemplary damages contemptible under the applicable state law including, but not limited to, A.R.S. § 12-701.

13.     Any award of punitive or exemplary damages against Defendants is barred to the extent that it is inconsistent with the standard and limitations set forth in BMW of North America, Inc. v. Gore, 517 U.S. 559 (1996), State Farm Mutual Auto. Ins. Co. v. Campbell, 538 U.S. 408 (2003), and Exxon Shipping Co. v. Baker, 554 U.S. 471 (2008).

14.     Some or all of the claims contained in the Complaint are barred, in whole or in part, by the doctrines of unclean hands, waiver, laches, accord and satisfaction, assumption of risk, duress, fraud, illegality, statute of limitations, *res judicata*, and/or estoppel.

15.     Some or all of Plaintiff's claims are barred, in whole or in part, because Defendants exercised reasonable care to prevent and promptly correct any allegedly discriminatory or otherwise improper behavior and Plaintiff failed to take advantage of preventative measures provided by Defendants.  See Faragher v. City of Boca Raton, 524

00316177.1

U.S. 775, 807-808 (1998); see also Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 764-765 (1998).

16.     Defendants are entitled to an award of all their attorneys' fees, costs, and expenses incurred in defending this action, including interest thereon, pursuant to A.R.S. §§ 12-341, 12-341.01, 12-349 and Federal Rule of Civil Procedure Rule 11.

17.     Some or all of Plaintiff's claims are barred, in whole or in part, because age was a *bona fide* occupational qualification reasonably necessary for the normal operation of Defendant's business.  See 29 U.S.C. § 623(f)(1).

18.     Some or all of Plaintiff's claims are barred, in whole or in part, because Defendants' actions were based on reasonable factors other than age.  See 29 U.S.C. § 623(f)(1).  See 29 U.S.C. § 623(f)(1).

19.     Some or all of Plaintiff's claims are barred, in whole or in part, because TTC discharged Plaintiff for good cause, in the exercise of good faith business judgment, and for reasons not based on Plaintiff's age.  See 29 U.S.C. § 623(f)(3).

20.     Some or all of Plaintiff's claims are barred, in whole or in part, because Defendants' actions were legitimate, nondiscriminatory, and not a pretext for discrimination.  See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

21.     Some or all of Plaintiff's claims are barred, in whole or in part, because the same person who hired Plaintiff took the alleged adverse employment action(s) against the Plaintiff.  See Schechner v. KPIX – TV, 686 F.3d 1018 (9th Cir. 2012).

22.     Some or all of Plaintiff's claims are barred, in whole or in part, because the Defendants had a mixed motive for taking the alleged actions and Defendants would have made the same decision without regard to the allegedly discriminatory animus.  See Price Waterhouse v. Hopkins, 490 U.S. 228 (1989).

23.     To the extent that the Complaint seeks equitable relief, Plaintiff is barred by her own inequitable and bad faith actions.  See Ellenburg v. Brockway, Inc., 763 F.2d 1091, 1097 (9th Cir. 1985) ("he who comes into equity must come with clean hands.").

00316177.1

24.     To preserve defenses pending discovery, Defendants allege those defenses set forth in Federal Rules of Civil Procedure 8(c) and 12(b), and any other affirmative defenses that may be revealed during discovery. Defendants reserve the right to amend this Answer at a later time to assert any matters constituting an avoidance or affirmative defense, as discovery shows to be applicable.

**WHEREFORE**, Defendants, having fully responded to the Complaint, request that the Complaint be dismissed with prejudice, that Plaintiff takes nothing thereby, that the Court award Defendants their costs, attorneys' fees, and such further relief as the Court deems appropriate.

<u>COUNTERCLAIMS</u>

Counterplaintiff Tucson Tamale Company ("TTC"), for its Counterclaims against Counterdefendant Melissa Martin McBeath ("McBeath") and John/Jane Doe Martin McBeath, alleges as follows:

**<u>PARTIES, JURISDICTION, AND VENUE</u>**

1.     TTC is a corporation incorporated under the laws of Arizona with its principal place of business in Pima County, Arizona. TTC is authorized to and conducts business in Tucson, Arizona.

2.     Counterdefendant McBeath is an individual residing in Tucson, Arizona, which is within the jurisdictional boundaries of this Court. Counterdefendant John/Jane Doe McBeath, who is also an individual residing in Tucson, Arizona, is the spouse of McBeath.

3.     At all times relevant to this action, McBeath and John/Jane Doe Martin McBeath acted for and on behalf of their marital community. Each of McBeath, John/Jane Doe Martin McBeath, and their marital community is liable to TTC for McBeath's actions/omissions alleged herein.

4.     This Court has subject matter jurisdiction over TTC's counterclaims pursuant to 28 U.S.C. § 1367(a). The claims asserted by TTC as counterclaims are compulsory counterclaims because, without limit, they are part of the same case or controversy as that

00316177.1

brought by McBeath, and they arise out of the same transactions or occurrences that are the subject matter of McBeath's claims.

5.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because McBeath resides in the District of Arizona.

## GENERAL ALLEGATIONS

**A.     TTC's Business and Employment Relationship with McBeath and Her Son**

6.     TTC is a Tucson-based company engaged in the operation of three restaurants and a wholesale food production facility.  Among other things, TTC produces and sells award-winning, unique, gourmet tamales.

7.     On or about February 23, 2015, McBeath applied for the position of Area Manager with TTC.

8.     On or about April 20, 2015, TTC hired McBeath as its Area Manager.  At all times relevant to her employment, McBeath was an at-will employee pursuant to Arizona common law and A.R.S. § 23-1501.

9.     McBeath's job duties and responsibilities included evaluating the performance of TTC managers at three separate restaurants, developing performance metrics for the restaurants and employees, developing and implementing a beverage plan to increase sales and profitability, ensuring equipment is operational and properly maintained, reducing costs of labor and services through operationalizing and standardizing processes, and working with TTC management to further increase the success of TTC's business.

10.     In the course of her employment with TTC, McBeath had access to, among other things, TTC's private, confidential, and/or proprietary information, which includes, without limit, trade secrets (as defined in A.R.S. § 44-401, *et. seq.* and as discussed below), processes, sales and profit information, customer lists, contractor and supplier lists, current and anticipated client preferences, methods of operation, and business development data (collectively, the "Confidential Information").

11.     The Confidential Information includes sales and performance data and customer lists aggregated in a proprietary manner to reflect best TTC's markets and

00316177.1

1  customers, and to gain valuable business information thereon.

2      12.     TTC uses its Confidential Information to solicit customers, and to gain a

3  competitive advantage, which TTC does/did indeed realize, over other competing

4  businesses.

5      13.     TTC uses the Confidential Information and data to develop and understand

6  its customers' personal preferences, which were provided exclusively to TTC and are

7  otherwise difficult, if not impossible, to duplicate by competing businesses.

8      14.     The aforementioned trade secrets, to which McBeath had access to during her

9  employment with TTC, and which are included in these Counterclaims' definition of

10  Confidential Information also include, without limit and upon information and belief,

11  recipes and food-making techniques and/or processes (and/or a combination thereof) on

12  which TTC's core, tamale-making business is based.

13      15.     Such recipes, food-making techniques and/or processes (and/or a

14  combination thereof) are novel and unique in the restaurant business, and TTC developed

15  them to produce award-winning, unique, gourmet tamales, which are highly desirable,

16  highly sought after, unique, and of excellent quality and taste.

17      16.     Such recipes, food-making techniques and/or processes (and/or a

18  combination thereof) are not readily duplicable or ascertainable by the public or TTC's

19  competitors.   As such, the recipes, food-making techniques and/or processes, and/or a

20  combination thereof, have independent economic value and are protected under Arizona

21  law as trade secrets.

22      17.     Such recipes, food-making techniques and/or processes derive actual

23  independent economic value from not being generally known to, and not being readily

24  ascertainable by proper means by, other persons who can obtain economic value from their

25  disclosure or use.

26      18.     Such recipes, food-making techniques and/or processes, as well as the entirety

27  of TTC's Confidential Information, are the subject of substantial efforts that are reasonable

28  under the circumstances to maintain their secrecy.   For example, and without limit, the

00316177.1

recipes, food-making techniques and/or processes are provided only to those individuals who need to know the same, and such individuals are generally subject to contractual and other legal obligations to maintain their secrecy.

19. As part of its day-to-day operations, TTC collects, stores, and transmits Confidential Information via electronic communications or electronic storage on its "Protected Computer" network (as defined in 18 U.S.C. §§ 2510 and 2711) (hereinafter "Protected Computer[s]").

20. TTC makes substantial efforts to safeguard its Confidential Information transmitted over its Protected Computer network.  For example, but without limit, TTC restricts access to the Confidential Information by requiring password use, by allowing only certain employees to have access to such information, and by restricting the information accessed by certain employees.

21. TTC's Protected Computer systems are used in and/or affect interstate commerce or communication.  For example, and without limitation, TTC uses its Protected Computer systems to communicate, coordinate, and/or operate with clients and business associates located outside the State of Arizona.

22. At all times relevant hereto, TTC's Confidential Information was the sole property of TTC.

23. Arizona and federal laws and regulations prohibit the unauthorized use and/or disclosure, misappropriation or misuse of TTC's Confidential Information.  McBeath is subject to such laws and regulations.

24. In consideration for her employment with TTC, McBeath entered into that certain Confidentiality Agreement (the "Confidentiality Agreement") with TTC on March 19, 2015.

25. As provided more fully in the Confidentiality Agreement, and as independently required by her fiduciary duties as an employee, McBeath agreed, among other things, she would not disclose TTC's Confidential Information to third parties, she would not remove or copy TTC's Confidential Information except in the scope of her

00316177.1

- 18 -

employment or with TTC's written permission, she would not use TTC's Confidential Information for her own benefit, and she would not assist others in obtaining TTC's Confidential Information.

26.     On or about May 21, 2015, TTC hired McBeath's son, Maximilian Ivankovich ("Ivankovich").  TTC hired Ivankovich at the recommendation of McBeath.

27.     On or about January 24, 2016, TTC promoted Ivankovich to Shift Lead.  In connection with his role as Shift Lead, Ivankovich had access to TTC's Confidential Information for use in the course and scope of his employment only.

**B.     McBeath and Ivankovich's Misappropriation of TTC's Confidential Information**

28.     On or about May 19, 2015, McBeath utilized TTC's Protected Computers to provide Confidential Information, including, but not limited to, sensitive store maintenance data, technical support software, and restaurant processes, to an unaffiliated third-party. McBeath's actions were in violation of her fiduciary duties and without written permission from TTC.

29.     On or about October 21, 2015, McBeath utilized TTC's Protected Computers to provide Confidential Information, including, but not limited to, TTC's passwords, data and sales history, financial and payroll data, to an unaffiliated third-party.  McBeath's actions were in violation of her fiduciary duties and without written permission from TTC.

30.     On or about December 9, 2015, McBeath utilized TTC's Protected Computers to provide Confidential Information, including, but not limited to, TTC's data and sales history, business operating reports, financial and payroll data, to an unaffiliated third-party. McBeath's actions were in violation of her fiduciary duties and without written permission from TTC.

31.     On or about January 14, 2016, McBeath utilized TTC's Protected Computers to provide Confidential Information, including, but not limited to, TTC's business operations reports, to an unaffiliated third-party.  McBeath's actions were in violation of her fiduciary duties and without written permission from TTC.

00316177.1

32.     Upon information and belief, McBeath accessed, copied, printed, and removed additional Confidential Information, including, but not limited to, TTC's recipes and food-making techniques and/or processes, payroll records, tax records, customer lists, and employee records, for her own benefit and use.  McBeath's actions were in violation of her fiduciary duties and without written permission from TTC.

33.     The Confidential Information McBeath accessed, copied, printed, removed, and/or disclosed was and remains the exclusive property of TTC.

34.     On or about February 22, 2016, TTC lawfully terminated McBeath's employment because she failed to perform the duties and responsibilities of Area Manager.

35.     After terminating McBeath's employment, TTC instructed McBeath to return all TTC property, including TTC's Confidential Information.

36.     To date, McBeath refused to account for and return the Confidential Information.

37.     Shortly after TTC terminated McBeath's employment, McBeath and Ivankovich entered into an agreement, express or implied, to engage in a scheme or artifice to access, copy, print, and remove TTC's Confidential Information stored on TTC's Protected Computers.

38.     McBeath, among other things, supplied Ivankovich with aid, encouragement, support, and directions to access Confidential Information on TTC's Protected Computers and collaborated with Ivankovich to remove TTC's Confidential Information beneficial to their collective interests.

39.     Between February 22, 2016 and March 17, 2016, Ivankovich, in furtherance of his scheme with McBeath, and which McBeath facilitated, utilized TTC's Protected Computers to access, copy, print, and remove TTC's Confidential Information outside of the scope of his employment and for his and McBeath's use and benefit.

40.     On or about March 17, 2016, Ivankovich admitted to a TTC supervisor that he accessed, among other things, TTC's payroll data, business operations information and data and sales history, then stated he was prepared to access, copy, print, and remove

00316177.1

1   additional Confidential Information in furtherance of an agreement with McBeath unless

2   TTC terminated his employment.

3       41.    Part of McBeath's and Ivankovich's scheme involved removing TTC's

4   Confidential Information, baiting TTC to fire Ivankovich, then utilizing the Confidential

5   Information as leverage in connection with a wrongful termination claim similar to

6   McBeath's pending suit.

7       42.    On or about March 17, 2016, Ivankovich, in furtherance of his scheme with

8   McBeath, utilized TTC's Protected Computers to print and remove TTC's Confidential

9   Information.  Ivankovich removed, without limit, sales and financial records, payroll

10  records and transferred them to McBeath.

11      43.    McBeath utilized, and continues to utilize, TTC's Confidential Information

12  to, among other things, damage the reputation of TTC in the community, impugn the

13  character of TTC's owners, and use as leverage in McBeath's wrongful termination lawsuit.

14                          **COUNT I – BREACH OF CONTRACT**

15      44.    TTC incorporates by reference each and every allegation as if fully set forth

16  herein.

17      45.    In consideration for her employment with TTC, McBeath entered into that

18  certain Confidentiality Agreement by which she agreed, among other things, she would not

19  disclose TTC's Confidential Information to third parties, she would not remove or copy

20  TTC's Confidential Information except in the scope of her employment or with TTC's

21  written permission, she would not use TTC's Confidential Information for her own benefit,

22  and she would not assist others in obtaining TTC's Confidential Information.

23      46.    McBeath breached her obligations in the Agreement by, among other things,

24  disclosing TTC's Confidential Information to unaffiliated third parties, accessing and

25  removing TTC's Confidential Information for her own benefit and without TTC's written

26  permission, and by removing, copying and assisting Ivankovich in obtaining TTC's

27  Confidential Information without TTC's written permission.

28      47.    McBeath's various breaches caused substantial damages including, but not

00316177.1

1  limited to, loss of goodwill and loss of business opportunities, in an amount to be proven at

2  trial.

3     48.   McBeath is liable to TTC for such damage and for TTC's attorneys' fees and

4  costs incurred herein pursuant to A.R.S. §§ 12-341 and 12-341.01.

5  **COUNT II – ARIZONA UNIFORM TRADE SECRETS ACT**

6     49.   TTC incorporates by reference each and every allegation as if fully set forth

7  herein.

8     50.   TTC's recipes, food-making techniques and/or processes (and/or a

9  combination thereof), sales and profit information, customer lists, contractor and supplier

10  lists, current and anticipated, and other Confidential Information constitute protected trade

11  secrets under the Arizona Uniform Trade Secrets Act, A.R.S. §§ 44-401 *et seq.*

12     51.   McBeath, acting alone and/or in concert with Ivankovich, misappropriated

13  and/or wrongly obtained access to TTC's Confidential Information and/or trade secrets that

14  were not known or readily ascertainable through proper means by other persons who could

15  obtain economic value from its disclosure or use.

16     52.   McBeath, acting alone and/or in concert with Ivankovich, misappropriated

17  and/or wrongly obtained access to TTC's Confidential Information and/or trade secrets that

18  included specialized and valuable information about TTC's customers acquired by TTC

19  through substantial efforts to develop its customers and their personal information which

20  TTC maintains as a secret.

21     53.   TTC's Confidential Information and/or trade secrets derive independent

22  economic value from not being generally known to, and not being readily ascertainable

23  through proper means by, other persons who can obtain economic value from their

24  disclosure or use.

25     54.   TTC made, and continues to make, substantial efforts to maintain and protect

26  the secrecy of its Confidential Information and/or trade secrets including, without

27  limitation, designating such information as confidential, restricting access to such

28  information, protecting such information by agreement, and by requiring its computers to

00316177.1

1   be password-protected.

2   55.   McBeath, acting alone and/or in concert with Ivankovich, misappropriated

3   TTC's Confidential Information and/or trade secrets by, among other things, directly taking

4   such information and/or trade secrets from TTC without authorization and/or by exceeding

5   her authorized access, for her own benefit.

6   56.   TTC did not consent or otherwise waive its right to object to the use of its

7   Confidential Information and/or trade secrets by McBeath and/or Ivankovich.

8   57.   McBeath knew, and at all times relevant has known, that she owed a legal

9   duty to TTC to maintain the secrecy of TTC's Confidential Information and/or trade secrets,

10   and that her access to such information and/or secrets was acquired solely under

11   circumstances giving rise to a duty to maintain the secrecy of such information.

12   58.   McBeath, acting alone or in concert with Ivankovich, misappropriated TTC's

13   Confidential Information and/or trade secrets by disclosing and/or using TTC's trade

14   secrets, when McBeath knew or had reason to know that the Confidential Information

15   and/or trade secrets were acquired through improper means, or were acquired under

16   circumstances giving rise to a duty to maintain their secrecy or limit their use, or were

17   acquired by a person who owed a duty to TTC to maintain their secrecy or limit their use.

18   59.   McBeath has used and disclosed, and is likely continue to use and disclose,

19   TTC's Confidential Information and/or trade secrets for McBeath's own economic benefit.

20   60.   Upon information and belief, McBeath profited, and will continue to profit,

21   from her actual misappropriation of TTC's Confidential Information and/or trade secrets,

22   in an amount to be proven at trial.

23   61.   McBeath's actions violated the Arizona Trade Secrets Act, A.R.S. §§ 44-401,

24   *et seq.*

25   62.   McBeath's wrongful actions complained of herein entitle TTC to recover

26   damages, including, without limit, actual losses and unjust enrichment caused by

27   McBeath's misappropriations, pursuant to A.R.S. § 44-403(A).

28   63.   TTC is entitled to, among other things, attorneys' fees under A.R.S. § 44-404.

00316177.1

- 23 -

64.    McBeath's actions were willful, malicious, and specifically intended to damage TTC.  TTC is, therefore, entitled to recover exemplary/punitive damages under A.R.S. § 44-403(B).

65.    McBeath is jointly and severally liable for the harm caused to TTC by McBeath's and Ivankovich's violations of the Arizona Trade Secrets Act, A.R.S. §§ 44-401, *et seq.*

66.    McBeath's conduct has caused and will continue to cause irreparable injury to TTC including, but not limited to, loss of business, lost revenue, and diminished goodwill.  Accordingly, monetary relief alone is insufficient to remedy the harm caused to TTC by McBeath, and TTC is entitled to, among other things, preliminary and permanent injunctive relief.

### COUNT III – BREACH OF FIDUCIARY DUTY

67.    TTC incorporates by reference each and every allegation as if fully set forth herein.

68.    While employed by TTC, McBeath owed a fiduciary duty of loyalty to TTC.  Further, McBeath owed TTC a fiduciary duty to act fairly, honestly, and in good faith towards TTC with regard to all matters related to her employment.

69.    While employed by TTC, Ivankovich owed a fiduciary duty of loyalty to TTC.  Further, Ivankovich owed TTC a fiduciary duty to act fairly, honestly, and in good faith towards TTC with regard to all matters related to his employment.

70.    More specifically, but without limit, as part of their fiduciary duties to TTC, McBeath and Ivankovich each owed TTC duties to maintain the confidentiality and secrecy of TTC's Confidential Information (excluding trade secrets), and a duty not to reveal, divulge, disclose, or convert for their own benefit any of TTC's Confidential Information (excluding trade secrets).

71.    While still employed by TTC, McBeath and Ivankovich each violated their fiduciary duties to TTC in the manners described in greater detail elsewhere herein.  Such violations, however, included, without limit, McBeath's and/or Ivankovich's unauthorized

removal from TTC of valuable Confidential Information for their personal gain and use to compete against TTC.

72.     McBeath violated her fiduciary duties to TTC and is liable to TTC for any and all damages arising from such a breach.

### COUNT IV – VIOLATION OF STORED COMMUNICATIONS ACT

73.     TTC incorporates by reference each and every allegation as if fully set forth herein.

74.     McBeath, individually and/or acting in concert with Ivankovich, willfully, knowingly, and intentionally accessed TTC's Confidential Computer systems without authorization and/or exceeded her authorized access and wrongfully obtained Confidential Information.

75.     The Confidential Information McBeath obtained included, among other things, electronic communications in electronic storage in TTC's electronic storage systems (as those terms are defined in 18 U.S.C. §§ 2510 and 2711).

76.     McBeath's wrongful actions damaged TTC as set forth elsewhere herein. McBeath's wrongful actions were willful, malicious, and done with ill-will and/or spite for TTC.

77.     TTC is entitled to compensatory damages, punitive damages, equitable relief, attorneys' fees, and any other remedy allowable under 18 U.S.C. § 2707.

### COUNT V – CIVIL CONSPIRACY

78.     TTC incorporates by reference each and every preceding allegation as if fully set forth herein.

79.     McBeath and Ivankovich agreed to accomplish multiple unlawful acts, including, without limitation, breaching McBeath's contract with TTC, breaching McBeath's fiduciary obligations to TTC, and violating the Stored Communications Act.

80.     McBeath and Ivankovich accomplished the improper, unlawful acts in furtherance of their conspiracy by, among other things, encouraging and assisting each other in, and actually, accessing, copying, printing, removing, and disclosing TTC's Confidential

Information without written permission and for their own benefit in violation of McBeath's contractual and fiduciary obligations and in violation of the Stored Communications Act.

81.     McBeath's civil conspiracy with Ivankovich has caused considerable damage to TTC in an amount to be proven at trial.  Such damages include, but are not limited to, compensatory damages, loss of value of Confidential Information, and loss of goodwill and business opportunities.

82.     McBeath's conduct was and is gross, wanton, malicious, oppressive, and performed with spite, ill will, and reckless indifference to the interests of others.  McBeath's unlawful and unfair conduct evinces an evil hand guided by an evil mind.  Thus, McBeath is liable for punitive damages as well as general damages in an amount to be proven at trial.

## COUNT VI – AIDING AND ABETTING

83.     TTC incorporates by this reference each and every allegation as if fully set forth herein.

84.     Ivankovich, acting as the primary tortfeasor with regard to his breaches of his fiduciary duty to TTC, committed unlawful acts and/or torts that have caused damage to TTC, as more fully set forth elsewhere herein.

85.     McBeath, acting in concert with Ivankovich, knew that the unlawful acts and/or torts Ivankovich perpetrated (as more fully set forth elsewhere herein) were unlawful, tortious, and/or constituted a breach of duties owed to TTC.

86.     Notwithstanding her knowledge, McBeath substantially aided and assisted Ivankovich and/or encouraged him to achieve the unlawful acts against TTC.

87.     McBeath is liable to TTC for Ivankovich's breach of his fiduciary duty to the same extent as Ivankovich.

88.     McBeath's conduct was and is gross, wanton, malicious, oppressive, and performed with spite, ill will, and reckless indifference to the interests of others.  McBeath's unlawful and unfair conduct entails an evil hand guided by an evil mind.

89.     McBeath is liable for punitive damages as well as general damages, for all damages arising from Ivankovich's tortious conduct, in an amount to be proven at trial.

00316177.1

1    **WHEREFORE**, TTC requests that the Court:

2    A.    Enter judgment in TTC's favor and against McBeath on all of TTC's

3    counterclaims and for all recoverable damages in an amount to be proven at trial;

4    B.    Award TTC punitive damages as a result of McBeath's unlawful conduct in

5    an amount sufficient to punish her and deter others from engaging in such conduct in the

6    future;

7    C.    Award TTC its taxable costs and reasonable attorneys' fees incurred during

8    its investigation into McBeath's improper conduct, and such costs and attorneys' fees

9    incurred herein, pursuant to A.R.S. §§ 12-341, 12-341.01, 44-404, and any other applicable

10   provision;

11   D.    Award TTC pre- and post-judgment interest on all damages, at the highest

12   rate allowed by law;

13   E.    Enter whatever preliminary and permanent injunctive relief is necessary and

14   appropriate to protect TTC's Confidential Information; and

15   F.    Grant TTC any other relief the Court deems just and proper under the

16   circumstances.

17        DATED this 21st day of March 2017.

18                                        FARHANG & MEDCOFF

19

20                                        By /s/ Travis L. Tufts

21                                           Ali J. Farhang
                                             Roberto C. Garcia
22                                           Travis L. Tufts

23                                        Attorneys for Defendants / Counterplaintiff

24

25

26

27

28

00316177.1

1

**CERTIFICATE OF SERVICE**

2          I hereby certify that the foregoing document was filed electronically with the Clerk

3   of the United States District Court for the District of Arizona, with notice of case activity

4   generated and sent electronically this 21st day of March 2017 to:

5
    Melissa Martin McBeath
6   mel.mcbeath@cox.net

7   /s/Letitia L. Wright

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

00316177.1