FARHANG & MEDCOFF

4801 E. Broadway Boulevard, Suite 311
Tucson, Arizona 85711
T: 520.790.5433

Ali J. Farhang (#019456)
afarhang@fmazlaw.com

Roberto C. Garcia (#026246)
rgarcia@fmazlaw.com

Travis L. Tufts (#029373)
ttufts@fmazlaw.com

Attorneys for Defendants / Counterplaintiff

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Melissa Martin McBeath, an individual,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>Tucson Tamale Company, an Arizona corporation; Todd Russell Martin, an individual; Sherry Martin, an individual; and Lisa Martin, an individual,<br><br>　　　　　　Defendants. | NO. CV-16-00462-TUC-DCB (BPV)<br><br>**OPPOSITION TO PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER TO SHIELD EXPERTS CONSULTED INFORMALLY**<br><br>[ORAL ARGUMENT REQUESTED]<br><br>Assigned to Judge David C. Bury and Hon. Bernardo P. Velasco |
| Tucson Tamale Company, an Arizona corporation,<br><br>　　　　　　Counterplaintiff,<br><br>v.<br><br>Melissa Martin McBeath and John/Jane Doe Martin McBeath, husband and wife,<br><br>　　　　　　Counterdefendants. | |

00317010.1

Although the pleadings are not yet closed in this action, the legal wranglings between Plaintiff/Counterdefendant Melissa Martin McBeath ("McBeath") and Defendant/Counterclaimant Tucson Tamale Company ("TTC"), Defendants Todd Russell Martin, Sherry Martin, and Lisa Martin (collectively with TTC, "Defendants") have been pending for far too long, and at great expense.  Indeed, from the commencement of this dispute through this date, McBeath has bombarded Defendants with voluminous, vexatious filings, creative, but ultimately meritless arguments indicative of legal training, and conflicting, ever-changing positions not typical of non-lawyer *pro se* litigants.  Defendants suspected, but had no evidence, that McBeath enjoyed the assistance of counsel and a legal team.

Due to an unforced error of Ehud Gavron ("Gavron") (he directed an email intended for McBeath to McBeath's former email address with TTC), however, Defendants discovered McBeath's relationship with Gavron and Francisco X. Marquez ("Marquez"), the two individuals actually developing and prosecuting her claims against Defendants in this and another action nearly-identical to this one pending in Arizona Superior Court (Pima County) as Case No. C20161794 (the "State Court Matter").[1]  Over time, as Defendants gained additional knowledge, Defendants came to learn McBeath was communicating with Gavron and Marquez (who also happen to be longtime friends of McBeath) during her employment with TTC, long before her alleged causes of action ever accrued, and that she had disclosed to them and others TTC's protected information in violation of her employment duties and contractual obligations.

Despite their labeling as non-testifying experts, Gavron and Marquez are fact witnesses who have substantial, important knowledge about the claims and defenses of both sides to this dispute.  McBeath's Motion for Protective Order (Doc. No. 39, the "Motion") conveniently designates Gavron and Marquez as supposed consulting experts, but astonishingly fails to inform the Court that these two individuals are fact witnesses and participants in McBeath's violation of TTC's rights.  This type of tactic has become

---

[1] The Parties have stipulated to stay the State Court Matter given McBeath's recent amendment and consolidation of her claims in this venue.  The Parties are currently awaiting a ruling on that stipulation.

00317010.1

commonplace for McBeath, as her and her friends strain to preclude Defendants from gaining information critical to Defendants' defenses and counterclaims.

The fallacy of McBeath's "consulting expert" argument was laid bare in her recent deposition taken March 22, 2017.[2]  According to McBeath, *any individual* – expert or otherwise – she subjectively "consults" regarding *any* aspect of her claim is shielded from discovery under Fed. R. Civ. P. 26(b)(4).  Comically, as she claimed under oath, the individuals protected under her interpretation of the rule include her own garbage man. McBeath indicated that, so long as she discusses the facts of her case with the garbage man and satisfies her self-serving definition of a "consultation," Defendants are precluded from propounding discovery on the garbage man, despite the fact McBeath shared an honest recitation of the facts relating to claims and defenses with a non-expert third-party.

McBeath's interpretation of the law sharply contrasts with her own irrelevant discovery requests and inconsistent arguments,[3] but also undermines Rule 26(b)(4)'s intent to shield only *actual* consulting experts consulted on technical issues, not fact witnesses. Indeed, if this Court were to adopt McBeath's approach, any litigant could preclude discovery on a fact witness by designating him/her as a consulting expert.  This rule would upend the discovery process and cannot be the law.

Accordingly, Defendants, by and through undersigned counsel, hereby oppose the Motion and request that the Court deny same.  Defendants submit the following Memorandum of Points and Authorities together with the pleadings and papers on file with the Clerk of this Court and on file with the Clerk of the Arizona Superior Court (Pima County), Case No. C20161749, which TTC requests the Court take judicial notice of, in support this Opposition.

/ / / /

---

[2] Defendants were unable to procure the transcript reflecting McBeath's testimony on this issue but will supplement their filing with McBeath's testimony on this issue upon receipt.

[3] McBeath attempts to shield her consultants under Rule 26(b)(4), then inexplicably serves a subpoena on Defendants' insurance broker seeking communications made in anticipation of her litigation and in connection with preparing for trial. When asked in deposition, McBeath could not reconcile her belief that 26(b)(4) applies to her but not Defendants. Rather, she astonishingly perceives a "fear" Defendants will overbroadly construe the rule meanwhile claiming she has not liberally construed the very same rule. See Ex. 1, M. McBeath E-mail, Mar. 23, 2017.

# MEMORANDUM OF POINTS AND AUTHORITIES

**A. McBeath's friend Ehud Gavron is a fact witness, not a consulting expert.**

    1. <u>Relevant law.</u>

This Court should not entertain McBeath's attempt to exploit a provision in the rules to shield her and her friend, Gavron, from Defendants' discovery. Fed. R. Civ. P. 26(b)(4)(D) provides,

> *Ordinarily*, a party may not, by interrogatories or deposition, discover facts known or opinions *held by an expert* who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and *who is not expected to be called as a witness at trial*. But a party may do so only: (i) as provided in Rule 35(b); or (ii) on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means.

(emphasis added).

    2. <u>The exceptional circumstances presented by this case coupled with Gavron's role as a fact witness possessing relevant evidence preclude protections afforded under Rule 26(b)(4)(D).</u>

Preliminarily, this case does not present an "ordinary" circumstance. Gavron, a third party unaffiliated with TTC's business, is a fact witness turned allegedly-shielded expert who was contemporaneously communicating with McBeath during the period in which her causes of action accrued, and prior to his supposed retention as a "consulting expert." See Ex. 2, <u>McBeath E-mail</u>, May 19, 2015.[4] McBeath shared with Gavron her day-to-day managerial decisions and disciplinary actions related to TTC's employees. See Ex. 3, <u>McBeath E-mail</u>, August 26, 2015. Over the course of her employment with TTC, McBeath sent Gavron well over 100 e-mails, totaling 224 pages of documents.[5] See Ex. 4, <u>Defs' First Supp. Discl. Stmnt.</u> at 11:15-16. It stands to reason that McBeath shared with Gavron far more about her interactions with TTC and its managers/employees than what the emails in

---

[4] TTC employed McBeath from April 20, 2015 through February 22, 2016. (<u>See generally</u> <u>Second Am. Compl.</u>, Doc. No. 44; see also <u>Defs' Answer and Countercl.</u>, Doc. No. 45)

[5] Due to the volume of communications, Defendants do not attach the entirety of e-mails McBeath exchanged with Gavron from her TTC e-mail address, although Defendants have disclosed all such information to McBeath. Defendants will produce the entire volume of e-mails should the Court wish to review these e-mails.

Defendants' possession reflect. Defendants are unquestionably entitled to know what Gavron knows, as it related to any parties' claims or defenses. See Higher One, Inc. v. Touchnet Information Systems, Inc., 298 F.R.D. 82, 87-88 (W.D. N.Y. 2014) ("a non-testifying expert witness can be deposed concerning matters that pre-date his retention by the opposing party, 'like an ordinary witness'….").

Critically, Gavron and McBeath cannot benefit from the Fed. R. Civ. P. 26(b)(4)(D) exclusion because he will be a witness at trial. McBeath's communications with Gavron extended beyond innocuous workplace fodder and friendly banter. McBeath violated her confidentiality agreement when she sent Gavron information to access TTC's Revel Point of Sale ("Revel") system where TTC stores its business operational data.[6] See Ex. 5, McBeath Confid. Agreement; see also Ex. 6, McBeath E-mail, October 21, 2015.[7] She shared with him news of the successful implementation of processes in Defendants' Revel system–the system Defendants utilize to store their confidential sales and profits figures, among other things–because he helped, without authorization, to implement them. See Ex. 7, McBeath E-mail, Dec. 4, 2015. Tellingly, neither McBeath nor Gavron disclosed any of the aforementioned communications or other e-mails exchanged over the course of her employment. That McBeath now attempts to label Gavron as her "expert" to shield him from discovery serves a tacit admission that she wrongfully shared confidential information belonging to TTC, and that Defendants' discovery of same will damage her legal position. Further, Gavron's knowledge of McBeath's employment experience in general, and her motives for filing claims against Defendants (McBeath claims Defendants demonstrated what she interpreted subjectively as "unconscious bias" against minorities, which Defendants believe McBeath likely discussed with Gavron) are all highly relevant to the claims and defenses in this lawsuit, and Gavron will testify on these matters at trial. See Fed. R. Civ. P. 26(b)(4)(D) (applying only to experts "not expected to be called as a witness at trial").

---

[6] TTC alleges in its Counterclaims that McBeath violated her confidentiality agreement when, among other things, she shared TTC's protected information with Gavron. (See Defs' Answer and Countercl. at ¶ 29, Doc. No. 45.)

[7] To respond to McBeath's e-mail request, Gavron had to access or be familiar with Defendants' Revel system.

As a further example of the high relevance of Gavron's testimony in this case, in addition to sharing with him protected information regarding Defendants' business, McBeath also sought advice from Gavron to circumvent mandatory liquor license training, one of her improper acts forming the basis of Defendants' affirmative defenses (after-acquired evidence of wrongful acts in this instance).  See Ex. 8, McBeath E-mail, August 12, 2015.  Critically, when McBeath sent these e-mails, the factual bases supporting her wrongful termination claim had not occurred.  Surely, *McBeath cannot consult an expert in anticipation of litigation or in preparation for trial before her cause of action accrues*.  McBeath cannot hide behind Rule 26(b)(4) after-the-fact to prevent discovery of damaging evidence she knows will undermine her claims.

> 3. Even assuming Gavron is not a fact-witness, which he clearly is, he is not "consulting" in his supposed expert capacity.

 Gavron he is a key player in McBeath's efforts (stated previously in her interactions with the undersigned) to exact maximum damage upon Defendants' limited legal resources.  By Gavron's own admission, he has been intimately involved in this case from the outset, assisting McBeath far beyond the scope of an information technology expert witnesses.  See Ex. 9, Gavron's Resp. to Ariz. Bar Assoc., Nov. 4, 2016.  As Defendants steadfastly stated in all of their papers, McBeath's vexatious motives in bringing this suit are aided and abetted by her so-called "consulting experts."  McBeath's malicious motives and those with knowledge of those motives are unquestionably relevant in challenging her credibility and developing Defendants' claims and defenses.

Consistent with her pattern of untrue and inconsistent statements, McBeath disingenuously claims Defendants "forced [her] to reveal Ehud Gavron's identity." (see Mot. at 1:14-16). On June 27, 2016, Gavron, despite his purported technological expertise, sent an errant message to McBeath's former TTC e-mail address.  In it, he revealed the breadth of his involvement in the case.[8]  See Ex. 10, Gavron E-mail, June 27, 2016.  The e-

---

[8] Despite inquiry from Defendants' counsel after receiving e-mail communications between McBeath, Gavron, and Marquez, McBeath never requested Defendants take any remedial measures to protect the supposed "consultant" communications.

mail makes it abundantly clear that Gavron is not consulting on issues related to "computer science, computer networks, computer storage, computer security, etc." Instead, he maintains a spreadsheet calendaring Defendants' discovery response deadlines. He also expresses his concern with editing something "out from under" McBeath or "co-consultant" Marquez, then attempts to explain the operation of Rule 4 of the Arizona Rules of Civil Procedure. Apparently, as McBeath necessarily must argue, consulting experts assist lawyers and pro se litigants not only in the expert's actual field of expertise but also in the prosecution of discovery and editing papers. Gavron even speculates on the value of Defendants' Counterclaims, even though the majority of those claims have no relationship whatsoever with his purported areas of expertise. See Ex. 11, Gavron Subpoena E-mail, Sept. 30, 2016.

Gavron's contribution to McBeath's vexatious and harassing litigation strategy is reflected by his own deliberate efforts to evade Defendants' discovery – the majority of which sought undisputedly relevant and unprivileged information critical to TTC's counterclaims. See, e.g., Higher One, Inc., 298 F.R.D. at 87-88. McBeath acknowledges she had no reason to "consult" with an information technology expert until TTC filed its Counterclaim against her on May 26, 2016 asserting a claim under the SCA. Yet, when Defendants sought discovery of information preceding Gavron's involvement as a "consultant," he evaded service of Defendants' subpoena at her direction until the Court ultimately intervened and ordered service by alternative means. See Ex. 12, Defs.' Sup. Ct. Mot. Alternative Service, July 13, 2016; see also Ex. 13, Min. Entry Ord., Aug. 15, 2016 at p. 3 (granting the requested relief). When he ultimately responded to the subpoena, conveniently missing from his production were the hundreds of e-mails sent before McBeath could have possibly retained him as a consulting expert.[9] Unconvincingly, Gavron claims he does not hoard e-mails. Yet, he disclosed spam e-mail messages received two months into McBeath's employment with TTC, creating the inference he destroyed that evidence. See Ex. 14, Gavron's Subp. Resp., TTC 000304. The scope of Gavron and

---

[9] Defendants directly advised Gavron of his obligations to preserve evidence after discovering his involvement in the case.

00317010.1

- 7 -

1  McBeath's coordinated destruction of evidence is another piece of relevant <u>factual</u>
2  discovery exposing his awareness of the facts of McBeath's claims, her motivations
3  underlying those claims, and the confidential information McBeath shared with him so that
4  they could manufacture her claims.

5  Gavron also does not qualify for the protections of Fed. R. Civ. P. 26(b)(4)(D)
6  because he is not actually an expert (but, rather, McBeath's tech-savvy friend) and, even if
7  he were an expert, Defendants do not seek information relating to the narrow scope of his
8  purported expertise.  McBeath previously claimed in relation to the virtually identical State
9  Court Matter that she is consulting with Gavron regarding TTC's counterclaims arising
10 under the federal Stored Communications Act ("SCA"), which McBeath violated by, among
11 other things, exceeding her authorization and access to TTC's protected computer systems.
12 Defendants do not seek discovery on any such after-the-fact, narrowly-construed
13 consultation and advice.  Defendants do, however, seek discovery on all other aspects of
14 interaction between Gavron and McBeath, including her underlying conduct, in which
15 Gavron participated, violative of the SCA including, without limit, her dissemination and
16 disclosure of TTC's legally and contractually protected information to various third-parties
17 not authorized to receive said information.

18 Simply, Gavron is a fact witness who will testify at trial in this matter.  His identity,
19 involvement, and communications with McBeath are highly relevant to the underlying
20 claims and counterclaims.  That McBeath consulted with Gavron about her litigation
21 strategy and other matters she hoped Defendants would not discover was her own ill-fated
22 choice. McBeath cannot cloak a fact witness with the designation of "consulting expert" to
23 avoid discovery.

24 **B. <u>McBeath's lifelong friend Francisco Xavier Marquez a.k.a Xavier Molina is a fact witness, not a consulting expert.</u>**
25

26 The other fact-witness turned allegedly-shielded "consulting expert" is a disbarred
27 California attorney who McBeath, among other things, communicated with during the
28 course of her employment regarding issues relevant to this litigation.  Marquez, in violation

00317010.1

of law, is McBeath's shadow legal counsel responsible for all written communications and submissions. At the outset of the State Court Matter, an individual by the name of "Xavier Molina" delivered McBeath's papers to defense counsel's office and even e-mailed undersigned counsel various discovery requests. See, e.g., Ex. 15 McBeath's Certificate Service Mot. Strike; see also Ex. 16, X. Molina Disc. E-mail, June 14, 2016. When Gavron misdirected his e-mail on June 27, 2016, it revealed the true identity of "Xavier Molina" to be Francisco "Xavier" Marquez ("Marquez") – a former California attorney disbarred after misappropriating money from a probate estate, among other things. See Ex. 17, Cal. State Bar Att'y Search. At her deposition on March 22, 2017, McBeath did not deny Marquez's involvement, admitting that he delivered papers on her behalf, agreeing that he used a pseudonym to disguise his involvement, and admitting he is not a licensed attorney.

Fundamentally, there are three reasons why Marquez is not a consulting witness and no privilege applies to shield him from Defendants' discovery. First, Marquez, like Gavron, will testify at trial about facts relevant to the claims and defenses and therefore cannot be considered a non-testifying expert witness under Fed. R. Civ. P. 26(b)(4)(D). McBeath consulted with Marquez about issues directly related to TTC's business. See Ex. 18, McBeath E-mail, July 22, 2015 ("I checked with an attorney friend – we are an 'at will' employment state which means we can't 'require' notice"); see also Ex. 19, McBeath E-mail, Nov. 17, 2015; Ex. 20, McBeath Calendar Invite, Nov. 19, 2015 ("Meeting with my Barrister"). McBeath claims she reported violations of Arizona law to Defendants in and around November 2015 – the same time she consulted with Marquez. (See Sec. Am. Compl. at ¶¶ 50-54.) Despite her self-serving testimony to the contrary, it is more likely than not she consulted with Marquez about her purported belief Defendants violated Arizona law. Defendants are entitled to discover the nature of those communications with Marquez purportedly made on behalf of Defendants' business and whether those communications gave McBeath "information or a reasonable belief" that TTC violated Arizona law – a necessary element to her retaliatory discharge claim. See A.R.S. § 23-1501(A)(3)(c).

00317010.1

1      Second, Marquez is not a licensed attorney and, therefore, no attorney-client
2  privilege accrues to *any* communications between McBeath and Marquez. See, e.g., United
3  States v. Suggs, 531 F. Supp. 2d 13, 23 (D.D.C. 2008), aff'd sub nom. United States v.
4  Glover, 681 F.3d 411 (D.C. Cir. 2012) (acknowledging that disbarred former attorney's
5  communications were not protected by the attorney-client privilege). Although *licensed*
6  attorneys may assist a *pro se* litigant prepare pleadings, motions, or documents in state court
7  (See Ariz. R. Civ. P. 11), a privilege accrues to shield the communications and work-
8  product *because of* the attorney's licensure and duties of confidentiality imposed under the
9  Rules of Professional Conduct. An attorney-client privilege does not accrue between an
10 unlicensed attorney and a *pro se* litigant client. Marquez effectively acts as an unlicensed
11 document preparer, whose work product is not privileged or protected from discovery under
12 Arizona statutory law. See Ariz. Rev. Stat. § 7-208 ("A legal document preparer shall treat
13 information received from the consumer as confidential, yet recognize and acknowledge
14 that the privilege of attorney-client confidential communications is not extended to certified
15 legal document preparers.") (emphasis added).

16      Last, Marquez is not qualified to be an expert in this or any other case. Marquez's
17 former area of expertise is not implicated by the facts or causes of action at issue. This is
18 not a case of legal malpractice where expert attorney testimony might be necessary to
19 establish the standard of care. See Kaufman v. Jesser, 884 F. Supp. 2d 943, 952 (D. Ariz.
20 2012) ("Expert testimony is generally required 'to establish the standard of care by which
21 the professional actions of an attorney are measured and to determine whether the attorney
22 deviated from the proper standard.'" (internal citations omitted)); see also Baird v. Pace,
23 156 Ariz. 418, 420, 752 P.2d 507, 509 (App. 1987). Nor would Marquez's testimony assist
24 the trier of fact understand the evidence. See, e.g., Fed. R. Evidence 702 (an expert witness
25 *may* testify if the expert's knowledge will help the trier of fact understand the evidence or
26 to determine a fact in issue) (emphasis added). Whether TTC discriminated against
27 McBeath, wrongfully terminated her employment, or defrauded her require determinations
28 of fact that do not require standard of care testimony from an attorney. Simply, Marquez is

00317010.1

not qualified as an expert whose "scientific technical, or other specialized knowledge" would help McBeath or a trier of fact understand plain facts establishing TTC did or did not discriminate against McBeath. This Court should neither entertain nor allow Marquez's continued participation as it relates to McBeath and this matter—he cannot pretend to be a licensed attorney under the guise of being a consulting expert.

Defendants seek relevant discovery from McBeath related to Marquez. McBeath not only shared the terms and conditions of her employment during employment, but she unquestionably shared with Marquez information about her employment termination, facts necessary to establish her claims, TTC's confidential information relevant to her claims, and her motivations for bringing the claims so that Marquez could assist her. Because Marquez is a fact-witness expected to testify at trial and not an expert, coupled with the fact no privilege accrues to protect communications with McBeath, the extent of their relationship and communications are subject to Defendants' discovery.

**C. McBeath is not entitled to injunctive relief.**

McBeath improperly seeks to enjoin Defendants from mentioning or commenting on the individuals she conspires with in TTC's Court filings. (See Motion at 1:10-13.) McBeath's request for injunctive relieve vis-à-vis her Motion for Protective Order is both procedurally and substantively improper. See Fed. R. Civ. P. 65. McBeath improperly asks the Court restrict Defendants' First Amendment rights and their exercise of the litigants' privilege. McBeath's request fails because it does not comply with the Rules of Civil Procedure, and critical constitutional guarantees.

**D. This Court should deny the Motion.**

According to McBeath's theory of Rule 26(b)(3) and (b)(4), any time a litigant discusses a case or cause of action with their friends a privilege accrues to shield those communications. The law does not support such an expansive view of the privilege afforded under these rules. McBeath's efforts to shield Gavron, Marquez, or other fact-witnesses from discovery are disingenuous, transparent gamesmanship reflective of McBeath and her team's efforts to harass Defendants and to avoid the consequences of an

00317010.1

ill-advised decision to collaborate in the prosecution of McBeath's case. Defendants respectfully request that the Court allow them to proceed with their discovery in connection Gavron and Marquez, which will unquestionably reveal McBeath's improper conduct while employed at TTC, her motivations behind this suit, and the coordinated effort between McBeath and her team to fabricate her claims. This Court should deny the Motion.

RESPECTFULLY SUBMITTED this 24th day of March, 2017.

FARHANG & MEDCOFF

By /s/ Travis L. Tufts
　　Ali J. Farhang
　　Roberto C. Garcia
　　Travis L. Tufts

Attorneys for Defendants / Counterplaintiff

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was filed electronically with the Clerk of the United States District Court for the District of Arizona, with notice of case activity generated and sent electronically this 24th day of March, 2017 to:

Melissa Martin McBeath
3463 E. Terra Alta Blvd.
Tucson, Arizona 85716
mel.mcbeath@cox.net

/s/ Travis L. Tufts

00317010.1

- 12 -