MELISSA MARTIN McBEATH
3463 E. TERRA ALTA BLVD.
TUCSON, AZ 85716
Ph: (520) 449-9753
*mel.mcbeath@cox.net*

Pro Se

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA, TUCSON DIVISION

| | |
|---|---|
| MELISSA MARTIN McBEATH, an individual, | Case No. CV 16-462-TUC-DCB (BPV) |
| Plaintiff, | |
| v. | **MOTION TO DISMISS TUCSON TAMALE COMPANY'S COUNTERCLAIMS IV, V & VI** |
| TUCSON TAMALE COMPANY, an Arizona corporation; TODD RUSSELL MARTIN; an individual; SHERRY MARTIN, an individual; and LISA MARTIN, an individual, | [Fed. R. Civ. P. 12(b)(6)] _____ |
| Defendants. | Assigned to: Hon. David C. Bury |
| _____ | Complaint Filed: July 11, 2016 |
| AND TUCSON TAMALE COMPANY'S RELATED COUNTERCLAIMS | |

10381.1

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................... ii

MOTION ........................................................................................................... 1

SUMMARY OF RELEVANT FACTS ............................................................. 1

STATEMENT OF ISSUES ............................................................................... 2

THE STORED COMMUNICATIONS ACT .................................................... 3

LEGAL DISCUSSION ..................................................................................... 5

    I.      THE STORED COMMUNICATIONS ACT APPLIES ONLY TO
           ELECTRONIC COMMUNICATIONS FACILITIES (SUCH AS
           INTERNET SERVICE PROVIDERS) AND NOT TO BUSINESSES
           THAT USE THEIR SERVICES ................................................. 5

    II.     McBEATH IS NOT A HACKER UNDER THE STORED
           COMMUNICATIONS ACT BECAUSE SHE WAS AUTHORIZED
           TO ACCESS THE COMPANY'S COMPUTER NETWORK ................ 8

    III.    THE STORED COMMUNICATIONS ACT DOES NOT CREATE A
           PRIVATE RIGHT OF ACTION FOR CONSPIRACY OR AIDING
           AND ABETTING ...................................................................... 11

CONCLUSION ................................................................................................ 12

# TABLE OF AUTHORITIES

## CASES

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
  7 Cal.4th 503 (1994) ............................................................................. 11

*Elektra Entm't Group, Inc. v. Santangelo*,
  2008 WL 4452393 (S.D.N.Y. 2008) ...................................................... 11

*Freeman v. Direct TV, Inc.*,
  457 F. 3d 1001 (9th Cir. 2006) ............................................................. 11

*In Council on American-Islamic Relations Action Network, Inc. v. Gaubatz*,
  891 F. Supp. 2d 13 (D.D.C. 2012) .......................................................... 5

*In re Pharmatrak, Inc. Privacy Litigation*,
  220 F. Supp. 2d 4 (D. Mass. 2002) ......................................................... 7

*In re Toys R Us, Inc., Privacy Litig.*,
  2001 U.S. Dist. LEXIS 16947 (N.D. Cal. 2001) .................................... 12

*LVRC Holdings LLC v. Brekka*,
  581 F.3d 1127, 1135 (9th Cir. 2009) ............................................. 8,9,10

*Noel v. Hall*,
  Civ. No. 99-649-AC, 2012 U.S. Dist. LEXIS 110575,
  2012 WL 3241858 (D. Or. 2012) ............................................................ 8

*Quon v. Arch Wireless Operating Co., Inc.*,
  529 F.3d 892 (9th Cir. 2008) .................................................................. 3

*Shefts v. Petrakis*,
  954 F. Supp. 2d 769 (C.D. Ill. 2013) ..................................................... 13

*Theofel v. Farey-Jones*,
  359 F.3d 1066 (9th Cir. 2004) ............................................................ 6, 7

*United States v. Delgado*,
  357 F.3d 1061 (9th Cir. 2004) .............................................................. 11

1
2

# TABLE OF AUTHORITIES

3

(continued)

4
5

*United States v. Hernandez-Orellana,*
    539 F.3d 994 (9th Cir. 2008) .................................................................. 11

6
7

*United States v. Nosal,*
    676 F.3d 854 (9th Cir. 2012) ............................................................... 9,10

8
9

*Vaquero Energy, Inc. v. Herda,*
    2015 U.S. Dist. LEXIS 126122 (E.D. Cal. 2015) .................................... 5

10
11

## STATUTES

12

13

18 U.S.C. § 1030 ......................................................................................... 9

14

18 U.S.C. § 2510(15) ................................................................................... 5

15

18 U.S.C. § 2510(17) ................................................................................... 5

16
17

18 U.S.C. § 2701(a)(1) ............................................................................ 3,4,8

18

18 U.S.C. § 2702 ..................................................................................... 4,12

19

18 U.S.C. § 2703 ......................................................................................... 4

20

18 U.S.C. § 2707(a) .............................................................................. 3,4,9,12

21

18 U.S.C. § 2711(1) ..................................................................................... 4

22
23
24
25
26
27
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MOTION**

Counter-claimant Tucson Tamale Company (**"*TTC*"**) alleges counterclaims against Counter-defendant Melissa Martin McBeath for:

    1.      Violations of the Stored Communications Act (Count IV)

    2.      Civil Conspiracy (Count V)

    3.      Aiding and Abetting (Count VI)

*See*   Answer to Second Amended Complaint and Counterclaims, dated March 21, 2017 (**"*Counterclaims*"**). (Dkt 45)

These three counterclaims should be dismissed with prejudice under F. R. Civ. P. 12(b)(6) for failure to state a claim for the reasons explained below.

**SUMMARY OF RELEVANT FACTS**

This is an employment litigation case. TTC operates three Mexican restaurants and a tamale production facility all located in Tucson, Arizona.

TTC hired McBeath in April 2015 as Area Manager of its three restaurants. TTC fired her in February 2016 after McBeath confronted management about their illegal and unethical business practices and because she asked them to pay the bonuses that TTC owed her and the other restaurant general managers.

McBeath sued TTC and its principals for retaliatory discharge and other employment-related claims. [1] TTC countersued and accuses McBeath of stealing confidential information and trade secrets. TTC alleges six separate causes of action. Among them, Count IV, alleges that McBeath violated the Stored Communications Act because, without written authorization, she "accessed, copied, printed, and removed additional Confidential Information [from TTC's computer network], including, but not limited to, TTC's recipes and food-making techniques and/or processes, payroll records, tax records, customer lists, and

---

[1]    Second Amended Complaint, dated March 20, 2017. (Dkt 44).

employee records, for her own benefit and use."[2] TTC stores this information in its computer network.[3]

TTC further contends that McBeath conspired and aided and abetted Maximilian Ivankovich (her son and a TTC employee at the time) "in accessing, copying, printing, removing, and disclosing TTC's Confidential Information without written permission and for their own benefit in violation of McBeath's contractual and fiduciary obligations and in violation of the Stored Communications Act."[4]

When McBeath joined TTC, she received a laptop computer and was given access to TTC's computer network, which she was permitted to access remotely via the Internet. TTC never provided training or education to any employees specifically outlining what information TTC considered confidential and/or proprietary trade secrets.

## STATEMENT OF ISSUES

1.      Does the Stored Communications Act protect the information stored in TTC's computer network if TTC does not operate "a facility through which an electronic communication service is provided or that stores wire or electronic communications?"

2.      Even if the Stored Communications Act were to apply, could McBeath be held liable if she was authorized to access the computer network from which she purportedly took the information TTC regards as confidential and/or proprietary trade secrets?

3.      Does TTC fail to state a claim that McBeath conspired with, and/or aided and abetted, Ivankovich to violate the Stored Communications Act?

---

[2]   Counterclaims ¶32 (20:1-4).
[3]   Counterclaims ¶19 (18:4-7).
[4]   Counterclaims ¶81 (25:28 – 26:2).

# THE STORED COMMUNICATIONS ACT

The Stored Communications Act ("*SCA*") is a federal anti-hacker statute that Congress passed in 1986 as part of the Electronic Communications Privacy Act. "The SCA was enacted because the advent of the Internet presented a host of potential privacy breaches that the Fourth Amendment does not address."[5]

The SCA creates a private cause of action against anyone who:

(1)    intentionally accesses without authorization a facility through which an electronic communication service is provided; or

(2)    intentionally exceeds an authorization to access that facility; and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system." 18 U.S.C. §§ 2701(a)(1), 2707(a).

The SCA prevents "providers" of communication services from divulging private communications to certain entities and individuals. The statute "creates a set of Fourth Amendment-like privacy protections by statute, regulating the relationship between government investigators and service providers in possession of users' private information."[6]

First, the statute limits the government's right to compel providers to disclose information in their possession about their customers and subscribers.[7] "Although the Fourth Amendment may require no more than a subpoena to obtain e-mails, the statute confers greater privacy protection."[8]

---

[5]    *Quon v. Arch Wireless Operating Co., Inc.,* 529 F.3d 892, 900 (9th Cir. 2008) (*citing* Orin S. Kerr, A User's Guide to the Stored Communications Act, and a Legislator's Guide to Amending It, 72 Geo. Wash. L. Rev. 1208, 1209-13 (2004)).

[6]    Kerr at 1212 - 1213.

[7]    18 U.S.C. § 2703 (Required disclosure of customer communications or records).

[8]    Kerr at 1212-13.

Second, the statute limits the right of an Internet Service Provider ("***ISP***")
to disclose information about customers and subscribers to the government
voluntarily.[9]

In the civil context, the SCA regulates two types of providers:  providers of
electronic communication service and providers of remote computing service.

The relevant provisions of the SCA provide a claim against someone who
"intentionally accesses without authorization a facility through which an
electronic communication service is provided . . . and thereby obtains, alters, or
prevents authorized access to a wire or electronic communication while it is in
electronic storage…."[10]

The statute incorporates the definitions in the Wire and Electronic
Communications Interception and Interception of Oral Communications Act [18
U.S.C. §§ 2510-2522] ("***Wiretap Act***") found at 18 U.S.C. § 2510.[11]

The Wiretap Act defines "electronic communication service" as "any
service which provides to users thereof the ability to send or receive wire or
electronic communications."[12]

The term "electronic storage" is defined as "(A) any temporary,
intermediate storage of a wire or electronic communication incidental to the
electronic transmission thereof; and (B) any storage of such communication by an
electronic communication service for purposes of backup protection of such
communication."[13]

---

[9]   *See* 18 U.S.C. § 2702 (Voluntary disclosure of customer communications or records).

[10]   18 U.S.C. §§ 2701(a)(1), 2707(a).

[11]   18 U.S.C. § 2711(1) (definitions chapter).

[12]   18 U.S.C. § 2510(15).

[13]   18 U.S.C. § 2510(17).

The text of the SCA does not support a theory of secondary liability. "Congress made no mention of conspiracy, aiding and abetting, or any other form of secondary liability. The [SCA's] plain language shows that Congress had one category of offenders in mind—i.e., those who directly access, or exceed their authority to access, a facility through which an electronic communication service is provided."[14]

**LEGAL DISCUSSION**

**I.     THE STORED COMMUNICATIONS ACT APPLIES ONLY TO ELECTRONIC COMMUNICATIONS FACILITIES (SUCH AS INTERNET SERVICE PROVIDERS) AND NOT TO BUSINESSES THAT USE THEIR SERVICES.**

The SCA was adopted to offer a range of statutory privacy rights against access to stored account information held by network service providers. In other words, the SCA applies only to information maintained on the Internet and requires the involvement of a third party to create the offending transaction.

TTC's claim for violation of the SCA fails because TTC does not operate a facility that provides "electronic communication services" or a "remote computing service."[15]

The leading case in the Ninth Circuit that construed and applied the SCA is *Theofel v. Farey-Jones*, 359 F.3d 1066, 1072-73 (9th Cir. 2004).

*Theofel* compared an "electronic communication service" provider to a commercial storage facility leased by a customer to store sensitive documents. The court, addressing the issue of when information is in "electronic storage,"

---

[14]   *In Council on American-Islamic Relations Action Network, Inc. v. Gaubatz*, 891 F. Supp. 2d 13, 27 (D.D.C. 2012).

[15]   *Vaquero Energy, Inc. v. Herda,* 2015 U.S. Dist. LEXIS 126122 (E.D. Cal. 2015) (dismissing SCA claim because plaintiff's computers and servers do not fall within the definition of electronic storage or electronic communication service facilities, as required by the SCA).

1  explained that the SCA reflects Congress' judgment that users have a legitimate
2  interest in the confidentiality of communications in electronic storage at a
3  communications facility.

4      Just as trespass protects those who rent space from a commercial storage
5  facility to hold sensitive documents, the SCA protects users whose electronic
6  communications are in electronic storage with an ISP or other electronic
7  communications facility.[16]

8      Applying the reasoning in *Theofel*, the court in *Noel v. Hall*[17] found that the
9  owner of equipment through which third parties could engage in electronic
10  communication was not a provider of "electronic communication services," but
11  rather a user of such services.

12      The plaintiff in *Noel* provided telephone, computer, and fax services to
13  three businesses and routinely tape-recorded calls made to the businesses as
14  back-ups of the original calls. The plaintiff argued that this conduct qualified as
15  "electronic communication services" and that the recordings were properly
16  characterized as electronic storage under the Wiretap Act.

17      The court disagreed, finding that "in the context of the present matter, a
18  provider of an 'electronic communications service' would be Noel's telephone
19  carrier, whereas he himself would qualify as a user of that service. The fact that
20  Noel made his service available to third parties for their use is of no relevance to
21  this analysis."[18]

22      Other courts have found that a personal computer is not an "electronic
23  communication service" provider for the purposes of the SCA. For example, *In re*

---

[16]  *Theofel*, 359 F.3d at 1072-73.
[17]  Civ. No. 99-649-AC, 2012 U.S. Dist. LEXIS 110575, 2012 WL 3241858, at *8 (D. Or. 2012).
[18]  2012 U.S. Dist. LEXIS 110575, [WL] at *9.18

*Pharmatrak, Inc. Privacy Litigation,*[19] the plaintiffs alleged that the defendant's placement of cookies on their computers to store information derived through the plaintiffs' use of their computers and defendants' subsequent access of such information violated the SCA.

The court dismissed the claim finding that a "personal computer is not a 'facility through which an electronic communication service is provided' for the purposes of § 2701."[20]

The court recognized that while personal computers may be used by consumers to access the Internet, "that is not enough for the purposes of the [SCA]. The relevant 'service' is Internet access, and the service is provided through ISPs or other servers, not through Plaintiffs' PCs."[21]

TTC's restaurants sell tamales with the accompanying Mexican food accoutrements (rice, beans, chips, salsa, *etc.*). The restaurants do not operate "a facility through which an electronic communication service is provided."[22]

TTC's Counterclaims contain no allegation that its systems fall within this definition. "[T]here are many problems of Internet privacy that the SCA does not address. The SCA is not a catch-all statute designed to protect the privacy of stored Internet communications; instead it is narrowly tailored to provide a set of Fourth Amendment-like protections for computer networks."[23]

TTC improperly tries to bring every piece of data on a computer system within the protection of the SCA. That's not the purpose of the statute and for that reason TTC's claim against McBeath for violation of the SCA fails.

---

[19]   220 F. Supp. 2d 4, 6-7 (D. Mass. 2002).

[20]   *Id.* at 13.

[21]   *Id.*

[22]   18 U.S.C. §§ 2701(a)(1).

[23]   Orin S. Kerr, <u>A User's Guide to the Stored Communications Act, and A Legislator's Guide to Amending It</u>, 72 Geo. Wash. L. Rev. 1208, 1214 (2004).

## II.   McBEATH IS NOT A HACKER UNDER THE STORED COMMUNICA-TIONS ACT BECAUSE SHE WAS AUTHORIZED TO ACCESS THE COMPANY'S COMPUTER NETWORK.

TTC contends that McBeath acted outside the scope of her employment (*i.e.* without authorization) when she provided confidential information and/or proprietary trade secrets to an unaffiliated third party without TTC's written permission.[24]

TTC cannot prove the SCA protects the information stored in its computer network. But even if it were to do so, TTC must also prove that McBeath acted "without authorization" or "exceed[ed] an authorized access" to proceed with a plausible claim under either 18 U.S.C. § 2701(a)(1) or § 2707(a) of the SCA.

The statute does not define the term "without authorization," but the Ninth Circuit construed identical language that appears in the Computer Fraud and Abuse Act ("*CFAA*"), another federal anti-hacker statute.

The Ninth Circuit's interpretation of these same terms under the CFAA is directly relevant to the analysis under the SCA because the CFAA is a statutory scheme similar to the SCA in that it prohibits unauthorized access to electronic information. *See* 18 U.S.C. § 1030 *et seq.*

The Ninth Circuit has determined that a person uses a computer "without authorization" when "the person has not received permission to use the computer for any purpose (such as when a hacker accesses someone's computer without any permission), or when the employer has rescinded permission to access the computer and the defendant uses the computer anyway."[25]

In *Brekka*, the leading Ninth Circuit case interpreting the CFAA, the employer alleged that one of its former employees, Christopher Brekka, violated the anti-hacker statute by accessing the employer's computer "without

---

[24]   Counterclaims ¶28 (19:11-15).

[25]   *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1135 (9th Cir. 2009) (internal quotations and citations omitted).

1  authorization" and in excess of authorization both while Brekka was employed

2  and ***after he left***. [26] The Ninth Circuit affirmed summary judgment in favor of

3  Brekka and the other defendants. It ruled, in part, that Brekka was authorized to

4  use his employer's computer while he was employed and therefore downloading

5  his employer's files and emailing the documents to his personal email did not

6  violate the CFAA.[27]

7      To reach this conclusion, the Ninth Circuit examined the meaning of

8  "authorization" in the statute. The Ninth Circuit ruled that an individual acting

9  "without authorization" acts "without any permission at all."[28] In other words, a

10  person acting "without authority" has "no rights, limited or otherwise, to access

11  the computer in question."[29] By contrast, an individual who "exceeds authorized

12  access" is someone who "has permission to access the computer, but accesses

13  information on the computer that the person is not entitled to access."[30]

14      The Ninth Circuit articulated a sensible interpretation of the phrase

15  "without authorization" and the phrase "exceeds authorized access":  a person

16  who 'intentionally accesses a computer without authorization' accesses a

17  computer without any permission at all, while a person who 'exceeds authorized

18  access' has permission to access the computer, but accesses information on the

19  computer that the person is not entitled to access."[31]

20      After *Brekka*, the Ninth Circuit further addressed the scope of the term

21  "authorization" in its en banc decision in *United States v. Nosal*, 676 F.3d 854 (9th

22  Cir. 2012) (en banc).

23  ───────────────────

24  [26] 581 F.3d at 1129.

25  [27] *Id.* at 1137.

26  [28] *Brekka*, 581 F.3d at 1133.

27  [29] *Id.*

28  [30] *Id.*

[31] *Id.*

In *Nosal*, the Ninth Circuit explained that "exceeds authorized access" in the CFAA "is limited to violations of restrictions on access to information, and not on restrictions on its use."[32]

For example, an employee with permission to access the information in a company database has not violated the CFAA if the employee misappropriates the information that the employee obtains from that database.[33]

Therefore, for TTC to plead that McBeath acted "without authority" or by "exceeding authorized access," TTC must plead that McBeath either accessed a protected computer without "any permission at all" to access that computer, or accessed a protected computer with permission but accessed information on that computer that McBeath was not entitled to access.[34]

Here, TTC does not allege that McBeath was not authorized to access TTC's computer network or certain information. Instead, TTC alleges that McBeath violated the SCA because she exceeded the scope of her employment when she accessed, copied, printed, and removed Confidential Information from its "Protected Computers" and provided that information to unaffiliated third parties. As with the CFAA, there is no liability under the SCA "when an employer authorizes an employee to use a computer subject to certain limitations, [as] the employee remains authorized to use the computer even if the employee violates those limitations."[35]

TTC provided a company laptop to McBeath and authorized her to access the network to do her job. For this simple reason, TTC cannot even allege, much less prove, that she violated the SCA.

Count IV must be dismissed because it fails as a matter of law.

---

[32] 676 F.3d at 863-64.

[33] *See Id.* at 864.

[34] *Id.*; *Brekka*, 581 F.3d at 1133.

[35] *Brekka*, 581 F.3d at 1130.

1
2

### III.   THE STORED COMMUNICATIONS ACT DOES NOT CREATE A PRIVATE RIGHT OF ACTION FOR CONSPIRACY OR AIDING AND ABETTING.

3

4

5

6

7

8

Counts V and VI of TTC's Counterclaims fail to state a claim that McBeath conspired with, and/or aided and abetted, Maximilian Ivankovich to violate the SCA. First, as explained above, TTC failed to state a claim for violation of the SCA, which precludes liability for conspiracy to commit, or any aiding or abetting of, the underlying violation, as unlawfulness is *a sine qua non* of both conspiracy and aiding and abetting.[36]

9

10

11

Second, even if TTC were able to prove that Ivankovich violated the SCA, Counts V and VI alleged against McBeath still must be dismissed insofar as they assert conspiracy and/or aiding and abetting with respect to that violation.

12

13

14

15

16

17

The Ninth Circuit settled the issue of secondary liability under the SCA in *Freeman v. Direct TV, Inc.*, 457 F. 3d 1001 (9th Cir. 2006). In *Freeman*, the specific question before the Ninth Circuit was whether the SCA "provide[d] for a private cause of action against those who aid and abet, or conspire with, electronic communications service providers in unlawfully disseminating the contents of electronic storage."[37]

18

19

20

21

The plaintiff contended that the defendants conspired with and aided and abetted an electronic service provider in unlawfully disseminating the contents of electronic communications. [38] The district court dismissed the plaintiff's claim

22

23

24

25

26

27

28

---

[36]   *See, e.g., Elektra Entm't Group, Inc. v. Santangelo,* 2008 WL 4452393 *7 n.7 (S.D.N.Y. 2008) (failure to state claim under [SCA] bars liability for conspiracy to violate [SCA]); *United States v. Delgado,* 357 F.3d 1061, 1065-66 (9th Cir. 2004) ("A conspiracy is an agreement to accomplish an illegal objective, coupled with one or more overt acts in furtherance of the illegal purpose and the requisite intent necessary to commit the underlying substantive offense.") (citations omitted); *United States v. Hernandez-Orellana,* 539 F.3d 994, 1006-07 (9th Cir. 2008).

[37]   *Id.* at 1002.

[38]   *Id.* at 1003.

after determining, among other things, that 18 U.S.C. §§ 2702 and 2707 did not create a cause of action for secondary liability claims (i.e., aiding and abetting or conspiracy). The Ninth Circuit determined that dismissal was proper.

Accordingly, TTC's Counts V and VI must be dismissed to the extent they are predicated on theories of conspiracy or aiding and abetting because the SCA does not impose secondary liability on those who may conspire or aid and abet in the violation of this particular anti-hacker statute.

## CONCLUSION

For all the reasons explained above, Counts IV, V and VI of TTC's Counterclaims should be dismissed without leave to amend.

Dated:  March 26, 2017                    *Melissa Martin McBeath*

Melissa Martin McBeath

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that the above document was filed electronically with the Clerk of the United States District Court for the District of Arizona, and was served via hyperlink generated by the court's CM/ECF system, which was sent electronically to:

> Roberto C. Garcia
> *rgarcia@fmazlaw.com*
> Travis L. Tufts
> *ttufts@fmazlaw.com*
> Farhang & Medcoff PLLC
> 4801 E Broadway Blvd., Ste. 311
> Tucson, AZ 85711
> (520) 790-5433

I declare under penalty of perjury under the laws of the State of Arizona and the United States of America that the foregoing is true and correct.

Dated:  March 26, 2017        *Melissa Martin McBeath*

                              Melissa Martin McBeath