1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MELISSA MARTIN McBEATH
3463 E. TERRA ALTA BLVD.
TUCSON, AZ 85716
Ph:  (520) 449-9753
*mel.mcbeath@cox.net*

Pro Se

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA, TUCSON DIVISION

MELISSA MARTIN McBEATH,
an individual,

                Plaintiff,

                        v.

TUCSON TAMALE COMPANY, an
Arizona corporation;
TODD RUSSELL MARTIN;
an individual;
SHERRY MARTIN, an individual; and
LISA MARTIN, an individual,

                Defendants.
_____

AND TUCSON TAMALE COMPANY'S
RELATED COUNTERCLAIMS
_____

Case No. CV 16-462-TUC-DCB (BPV)

**MELISSA MARTIN McBEATH'S
PARTIAL SUMMARY JUDGMENT
MOTION (COUNTERCLAIMS
COUNTS I, II & III)**

[Fed. R. Civ. P. 56(c)]
_____

Assigned to:  Hon. David C. Bury

Complaint Filed:  July 11, 2016

10378.1

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................ii

MOTION and SUMMARY OF RELEVANT FACTS ....................................................1

LEGAL DISCUSSION .....................................................................................2

    I.    THE CLAIM FOR BREACH OF CONTRACT (CONFIDENTIALITY AGREEMENT) FAILS BECAUSE NO EVIDENCE EXISTS THAT McBEATH DISCLOSED OR USED TTC'S CONFIDENTIAL INFORMATION OR THAT TTC HAS SUFFERED ANY DAMAGES AS A RESULT OF THE PURPORTED BREACH ....................................2

    II.    THE CLAIM FOR VIOLATION OF THE ARIZONA UNIFORM TRADE SECRETS ACT FAILS BECAUSE TTC HAS FAILED TO COME FORWARD WITH ANY EVIDENCE THAT McBEATH MISAPPROPRIATED PROPRIETARY INFORMATION OR THAT MOST OF THIS INFORMATION WAS EVEN KEPT SECRET ...............................................5

        A.    TTC Cannot Show "Misappropriation" Of Its Trade Secrets As a Matter Of Law .........................................................5

        B.    The Information At Issue Is Not Even A "Trade Secret" ............7

    III.    THE CLAIM FOR BREACH OF FIDUCIARY DUTY FAILS BECAUSE McBEATH NEVER VIOLATED HER DUTY OF LOYALTY TO HER EMPLOYER ......................................................10

    IV.    McBEATH IS ENTITLED TO STATUTORY ATTORNEYS' FEES. ...............................................11

        A.    The Prevailing Party in a Breach of Contract Claim is Entitled to Attorneys' Fees .............................................11

        B.    The Prevailing Party in a Misappropriation of Trade Secrets Claim Brought in Bad Faith is Entitled to Statutory Attorneys' Fees .......................................12

CONCLUSION...............................................................................13

# TABLE OF AUTHORITIES

## <u>CASES</u>

*Amex Distrib. Co., Inc. v. Mascari,*
   150 Ariz. 510, 724 P.2d 596 (App. 1986) ............................................................ 2

*Arco Indust. Corp. v. Chemcast Corp.,*
   633 F.2d 435 (6th Cir. 1980) ............................................................................... 2

*Chartone, Inc. v. Bernini,*
   207 Ariz. 162, 83 P.3d 1103 (App. 2004) ...................................................... 2, 3

*Enterprise Leasing Co. of Phoenix v. Ehmke,*
   197 Ariz. 144, 3 P.3d 1064 (App. 1999) ......................................................... 7, 8

*Gemisys Corp. v. Phoenix American, Inc.,*
   186 F.R.D. 551 (N.D. Cal. 1999) ........................................................................ 8

*Gilmore v. Cohen,*
   95 Ariz. 34, 386 P.2d 81 (1963) .......................................................................... 3

*McCallister Co. v. Kastella,*
   170 Ariz. 455, 825 P.2d 980 (App. 1992) ......................................................... 10

*Miller v. Hehlen,*
   209 Ariz. 462, 104 P.3d 193 (App. 2005) ...................................................... 7, 8, 9

*Motor City Bagels, L.L.C. v. American Bagel Co.,*
   50 F. Supp.2d 460 (D. Md. 1999) ....................................................................... 9

*Motorola, Inc. v. Fairchild Camera & Inst.,*
   366 F. Supp. 1173 (D. Ariz. 1973) ...................................................................... 7

*Orme School v. Reeves,*
   166 Ariz. 301, 309, 802 P.2d 1000 (1990) ......................................................... 11

*Rancho Pescado, Inc. v. Nw. Mut. Life Ins. Co.,*
   140 Ariz. 184, 680 P.2d 1235 (App. 1984) ...................................................... 3, 4

*Ruckelshaus v. Monsanto Co.,*
   467 U.S. 986 (1984) ............................................................................................ 8

# TABLE OF AUTHORITIES

## <u>CASES</u>

*Isenberg v. Lemon,*
    84 Ariz. 340, 327 P.2d 1016 (1958) ........................................................ 3

*McKesson Chem. Vo. v. Van Waters & Rogers,*
    153 Ariz. 557, 739 P.2d 211 (App. 1987) ............................................. 12

*Mech. Air Eng'g Co. v. Totem Constr. Co.,*
    166 Ariz. 191, 801 P.2d 426  (App. 1989) ............................................. 3

*Modular Mining Systems, Inc. v. Jigsaw Technologies, Inc.,*
    221 Ariz. 515, 212 P.3d 853 (App. 2009) ........................................... 12

*Motorola, Inc. v. Fairchild Camera & Inst.,*
    366 F. Supp. 1173, 1184 (D. Ariz. 1973) .............................................. 7

*Mullins v. Southern Pacific Transp. Co.,*
    174 Ariz. 540, 851 P.2d 839 (App. 1992) ........................................... 12

*True Center Gate Leasing, Inc. v. Sonoran Gate, L.L.C.,*
    427 F.Supp.2d 946 (D. Ariz. 2006)  .................................................... 13

*White River Sheep Co. v. Barkley,*
    37 Ariz. 49, 288 P. 1029 (1930)  ........................................................... 3

## <u>STATUTES</u>

Ariz. Rev. Stat. § 12-341.01  .................................................................. 11, 12

Ariz. Rev. Stat. § 12-349  ........................................................................... 13

Ariz. Rev. Stat. § 44-401 ........................................................................... 7, 8

Ariz. Rev. Stat.  § 44-402  ............................................................................. 7

Ariz. Rev. Stat.  § 44-403 ............................................................................. 7

10378.1

MELISSA MARTIN McBEATH'S PARTIAL
SUMMARY JUDGMENT MOTION
(COUNTERCLAIMS COUNTS I, III & III)

-iii-

CV 16-462-TUC-DCB (BPV)

1

**MOTION**

2       Plaintiff and Counter-defendant Melissa Martin McBeath respectfully

3   moves for partial summary judgment, under Federal Rules of Civil Procedure

4   Rule 56(c), on Count I (Breach of Contract), Count II (Arizona Uniform Trade

5   Secrets Act) and Count III (Breach of Fiduciary Duty) alleged in the counterclaims

6   filed by Tucson Tamale Company ("*TTC*") on March 21, 2017 ("***Counterclaims***").

7   (Dkt. 45)

8       This motion is based on this Memorandum, the accompanying Separate

9   Statement of Undisputed Material Facts, and McBeath's supporting declaration

10  and the declaration of Joshua Cooper, together with such oral and documentary

11  evidence as the Court may permit.

12

**SUMMARY OF RELEVANT FACTS**

13      This is an employment litigation case. TTC operates three Mexican

14  restaurants and a wholesale food production facility all located in Tucson,

15  Arizona. TTC hired McBeath in April 2015 as Area Manager of its three

16  restaurants. TTC fired her in February 2016 after McBeath confronted

17  management about their illegal and unethical business practices and because she

18  asked them to pay the bonuses that TTC owed her and the other restaurant

19  general managers.[1]

20      McBeath sued TTC and its principals for retaliatory discharge and other

21  employment-related claims. (Dkt. 1, 44)

22      TTC countersued, and now accuses McBeath of stealing confidential

23  information and trade secrets. (Dkt. 45) TTC alleges that, without authorization,

24  McBeath disclosed to unaffiliated third parties:  store maintenance data, technical

25  support software, restaurant processes, passwords, data and sales history,

26  financial and payroll data, and business operations reports.

27

28      [1]   Second Amended Complaint, dated March 20, 2017. (Dkt. 44)

1
2
3
4
5
6

When McBeath joined TTC, she received a laptop computer and was given access to TTC's computer network, which she could access remotely via the Internet. TTC never provided training or education to any employees specifically outlining what information TTC considered confidential and/or proprietary trade secrets. McBeath never accessed anyone's personal or company email account(s) but her own or those that TTC authorized her to access.[2]

7
8

**LEGAL DISCUSSION**

9
10
11
12

**I.     THE CLAIM FOR BREACH OF CONTRACT (CONFIDENTIALITY AGREEMENT) FAILS BECAUSE NO EVIDENCE EXISTS THAT McBEATH DISCLOSED OR USED TTC'S CONFIDENTIAL INFORMATION OR THAT TTC HAS SUFFERED ANY DAMAGES AS A RESULT OF THE PURPORTED BREACH.**

13
14
15
16
17
18
19

TTC's counterclaims amount to nothing more than wildly speculative conspiracies and conjecture that McBeath engaged in a concerted effort to steal and exploit TTC's confidential information in violation of a Confidentiality Agreement that she signed when McBeath joined the company. The few e-mails that TTC points to as evidence of the breach relate to exchanges McBeath had with an accountant and a computer expert wherein she sought advice on discreet matters that benefitted TTC.

20
21
22

TTC authorized McBeath to communicate with these two experts who graciously offered their professional services without charging their standard professional fees because of their personal friendship with her. (UMF ¶ 1)

23
24
25

Even if McBeath had improperly disclosed or used TTC's confidential information, TTC failed to show any damages resulting from the alleged breach. It is black-letter law that a showing of damages is required for a successful breach

26
27
28

----

[2]   McBeath's Separate Statement of Undisputed Material Facts ISO of Partial Summary Judgment Motion, dated March 27, 2017 ("*__UMF__*") ¶2.

of contract claim.[3] TTC has no evidence it can proffer that shows the company suffered any damages and loss of good will proximately caused by McBeath's purported breach of the Confidentiality Agreement. (UMF ¶¶ 8,9)

In an action based on breach of contract, "the plaintiff [TTC] has the burden of proving the existence of a contract, the breach of the contract, and resulting damages."[4] TTC contends that McBeath's misappropriation of confidential information and trade secrets, and diminished value of the company's goodwill, resulted in damages in an amount equal to at least one year of TTC's sales revenue after tax, or $3,257,000. (UMF ¶ 8)

It is incumbent on the claimant to prove the alleged lost profits by a "reasonable method" and a "reasonable basis in the evidence" before the jury is permitted to contemplate such a claim.[5] But here, there is absolutely no proof of lost profits with any type of specificity that TTC has provided.[6]

> The requirement of "reasonable certainty" in establishing the amount of damages applies with added force where a ***loss of future profits*** is alleged. This is so because such loss is capable of proof more closely approximating "mathematical precision." In other words, the plaintiff in every case should supply some reasonable basis for computing the amount of damage and must do so with such precision as, from the nature of his claim and the

---

[3]   *See Chartone*, 207 Ariz. At 170, P 30, 83 P.3d at 1111(noting existence of damages is essential element of breach-of-contract action).

[4]   *Chartone, Inc. v. Bernini*, 207 Ariz. 162, 170, 83 P.3d 1103, 1111 (App. 2004)

[5]   *See Rancho Pescado, Inc. v. Nw. Mut. Life Ins. Co.*, 140 Ariz. 184, 184, 680 P.2d 1235, 1245 (App. 1984).

[6]   *See Isenberg v. Lemon*, 84 Ariz. 340, 350, 327 P.2d 1016, 1023 on reh'g, 84 Ariz. 364, 329 P.2d 882 (1958);  *Mech. Air Eng'g Co. v. Totem Constr. Co.*, 166 Ariz. 191, 193, 801 P.2d 426, 428 (App. 1989) (absent a liquidated damages clause, a plaintiff in a breach of contract case has the burden of proving the amount of actual damages caused by the breach).

MELISSA MARTIN McBEATH'S PARTIAL SUMMARY JUDGMENT MOTION (COUNTERCLAIMS COUNTS I, III & III)     -3-     CV 16-462-TUC-DCB (BPV)

10378.1

available evidence, is possible. In our view, the trial judge here was justified in finding that plaintiffs failed to satisfy either requirement.[7]

TTC's claim for damages is based solely on conjecture.[8]

TTC has not complied fully with the requirements of Fed. R. Civ. P. 26(a)(1)(A)(iii), which provides that "a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered."

No recovery can be had for speculative or remote damages. "Actual damages only may be secured. Those that are speculative, remote, uncertain, may not form the basis of a lawful judgment. The actual damages which will sustain a judgment must be established, not by conjectures or unwarranted estimates of witnesses, but by facts from which their existence is logically and legally inferable. The speculations, guesses, estimates of witnesses, form no better basis of recovery than the speculations of the jury themselves."[9]

In short, TTC has completely failed to articulate and to present a legally cognizable and supported damages claim. For this reason, Count I for Breach of Contract (Confidentiality Agreement) fails as a matter of law.

---

[7]   *Gilmore v. Cohen,* 95 Ariz. 34, 36; 386 P.2d 81, 82-83 (1963) (emphasis added).

[8]   *Rancho Pescado Co. v. Northwestern Mutual Life Ins. Co.,* 140 Ariz. 174,184, 680 P. 2d 1235 (Ct. App. 1984) (holding that to award loss of business profits there "must be a reasonable basis in the evidence for the trier of fact to fix computation when a dollar loss is claimed").

[9]   *White River Sheep Co. v. Barkley,* 37 Ariz. 49, 61, 288 P. 1029, 1034 (1930).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**II.    THE CLAIM FOR VIOLATION OF THE ARIZONA UNIFORM TRADE SECRETS ACT FAILS BECAUSE TTC HAS NO EVIDENCE THAT McBEATH MISAPPROPRIATED PROPRIETARY INFORMATION OR THAT MOST OF THIS INFORMATION WAS EVEN KEPT SECRET.**

To prevail on a trade secret misappropriation claim under the Arizona Uniform Trade Secrets Act, TTC must present evidence that satisfies a two-prong inquiry. *See* A.R.S. 44-401 *et seq.* TTC must show that the information TTC seeks to protect qualifies as a "trade secret." A.R.S. § 44-401(4). After meeting this burden, TTC must then prove "misappropriation" by McBeath. A.R.S.  44-401(2). These are two independent elements and TTC's failure to meet each mandates the entry of summary judgment.

First, TTC cannot meet its burden of showing misappropriation of any of its trade secrets. Whatever confidential information and trade secrets McBeath accessed during the time that she worked for the company, she did so with TTC's express authorization. TTC can provide no evidence to the contrary. (UMF ¶¶ 1,16)

Second, TTC implemented virtually no security measures to protect its trade secrets, such as its recipes and food-making techniques and/or processes. TTC did not even train its employees on what information TTC regarded as trade secrets. (UMF ¶¶ 2,5)

**A.    TTC Cannot Show "Misappropriation" Of Its Trade Secrets As a Matter Of Law.**

Much of the confidential information that TTC accuses McBeath of misappropriating does not qualify as protectable "trade secrets" within the meaning of the Trade Secrets Act.

That point aside, however, summary judgment is appropriate even without deciding whether the information TTC accuses McBeath of stealing constitutes "trade secrets" because no evidence exists that McBeath stole any of this

MELISSA MARTIN McBEATH'S PARTIAL SUMMARY JUDGMENT MOTION (COUNTERCLAIMS COUNTS I, III & III)    -5-    CV 16-462-TUC-DCB (BPV)

10378.1

1    ostensible proprietary information.

2            Under the Trade Secrets Act, misappropriation occurs when a trade secret

3    is used or acquired "by a person who knows or has reason to know that the trade

4    secret has been acquired by improper means," or by a person who knows or has

5    reason to know that the secret "was acquired under circumstances giving rise to

6    duty to maintain its secrecy." A.R.S. § 44-401(2).

7            The term "improper means" is defined to include "theft, bribery,

8    misrepresentation, breach or inducement to breach of a duty to maintain secrecy

9    or espionage through electronic or other means." A.R.S. § 44-401(1).

10           TTC contends that McBeath exceeded her authorized access to its computer

11   systems to steal TTC's trade secrets and is therefore "improper" under the statute.

12           To be clear, TTC does not contend, because it cannot, that McBeath was

13   _never_ authorized to use or to access its computer systems, only that she exceeded

14   her authorization because she allegedly stole TTC's trade secrets and disclosed

15   these trade secrets to unaffiliated third parties.

16           The two persons that TTC accuses of having received TTC's trade secrets

17   did not receive such confidential information from McBeath that she and they

18   were not authorized to see. (UMF ¶ 1)

19           Whatever information they did receive, they have never distributed to any

20   third parties nor have they exploited this information in any way for personal

21   gain or to TTC's detriment. Because McBeath's use of the information at issue was

22   entirely proper, TTC's misappropriation claim should be summarily dismissed.

23

24

25

26

27

28

-6-

### B.    The Information At Issue Is Not Even A "Trade Secret."

A second and independent basis for summary judgment on TTC's misappropriation claim is that the information alleged to have been used by McBeath does not qualify as a "trade secret" under Arizona's Uniform Trade Secrets Act. Ariz. Rev. Stat. § 44-402(A), 44-403(A).

A trade secret must "derive[] independent economic value ... from not being generally known ... and not being readily ascertainable by proper means ... by other persons who can obtain economic value from its disclosure or use."[10] It must also be "the subject of efforts that are reasonable under the circumstances to maintain its secrecy."[11]

By definition, to qualify as a trade secret, the subject matter involved must, in fact, be secret.[12] Trade secret law provides protection to the owner of the information, but only while the information remains a secret.[13] Accordingly, matters of general knowledge in an industry cannot be appropriated by one as secret.[14] If an owner of the information discloses it and fails to protect its confidentiality, the information has lost whatever competitive value its exclusivity held for the owner.[15]

Information will be considered public and not protected if, among other things, it is known to principal trade persons who can obtain an economic benefit

---

[10]    Ariz. Rev. Stat. § 44-401(4)(a).

[11]    Ariz. Rev. Stat. § 44-401(4)(b); *Miller v. Hehlen,* 209 Ariz. 462, 471, 104 P.3d 193, 202 (App. 2005) (affirming summary dismissal of misappropriation claim)

[12]    *Enterprise Leasing Co. of Phoenix v. Ehmke,* 197 Ariz. 144, 149, 3 P.3d 1064, 1069 (App. 1999) ("the hallmark of a trade secret obviously is its secrecy").

[13]    *Motorola, Inc. v. Fairchild Camera & Inst.,* 366 F. Supp. 1173, 1184 (D. Ariz. 1973).

[14]    *Amex Distrib. Co., Inc. v. Mascari,* 150 Ariz. 510, 516, 724 P.2d 596, 602 (App. 1986).

[15]    *Enterprise,* 197 Ariz. at 149, 3 P.3d at 1069.

from the information and are aware that the information is not a trade secret.[16]
"The extent of the property right [in a trade secret] is defined by the extent to
which the owner of the secret protects his interest from disclosure to others."[17]

The owner of an alleged secret must not only establish that its subject
matter is secret, but must also demonstrate that the owner exercised reasonable
care to maintain its secrecy.[18] "Indeed, the most important factor in gaining trade-
secret protection is demonstrating that the owner has taken such precautions as
are reasonable under the circumstances to preserve the secrecy of the
information."[19] "As many courts have explained, a business that takes only scant
precautions in guarding the confidentiality of the secret will not receive
protection."[20] For this reason, ***__subjective intent to treat something as secret,
never acted on by the company, is insufficient as a matter of law to warrant
trade secret protection.__***"[21]

Although the question of whether a party made reasonable efforts to
maintain secrecy may be, in many cases, a question for a jury, "courts routinely
summarily adjudicate cases in which the plaintiff did not take steps to ensure the
confidentiality of the material."[22]

---

[16]   *See Enterprise,* 197 Ariz. at 149, 3 P.3d at 1069, *citing* Uniform Trade Secrets
Act § 1 cmt. (1985).

[17]   *Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 1002 (1984).

[18]   A.R.S. § 44-401(4)(b); *Miller,* 209 Ariz. at 471, 104 P.3d at 202.

[19]   *Enterprise*, 197 Ariz. at 150, 3 P.3d at 1070 (citation omitted); A.R.S. § 44-
401(4)(b).

[20]   *Id.* (citation omitted).

[21]   *Arco Indust. Corp. v. Chemcast Corp.,* 633 F.2d 435, 443 (6th Cir. 1980).

[22]   *Gemisys Corp. v. Phoenix American, Inc.,* 186 F.R.D. 551, 558 (N.D. Cal. 1999)
(granting summary judgment on a misappropriation claim where plaintiff
disclosed information to third parties and failed to take sufficient action to
preserve confidentiality).

10378.1

In these cases, courts have held that, under the circumstances, no reasonable jury could conclude that reasonable steps were taken to preserve the confidentiality of the alleged trade secret. Such is the case here.[23]

TTC's conclusory statements, unsupported by any evidence, cannot generate a genuine issue of fact that can help TTC avoid summary judgment. To survive a motion for summary judgment, TTC must affirmatively set forth facts establishing a genuine dispute. TTC never explained what are its trade secrets. What recipes, what specific sales data, what processes does TTC regard as secret and proprietary? (UMF ¶ 2)

TTC may not rely merely on allegations or denials of its own pleading. TTC must, by affidavits or as otherwise provided in this rule, set forth specific facts showing a genuine issue for trial. Because TTC cannot do so, Count II based on violation the Arizona Uniform Trade Secrets Act should be dismissed.

---

[23] *See also, Miller,* 209 Ariz. at 471, 104 P.3d at 202 (affirming summary judgment in part because defendant disclosed the alleged secret to plaintiff); *Self Directed Placement Corp. v. Control Data Corp.,* 908 F.2d 462, 465-66 (9th Cir. 1990) (affirming summary judgment where employees were required to sign non-disclosure agreements but information was widely disclosed to third parties); *Motor City Bagels, L.L.C. v. American Bagel Co.,* 50 F. Supp.2d 460, 480 (D. Md. 1999) (granting summary judgment where plaintiff distributed the alleged secret to third parties and undertook scant efforts to preserve its confidentiality); *In re Dippin' Dots Patent Litig.,* 249 F. Supp.2d 1346, 1375-76 (N.D. Ga. 2003) (granting summary judgment because plaintiff failed to take reasonable measures to protect alleged secret); *Auto Channel, Inc. v. Speedvision Network,* LLC, 144 F. Supp.2d 784, 787 (W.D. Ky. 2001) (granting summary judgment because plaintiff disclosed its product within the industry and did not take sufficient precautions to indicate its confidentiality); *Southwest Whey, Inc. v. Nutrition 101, Inc.,* 117 F. Supp.2d 770, 777 (C.D. Ill. 2000) (summary judgment granted where plaintiff disclosed the alleged secret without imposing confidentiality requirements); *Nat'e Pesto Indus., Inc. v. Hamilton Beach, Inc.,* 18 U.S.P.Q.2d 1993, 2003 (N.D. Ill. 1990) (granting summary judgment because plaintiff's efforts to protect its product were "fairly lax" in light of its disclosures).

1
2

### III.   THE CLAIM FOR BREACH OF FIDUCIARY DUTY FAILS BECAUSE McBEATH NEVER VIOLATED HER DUTY OF LOYALTY TO HER EMPLOYER.

3

In Arizona, an employee owes her employer a duty of loyalty.[24] To

4

establish this claim, TTC must prove that:  1) McBeath breached her duty of

5

loyalty; 2) TTC suffered damages; and 3) the breach was a cause of TTC's

6

damages.[25] All the acts by McBeath alleged in the Counterclaims either were

7

taken at the express direction of McBeath's superior at the time when she was

8

TTC's Area Manager, according with company practice and policy, were in the

9

best interests of TTC, or simply did not occur. (UMF ¶ 11)

10

Because of this, TTC cannot demonstrate that McBeath breached her duty

11

of loyalty to the company or that TTC's alleged damages were caused by

12

McBeath. As explained above, TTC has no evidence that McBeath

13

misappropriated any trade secrets or disclosed to unaffiliated third parties

14

_____

15

[24]   *McCallister Co. v. Kastella,* 170 Ariz. 455, 457, 825 P.2d 980, 982 (App. 1992)

16

(citing Restatement (Second) of Agency § 2 (1958)). Restatement (Third) of

17

Agency § 8.01 (2006) states the general principle. Other sections explain more specific aspects. See Restatement (Third) of Agency § 8.02 (2006) (duty not to

18

acquire a material benefit from a third party in connection with transactions conducted or other actions taken on behalf of the employer or otherwise through

19

the employee's use of his or her position); *id.* § 8.03 (duty not to deal with the

20

employer on behalf of an adverse party); *id.* § 8.04 (duty not to compete with the

21

employer); *id.* § 8.05 (duty not to use the employer's property for his or her own purposes or those of a third party); *id.* § 8.06 (employer's consent affecting the

22

duty); *id.* § 8.07 (duty to act in accordance with express or implied terms of

23

contract between employee and employer); *id.* § 8.08 (duty to use care, compe-

24

tence, and diligence); *id.* § 8.09 (duty to act only within scope of actual authority and to comply with employer's lawful direction); id. § 8.10 (duty to act reasona-

25

bly and refrain from conduct likely to damage employer's principal enterprise);

26

*id.* § 8.11 (duty to provide information); *id.* § 8.12 (duty not to deal with

27

employer's property so it appears as that of the employee; not to commingle the employer's property; and to keep and render accounts).

28

[25]   *See* RAJI (CIVIL) 4th Commercial Torts Nos. 1A-1D.

10378.1

1  otherwise confidential information, ***the disclosure of which caused TTC to suffer***

2  ***damages***. Nor can TTC present any evidence that McBeath improperly solicited

3  TTC's customers, employees or vendors. TTC cannot point to a single conver-

4  sation that McBeath had in which she solicited business or employment from

5  competitors or engaged in some kind of corporate espionage intended to harm

6  TTC or that she did or said anything to disparage TTC's reputation in any way.

7       A summary judgment motion on this claim is appropriate because "the

8  facts produced in support of the claim or defense have so little probative value,

9  given the quantum of evidence required, that reasonable people could not agree

10 with the conclusion advanced by the proponent of the claim or defense."[26]  There

11 is no evidence that TTC can present that will raise a factual issue on its breach of

12 fiduciary duty claim therefore should be summarily dismissed.

### IV.   McBEATH IS ENTITLED TO STATUTORY ATTORNEYS' FEES.

15       McBeath is entitled to attorneys' fees incurred defending against TTC's

16 meritless claims for breach of contract, misappropriation of trade secrets and

17 breach of fiduciary duty. This motion was researched, drafted and filed in the

18 parallel state court action by McBeath's attorney, Ruchit Agrawal. The motion

19 will not be ruled on because that action was stayed on March 27, 2017. (Dkt 50)

### A.   The Prevailing Party in a Breach of Contract Claim is Entitled to Attorneys' Fees.

21       If the Court dismisses Count I (Breach of Contract), McBeath will be

22 entitled to recover attorneys' fees, as the prevailing party, under Ariz. Rev. Stat.

23 sec. 12-341.01(A), which provides:

> In any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney fees. If a written settlement offer is rejected and the judgment finally obtained is equal to or more favorable to the offeror than an offer made in writing to

[26]  *Orme School v. Reeves,* 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990).

1
2
3
4

settle any contested action arising out of a contract, the offer or is deemed to be the successful party from the date of the offer and the court may award the successful party reasonable attorney fees. This section shall not be construed as altering, prohibiting or restricting present or future contracts or statutes that may provide for attorney fees.

5
6

If the Court dismisses Count III (Breach of Fiduciary Duty), McBeath will be entitled to recover attorneys' fees under this statute as well.

7
8
9
10
11
12
13
14

Arizona courts award attorneys' fees on non-contractual claims as long as a contract served as the basis, source, or origin of the dispute.[27] Attorneys' fees may be awarded under the statute for non-contract causes of action that are deemed to "arise out of" contract. A tort cause of action, for example, arises out of a contract under A.R.S. § 12-341.01 when the tort and contract claims are interwoven and overlapping, as they are here.[28] Actions involving employment have been consistently construed as arising out of a contract, entitling a prevailing employee to recover attorneys' fees under A.R.S. § 12-341.01(A).[29]

15
16

**B.**     **The Prevailing Party in a Misappropriation of Trade Secrets Claim Brought in Bad Faith is Entitled to Statutory Attorneys' Fees.**

17
18
19

If the Court dismisses Count II (Arizona Uniform Trade Secrets Act), McBeath will be entitled to recover attorneys' fees under Ariz. Rev. Stat. sec. 44-404, which provides:

20
21

The court may award reasonable attorney fees to the prevailing party for any of the following:

22
23

**1.   *A claim of misappropriation made in bad faith.***

24
25
26
27
28

[27]   *See McKesson Chem. Vo. v. Van Waters & Rogers,* 153 Ariz. 557, 739 P.2d 211 (App. 1987).
[28]   *Modular Mining Systems, Inc. v. Jigsaw Technologies, Inc.,* 221 Ariz. 515, 212 P.3d 853 (App. 2009).
[29]   *Mullins v. Southern Pacific Transp. Co.,* 174 Ariz. 540, 851 P.2d 839 (App. 1992).

MELISSA MARTIN McBEATH'S PARTIAL SUMMARY JUDGMENT MOTION (COUNTERCLAIMS COUNTS I, III & III)     -12-     CV 16-462-TUC-DCB (BPV)

10378.1

1

2

    2.  A motion to terminate an injunction made or resisted in bad faith.

    3.  Willful and malicious misappropriation.

3

4

5

6

7

8

9

10

      TTC sued McBeath for misappropriation of trade secrets solely to harass and to intimidate. TTC had no evidence of such misappropriation. Even if it did, TTC knew that it did not suffer any damages as a result of the purported misappropriation. Arizona courts remain silent on the meaning of bad faith taken in the context of Arizona's version of the Uniform Trade Secrets Act. The only Arizona case found referencing the issue is *True Center Gate Leasing, Inc. v. Sonoran Gate, L.L.C.*, 427 F.Supp.2d 946 (D. Ariz. 2006) in which the court determined no fees could be awarded because there had been no showing of bad faith.

11

12

13

14

15

      Other Arizona statutes that address attorneys' fees in the context of bad faith, however, instruct that "bad faith" is conduct that constitutes harassment or a claim made that is groundless. *See e.g.*, Ariz. Rev. Stat. § 12-349. Here, TTC brought meritless claims "without substantial justification," which makes TTC's bad-faith litigation tactics sanctionable conduct under A.R.S. § 12-349(A).

16

17

**CONCLUSION**

18

19

20

      For all the reasons explained above, Counterclaim Plaintiff Tucson Tamale Company's Counts I, II and III should be summarily dismissed with prejudice and attorneys' fees and costs should be awarded to McBeath.

21

22

Dated:  March 27, 2017           Respectfully submitted,

23

24

*Melissa Martin McBeath*

Melissa Martin McBeath

25

26

27

28

MELISSA MARTIN McBEATH'S PARTIAL
SUMMARY JUDGMENT MOTION
(COUNTERCLAIMS COUNTS I, III & III)

-13-

CV 16-462-TUC-DCB (BPV)

1
2
3
4
5

**CERTIFICATE OF SERVICE**

I hereby certify that the above document was filed electronically with the Clerk of the United States District Court for the District of Arizona, and was served via hyperlink generated by the court's CM/ECF system, which was sent electronically to:

6
7
8
9
10
11
12

Roberto C. Garcia
*rgarcia@fmazlaw.com*
Travis L. Tufts
*ttufts@fmazlaw.com*
Farhang & Medcoff PLLC
4801 E Broadway Blvd., Ste. 311
Tucson, AZ 85711
(520) 790-5433

13
14

I declare under penalty of perjury under the laws of the State of Arizona and the United States of America that the foregoing is true and correct.

15
16
17
18

Dated:  March 27, 2017        *Melissa Martin McBeath*
                        Melissa Martin McBeath

19
20
21
22
23
24
25
26
27
28

MELISSA MARTIN McBEATH'S PARTIAL
SUMMARY JUDGMENT MOTION            -14-            CV 16-462-TUC-DCB (BPV)
(COUNTERCLAIMS COUNTS I, III & III)