# Farhang & Medcoff

4801 E. Broadway Boulevard, Suite 311
Tucson, Arizona 85711
T: 520.790.5433

Ali J. Farhang (#019456)
afarhang@fmazlaw.com

Roberto C. Garcia (#026246)
rgarcia@fmazlaw.com

Travis L. Tufts (#029373)
ttufts@fmazlaw.com

Attorneys for Defendants / Counterplaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Melissa Martin McBeath,<br><br>                Plaintiff,<br><br>        v.<br><br>Tucson Tamale Company,<br><br>                Defendant. | NO. CV 16-462-TUC-DCB (BPV)<br><br>**MOTION TO QUASH AND FOR PROTECTIVE ORDER PROTECTING THIRD-PARTY KOTY-LEAVITT INSURANCE AGENCY FROM PLAINTIFF'S SUBPOENA**<br><br>[ORAL ARGUMENT REQUESTED]<br><br>Assigned to Judge David C. Bury and Judge Bernardo P. Velasco |
| Tucson Tamale Company, an Arizona corporation,<br><br>                Counterplaintiff,<br><br>        v.<br><br>Melissa Martin McBeath and John/Jane Doe Martin McBeath, husband and wife,<br><br>                Counterdefendants. | |

00313709.2

Having recently amended her complaint and having agreed only days ago to stay her separately litigated Pima County Superior Court action ("Superior Court Matter"), Plaintiff Melissa Martin McBeath ("McBeath"), after allowing this action to languish for months, now looks to prosecute this case with a newfound sense of urgency. Conveniently, McBeath's focus on this action and her urgency come *only after* unfavorable rulings limiting her identical and abusive litigation tactics in the Superior Court Matter. One such unfavorable ruling was the Superior Court's February 28, 2017 Order quashing McBeath's subpoena directed at Defendant Tucson Tamale Company's ("TTC") insurance broker – Koty Leavitt Insurance Agency ("Koty-Leavitt").

In a telling reflection of her gamesmanship, **within two days** of the Superior Court's Order, McBeath turned to this concurrently-litigated District Court case, proclaiming "[her] reading of the federal rules" enabled her to serve a nearly identical, harassing subpoena on Koty-Leavitt just days after the ink dried on Judge Gustavo Aragon's determination in favor of TTC. McBeath's true motivation – to harass TTC and, now, its third-party insurance broker – becomes clear by merely referencing the allegations of her Second Amended Complaint (see Doc. No. 44). Liability insurance, the act of procuring the insurance, insurance coverage decisions, or indeed the term "liability insurance" itself appear nowhere in McBeath's Complaint.[1] Insurance bears absolutely no relevance to McBeath's employment-based discrimination claims, wrongful termination claims, and unpaid wage claims, nor can she articulate any legitimate bases for seeking discovery from TTC's insurance broker. Yet, she served the subpoena and engaged in her typically vexatious conduct, as discussed *infra*, all with the stated end of exhausting Defendants' legal resources.

This Court should not allow McBeath's improper use and abuse of the judicial system to continue. To that end, Defendants TTC, Todd Russell Martin, Sherry Martin, and Lisa Martin (collectively, "Defendants"), by and through undersigned counsel, hereby

---

[1] The term "insurance" appears in one allegation of the Second Amended Complaint; paragraph 44. The allegation relates to a purported severance package offered to McBeath and her legal opinion that contracts of adhesion are unlawful in Arizona.

00313709.2

submit this Motion to Quash and for Protective Order together with the following Memorandum of Points and Authorities, the pleadings and papers on file with the Clerk of this Court and on file with the Clerk of the Arizona Superior Court (Pima County), case no. C20161749, which TTC requests the Court take judicial notice of, in support this Motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

In compliance with their disclosure obligations in the Superior Court Matter, and in response to an informal request from McBeath, Defendants disclosed Koty-Leavitt as their insurance broker and produced a copy of their employment practices liability insurance policy.  Shortly thereafter, McBeath propounded discovery seeking, among other things, information relating to Defendants' liability insurance coverage decisions, communications with Koty-Leavitt, and Defendants' insurance history.  See Ex. 1, McBeath's Third Set Non-Uniform Interrogs.  Subject to objection, and in a good faith effort to avoid yet another motion to compel,[2] Defendants disclosed circumstances involving a recent change in their coverage as well as coverage history related to the period of McBeath's employment.  See Ex. 2, TTC's Resp. Third Set Non-Uniform Interrogs.

Apparently dissatisfied with breadth of information provided – information already exceeding the scope of its disclosure obligations, Defendants' good faith discovery obligations, and well established law on the admissibility of liability insurance – McBeath subpoenaed Koty-Leavitt (the "Superior Court Subpoena") seeking documents and communications unrelated to McBeath (see Ex. 3, Koty-Leavitt Sup. Ct. Subpoena, Ex. A, Req. No. 1), documents relating generally to TTC (see id. at Req. No. 4), and Koty-Leavitt's internal communications relating to McBeath before and after the course of her employment with TTC (see id. at Req. No. 2).

Defendants moved to quash the Superior Court Subpoena because, among other things, the claims raised in the Superior Court Matter related to the terms and conditions of

---

[2] McBeath filed five motions to compel in the Superior Court Matter – none of which she obtained any substantive relief – among numerous other discovery motions over the course of one year. Defendants anticipate similar abuses now that her claims have been consolidated in this venue.

00313709.2

McBeath's employment and her employment termination, not insurance.  On February 28, 2017, the Superior Court granted Defendants' motion, finding "the information sought is not admissible nor is it reasonable [sic] calculated to lead to the discovery of admissible evidence." Ex. 4, <u>Minute Entry Order</u>, Feb. 28, 2017 at p. 3.

Two days after the Superior Court's order quashing the Superior Court Subpoena, McBeath e-mailed a letter to Defendants' counsel indicating, "insurance agreements are expressly discoverable under Fed. R. Civ. P. 26(a)(1)(A)(iv)…In my reading of the federal rules, any items are properly discoverable if they relate to 'any nonprivileged matter that is relevant to any party's claim or defense'...I believe I am entitled to all non-privileged information from Koty-Leavitt that relates to my claims." <u>See</u> Ex. 5, <u>M. McBeath Ltr.</u>, Mar. 2, 2017.  McBeath served a subpoena issued by the district court on Koty-Leavitt on March, 10, 2017 (the "Subpoena").  (<u>See</u> Notice Proof Service, Doc. No. 40); <u>see also</u> Ex. 6, Federal Ct. Subpoena.

Despite Defendants' inquiry about specific evidence McBeath anticipates to discover from Koty-Leavitt relevant to proving her Title VII claims (<u>see</u> Ex. 7, <u>T. Tufts E-mail</u>, Mar. 10, 2017 ("What specifically are you seeking from Koty-Leavitt that you believe is relevant to proving your Title VII claims?")), McBeath refused to answer the direct question[3] either by e-mail, e-mailed letter, or in person.  <u>See</u> Ex. 8, <u>E-mail Chain Regarding Koty-Leavitt</u>.

Hoping to avoid additional motion practice and preserve legal *and* judicial resources, Defendants' counsel conferred with McBeath regarding concerns the Subpoena seeks irrelevant evidence and privileged pre-litigation communications.   After an in-person meeting, McBeath agreed to a reasonable mechanism to help alleviate Defendants' concerns and avoid motion practice.   To wit, she proposed "[to] ask Koty-Leavitt to send the documents to you tomorrow so that you may review them before I receive them.  If you

_____

[3] McBeath tends to avoid answering direct questions cutting to the core of her frivolous discovery practice, motion practice, or the myriad of inconsistent statements underlying her discrimination claims.  Instead, she resorts to conclusory statements "[she's] entitled to it" or "[she] just thinks" something will be discovered.  The most likely reason for this is that she is not litigating this case and, instead, is merely an innocent strawman doing the bidding of the disbarred shadow counsel assisting her.

1    believe there are documents that should not be produced, then please proceed with a motion

2    to quash production of those specific documents." See Ex. 9, M. McBeath E-mail and Ltr.,

3    Mar. 23, 2017.  Of note, McBeath e-mailed her proposal at 5:25 p.m. on March 23rd.

4       What ensued from this communication is a telling reflection of McBeath and her

5    shadow legal counsel's gamesmanship furthering their vexatious and harassing behavior

6    pervasive in the Superior Court Matter.

7       Defendants' counsel did not respond to McBeath's proposal before 9:50 a.m. on

8    March 24, 2017 – less than two hours into the next business day.  Instead of allowing a

9    reasonable time for Defendants' response, McBeath instead e-mailed a letter to Koty-

10    Leavitt.  Therein, McBeath, assuming her proposal would be accepted, outlined the

11    mechanism for production.  Therein, **she conveniently inserted a cost/fee-shifting**

12    **provision**.  See Ex. 10, M. McBeath E-mail and Letter, March 24, 2017 ("Please send a

13    copy of the documents to [counsel] immediately.  His client will cover your costs.")

14    (emphasis added).  Additionally, she conveniently declared a date by which she would

15    "pick up documents responsive to the subpoena," despite there being no mention of this

16    purported deadline in her March 23, 2017 proposal. Compare Ex. 10 with Ex. 9.  Of course,

17    Defendants had to exhaust their legal resources clarifying the record with Koty-Leavitt.

18    See Ex. 11, T. Tufts E-mail, Mar. 24, 2017.

19       Over the following week, Koty-Leavitt worked diligently to respond to McBeath's

20    subpoena until it reached McBeath's Document Request Number 4; asking it to produce

21    any and all communications related to TTC from January 2015.  See Ex. 6 at Req. No. 4

22    (produce "documents that relate to [TTC] dated, created, or that you received since January

23    2015 through the date that you respond to this subpoena.").  Because TTC has multiple

24    lines of insurance brokered through Koty-Leavitt, this request implicated hundreds if not

25    thousands of documents, frustrating Koty-Leavitt's production to Defendants' counsel.

26    Shortly after McBeath agreed to narrow the request to TTC's employment practices

27    liability policy, Koty-Leavitt produced documents to Defendants' counsel on March 29,

28    2017.  See Ex. 12, T. Tufts E-mail, Mar. 29, 2017.

00313709.2

Having not received the subpoena production for review until the afternoon on March 29, 2017, faced with McBeath's unilateral insertion of a "pick up" date on March 30, 2017, and because of Koty-Leavitt's expression of confusion about the production review mechanism, Defendants' counsel e-mailed McBeath, asking she honor the March 23, 2017 agreement – i.e. to allow Defendants an opportunity to review the documents and assert objections before her review.  See id.  In good faith, Defendants' counsel offered to expedite the review period to resolve any potential discovery issues.  See id.  McBeath, "as a professional courtesy,"[4] gave Defendants one day to perform what she deemed a "perfunctory review" of documents and communications produced by Koty-Leavitt.  See Ex. 13, M. McBeath Letter, March 30, 2017.

Because of McBeath's unilateral alteration of the agreed upon terms for production – terms themselves that initially forestalled the need for additional motion practice – McBeath's refusal to honor a reasonable compromise to an already irrelevant subpoena, and because McBeath has extended her "professional" harassment upon an innocent third-party, Defendants must necessarily burden this Court with another McBeath-special discovery dispute.

## II.     LAW AND ANALYSIS
### A. The Scope of Discovery, Rule 26(c), and Defendants' standing to challenge the Subpoena.

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26.

"A party or any person from whom discovery is sought may move for a protective

---

[4] As Defendants have alluded in their prior filings, McBeath takes her professional cues from a disbarred California attorney who is practicing law in Arizona without authorization and who, behind the curtain, stymies McBeath's generally reasonable in-person disposition.

order in the court where the action is pending...The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.  Fed. R. Civ. P. 26(c).

"Rule 26(c)(1) provides that the court may, for good cause, issue an order to protect a party or person from 'undue burden;' the court's ability to issue such an order is not limited to circumstances in which the burdened party is the party 'from whom discovery is sought.'" Blotzer v. L-3 Communications Corp., 287 F.R.D. 507, 510 (D. Ariz. 2012)

On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it subjects a person to undue burden. See Fed. Rule 45(c)(3)(A)(iv).  "Of course, 'if the sought-after documents are not relevant, nor calculated to lead to the discovery of admissible evidence, then any burden whatsoever imposed would be **by definition** 'undue.''"   RQ Const., Inc. v. Ecolite Concrete U.S.A., 09-CV-2728-BEN WVG, 2010 WL 3069198, at *1 (S.D. Cal. Aug. 4, 2010) (citing Compaq Computer Corp. v. Packard Bell Elec., Inc., 163 F.R.D. 329, 335–36 (N.D.Cal.1995) (emphasis added).

"A party has standing to challenge a subpoena served on another entity only if the party can show it has a personal right or privilege regarding the subject matter of the subpoena." Id. at 509.  Discovery may be denied or narrowly tailored to balance the needs of the case against a party's reasonable expectations of privacy." Id.

### B. Bases for Quashing and the Entry of a Protective Order.
#### i. McBeath's Subpoena Seeks Irrelevant Information Disproportionate to the Needs of her Case.

Fundamentally, neither the elements of McBeath's claims nor the allegations of her Second Amended Complaint implicate insurance or its relevancy.  McBeath claims TTC wrongfully discriminated against her in violation of Title VII, discharged her for allegedly reporting violations of Arizona law, fraudulently or negligently induced her to enter employment with TTC, and failed to pay discretionary bonuses.  (See generally McBeath's Second Am. Compl., Counts 1-8, Doc. No. 44.)  Throughout her 28-page Second Amended Complaint, there are zero references to Defendants' liability insurance coverage or its

00313709.2

relevance to the terms and conditions of McBeath's employment.  Defendants' insurance coverage, decisions made in connection with that coverage, or communications related to that coverage have no bearing on nor could reasonably bear on Plaintiff's employment-based discrimination claims or issues underlying those claims.  See Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351, 98 S.Ct. 2380 (1978) ("A relevant matter is 'any matter that bears on, or that reasonably could bear on, any issue that is or may be in the case.'").

The Subpoena seeks patently irrelevant information on matters beyond the scope of discovery.  The law is clear – "evidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully." Fed. R. Evidence 411 (emphasis added).  Liability insurance coverage is inadmissible to prove liability or negligence for *any* claim.  Further, the perceived "wrongdoing" McBeath presumably hopes to uncover is also inadmissible.  See Fed. R. Evidence 411 ("evidence of insurance against liability is not admissible to prove the person acted "otherwise wrongfully.").  By extension, Defendants' insurance liability coverage decisions and/or disclosures are likewise irrelevant, inadmissible, and beyond the permissive scope of discovery.  See Excelsior Coll. v. Frye, 233 F.R.D. 583, 586 (S.D. Cal. 2006) ("Rule 26(a)(1)(D), merely requires the disclosure of an insurance policy or other agreement that gives rise to an insurer's obligation to indemnify or hold its insured harmless for a judgment, and does not require the production of all agreements relating to insurance…Case law does not support an extension of the requirements of Rule 26(a)(1)(D) beyond its plain meaning.")  McBeath unquestionably and admittedly seeks information she hopes will display a pattern or practice Defendants' wrongful conduct.[5]  She is mistaken, but nonetheless, Defendants' insurance against liability or their insurance decisions are not admissible to prove they acted wrongfully when they terminated her employment. Moreover, they are completely disproportionate to the needs of establishing her claims.

McBeath cannot identify the facts or issues the discovery will help narrow or define. McBeath has stated she "is entitled to obtain corroborating evidence of the existence of

_____

[5] This is discussed further, *infra*.

TTC's employment liability insurance." Ex. 14, <u>M. McBeath Opp. to Sup. Ct. Mot. to Quash</u> at 1:11-12.  Notably, however, the Subpoena on its face far exceeds that request. Included in those requests is the overbroad demand that Koty-Leavitt produce any documents related to TTC for a two-year period having nothing to do with her.  <u>See</u> Ex. 6 at Doc. Request No. 4.  Defendants maintain multiple lines of insurance with Koty-Leavitt. Surely, car insurance and workers' compensation insurance and similar policy decisions have nothing to do with the bases of McBeath's claims.  Similarly, McBeath is not entitled to a response to the overbroad requests on the basis these tangentially-related insurance lines will produce evidence of generalized wrongdoing.  McBeath's unsubstantiated claims of generalized wrongdoing unquestionably exceed the narrow issue of whether Defendants discriminated against Plaintiff when they hired an individual for a position allegedly promised to McBeath – notably, TTC hired this individual *after* McBeath interviewed the person for the position[6] – or terminated her employment in retaliation for reporting alleged violations of Arizona law.

McBeath's Subpoena is a disingenuous attempt to exploit the presumptive limits of discoverable information related to liability insurance.[7]  Affirmative obligations to disclose insurance coverage serve the purpose of providing each party the opportunity to make a realistic appraisal of the case so that settlement and litigation are based on knowledge, not speculation.  <u>See</u> Fed. R. Civ. P. 26, Advisory Committee Notes, 1970 amend., Subd. (b)(2). Absent particularized circumstances, the rule does require disclosure of applications for insurance.  <u>See</u> Fed. R. Civ. P. 26, Advisory Committee Notes, 1993 Amend.  This is not an exceptional case where insurance or its relevancy is at issue.  McBeath is equipped with

---

[6] McBeath's constantly changing story about her supposed promise of promotion will soon be the subject of Defendants' motions for summary judgment. Specifically, McBeath's self-serving testimony not only lacks credibility, but cannot withstand scrutiny under *Faragher-Ellerth* doctrine.
[7] Fed. R. Civ. P. Rule 26(a)(1)(A)(iv) provides for the discovery of "the inspection and copying…any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment." Fed. R. Civ. P. Rule 26(b)(2).  Notably absent from the rule is any provision for the production of insurance applications, information forming the basis of Defendants' coverage decisions, or communications made in connection with coverage procurement; all of which McBeath seeks in her Federal Court Subpoena.  None of those decisions or factors are relevant in proving employment-based discrimination or wrongful termination.

00313709.2

the limits and nature of Defendants' insurance policy, providing ample information she needs to prepare for trial or lower her exorbitant demands.

McBeath is already armed with far more evidence of Defendants' insurance history than presumptively discoverable.  None of that history will be admissible nor will any information she seeks to discover vis-à-vis the Subpoena.  Because the sought-after documents are not relevant, nor calculated to lead to the discovery of admissible evidence, the Subpoena must be quashed and a protective order is appropriate.  See RQ Const., Inc., 09-CV-2728-BEN WVG, 2010 WL 3069198, at *1 (S.D. Cal. Aug. 4, 2010).

### ii.   The Subpoena Seeks Privileged Communications.

McBeath's Subpoena encompasses communications protected under Rule 26(b)(3).  "A party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).  Fed. R. Civ. P. 26(b)(3) (emphasis added).  The documents and tangible things are discoverable only a showing that the party seeking the discovery "has a substantial need of the materials." Id.

By seeking documents dating from January 2015 to present, this request necessarily calls for the communications exchanged between Defendants and Koty-Leavitt both in anticipation of this lawsuit as well as in the course of preparing it for trial.[8]  Indeed, the "perfunctory" review McBeath so generously – nay, "professionally" – permitted before Defendants were forced to hastily file the instant motion are communications made in direct response to the service of McBeath's lawsuit.  Likewise, communications related to her unsurprisingly came after McBeath notified Defendants of her litigation and demanded they implement a litigation hold.  The balance of the communications relate to coverage decisions, subsequent discovery that McBeath filed charges of discrimination, and a separate lawsuit in federal court – none of which were made in the ordinary course of business.  See Wright & Miller, Fed. Pract. & Proc. § 2024 (1994) (there is no work-product

---

[8] McBeath filed her Superior Court Matter on April 15, 2015.

immunity for documents prepared in the regular course of business rather than for purposes of litigation).  Surely, in a suit completely unrelated to Defendants' insurance coverage, McBeath does not have a need to discover the communications between Koty-Leavitt and Defendants, much less a substantial need to discover those communications clearly exchanged in anticipation of this litigation or the upcoming trial.

McBeath is well aware of the privilege given her abusive efforts to shield her own "expert" consultants from Defendants' discovery (see, e.g., Doc. Nos. 39, 48). Notwithstanding, McBeath now "fears" Defendants' classification of communications made in anticipation of her litigation "may be too broad," (see Ex. 9) while astonishingly withholding discovery propounded on her requesting documents shared with her friends during the course of her employment and in connection with her avaricious litigation tactics. That she now fears TTC will overbroadly construe the same rule she has overbroadly construed throughout this matter is conflicting and impossible to reconcile.

### iii.  McBeath's Subpoena is Overbroad.

Assuming, *arguendo*, the Subpoena seeks documents and information reasonably calculated to lead to admissible evidence, which it does not, it remains overbroad.  McBeath requests any and all documents and communications related to Tucson Tamale from January 2015 to present.  On its face, this request far exceeds the parameters of discoverable information in this lawsuit.  As Koty-Leavitt already alluded to when trying to work out the burdens imposed by the Subpoena, this request calls for thousands of documents entangling the individual Defendants' personal insurance coverage unrelated to TTC's business, TTC's employees' private personal information, and social and professional relationships between Koty-Leavitt employees and TTC's employees.  This information is not relevant in proving whether TTC wrongfully terminated McBeath's employment.  Furthermore, McBeath is not entitled to Defendants' confidential information absent a protective order.

### iv.  McBeath's Subpoena is Intended Solely to Harass Defendants.

McBeath has never identified, nor will she likely identify in her anticipated

00313709.2

opposition, the relevant evidence she believes she will discover in response to the Subpoena. Despite her propensity to fabricate claims, she cannot plausibly identify how the decisions underlying Defendants' insurance coverage can help narrow the issues in this case.

The real purpose behind this Subpoena is not to evince the purported "evil mind" Defendants had when terminating her employment.  Instead, as McBeath stated in her oral communications with the undersigned, McBeath seeks to drive a wedge between Defendants' insurance carrier and Defendants in a confessed and transparent effort to persuade Defendants' insurer that Defendants did not make adequate disclosures regarding her claim.

This Court should not allow McBeath to go on a fishing expedition for facts and information wholly unrelated to the claims and defenses in this case.  The information McBeath seeks from Koty-Leavitt has no bearing on whether TTC terminated McBeath's employment in retaliation for her alleged reporting of violations of law, fraudulently induced her employment, or failed to pay her wages.  It is not relevant, and should not be at issue in this action.

### III.   CONCLUSION

For the foregoing reasons, Defendants request that the Court quash McBeath's Subpoena and enter a Protective Order shielding Koty-Leavitt from any further discovery from McBeath.  Defendants also request their attorneys' fees and costs pursuant to Rule 26(c) and 37(a)(5).

RESPECTFULLY SUBMITTED this 31st day of March, 2017.

FARHANG & MEDCOFF


By /s/ Travis L. Tufts
    Ali J. Farhang
    Roberto C. Garcia
    Travis L. Tufts

Attorneys for Defendants

00313709.2

1

## **CERTIFICATE OF SERVICE**

2       I hereby certify that the foregoing document was filed electronically with the Clerk

3   of the United States District Court for the District of Arizona, with notice of case activity

4   generated and sent electronically this 31st day of March, 2017 to:

5   Melissa Martin McBeath
6   mel.mcbeath@cox.net

7   /s/ Letitia L. Wright

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

00313709.2