MELISSA MARTIN McBEATH
3463 E. TERRA ALTA BLVD.
TUCSON, AZ 85716
Ph:  (520) 449-9753
*mel.mcbeath@cox.net*

Pro Se

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA, TUCSON DIVISION

| | |
|---|---|
| MELISSA MARTIN McBEATH,<br>  an individual,<br><br>            Plaintiff,<br><br>       v.<br><br>TUCSON TAMALE COMPANY, an<br>Arizona corporation;<br>TODD RUSSELL MARTIN;<br>an individual;<br>SHERRY MARTIN, an individual; and<br>LISA MARTIN, an individual,<br><br>            Defendants.<br>_____<br><br>AND TUCSON TAMALE COMPANY'S<br>RELATED COUNTERCLAIMS | Case No. CV 16-462-TUC-DCB (BPV)<br><br><br>**REPLY TO THE OPPOSITION TO<br>PLAINTIFF'S MOTION FOR<br>A PROTECTIVE ORDER TO<br>SHIELD EXPERTS CONSULTED<br>INFORMALLY**<br><br>Fed. R. Civ. P. 26(c)<br>Fed. R. Civ. P. 26(b)(4)(D)<br>_____<br><br>Assigned to Hon. David C. Bury<br><br>Complaint filed:  July 11, 2016 |

10382.1

# LEGAL DISCUSSION

Plaintiff / Counterdefendant Melissa Martin McBeath hereby replies to the Opposition filed by Defendant / Counterclaimant Tucson Tamale Company (*"TTC"*) to the Motion For A Protective Order to Shield Experts Consulted Informally under Fed. R. Civ. Proc. 26(b)(4)(D) [previously FRCP 26(b)(4)(B)].[1]

## A.   All exhibits attached to TTC's Opposition brief and the arguments of counsel presented as facts should be disregarded and stricken.

TTC does not authenticate a single one of the documents upon which TTC relies on to oppose the present Motion.

It is elementary to motion practice that a party must authenticate the documents submitted to support the factual assertions made in the party's papers. *See* F. R. Evid.  Rule 901(a) ("To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.").

TTC relies solely on the argument of counsel to oppose the present Motion. Argument of counsel is not evidence.[2] Nor may defense counsel purport to testify on TTC's behalf because defense counsel does not have first-hand, personal knowledge of the facts alleged in TTC's Opposition. *See* F. R. Evid. Rule 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").

---

[1]   The Motion mistakenly refers to Fed. R. Civ. P. 26(b)(4)(B). The correct subsection is Fed. R. Civ. P. 26(b)(4)(D)("Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial.").

[2]   *See Klein v. City of Laguna Beach,* 381 Fed. App'x 723, 726 (9th Cir. 2010) ("Arguments [in briefs] are not evidence"); *Rus v. Gonzales,* 180 Fed. App'x 711, 712 (9th Cir. 2006) ("Counsel's statements to the contrary in the opening brief are not evidence.").

1

2

## B.  Ehud Gavron may serve as both a lay witness and an expert consulted informally on matters that TTC may not discover.

3

4

5

6

7

8

TTC argues that because Mr. Gavron will be called to testify at trial as a fact witness, he cannot simultaneously serve as an expert whom McBeath consults informally. The Ninth Circuit has ruled that a witness "is not categorically barred from testifying as both an expert and percipient witness, provided that the district court engages in vigilant gatekeeping and that jurors are aware of the witness's dual roles and the bounds of each type of testimony."[3]

9

10

11

12

13

Here there will be no such need for this Court to be vigilant of that dual role because Mr. Gavron will not be called to testify in his capacity as an expert. TTC may discover his personal knowledge of any material facts at issue in this case that predate his retention as an expert. McBeath has never disputed this point.[4]

14

15

16

17

18

Under Fed. R. Civ. Proc. 26(b)(4)(D), however, TTC may not inquire into the nature and scope of the services Mr. Gavron is providing as a non-testifying expert helping McBeath prepare for trial.  Rule 26(b)(4)(D) shields the disclosure of specified information about non-witness experts retained or employed in anticipation of litigation or preparation for trial.

19

20

21

It "precludes discovery against experts who (are) informally consulted in preparation for trial, but not retained or specially employed."[5] "[T]his preclusion not only encompasses information and opinions developed in anticipation of

22

23

24

[3]   *United States v. Bonilla-Guizar,* 729 F.3d 1179, 1184 (9th Cir. 2013) (citations omitted); *United States v. Feliciano,* 223 F.3d 102, 121 (2d Cir. 2000) ("Rovelli testified both as an expert and as a fact witness. Such dual testimony is not objectionable in principle.").

25

26

[4]   Melissa Martin McBeath Declaration, dated March 31, 2017 (**"McBeath Dec."**) ¶ 7.

27

28

[5]   *Todd v. Tempur-Sealy Int'l, Inc.,* 2015 U.S. Dist. LEXIS 27802, 2015 WL 1022886, at *2 (N.D. Cal. Mar. 6, 2015) (internal quotation marks and citations omitted).

1   litigation, but also insulates discovery of the identity and other collateral

2   information concerning experts consulted informally."[6] TTC is "not entitled to do

3   an end-run around Rule 26(b)(4)(D)(ii) to obtain discovery of facts or opinions

4   from consulting experts who will not be used at trial."[7]

5   **C.   Francisco Márquez is not a fact witness.**

6   TTC offered only the confabulated argument of counsel, baseless

7   conspiracies and absolutely no evidence that Mr. Márquez has first-hand know-

8   ledge of any of the facts at issue in this case. McBeath informed defense counsel

9   that Mr. Márquez did not even know she worked for TTC during the relevant time

10   period.[8] TTC points to an unauthenticated email exchange where McBeath

11   allegedly says to Mr. Márquez *"you mi cielo!"* to his *"Got it!"* response to a single

12   smiley emoticon she sent to him via email. (TTC Opposition Exhibit 19).

13   There is no substantive communication in this innocent exchange between

14   friends. Because TTC has no evidence to the contrary, there is no basis for the

15   contention that Mr. Márquez is a fact witness who has personal, first-hand

16   knowledge of the facts in this case.

17

18   [6]   *Id.* (citations omitted) (denying defendants' request to compel plaintiffs to

19   identify with whom they consulted as a possible expert); *Baki v. B.F. Diamond Const. Co.*, 71 F.R.D. 179, 182 (D. Md. 1976) ("To allow discovery of the identity of

20   such persons merely consulted informally would be to interfere unduly with and

21   hamper pre-trial preparation and investigation."); *Procter & Gamble Co. v. Haugen*,

22   184 F.R.D. 410 (D. Utah 1999) ("There is no provision in the rules relating to an expert who was informally consulted. Such persons cannot be discovered or

23   deposed under Rule 26(b)(4)(B)."); *Eisai Co. v. Teva Pharms. USA, Inc.*, 247 F.R.D.

24   440, 442 (D. N.J. 2007) ("A party cannot discover the name of an expert who is informally consulted but never actually retained.").

25   [7]   *Chevron Corp. v. Donziger*, No. 11-0691, 2012 U.S. Dist. LEXIS 179614, at *20

26   (S.D.N.Y. Dec. 19 2012) (granting protective order prohibiting discovery from

27   any of the experts, contractors, and consultants to which subpoenas improperly issued).

28   [8]   McBeath Dec. ¶ 2.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

   **D.   <u>TTC's Opposition brief is replete with false statements that must be corrected so that the Court may decide this motion on an accurate factual record.</u>**

The law offices of FARHANG & MEDCOFF represent TTC and now also the recently-joined Defendants Todd Russell Martin, Sherry Marin and Lisa Martin.

On April 3, 2017, counsel for Defendants will appear before the Honorable Gus Aragon to account for the misleading omissions and verifiably false statements that defense counsel, Ali J. Farhang and Travis L. Tufts made at a hearing held on February 28, 2017.[9] Judge Aragon presides over the parallel state court action that McBeath filed in Pima County Superior Court against the Defendants.[10]

McBeath felt duty-bound to alert Judge Aragon that Mr. Farhang and Mr. Tufts had committed a fraud on the court at the hearing, in violation of Arizona Rules of Professional Conduct R. 3.3 (a)(1), which states that "[a] lawyer shall not knowingly. . . make a false statement of fact or law to a tribunal." *See* Ariz. R. Prof. Cond. 8.4(c) ("It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation.").[11]

Defense counsel continue in these proceedings their disturbing pattern and practice of misrepresenting the factual record. For nearly a year, McBeath has had to endure the vitriol and acerbic contempt of defense counsel's incessant ad hominem attacks in their e-mails, correspondence and briefs. Understandably, the adversarial nature of litigation makes the process contentious and unpleasant for the parties.

---

   [9]   McBeath Dec. <u>Exhibit 1</u>. (Order, dated March 8, 2017, issued by Judge Aragon ordering defense counsel to appear on April 3, 2017 to respond to McBeath's charges of defense counsel's professional misconduct.

   [10]   *Melissa Martin McBeath v. Tucson Tamale Company, et al.*, Pima County Superior Court Case No. 20161794.

   [11]   McBeath Dec. – <u>Exhibit 2</u> (Plaintiff's Declaration, dated March 1, 2017 that alerted Judge Aragon of defense counsel's professional misconduct).

The misrepresentations defense counsel make to the Court in the Opposition brief filed in connection with the present Motion, however, cross the line from zealous advocacy to patent professional misconduct. McBeath feels equally duty-bound to alert the Court of similar professional misconduct.

TTC and defense counsel make the following misrepresentations without any evidence or distort the meaning of the unauthenticated documents they present to the Court or just simply outright lie.

1.    TTC makes this astonishingly brazen false statement:

Despite inquiry from Defendants' counsel after receiving e-mail communications between McBeath, Gavron, and Marquez, McBeath never requested Defendants take any remedial measures to protect the supposed "consultant" communications. (TTC Opposition 6:27-28 - fn 8)

In other words, TTC argues that McBeath waived the Fed. R. Civ. P. 26(b)(4)(D) protections that shield the communications with her non-testifying experts and consults because she didn't instruct defense counsel to "take any remedial measures."

On June 27, 2016 and July 14, 2016, Mr. Gavron inadvertently sent two e-mails to McBeath's old TTC email account. McBeath made it very clear to defense counsel that they were not permitted to use these communications in any way.

On July 15, 2016, McBeath sent a letter to defense counsel letting them know that "if you are not entitled to know even the identity of experts I consult informally, you certainly may not inquire into the nature and scope of the services and advice they provide."[12]

On July 19, 2016, McBeath made the following unequivocal demand:

I further request that you destroy this email [sent on June 27, 2016] as well as the e-mail Mr. Gavron sent on July 14, 2016.[13]

---

[12] McBeath Dec.  ¶ 4.
[13] McBeath Dec.  ¶ 5.

REPLY TO OPPOSITION TO PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER TO SHIELD EXPERTS CONSULTED INFORMALLY          -5-          CV 16-462-TUS-DCB (BPV)

10382.1

Because defense counsel refused to take the "remedial measures" McBeath requested, she promptly filed a protective order in Pima County Superior Court similar to the present Motion. McBeath asked for the following relief:

> That the Court order Defendants to cease all efforts to identify any expert(s) McBeath has consulted or may be consulting informally. Defendants must further cease all efforts to discover the nature and content of the advice/services provided by these experts.
>
> That the Court order Defendants to destroy any emails and any other information inadvertently produced or that they received by mistake from any expert(s) whom McBeath has notified Defendants she has consulted or may be consulting informally.
>
> That the Court order Defendants not to mention, nor comment on, individuals in their court filings whom McBeath has notified Defendants she has consulted or may be consulting informally, and to amend their existing filings to omit any such references to these individuals.[14]

It is hard to imagine what more McBeath could have done to protect the non-testifying experts she consults and to prevent the further dissemination and use of Mr. Gavron's June 27 and July 14 emails. To date defense counsel refuse to destroy these emails, and continue to include them in their court filings.

While McBeath's motion for a protective order is still pending in state court, on August 15, 2016, however, Judge Aragon ruled that ***"Mr. Gavron shall not be required to provide information or testimony about those things upon which he has been consulted as an expert, unless he is disclosed as an expert on the topic upon which discovery is being shought [sic]".*** [15]

McBeath has never disclosed Mr. Gavron as an expert she intends to call at trial to testify.

---

[14] McBeath Dec.  <u>Exhibit 3</u> p. 1 (Motion for Protective Order to Shield Identity and Communications With Experts Consulted Informally, dated August 14, 2016).

[15] McBeath Dec.  <u>Exhibit 4</u> p. 3 (Minute Order issued by Judge Aragon following a hearing held on August 15, 2016)

Even if McBeath had never asked defense counsel to destroy Mr. Gavron's two email sent to McBeath's old TTC email address, TTC still would not be entitled to the broad discovery defense counsel argues for so vehemently.

Time and again federal courts have ruled that "[w]here information enjoys protection under [Rule 26(b)(4)(D)], that protection is not subject to waiver." [16]

If such information were subject to waiver, waiver would necessarily be limited to the specific documents and information already disclosed. [17]

TTC's waiver argument simply does not apply to Fed. R. Civ. P. 26(b)(4)(D) protections that bar discovery into the facts known and opinions held by McBeath's non-testifying experts and consultants helping her prepare for trial.

---

[16] *Ludwig v. Pilkington North America, Inc.,* No. 03 C 1086, 2003 WL 22242224, *3 (N.D. Ill. Sept. 29 2003); *see also Vanguard Savings and Loan Ass'n v. Banks,* 1995 WL 71293 (E.D. Pa.) (quashing subpoena requesting all documents and a full deposition of a non-testifying expert because disclosure of a single report does not broadly waive FRCP 26's protection to all facts and opinions known and held by the expert); *Ross v. Burlington,* 136 F.R.D. 638 (N.D. Ill. 1991) (FRCP 26 protections not waived upon disclosure of a non-testifying expert's identity and subject matter of retention); *Costal Towing, Inc. v. Novarco, Ltd.,* 1999 WL 970357 (E.D. La. 1999) (FRCP 26 protections were not waived by disclosing select documents from a non-testifying expert); *Ludwig v. Pilkington North America,* 2003 WL 22242224(N.D. Ill. 2003) [quashing subpoenas "calling broadly for the production of all documents related to the work each consultant performed" because producing select document does not broadly waive all FRCP 26 protections); *Intervet, Inc. v. Merial Limited,* 2007 WL 1797643 (D. Neb. 2007) (producing a non-testifying expert declaration does not waive all FRCP 26 protections applicable to that expert).

[17] *U.S. Inspection Services v. NL Engineered Solutions, LLC,* 268 F.R.D. 614, 624-25 (N.D. Cal. 2010) (surveying cases where courts ruled that waiver argument rests on principles of fairness and that Rule 26(b)(4)(B) does not itself address waiver and decline to extend waiver to the undisclosed portions of a non-testifying expert's report and to all other documents *involving* the same subject matter, even where portions of expert's findings had already been disclosed).

REPLY TO OPPOSITION TO PLAINTIFF'S MOTION
FOR A PROTECTIVE ORDER TO SHIELD                    -7-                    CV 16-462-TUS-DCB (BPV)
EXPERTS CONSULTED INFORMALLY

10382.1

2.     McBeath never asked Mr. Gavron to help her circumvent mandatory liquor license training.[18] (TTC Opposition 6:1-7)

3.     McBeath never advised or assisted Mr. Gavron to evade service of TTC's subpoena duces tecum.[19] (TTC Opposition 7:17-25)

4.     McBeath never advised, assisted or coordinated with Mr. Gavron to destroy documents.[20] (TTC Opposition 7:27 – 8:4)

5.     McBeath did not speak with Mr. Márquez "about issues directly related to TTC's business" in or around July 22, 2015 or November 19, 2015.[21] (TTC Opposition 9:15-24).

## CONCLUSIONS

McBeath's Motion for a Protective Order should be granted for all the reasons explained above.

Dated:  March 31, 2017               Respectfully submitted,

_____

Melissa Martin McBeath

---

[18] McBeath Dec.  ¶ 6.
[19] McBeath Dec.  ¶ 7.
[20] McBeath Dec.  ¶ 8.
[21] McBeath Dec.  ¶ 9.

REPLY TO OPPOSITION TO PLAINTIFF'S MOTION
FOR A PROTECTIVE ORDER TO SHIELD          -8-                    CV 16-462-TUS-DCB (BPV)
EXPERTS CONSULTED INFORMALLY

10382.1

# DECLARATION

I, MELISSA MARTIN McBEATH, declare:

1.      I am the Plaintiff in this action. This declaration is submitted in support of my Reply to the Opposition to the Motion for a Protective Order to Shield the Identity and Communications with Experts Consulted Informally. I have personal, first-hand knowledge of all matters stated herein and, if called to testify as to these matters, I could and would do so competently.

2.      In responses to written interrogatories served in connection with the state court action, I informed Tucson Tamale Company (*"TTC"*) and defense counsel that Francisco Márquez did not know I worked for TTC during the time that I was employed by TTC. Mr. Márquez is a childhood friend I've known since I was 12 years old.

3.      On August 14, 2016, I filed a Motion for a Protective Order to Shield Identity and Communications With Experts Consulted Informally. *See* Exhibit 3.

4.      On July 15, 2016, I referred the lawyers of TTC to Ariz. R. Civ. P. 26(b)(4)(B) and the extensive discussion of case law found in the ethics opinions published by the State Bar of Arizona regarding experts informally consulted in preparation for trial, but not retained. This letter is attached as Exhibit A to the Motion referenced in Paragraph 3, above.

5.      On July 19, 2016, I sent another letter to opposing counsel where I made the following demand:  "I further request that you destroy this email [sent on June 27, 2016] as well as the e-mail Mr. Gavron sent on July 14, 2016." This letter is attached as Exhibit B to the Motion referenced in Paragraph 3, above.

6.      I never asked Ehud Gavron to help me circumvent mandatory liquor license training. In an email, I asked him if there was a way to speed up the online training, which required the user to listen to a verbal reading of every word presented in the training prior to being allowed to move to the next section. I

McBEATH DECLARATION ISO REPLY TO OPPOSITION
TO PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER                    -1-                    CV-16-462-TUC-DCB(BPV)
TO SHIELD EXPERTS CONSULTED INFORMALLY

simply wondered if there might be a way to make the training more self-paced. At my deposition taken by defense counsel, Travis Tufts, on March 22, 2017, I analogized to the same situation when one takes a defensive driving class online and cannot move on to the next area of training without listening to a tedious timed read-out (rather than read and answer at your own pace). As a 20-year veteran of wholesale liquor sales I am required to have intimate knowledge of all Arizona Liquor Laws, licensing and certifications. I am required to abide by them. TTC registered me as the official managing agent of record with the Arizona Liquor Board for all three TTC locations. I would never have jeopardized that certification or my employer's liquor licenses, not to mention my life-long career, by circumventing anything. I explained this to Mr. Tufts at my deposition on March 22, 2017.

7. I never advised or assisted Mr. Gavron to evade service of TTC's subpoena duces tecum. I have consistently maintained that TTC may ask Mr. Gavron anything he knows about the facts of this case that he learned during the time that I worked at TTC. Not having ever disputed this, I would not then have advised Mr. Gavron to evade service. Mr. Tufts asked me if I had done this at my sworn deposition on March 22, 2017 to which I responded "No." In fact, I specifically stipulated at a court hearing that I would contact Mr. Gavron and ask him to voluntarily comply with the subpoena. The Court noted this stipulation on the record as follows: "The Court notes that the parties have stipulated as well that Mr. Gavron shall respond to the subpoena that has been discussed on the record and will produce documents generated before and after a certain claim which the parties are calling the stored communications claim." *See* Minute Order attached as <u>Exhibit 4</u>.

McBEATH DECLARATION ISO REPLY TO OPPOSITION
TO PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER
TO SHIELD EXPERTS CONSULTED INFORMALLY

CV-16-462-TUC-DCB(BPV)

8.      I never advised, assisted or coordinated with Mr. Gavron to destroy documents. Mr. Tufts asked me if I had done this at my sworn deposition on March 22, 2017 to which I responded "No."

9.      I did not speak with Mr. Márquez "about issues directly related to TTC's business" in or around July 22, 2015 or November 19, 2015. As I have previously stated in both written sworn testimony and at my sworn oral deposition, Mr. Márquez did not even know I was employed by TTC during my tenure there.

## EXHIBITS

Attached are true and correct copies of the following documents:

Exhibit  1      Order, dated March 8, 2017, issued by Judge Aragon ordering defense counsel to appear on April 3, 2017 to respond to McBeath's Declaration, dated March 1, 2017.

Exhibit  2      Plaintiff's Declaration, dated March 1, 2017 that alerted Judge Aragon of defense counsel's professional misconduct.

Exhibit  3      Motion for a Protective Order to Shield Identity and Communications With Experts Consulted Informally, dated August 14, 2016, that was filed in Pima County Superior Court.

Exhibit  4      Minute Order issued by Judge Aragon following a hearing held on August 15, 2016.

I declare under penalty of perjury, pursuant to 28 U.S.C. section 1746, that the foregoing is true and correct. Executed on March 31, 2017.

_____

Melissa Martin McBeath

McBEATH DECLARATION ISO REPLY TO OPPOSITION
TO PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER            -3-            CV-16-462-TUC-DCB(BPV)
TO SHIELD EXPERTS CONSULTED INFORMALLY

10382.1

EXHIBIT  1

FILED
TONI HELLON
CLERK, SUPERIOR COURT
3/8/2017 2:16:32 PM

ARIZONA SUPERIOR COURT, PIMA COUNTY

HON. GUS ARAGON

CASE NO.     C20161794

DATE:        March 08, 2017

MELISSA MARTIN MCBEATH
    Plaintiff

VS.

TUCSON TAMALE COMPANY,
TODD RUSSELL MARTIN,
SHERRY MARTIN,  and
LISA MARTIN
    Defendants

---

## R U L I N G

IN CHAMBERS RULING RE:  DEFENDANTS' MOTION TO DISMISS

    This Motion was originally filed on May 25, 2016.  Thereafter the Motion was denied as moot in the Court's Minute Entry Order of October 31, 2016.  At that time the Court granted leave to file a new Motion to Dismiss addressing the allegations of the Amended Complaint filed on September 9, 2016.  Thereafter no new Motion was filed.  However, on February 21, 2017 Defendants filed a Notice of Motions for oral argument on February 28, 2017.  By this time Plaintiff, who originally filed her lawsuit pro se, had retained local counsel Rafael Gallego who had obtained an order from the Court allowing counsel from California, Ruchit Kumar Agrawal, to appear in this matter Pro Hac Vice.

    In Defendants' Notice of February 21, 2017 Defendants indicated that the parties had conferred about pending Motions that were ripe for oral argument at the hearing of February 28, 2017 and then provided a list of Motions to be addressed at the hearing, including the Motion to Dismiss.  On February 28, 2017 the Court convened this matter for oral arguments.  Mr. Gallego appeared and requested a postponement indicating that he was unprepared and that Mr. Agrawal, for unknown reasons, was unable to appear.  The Court found that Mr. Agrawal had waived the right to appear and heard oral argument on the Defendants' Motion to Dismiss, after which the Motion was taken under advisement.

    Since that time Plaintiff filed a Declaration on March 1, 2017 accusing defense counsel Ali J. Farhang of committing a fraud on the Court and making numerous false statements and misleading omissions.  Attached as

R. Lee
Judicial Administrative Assistant

R U L I N G

Exhibit A to the Declaration is an e-mail from Mr. Agrawal to defense counsel Travis Tufts dated February 22, 2017.  In that e-mail Mr. Agrawal disputes that the Defendants' Motion to Dismiss was appropriate for oral argument on February 28, 2017.  This information was not provided to the Court prior Plaintiff's Declaration filed on March 1, 2017.

Now having received Plaintiff's Declaration and the above e-mail, the Court has concerns about whether it was appropriate to proceed with oral argument on the Motion to Dismiss on February 28, 2017.

IT IS THEREFORE ORDERED setting this matter for hearing concerning whether defense counsel had received Mr. Agrawal's e-mail dated February 22, 2017 and whether there was any response to that e-mail or any other e-mail communications or other communication between Defendants' counsel and Plaintiff's counsel in and around the time frame between February 22, 2017 and February 28, 2017.  The hearing shall take place on **April 3, 2017 at 10:00 a.m.**

The Court notes that Mr. Gallego has moved to withdraw from further representation of the Plaintiff and he has moved to withdraw the admission Pro Hac Vice of Mr. Agrawal.  The Court has not as yet ruled upon those Motions.

cc:    Ali J. Farhang, Esq.
       Rafael F. Gallego, Esq.
       Robert C. Garcia, Esq.
       Ruchit Kumar Agrawal, Esq.
       Travis L Tufts, Esq.
       Melissa Martin McBeath

                                                                    R. Lee
                                                          Judicial Administrative Assistant

EXHIBIT  2

FILED
TONI L. HELLON
CLERK, SUPERIOR COURT
3/1/2017 1:11:39 PM
BY: JIM ORR
DEPUTY

1

2   Ruchit Kumar Agrawal (Cal. Bar No. 299290)

3   KUMAR LAW
    6525 Crown Blvd. #20072

4   San Jose, California 95160

5   (408) 601-0586
    *Ruchit@kumarlawsv.com*

6

7   Rafael F. Gallego (Ariz. Bar No. 013726)

8   GALLEGO LAW FIRM, P.C.
    1016 E Pennsylvania St. - Ste 308

9   Tucson, Arizona 85714

10  (520) 882-8300
    *Rafael@gallegolawfirm.com*

11

12  Attorneys for Melissa Martin McBeath

13

14                **SUPERIOR COURT OF ARIZONA**

15                     **COUNTY OF PIMA**

16

17  MELISSA MARTIN McBEATH,              | Case No. C20161794

18  an individual,

19          Plaintiff/Counterdefendant,   | MELISSA MARTIN McBEATH
                                          | DECLARATION RE: FACTUAL
20                                        | MISREPRESENTATIONS THAT
                                          | DEFENDANTS' COUNSEL MADE TO
21          v.                            | THE COURT AT THE
                                          | FEBRUARY 28, 2017 HEARING
22  TUCSON TAMALE COMPANY,

23  an Arizona corporation, *et al.*,

24          Defendant(s)/Counterclaimant.

25

26

27

28

I, MELISSA MARTIN McBEATH, declare:

1.      I am the Plaintiff and Counterdefendant in this action. I have personal, first-hand knowledge of all matters stated herein and, if called to testify as to these matters, I could and would do so competently.

2.      I attended the hearing held on February 28, 2017. Defendants' counsel, Ali J. Farhang, committed a fraud on the Court that I feel duty-bound to bring to the Court's immediate attention.

3.      Mr. Ali made numerous false statements and misleading omissions regarding the factual record and procedural history of this case that violate Arizona Rules of Professional Conduct R. 3.3 (a)(1), which states that "[a] lawyer shall not knowingly. . . make a false statement of fact or law to a tribunal." *See also* Ariz. R. Prof. Cond. 8.4(c) ("It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation.").

4.      Mr. Farhang knew (or should have known) that it was improper to reassert and argue Defendants' Motion to Dismiss filed on May 25, 2016, because the Court had already ***denied this motion as moot***, as indicated in the Minute Entry Order for the hearing held on October 31, 2016. Attached as <u>Exhibit A</u> is a copy of the email, dated February 22, 2017, that my attorney sent to Travis L. Tufts, another one of Defendants' attorneys, that pointed out the mistake in the Notice of Motions For Oral Argument on February 28, 2017 that Mr. Tufts filed on February 21, 2017. The notice improperly listed Defendants' Motion to Dismiss as one of the pending motions this Court still had to consider. Mr. Tufts never responded to my attorney's email.

5.      In the Minute Entry Order for the hearing held on January 17, 2017, the Court ***granted in part*** my Motion to Compel the Deposition of Lisa Martin, filed on October 6, 2016. Mr. Tufts argued that I had to compensate Lisa Martin for the time she sat for her deposition, but could not cite any legal authority in support of his argument nor did the Court know of any.

6.     As a professional courtesy, the Court granted additional time for Mr. Tufts to provide to the Court whatever legal authority he could find in support of his argument on or before the February 28, 2017 hearing. I reasserted the motion so that the Court could rule on whether I had to compensate Lisa Martin for her time. Mr. Farhang falsely stated that I filed another "duplicative" motion asking for the same relief on a motion that had already been decided in its entirety. The Court's docket will confirm that this is not true.

7.     Mr. Farhang falsely stated that I did not properly serve the subpoena duces tecum on Tucson Tamale Company's (**"TTC"**) insurance broker because I never provided a proof of service.  Attached as <u>Exhibit B</u> is a copy of the signed proof of service I personally served via email on Defendants' counsel on October 26, 2016.

8.     Mr. Farhang falsely stated that I served a duplicate subpoena duces tecum on TTC's insurance broker in connection with the parallel federal action pending before the U.S. District Court for the District of Arizona, Case No. CV-16-462-TUC-DCB (BPV). I have served only one subpoena on TTC's insurance broker and that's the one served in connection with this state court proceeding.

9.     I began to serve discovery relating to my federal claims shortly after the U.S. District Court denied TTC's Motion for Judgment on the Pleadings, which asked for the dismissal of my federal complaint because I was allegedly claim-splitting. TTC further accused me of vexatious litigation because I elected to pursue my Title VII discrimination claims in federal court, an argument that Mr. Farhang repeated at the February 28 hearing.

10.    None of the claims alleged in the federal complaint are duplicative of the state law claims alleged in the First Amended Complaint filed in this Court on September 9, 2016. Attached as <u>Exhibit C</u> is a copy of the Report and Recommendation, dated January 31, 2017, issued by the magistrate judge, and related Order issued by the District Court Judge, dated February 23, 2017,

1   adopting the magistrate judge's recommendation to deny TTC's meritless

2   Motion for Judgment on the Pleadings.

3        11.     Defendants seek to take the oral deposition of non-party deponents

4   whose testimony is either not relevant or is protected from disclosure under

5   Ariz. R. Civ. Proc. 26(b)(4)(B) because these individuals are experts that I consult

6   informally. Because I declined to stipulate to the deposition of these non-party

7   deponents does not mean I have deliberately impeded Defendants' discovery

8   efforts. I have done nothing to prevent Defendants from seeking leave of Court

9   to take these depositions after making the requisite offer of proof. In fact, they

10  ask for precisely this relief in the motion Defendants filed on February 15, 2017.

11       12.     Defendants filed a Motion for 56(f) Relief to request more time to

12  hire an expert to conduct a forensic analysis of TTC's computer systems. I filed

13  my Motion for Partial Summary Judgment on June 28, 2016.

14       13.     Defendants have had *over ten months* (they filed their counterclaims

15  against me in May 2016) to retain the expert witness whose expert testimony

16  Defendants represented to the Court was crucial to their opposition to my

17  motion. When I met in person with Mr. Tufts in December 2016 to discuss

18  discovery-related issues, he informed me that Defendants still had not retained

19  any expert witnesses and did not plan to retain one any time soon.

20       14.     TTC has failed to provide any evidence whatsoever to oppose my

21  Motion for Partial Summary Judgment and has not filed the Separate

22  Statement of Facts required by Ariz. R. Civ. Proc. 56(c)(2). Without any

23  documentary evidence or declarations offered to oppose my motion, there is no

24  evidence before this Court that raises factual issues. For this reason Count IV

25  (Violation of Stored Communications Act), Count V (Civil Conspiracy) and

26  Count VI (Aiding and Abetting) alleged in TTC's First Amended Counterclaims

27  should be summarily dismissed because the facts set out in my moving papers in

28  support of the summary judgment motion are undisputed as a matter of law.

McBEATH DECLARATION RE: MISREPRESENTATIONS
DEFENDANTS' COUNSEL MADE TO THE COURT AT THE          -3-                                    C20161794
FEBRUARY 28, 2017 HEARING

1

2

3          I declare (or certify, verify or state) under penalty of perjury under the

4   laws of the State of Arizona that the foregoing is true and correct. Executed on

5   March 1, 2017.

6                                   *Melissa Martin McBeath*

7                                   Melissa Martin McBeath

8

9

10

11

12

13

14

15

16   ORIGINAL filed via TurboCourt on March 1, 2017 with:

17

18   Clerk of the Court
     Pima County Superior Court

19

20   COPY served via TurboCourt on March 1, 2017 to:
     Roberto C. Garcia

21   *rgarcia@fmazlaw.com*
     Travis L. Tufts

22   *ttufts@fmazlaw.com*

23

24   Attorneys for:
     Tucson Tamale Company, Todd Russell Martin, Sherry Martin and Lisa Martin

25   *Melissa Martin McBeath*

26   Melissa Martin McBeath

27

28

EXHIBIT  A

From: Kumar Law <ruchit@kumarlawsv.com>
Date: Wed, Feb 22, 2017 at 9:51 AM
Subject: Re: February 28 Hearing
To: Travis L. Tufts <ttufts@fmazlaw.com>
Cc: Robert Garcia <rgarcia@fmazlaw.com>, Tish Wright
<twright@fmazlaw.com>, Jamie Archibald <jarchibald@fmazlaw.com>

Travis,

I just now had a chance to review the Notice of Motions for Oral Argument on
February 28, 2017.

The Notice lists Defendants' Motion to Dismiss filed on May 25, 2016.

According to the Court's Order issued following the October 31, 2016 hearing,
this motion was denied as moot.

Weren't your clients going to file another motion to dismiss shortly after the
January 17, 2017 hearing?

I'll get back you on your proposal to submit all claims to binding arbitration.

Ruchit

--

**Ruchit Kumar Agrawal, Esq.**
| **Silicon Valley** 408.601.0586 | **Washington DC** 202.807.6180 |

Unless specifically indicated, nothing in this email should be interpreted as a digital or electronic signature that can be used to form, execute, document, agree to, enter into, accept or authenticate a contract or other legal document. This electronic mail transmission and any attached documents may contain confidential or privileged information for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by anyone other than the intended recipient(s) is strictly prohibited. If you believe that you have received this message in error, please notify the sender by reply transmission and delete or destroy the message without copying or disclosing it.

EXHIBIT  B

| | |
|---|---|
| Name of Person Filing: | Melissa Martin McBeath |
| Mailing Address: | 3463 E. Terra Alta Blvd. |
| City, State, Zip Code: | Tucson, AZ 85716 |
| Telephone: | (520) 449-9753 |

FOR CLERK'S USE ONLY

# SUPERIOR COURT OF ARIZONA
# IN MARICOPA COUNTY

**In the Matter of**

**Case No.** C20161794

Melissa Martin McBeath
Petitioner(s) /Plaintiff(s)

Tucson Tamale Company et al.
Respondent /Defendant(s)

**AFFIDAVIT OF SERVICE
OF SUBPOENA**
Arizona Rules of Civil Procedure, Rule 45 (d)
Arizona Rules of Family Law Procedure, Rule 52

**I received the Subpoena addressed to:**   Koty-Leavitt Insurance Agency

**which was dated:**  September 30, 2016    **I personally served the subpoena as follows:**

**On this date:**  October 6, 2016    **At this time:**   2:24 pm

**At this location:**  6992 E. Broadway Blvd., Tucson, AZ 85710

**To: (Name)**   Koty-Leavitt Insurance Agency  (Teagan Hassan)

**Manner of Service:**   personal service    (hand-delivered)
   **(how served)**

**I was over the age of 18 at the time the subpoena was served.  I am not a party to the case.**

## UNDER PENALTY OF PERJURY:

By signing below, I state to the Court under penalty of perjury that the contents of this document are true and correct.

**Date:**   October 6, 2016

**Signature**

**Printed Name:**   Ernesto A. Chavez

**Street Address:**   3173 E. Terra Alta

**City, State, Zip Code:**   Tucson, AZ 85716

**Telephone Number(s):**

| | |
|---|---|
| FEES | $ 0.00 |
| MILEAGE CHARGES | $ |
| OTHER | $ |
| **TOTAL** | $  0.00 |

EXHIBIT  C

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

Melissa Martin McBeath,

           Plaintiff,

v.

Tucson Tamale Company,

           Defendant.

No. CV-16-00462-TUC-DCB (BPV)

**REPORT AND RECOMMENDATION**

Pending before the Court are: (1) Defendant's Motion for Judgment on the Pleadings (Doc. 18); and Plaintiff's Motion for Leave to Amend Complaint (Doc. 25). This matter is referred to the undersigned Magistrate Judge for all pretrial proceedings and a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) and LRCiv. 72.1, 72.2. For the following reasons, the Magistrate Judge recommends that the District Court: (1) deny Defendant's Motion for Judgment on the Pleadings; and (2) grant Plaintiff's Motion for Leave to Amend Complaint.

## I.    FACTUAL & PROCEDURAL BACKGROUND

### A.    FEDERAL ACTION

On July 11, 2016, Plaintiff, acting *pro se,* filed the instant action against her former employer, the Tucson Tamale Company, alleging violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* (Doc. 1). Plaintiff alleges that she is over the age of 40. (Complaint at ¶40). Plaintiff further alleges that in April 2015, she began employment with Defendant in the positon of Area Manager based upon the promise that after a 90-day probationary period, she would "transition into the new

role of Business Development Manager at an increased annual salary." (*Id.* at ¶¶14, 15, 21). The transition did not occur after the 90-day probationary period and Plaintiff's employment was ultimately terminated on February 22, 2016. (*Id.* at ¶¶24, 32, 35). Plaintiff also alleges that in or around September 2015, Defendant hired Lindsay Welch, who "is in her early 30s[] for the position of Business Development Manager that had been promised to Plaintiff." (*Id.* at ¶41). According to Plaintiff, she "is more qualified than Lindsay Welch to be [Defendant's] Business Development Manager, but was denied the position because of Plaintiff's age and Hispanic national origin." (*Id.* at ¶47).

### B.   STATE ACTION

On April 15, 2016, Plaintiff filed a *pro* se action in Arizona state court against the following Defendants: Tucson Tamale Company, the same Defendant against whom this federal action is pending, and Todd Martin, Sherry Martin, and Lisa Martin all of whom are associated with the Tucson Tamale Company. (Defendants' Motion for Judgment on the Pleadings (Doc. 18), Exh. 1 (Doc. 18-1)). Plaintiff alleges claims of: retaliatory discharge in violation of the Employment Protection Act, A.R.S. § 23-1501, against all defendants; fraud in the inducement against all defendants; negligent misrepresentation against all defendants; breach of employment agreement against the Tucson Tamale Company; failure to pay earned wages in violation of Arizona's wage Act, ARS § 23-350, *et seq.* against the Tucson Tamale Company; conversion against all defendants; and restitution/unjust enrichment against all defendants.

## II.   DISCUSSION

Defendant has filed a Motion for Judgment on the Pleadings pursuant to Fed.R.Civ.P. 12(c), arguing that the matter should be dismissed because Plaintiff has impermissibly split her claim between the Arizona state court and this Court. (Defendant's Motion for Judgment on the Pleadings (Doc. 18)). In addition to opposing Defendant's Motion (*see* Doc. 19), Plaintiff seeks leave to amend her Complaint to include a cause of action alleging national origin, race and ancestry discrimination in violation of 42 U.S.C. §2000e-2(a). (Plaintiff's Motion for Leave to Amend (Doc. 25)).

### A. DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

#### 1. STANDARD

"Judgment on the pleadings is properly granted when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir.2009). "Analysis under Rule 12(c) is substantially identical to analysis under Rule 12(b)(6) because, under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." *Chavez v. United States,* 683 F.3d 1102, 1108 (9th Cir. 2012) (internal quotation marks and citation omitted).

When analyzing a complaint under Rule 12(b)(6) for failure to state a claim, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Taylor v. Yee,* 780 F.3d 928, 935 (9th Cir. 2015) (internal quotation marks and citation omitted). However "[t]he tenet that a court must accept as true all of the allegations contained in a complaint..." does not apply to legal conclusions. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009));; *see also Telesaurus VPC, LLC. v. Power,* 623 F.3d 998, 1003 (9th Cir. 2010) (pleadings that are no more than legal conclusions "'are not entitled to the assumption of truth.'") (quoting *Iqbal*, 556 U.S. at 679). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Moreover, the court "cannot assume any facts necessary to [the plaintiff's]...claim that they have not alleged." *Jack Russell Terrier Network of Northern Calif. v. American Kennel Club, Inc*., 407 F.3d 1027, 1035 (9th Cir. 2005).

The court will assume "'well-pleaded factual allegations,'. . . to be true, 'and then determine whether they plausibly give rise to an entitlement to relief.'" *Telesaurus*, 623 F.3d. at 1003 (quoting *Iqbal*, 556 U.S. at 679); *see also Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more

than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (*quoting Twombly,* 550 U.S. at 570). Determining plausibility is a "context-specific task..." that requires the court to "draw on its judicial experience and common sense." *Id.* at 679. A complaint cannot survive dismissal where the court can only infer that a claim is merely possible rather than plausible. *Id.*

Although courts will not normally look beyond the pleadings in resolving a motion to dismiss for failure to state a claim, the Court may take judicial notice of matters of public record, such as Plaintiff's state complaint, if the facts are not subject to reasonable dispute. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir.2001), *impliedly overruled on other grounds as discussed in Gallardo v. Dicarlo*, 203 F.Supp.2d 1160, 1162 n.2 (C.D. Cal. 2002); *see also* Fed.R.Evid. 201.

## 2. ANALYSIS

Defendant argues that Plaintiffs' federal action must be dismissed based upon impermissible claim-splitting. "Plaintiffs generally have no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant." *Adams v. California Dep't of Heath Servs.,*487 F.3d 684, 688 (9th Cir. 2007) (internal quotation marks and citation omitted), *overruled on other grounds by Taylor v. Sturgell,* 533 U.S. 880, 904 (2008). Whether to dismiss an action on grounds of claim-splitting is a matter within the trial court's discretion. *Id.* The issue of claim-splitting has generally been viewed as a concern related to docket management. *See* 18A Charles Alan Wright, Arthur R. Miller, *Federal Practice & Procedure,* §4406 (3d ed.); *see also Kanciper v. Suffolk Cty. Soc. for the Prevention of Cruelty to Animals*, *Inc.*, 722 F.3d 88, 89, 91 nn. 2, 3 (2d Cir. 2013).

Here, Defendant requests dismissal of the instant federal action based upon Plaintiff's pending state court action. Unlike *Adams,* however, Plaintiff's actions are not pending in the "same court. . . ."[1] *Adams,* 487 F.3d at 688.

---

[1] Although Defendant correctly indicated that the plaintiff in *Adams* "filed suit in state court" (Defendant's Motion at 5), that action was pending in federal court upon removal when the plaintiff filed the concurrent federal court action and when the claim-

- 4 -

The Ninth Circuit has recognized the long-settled rule that "overlapping or even identical federal and state court litigation may proceed simultaneously, limited only by doctrines of abstention and comity. . . ." *Noel v. Hall,,* 341 F.3d 1148, 1159 (9th Cir. 2003). In *Noel,* the Ninth Circuit explained that:

> The rule that permits simultaneous litigation in state and federal court of overlapping and even identical cases is deeply rooted in our system. As the Court wrote in *Atlantic Coast Line Railroad v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970): "[T]he state and federal courts had concurrent jurisdiction in this case, and neither court was free to prevent either party from simultaneously pursuing claims in both courts." *Id.* at 295, 90 S.Ct. 1739 (citing *Kline v. Burke Constr. Co*., 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226 (1922)). The Court has recognized that this rule can produce "inefficient simultaneous litigation in state and federal courts on the same issue.... But this is one of the costs of our dual court system...." *Parsons Steel, Inc. v. First Ala. Bank,* 474 U.S. 518, 524– 25, 106 S.Ct. 768, 88 L.Ed.2d 877 (1986); *see also Doran v. Salem Inn, Inc*., 422 U.S. 922, 928, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975) ("[T]he very existence of one system of federal courts and 50 systems of state courts, all charged with the responsibility for interpreting the United States Constitution, suggests that on occasion there will be duplicating and overlapping adjudication of cases which are sufficiently similar in content, time, and location to justify being heard before a single judge had they arisen within a unitary system.")[.]

*Id.* at 1159. The court went on to explain that:

> The inefficiencies produced by the rule permitting simultaneous litigation in state and federal court are mitigated by a number of abstention doctrines that permit, and often require, a federal court to abstain in favor of state court litigation. They include *Younger* abstention, after *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); *Pullman* abstention, after *Railroad Commission of Texas v. Pullman Co*., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); *Burford* abstention, after *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943); and *Colorado River* abstention, after *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). In addition, a federal court may stay its proceedings based on comity even when none of the abstention doctrines requires that it do so. *See Deakins v. Monaghan*, 484 U.S. 193, 202–03, 108 S.Ct. 523, 98 L.Ed.2d 529 (1988). These federalism-based abstention and comity doctrines are complex and subtle, ensuring that a decision by a federal court to proceed, abstain, or stay in the

splitting issue was raised and decided. *See Adams,* 487 F.3d at 687-88.

face of parallel state court litigation will be made only after considering a number of case- and doctrine-specific factors.

*Id.* at 1159-60. *See also Rutledge v. Arizona Bd. of Regents,* 859 F.2d 732, 736 (9th Cir. 1988) (Plaintiff "chose to file parallel state and federal court actions simultaneously. There was concurrent jurisdiction and it was permissible for him to do so.").

Other than citing *Adams,* which indicates that the actions must be filed in the same court for the claim-splitting defense to apply, the parties have cited to no Ninth Circuit law specifically discussing whether a case may be dismissed on grounds of claim-splitting when the parallel action is pending in state court.[2]  Defendant has cited to *Clements v. Airport Authority of Washoe County*, 69 F.3d 321 (1995) for an explanation of the "objective" of the rule against claim-splitting.  (Defendant's Motion at 3-4).  Although *Clements* involved parallel state and federal actions, the Ninth Circuit ultimately held that the defendants waived objections "to the splitting of any claim or to the prosecution of the two cases at the same time in the state and federal courts." *Clements*, 69 F.3d at 329.  Thus, *Clements* does not provide any assistance on the instant issue given that, in light of the defendants' waiver, the court was not required to address whether the defense would have applied to a concurrent state action in the first place.

In two unpublished decisions involving parallel state and federal actions, the Ninth Circuit has reversed district court dismissals based on claim-splitting because both actions were not pending in the same court  *See Henderson v. Bonaventura*, 649 F. App'x 639, 641, 2016 WL  (9th Cir. 2016) (citing *Colorado River Water Conservation Dist.,*

---

[2] Plaintiff has cited an Arizona decision for the premise "that where two identical actions are filed in 'state and federal courts having concurrent jurisdiction' the action 'may proceed simultaneously until one court reaches judgment.'" (Plaintiff's Opposition to Defendant's Motion for Judgment on the Pleadings (Doc. 19) at 2-3 (quoting *Tonnemacher v. Touche Ross & Co.,* 186 Ariz. 125, 128, 920 P.2d 5, 8 (App. 1996) (emphasis omitted)).  The *Tonnemacher* court held that Arizona's abatement doctrine did not apply and that the state court could not dismiss the state action based upon the pendency of a parallel federal action, a result which the court found was "harmonious with the federal rule, which is that a federal court will not generally dismiss a state law claim that has been asserted in a prior state court proceeding." *Tonnemacher,* 186 Ariz. at 130, 920 P.2d at 10 (citing *Colorado River Water Conservation Dist.,* 424 U.S. at 817).

424 U.S. at 818); *Sanzaro v. Ardiente Homeowners Ass'n LLC,* 513 F. App'x 646, 647, 2013 WL 1137378 (9th Cir. 2013) (citing *Noel*, 341 at 1159).[3]

  The Second Circuit Court of Appeals has reversed dismissal entered by the district court based upon a claim-splitting analysis, and held that the issue should, instead, be decided under the *Colorado River* abstention doctrine.  *Kanciper*, 722 F.3d at 92-94. (recognizing that federal courts are not barred from entertaining federal suits when a parallel state action is pending).  Several district courts have also found the claim-splitting defense inapplicable where the concurrent case is pending in state court.  *T.K. v. Stanley,* 2016 WL 6217117, at *2 (W.D. Wash. Oct. 25, 2016) (denying motion for reconsideration of court's order, *inter alia,* declining to apply claim-slitting defense when the concurrent action is a state court proceeding.); *Deabay v. Philadelphia Indem. Ins. Co.*, 2015 WL 4041735, *2 (D. Me. July 1, 2015) ("Because the present case involves state-federal concurrent proceedings, the Defendant's 'claim splitting' argument is unavailing."); *O'Dell v. CMH Homes, Inc.*, 2015 WL 4041302, at *3 (N.D.W. Va. July 1, 2015) ("This [claim-splitting] doctrine, however, has not been extended to apply to parallel state and federal actions. As a general rule, the mere existence of a pending parallel action in the state system will not bar proceedings regarding the same matter in a federal court, 'despite what may appear to result in a duplication of judicial resources.'") (quoting *McLaughlin v. United Va. Bank,* 955 F.2d 930, 934 (4th Cir.1992) (discussing *Colorado River* abstention doctrine); *Steinberg v. Nationwide Mut. Ins. Co.*, 418 F. Supp. 2d 215, 223 (E.D.N.Y. 2006) ("However, claim splitting does not apply to parallel state and federal actions. Courts have consistently declared that '[w]here there is concurrent jurisdiction, however, it is permissible for a plaintiff to file parallel state and federal actions simultaneously.'") (quoting *Rutledge,* 859 F.2d at 736).

  Defendant's request for dismissal of Plaintiff's federal action based upon a claim-splitting theory contravenes the rule "deeply rooted in our system" that "overlapping or

---

[3] Pursuant to Ninth Circuit Rule 36-3(a), although these cases may be cited, they have no precedential value. *See also* Fed.R.App.P. 32.1.

even identical federal and state court litigation may proceed simultaneously, limited only by doctrines of abstention and comity . . . ." *Noel*, 341 F.3d at 1159. *Cf. Kanciper*, 722 F.3d at 92-94; *O'Dell*, 2015 WL 4041302, at *3; *Steinberg*, 418 F. Supp. 2d at 223. Because Plaintiff's concurrent actions are pending in state and federal court, dismissal on a claim-splitting theory is not appropriate in this case and Defendant's Motion for Judgment on the pleadings should be denied.[4]

**B.    PLAINTIFF'S MOTION FOR LEAVE TO AMEND THE COMPLAINt**

**1.    Standard**

The Federal Rules of Civil Procedure provide that "the court should freely give leave [to amend the complaint] when justice so requires[,]" Fed.R.Civ.P. 15(a)(2), and the United States Supreme Court has made clear that "this mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Id*. However, leave to amend may be denied in circumstances of undue delay, bad faith, futility of amendment, failure to cure deficiencies by amendments previously allowed, and prejudice to the opposing party. *Id*.; *Western Shoshone Nat'l Council v. Molini,* 951 F.2d 200, 204 (9th Cir. 2001); *Howey v. United States*, 481 F.2d 1187 1190 (9th Cir.1973). The most important of these factors is prejudice to the opposing party. *Jackson v. Bank of Hawaii,* 902 F.2d 1385, 1387 (9th Cir. 1990). The party opposing amendment bears the burden of proving prejudice. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987). A district court's denial of leave to amend is reviewed for an abuse of discretion, but the question of futility is reviewed de novo. *United States v. United Healthcare Insur. Co.,* __ F.3d __, 2016 WL 7378731 *7 (9th Cir. Aug. 10, 2016).

---

[4] The parties have not argued or briefed whether the Court is limited in this case by federal doctrines of abstention or comity and the Court offers no opinion on those issues at this point.

- 8 -

## 2. ANALYSIS

Plaintiff seeks leave to amend her Complaint to include a claim of discrimination based upon national origin, race and ancestry in violation of 42 U.S.C. § 2000e-2(a). (Plaintiff's Motion for Leave to Amend the Complaint (Doc. 25)).  She did not include the claim in her original Complaint because the Equal Employment Opportunity Commission ("EEOC") had not yet issued its right to sue letter.  (*Id.* at 2).  On November 2, 2016, the EEOC issued its right to sue letter and Plaintiff filed the instant Motion seeking leave to amend on December 12, 2016.  (*Id.*).

Defendant opposes Plaintiff's Motion, arguing that it is futile because the action should be dismissed on grounds of claim-splitting as advanced in Defendant's Motion for Judgment on the Pleadings.  Because Defendant does not prevail in its request for dismissal based on claim-splitting, as discussed above, Plaintiff's amendment cannot be viewed as futile claim-splitting.

Defendant goes on to argue that amendment should not be permitted because Plaintiff is acting in "bad faith" by forcing Defendant to defend against litigation in state and federal forums, as well as in administrative proceedings.  (Defendant's Opposition to Plaintiff's Motion for Leave to Amend Complaint (Doc. 27) at 3-4).  Defendant asserts that that "virtually none" of Plaintiff motions filed in state court have been granted.  (*Id.* at 3 (emphasis omitted)).  Defendant also asserts that Plaintiff "is not . . . a mere *pro se* litigant wading into difficult areas of law and legal doctrine[,] [r]ather she is the face of a 'team'" including "one disbarred [by the state of California] attorney and an apparent jack-of-all-trades information technology 'litigation consultant. . . '" with whom Plaintiff has allegedly shared Defendant's confidential information.  (*Id.*).

Plaintiff indicated in her original Complaint, which was filed in July 2016, that she anticipated amending the Complaint "to allege an additional claim for national origin discrimination if the EEOC elects to issue a right to sue letter in Plaintiff's pending national origin discrimination charge."  (Complaint, ¶50).  A little over a month after she received the right to sue letter, Plaintiff filed the instant motion.  While Defendant's

Opposition suggests animosity between the parties, there has been no showing at this point of a pattern of bad faith on behalf of Plaintiff so as to preclude the requested amendment. *See generally,* 6 Charles Alan Wright & Arthur R. Miller 6 *Federal Practice & Procedure* §1487 n. 31 (collecting cases where bad faith prevented amendment of the complaint). Accordingly, Plaintiff should be permitted to file and serve her First Amended Complaint.

## III. RECOMMENDATION

For the foregoing reasons, the Magistrate Judge recommends that the District Court, after its independent review:

(1)     deny Defendant's Motion for Judgment on the Pleadings (Doc. 18); and

(2)     grant Plaintiff's Motion for Leave to Amend the Complaint (Doc. 25).

Pursuant to 28 U.S.C. §636(b) and Rule 72(b)(2) of the Federal Rules of Civil Procedure and LRCiv 7.2(e), Rules of Practice of the U.S. District Court for the District of Arizona, any party may serve and file written objections within FOURTEEN (14) DAYS after being served with a copy of this Report and Recommendation. A party may respond to another party's objections within FOURTEEN (14) DAYS after being served with a copy. Fed.R.Civ.P. 72(b)(2). No replies to objections shall be filed unless leave is granted from the District Court to do so. If objections are filed, the parties should use the following case number: **CV 16-462-TUC-DCB**.

Failure to file timely objections to any factual or legal determination of the Magistrate Judge may be deemed a waiver of the party's right to review.

Dated this 31st day of January, 2017.

Bernardo P. Velasco
United States Magistrate Judge

- 10 -

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Melissa Martin McBeath, | No. CV-16-00462-TUC-DCB |
| Plaintiff, | **ORDER** |
| v. | |
| Tucson Tamale Company, | |
| Defendant. | |

This matter was referred to Magistrate Judge Bernardo P. Velasco on November 23, 2016.  Pursuant to the Rules of Practice for the United States District Court, District of Arizona (Local Rules), Rule (Civil) 72.1(a), Magistrate Judge Velasco issued a Report and Recommendation (R&R) on January 31, 2017.  (Doc. 29: R&R)**.**  He recommends denying the Defendant's Motion for Judgment on the Pleadings and granting Plaintiff leave to amend the Complaint.

STANDARD OF REVIEW

The duties of the district court, when reviewing an R&R of a Magistrate Judge, are set forth in Rule 72 of the Federal Rules of Civil Procedure and 28 U.S.C. § 636(b)(1). The district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Fed.R.Civ.P. 72(b), 28 U.S.C. § 636(b)(1).  When the parties object to an R&R, "'[a] judge of the [district] court shall make a *de novo* determination of those portions of the [R&R] to which objection is made.'" *Thomas v. Arn,* 474 U.S. 140, 149-50 (1985) (quoting 28 U.S.C. § 636(b)(1)).

1    When no objections are filed, the district court does not need to review the R&R *de novo.*

2    *Wang v. Masaitis,* 416 F.3d 992, 1000 n. 13 (9th Cir.2005); *United States v. Reyna-Tapia,*

3    328 F.3d 1114, 1121-22 (9th Cir.2003) (*en banc*).

4        The parties were sent copies of the R&R and instructed they had 14 days to file

5    written objections. 28 U.S.C. § 636(b), *see also,* Federal Rule of Criminal Procedure 72

6    (party objecting to the recommended disposition has fourteen (14) days to file specific,

7    written objections). The Defendant has not filed an objection.

8                        REPORT AND RECOMMENDATION

9        The Honorable Bernardo P. Velasco, United States Magistrate Judge, considered

10   two issues: whether Plaintiff's federal action is impermissible claim splitting and whether

11   the claim of discrimination based on national origin, race and ancestry is futile. The

12   Defendant's Motion for Judgment on the Pleadings turns on the answer to the first

13   question. The Plaintiff's Motion to Amend the Complaint hinges on the second.

14       The Magistrate Judge found that Plaintiff's federal case is not precluded by claim

15   splitting. She is free to litigate simultaneously in both the state and federal courts until

16   one reaches judgment, but may be limited by doctrines of abstention and comity, and the

17   Court's discretion to stay a case for judicial economy. (R&R (Doc. 29) at 4-8.) The

18   Magistrate Judge did not reach the doctrines of abstention or comity because they were

19   not raised by the motion. *Id.* The Court finds the Magistrate Judge was correct in his

20   analysis of claim splitting and, it also does not reach questions of abstention or comity.

21       Of course, leave to amend is always freely granted. Fed. R. Civ. P. 15(a)(2). The

22   record reflects that the Plaintiff was waiting for her right to sue letter prior to bringing the

23   discrimination claim. The EEOC issued the right to sue letter on November 2, 2016, and

24   Plaintiff moved to amend the Complaint on December 12, 2016. Like the Magistrate

25   Judge, this Court rejects Defendant's argument that Plaintiff proposed amendment is

26   made in bad faith. (R&R (Doc. 29) at 9-10.)

27

28

While there are no objections and review has, therefore, been waived, the Court nevertheless reviews at a minimum, *de novo*, the Magistrate Judge's conclusions of law. *Robbins v. Carey*, 481 F.3d 1143, 1147 (9th Cir. 2007) (citing *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998) (conclusions of law by a magistrate judge reviewed *de novo*); *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991) (failure to object standing alone will not ordinarily waive question of law, but is a factor in considering the propriety of finding waiver)). The Court finds the R&R to be thorough and well-reasoned, without any clear error in law or fact. *See United States v. Remsing*, 874 F.2d 614, 617-618 (9th Cir. 1989) (*United States v. Remsing*, 874 F.2d 614, 617-618 (9th Cir. 1989) (citing 28 U.S.C. § 636(b)(1)(A) as providing for the district court to reconsider matters delegated to magistrate judge when there is clear error or recommendation is contrary to law). The Court accepts and adopts the R&R as the opinion of the Court, pursuant to 28 U.S.C. § 636(b)(1). For the reasons stated in the R&R, the Court denies the Motion for Judgment on the Pleadings and grants the Motion to Amend the Complaint.

**Accordingly,**

**IT IS ORDERED** that the Report and Recommendation (Doc. 29)is adopted as the opinion of the Court.

**IT IS FURTHER ORDERED** that the Motion for Judgment on the Pleadings (Doc. 18) is DENID.

**IT IS FURTHER ORDERED** that the Motion for Leave to Amend the Complaint (Doc. 25) is GRANTED.

**IT IS FURTHER ORDERED** that this case remains referred to Magistrate Judge Bernardo P. Velasco, pursuant to 28 U.S.C. 636(b)(1) and LRCiv. 72.1 and 72.2.

Dated this 21st day of February, 2017.

Honorable David C. Bury
United States District Judge

EXHIBIT  3

FILED
TONI L. HELLON
CLERK, SUPERIOR COURT
8/14/2016 7:04:03 PM
BY: KEITH YLVISAKER
DEPUTY

1

MELISSA MARTIN McBEATH

2

3463 E. TERRA ALTA BLVD.

3

TUCSON, AZ 85716

Ph:  (520) 449-9753

4

*mel.mcbeath@cox.net*

5

6

Pro Se

7

8

9

**SUPERIOR COURT OF ARIZONA**

**COUNTY OF PIMA**

10

11

12

MELISSA MARTIN McBEATH, an
individual,

13

14

Plaintiff,

15

v.

16

TUCSON TAMALE COMPANY; an
Arizona corporation, *et al.*,

17

18

Defendants.

19

20

TUCSON TAMALE COMPANY; an
Arizona corporation,

21

22

Counterclaimant,

23

v.

24

MELISSA MARTIN McBEATH, an
individual, *et al.*,

25

26

Counterdefendants.

27

28

Case No. C20161794

**MELISSA MARTIN McBEATH'S
MOTION FOR A PROTECTIVE
ORDER TO SHIELD IDENTITY
AND COMMUNICATIONS WITH
EXPERTS CONSULTED
INFORMALLY**

[Ariz. R. Civ. P. 26(c)]

Assigned to Hon. Gus Aragon
Division 30

10204.1

# LEGAL DISCUSSION

Plaintiff/Counterdefendant Melissa Martin McBeath moves under Ariz. R. Civ. P. 26(c) for a protective order to shield from discovery experts she consults informally. Under Ariz. R. Civ. P. 26(b)(4)(B), Tucson Tamale Company, Todd Russell Martin, Sherry Martin and Lisa Martin are not entitled to know the identity of any of these persons. McBeath's efforts to meet and confer with the Defendants' lawyers about this dispute were unsuccessful.[1]

For the reasons explained below, McBeath requests:

1.     That the Court order Defendants to cease all efforts to identify any expert(s) McBeath has consulted or may be consulting informally. Defendants must further cease all efforts to discover the nature and content of the advice/services provided by these experts.

2.     That the Court order Defendants to destroy any emails and any other information inadvertently produced or that they received by mistake from any expert(s) whom McBeath has notified Defendants she has consulted or may be consulting informally.

3.     That the Court order Defendants not to mention, nor comment on, individuals in their court filings whom McBeath has notified Defendants she has consulted or may be consulting informally, and to amend their existing filings to omit any such references to these individuals.

4.     That the Court order Defendants to withdraw the complaints they filed with the Arizona State Bar regarding anyone Defendants suspect assisted, or is assisting, or whom they have been notified has assisted, McBeath with this case. Defendants contacted the State Bar solely to harass, embarrass, and distract McBeath and her consulting expert(s), and not out of some genuine concern to protect the public from individuals engaged in the unauthorized practice of law.

---

[1]   Melissa Martin McBeath Declaration, dated August 15, 2016 (*"McBeath Dec."*) ¶ 2 (Exhibit D).

-1-

A.   <u>Defendants forced McBeath to reveal Ehud Gavron's identity, violating her right not to disclose any expert she consults informally to help her prepare for trial.</u>

On July 15, 2016, McBeath referred Defendants' lawyers to Ariz. R. Civ. P. 26(b)(4)(B) and the extensive discussion of case law found in the ethics opinions published by the State Bar of Arizona regarding experts informally consulted in preparation for trial, but not retained.[2] The law is clear and long-settled that "[n]o discovery may be had of the names or views of experts in this category."[3]

McBeath explained that if Defendants are not entitled to know even the identity of experts she consults informally, Defendants certainly may not inquire into the nature and scope of the services and advice they provide.

On July 19, 2016, McBeath sent another letter to Defendants' lawyers and asked them to withdraw the subpoena issued for Mr. Gavron,[4] and on July 25, 2016 she provided the following additional legal authority.[5] Opposing counsel disagreed with McBeath's reading of this authority and rejected her request to cease all efforts to discover the content of her communications with her experts.

B.   <u>The Arizona State Bar ethics rules and case law provide that an opposing party does not have the right to conduct discovery relating to any expert consulted informally who assists the other party prepare for trial.</u>

Arizona State Bar Ethics Opinion 88-01 discusses whether and to what extent an opposing party may use discovery to learn the identity of an opponent's expert witnesses and the content of their communications. The discovery permissible depends on whether the expert will testify at trial. Many of the cases the State Bar cites are federal court opinions (probably because of the paucity of Arizona case law on this issue) and because the Arizona Rules of Civil Procedure

---

[2]   McBeath Dec. ¶ 2 (<u>Exhibit A</u>).

[3]   *See www.azbar.org/Ethics/EthicsOpinions/ViewEthicsOpinion?id=578*

[4]   McBeath Dec. ¶ 3 (<u>Exhibit B</u>).

[5]   McBeath Dec. ¶¶ 4, 5 (<u>Exhibit C</u> and <u>Exhibit D</u>).

1   are patterned after the federal rules.[6]

2        The content of McBeath's communications with experts she consults

3   informally and their work product are protected from disclosure by Ariz. R. Civ.

4   P. 26(b)(4)(B) (expert retained only for trial preparation) and Ariz. R. Civ. P.

5   26(b)(3) (expert work-product privilege). Defendants have not been able to cite

6   any exceptions to the protection afforded by these Rules if the party has not

7   voluntarily waived any of the rights or privileges afforded by these rules.

8        McBeath has not waived any of her rights.

9        Non-testifying experts do not have to work under the direction of or for an

10  attorney for their work to be protected from discovery. The protection that Rule

11  26(b)(4)(B) provides is independent, and does not flow from the attorney work-

12  product doctrine or the attorney client privilege.[7] The Advisory Committee Notes

13  to Rule 26(b)(4) make clear that the drafters of the Rule "reject[ed] as ill-

14  considered [court] decisions which have sought to bring expert information

15  within the work-product doctrine" and instead "adopt[ed] a form of the more

16  recently developed doctrine of unfairness."[8] "The work that retained experts do in

17  anticipation of litigation is not work product and its discoverability is governed

18  by a separate rule [26(b)(4)]."[9]

19       ─────────────

20       [6]   *See Arizona Dept. of Revenue v. Superior Court,* 189 Ariz. 49, 53, 938 P.2d 98, 102 (App. 1997).

21       [7]   *U.S. v. Meyer*, 398 F.2d 66, 73-74 (9th Cir. 1968) (commenting that "the

22  reasons [for rejecting as ill-considered the decisions which have sought to bring expert information within the work product doctrine] seem clear"); 8A Charles A.

23  Wright, Arthur R. Miller, Mary K. Kane & Richard L. Marcus, Federal Practice

24  and Procedure § 2029 (3d ed. 2010) ("The knowledge of an expert is not part of the [attorney] work product...").

25       [8]   Fed. R. Civ. P.  26 Advisory Committee's Note to Subdivision (b)(4), 1970

26  Amendments (citation omitted).

27       [9]   *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 116 F.R.D. 533, 539 (N.D. Cal.

28  1987) *abrogated on other grounds by Advanced Cardiovascular Systems, Inc. v. C.R. Bard, Inc.*, 144 F.R.D . 372, 374 (N.D. Cal. 1992).

The purpose of Rule 26(b)(4)(B) is "to protect trial strategy, prevent one party from having a free ride at the expense of the other party, and to promote fairness by precluding unreasonable access to an opposing party's diligent trial preparation.[10] "The Rule is also designed to prevent a party from building his case on the diligent preparation of his adversary."[11] "Rule 26(b)(4)(B) thus creates a safe harbor whereby facts and opinions of non-testifying, consulting experts are shielded from discovery, except upon a showing of exceptional circumstances," which do not exist here.[12] "Indeed, some courts have construed 26(b)(4)(B) as creating a privilege against disclosure." *Id.* "This Rule recognizes that with non-testifying experts, there is no need to obtain discovery for effective cross-examination."[13]

## CONCLUSION

For the reasons explained above, McBeath requests that the Court issue a protective order that instructs Defendants not to direct any discovery at anyone McBeath consults informally as an expert who has helped her prepare for trial.

Dated:  August 14, 2016        Respectfully submitted,

_____

Melissa Martin McBeath

---

[10] *Klee v. Whirlpool Corp.*, 251 F.R.D. 507, 511 (S.D. Cal. 2006); *FMC Corp. v. Vendo Co.*, 196 F. Supp. 2d 1023, 1048 (E.D. Cal. 2002); *Durflinger v. Artiles*, 727 F.2d 888, 891 (10th Cir. 1984); Jack H. Friedenthal, *Discovery and Use of an Adverse Party's Expert Information*, 14 Stan. L. Rev. 455, 488 (1962) (concluding that "the work product doctrine should [not] be extended to cover expert information which [it] normally would not protect" and that "[i]f such discovery is to be denied, it should be done on the ground that disclosure would be unfair under the particular facts of the case")

[11] *In re Shell Oil Refinery*, 132 F.R.D. 437, 440 (E.D. La. 1990), citing Pielemeier, Discovery of Non-Testifying 'In-House' Experts Under Federal Rules of Civil Procedure, 58 Ind. L.J. 597, 607-08 (1984).

[12] *Plymovent Corp., v. Air Technology Soltns.*, 243 F.R.D. 139, 143 (D. N.J. 2007).

[13] *Shell Oil*, 132 F.R.D. at 440.

# DECLARATION

I, MELISSA MARTIN McBEATH, declare:

1.     I am the Plaintiff and Counterdefendant in this action. This declaration is submitted in support of my Motion for a Protective Order to Shield the Identity and Communications with Experts Consulted Informally. I have personal, first-hand knowledge of all matters stated herein and, if called to testify as to these matters, I could and would do so competently.

2.     On July 15, 2016, I referred Defendants' lawyers to Ariz. R. Civ. P. 26(b)(4)(B) and the extensive discussion of case law found in the ethics opinions published by the State Bar of Arizona regarding experts informally consulted in preparation for trial, but not retained. Attached as <u>Exhibit A</u> is a true and correct copy of my letter to Roberto Garcia and Travis Tufts.

3.     On July 19, 2016, I sent another letter to opposing counsel and asked them to withdraw the subpoena duces tecum issued for Ehud Gavron. Attached as <u>Exhibit B</u> is a true and correct copy of my letter to Roberto Garcia and Travis Tufts.

4.     July 25, 2016, I provide additional legal authority via email to opposing counsel explaining that expert opinion does not fall within the attorney work-product doctrine. Attached as <u>Exhibit C</u> is a true and correct copy of my email to Roberto Garcia and Travis Tufts.

5.     Attached as <u>Exhibit D</u> is an email I received on August 9, 2016, from Travis Tufts asking me to persuade individuals I have consulted as experts to accept service of subpoenas issued in their names.

I declare (or certify, verify or state) under penalty of perjury under the laws of the State of Arizona that the foregoing is true and correct. Executed on August 14, 2016.

Melissa Martin McBeath

1

2   <u>ORIGINAL</u> filed via TurboCourt on August 14, 2016 with:

3   Clerk of the Court
    Pima County Superior Court

4

5   <u>COPY</u> served via TurboCourt on August 14, 2016 to:

6   Roberto C. Garcia

7   *rgarcia@fmazlaw.com*
    Travis L. Tufts

8   *ttufts@fmazlaw.com*

9

10  Attorneys for:
    Tucson Tamale Company, Todd Russell Martin, Sherry Martin and Lisa Martin

11

12  Melissa Martin McBeath

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

10204.1                                                                    C20161794

Exhibit A

# Melissa Martin McBeath

3463 E. Terra Alta Blvd. • Tucson, AZ 85716 • 520.449.9753 • *mel.mcbeath@cox.net*

<u>SENT VIA E-MAIL ONLY</u>

July 15, 2016

Robert C. Garcia
Travis L. Tufts
Farhang & Medcoff
4801 E. Broadway, Suite 311
Tucson, AZ 85711

Re:     <u>*McBeath v. Tucson Tamale Company et al.*</u>
         Pima County Superior Court Case No. C20161794

Gentlemen:

On July 13, 2016, your office filed a motion asking leave of court to effect alternative service of a subpoena duces tecum (STD) on Ehud Gavron "by posting the STD on the door to his residence and sending him copies of the STD via email (at his known email address), certified mail, return receipt requested, and First-Class U.S. Mail."

The motion accuses Mr. Gavron of (i) "providing substantial legal assistance" to me, and (ii) having "possession of documents and information that go to the heart of Defendants' claims and defenses."

I understand that you also filed a complaint against Mr. Gavron with the State Bar of Arizona for engaging in the unauthorized practice of law. Blair H. Moses, Atty/Consumer Assistance Program Bar Counsel, contacted Mr. Gavron to address the complaint. Neither Mr. Gavron nor I have a duty to disclose who he is. Because you persist in your efforts to communicate with him, however, I am now forced to tell you that I consult Mr. Gavron informally as an expert.

Mr. Gavron has extensive experience and knowledge of computer science, computer operations, computer networks, computer storage, computer security, network security, Internet technology, encryption, authentication, authorization, intrusion prevention, intrusion detection, logfile analysis, and the various regulations that apply to all of these in the United States.[1]

---

[1]   *See* www.prnewswire.com/news-releases/rminet-names-new-chief-technology-officer-ehud-gavron-founder-of-aces-research-to-head-up-companys-technology-efforts-72200082.html

10176.1

Robert C. Garcia
Travis L. Tufts
July 15, 2016
Page 2


The relevance of Mr. Gavron's expertise is obvious. The Amended Counterclaims allege that I accessed Tucson Tamale Company's computer network without authorization to steal proprietary trade secrets and other confidential information, in violation of the Stored Communications Act (a federal anti-hacker statute) and Arizona's Uniform Trade Secrets Act.

Refer to Ariz. R. C. P. 26(b)(4)(B) and the extensive discussion of case law found in the ethics opinions published by the State Bar of Arizona regarding experts informally consulted in preparation for trial, but not retained. The law is clear and long-settled that "[n]o discovery may be had of the names or views of experts in this category." [2]

Stated briefly and bluntly:  If you are not entitled to know even the identity of experts I consult informally, you certainly may not inquire into the nature and scope of the services and advice they provide.

Blair H. Moses of the State Bar will receive a copy of this letter via e-mail to ensure that everyone clearly understands my position on this matter. I trust this will be the last time we address this.


Best Regards,



Melissa Martin McBeath


cc:  Blair H. Moses     (via e-mail only)
     Ehud Gavron      (via e-mail only)

---

[2]   *See* www.azbar.org/Ethics/EthicsOpinions/ViewEthicsOpinion?id=578.

10176.1

Exhibit B

# Melissa Martin McBeath

3463 E. Terra Alta Blvd. • Tucson, AZ 85716 • 520.449.9753 • *mel.mcbeath@cox.net*

<u>SENT VIA E-MAIL ONLY</u>

July 19, 2016

Robert C. Garcia
Travis L. Tufts
Farhang & Medcoff
4801 E. Broadway, Suite 311
Tucson, AZ 85711

Re:     *McBeath v. Tucson Tamale Company et al.*
         Pima County Superior Court Case No. C20161794

Gentlemen:

On July 13, 2016, your office filed a motion asking leave of court to effect alternative service of a subpoena duces tecum (SDT) on Ehud Gavron "by posting the SDT on the door to his residence and sending him copies of the SDT via email (at his known email address), certified mail, return receipt requested, and First-Class U.S. Mail."

On July 15, 2016, I was forced to disclose that I consult Mr. Gavron informally as an expert. I referred you to Ariz. R. C. P. 26(b)(4)(B) and the extensive discussion of case law found in the ethics opinions published by the State Bar of Arizona regarding experts informally consulted in preparation for trial, but not retained. The law is clear and long-settled that "[n]o discovery may be had of the names or views of experts in this category." [1]

All communications between me, Mr. Gavron and the various other experts I'm consulting to assist me with my case are privileged. Accordingly, I request that you withdraw the SDT motion because it is based on an e-mail Mr. Gavron sent by mistake on June 27, 2016, to the work e-mail I used when I worked at Tucson Tamale Company. The subpoena is also overbroad because it requests information that arises or relates to work and advice that Mr. Gavron has rendered in his capacity as an expert.

I further request that you destroy this email as well as the e-mail Mr. Gavron sent on July 14, 2016. *See* Ariz. R. C. P. 26.1(f)(2). ("If a party contends that information subject to a claim of privilege or of protection as trial-preparation material has been inadvertently disclosed or produced in discovery, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has made and may not use or disclose the information until the claim is resolved.").

Best Regards,

Melissa Martin McBeath

---

[1]     *See* www.azbar.org/Ethics/EthicsOpinions/ViewEthicsOpinion?id=578.

10181.1

Exhibit C

From: Mel McBeath <mel.mcbeath@cox.net>
Date: Mon, Jul 25, 2016 at 3:53 PM
Subject: Re: McBeath v. TTC, et al.
To: Robert Garcia <rgarcia@fmazlaw.com>
Cc: Travis L. Tufts <ttufts@fmazlaw.com>, Autumn Bonnell
<abonnell@fmazlaw.com>


Good Afternoon Robert,

Thank you for the recap of our conversation.
When we spoke, you told me that the attorney work-product doctrine may not apply
to the experts I consult informally because I am pro se. My findings indicate
otherwise.

I revisited the AZ State Bar Ethics Opinion 88-01 regarding the use of discovery to
learn the identity of an o pponent's expert witnesses and the content of their
communications. The discovery permissible depends on whether the expert will
testify at trial.
Many of the cases the State Bar cites are federal court opinions (probably because of
the paucity of AZ case law on this issue) and because the ARCPs are patterned after
the federal rules.
As I explained, my position is that your clients are not entitled to know anything
about the non-testifying experts I consult informally, even their identity.
The content of my communications with the experts I consult informally and their
work product is protected from disclosure by ARCP 26(b)(4)(B)(expert retained
only for trial preparation) and ARCP 26(b)(3)(expert work-product privilege). I
could find no exceptions to the protection afforded by these Rules, and I have not
waived any of my rights or privileges afforded by these rules.
Non-testifying experts do not have to work under the direction of or for an attorney
for their work to be protected from discovery. The protection that Rule 26(b)(4)(B)
provides is independent, and does not flow, from the attorney work-product
doctrine or the attorney client privilege.
The Advisory Committee Notes to Rule 26(b)(4) make clear that the drafters of the
Rule "reject[ed] as ill-considered [court] decisions which have sought to bring
expert information within the work-product doctrine" and instead "adopt[ed] a
form of the more recently developed doctrine of unfairness." Fed.R.Civ.P. 26
Advisory Committee's Note to Subdivision (b)(4), 1970 Amendments (citation
omitted).
The purpose of Rule 26(b)(4)(B) is "to protect trial strategy, prevent one party from
having a free ride at the expense of the other part y, and to promote fairness by
precluding unreasonable access to an opposing party's diligent trial preparation.
*Klee v. Whirlpool Corp.*, 251 F.R.D. 507, 511 (S.D. Cal. 2006); *FMC Corp. v. Vendo Co.,*
196 F. Supp. 2d 1023, 1048 (E.D. Cal. 2002); *Durflinger v. Artiles,* 727 F.2d 888, 891
(10th Cir. 1984).

"The Rule is also designed to prevent a party from building his case on the diligent preparation of his adversary." *In re Shell Oil Refinery*, 132 F.R.D. 437, 440 (E.D.La. 1990), citing Pielemeier, *Discovery of Non-Testifying 'In-House' Experts Under Federal Rules of Civil Procedure,* 58 Ind. L.J. 597, 607-08 (1984).

"Rule 26(b)(4)(B) thus creates a safe harbor whereby facts and opinions of nontestifying, consulting experts are shielded from discovery, except upon a showing of exceptional circumstances." *Plymovent Corp., v. Air Technology Solutions, Inc.*, 243 F.R.D. at 143 (D. N.J. 2007). "Indeed, some courts have construed 26(b)(4)(B) as creating a privilege against disclosure." *Id.* "This Rule recognizes that with non-testifying experts, there is no need to obtain discovery for effective cross-examination." *Shell Oil*, at 440.

Here is additional authority you may find helpful:
*U.S. v. Meyer*, 398 F.2d 66, 73-74 (9th Cir. 1968) (commenting that "the reasons [for rejecting as ill-considered the decisions which have sought to bring expert information within the work product doctrine] seem clear").
*Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 116 F.R.D. 533, 539 (N.D. Cal. 1987) (stating that "[t]he work that retained experts do in anticipation of litigation is not work product and its discoverability is governed by a se parate rule [26(b)(4)]"), *abrogated on other grounds by Advanced Cardiovascular Systems, Inc. v. C.R. Bard, Inc.*, 144 F.R.D . 372, 374 (N.D. Cal. 1992).
8A Charles A. Wright, Arthur R. Miller, Mary K. Kane & Richard L. Marcus, Federal Practice and Procedure § 2029 (3d ed. 2010) ("The knowledge of an expert is not part of the [attorney] work product...").
Jack H. Friedenthal, *Discovery and Use of an Adverse Party's Expert Information*, 14 Stan. L. Rev. 455, 488 (1962) (concluding that "the work product doctrine should [not] be extended to cover expert information which [it] normally would not protect" and that "[i]f such discovery is to be denied, it should be done on the ground that disclosure would be unfair under the particular facts of the case").
Let's talk again after you've had an opportunity to review.
Regarding Ehud Gavron's subpoena duces tecum, I spoke with him about this over the weekend. He will review his records and pull all information and/or e-mails he received from me during the time that I worked for Tucson Tamale Company. You will receive those before the end of the week.
Also, thank you for agreeing to postpone my deposition.
Best,
Mel

On 07/22/2016 06:41 PM, Robert Garcia wrote:

Ms. McBeath:

In follow up to the phone conference we wrapped up a few minutes ago:

1.   I agreed we will consider withdrawing the references to Gavron/Marquez in our court filings if there is authority applicable to the present circumstances indicating some appropriate privilege applies;

2.   If you find any such authority indicating a privilege applies, we will reconsider the scope on the subpoena directed at Mr. Gavron to take into account the privilege;

3.   You indicated Mr. Gavron would accept service on a subpoena with an agreed upon scope that covers the time and issues of concern to us (i.e., mainly, the information you sent to him regarding TTC while you were working at TTC).  We will table this issue until after you send us your findings on the privilege; and

4.   I agreed to vacate your deposition currently set for 7/27 to address your concerns regarding disclosures/preparation.  We'll reschedule to some later time.

Please let me know if my understanding of any of the above is incorrect.  Enjoy your weekend.

Best regards,

**Robert C. Garcia**

Profile | vCard

4801 East Broadway Boulevard | Suite 311 | Tucson, Arizona 85711

General: 520.790.5433 | Direct: 520.396.2205 | Fax: 520.790.5736

PLEASE NOTE: This email message (including any attachments) contains information that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information, and no privilege is waived by your inadvertent receipt. Improper or unauthorized use of this email may be unlawful. If you received this message in error, please notify the sender by replying to this e-mail and then permanently delete it from your system.

Exhibit D

From: "Travis L. Tufts" <ttufts@fmazlaw.com>
Date: 8/9/16 17:52 (GMT-07:00)
To: Mel McBeath <mel.mcbeath@cox.net>
Cc: Robert Garcia <rgarcia@fmazlaw.com>, Tish Wright <twright@fmazlaw.com>,
Autumn Bonnell <abonnell@fmazlaw.com>
Subject: RE: McBeath v. Tucson Tamale Co. et al. (Meet and Confer 08/09/2016)

Ms. McBeath,

It was a pleasure meeting with you to discuss the Sherry Martin, Lisa Martin, and TTC's responses to interrogatories.  With regard to your interrogatories requesting Sherry Martin and Lisa Martin provide all facts supporting the 73 paragraphs of denials to your Complaint, you agreed to narrow the scope of those requests to the specific denials for which you are seeking supportive facts.  Although it was your position that the request would be easy to comply with, I believe you agreed with me that the request calls for my clients to address 73 separate paragraphs of allegations in your complaint and that 73 interrogatories exceeds the permissive number of interrogatories.  As I indicated and as I believe the other responses to your interrogatories exhibit, we are more than willing to comply with our discovery obligations but we do not agree to subject ourselves to the burden of answering substantially more interrogatories than provided in the rule.

We also discussed your requests for documents related to TTC's "practice of not paying overtime to the General Managers."  As the Galati case clearly states, to which you did not disagree, violations of federal law cannot form the basis of an EPA claim.  While you claim alleged reporting of violations of federal law show TTC retaliated against you, whether TTC retaliated against you for reporting violations of federal law is a separate claim not recognized under the EPA.  You also claim you are entitled to the information because it reflects poor business practices.  No reason was provided why TTC's good or bad business practices are relevant to proving you reported violations of Arizona law and were terminated for making that report.

We also discussed your Rule 26.1 disclosures.  As I outlined, you did not disclose any documents reflecting communications between you and your son who TTC alleges you conspired with to remove confidential data.  You acknowledged that you do communicate with your son, but there are no disclosures reflecting any communications which would tend to prove or disprove TTC's allegations.  Further, TTC has produced evidence that your son removed documents from TTC during his employment but none of the removed documents have been disclosed.  Additionally, you are consulting with Mr. Gavron and presumably have access to the materials which TTC has identified you disclosed to Mr. Gavron pre-suit, yet there are no documents whatsoever that reflect communications with Mr. Gavron.  You conceded that, at a minimum, TTC is entitled to discover the documents and communications exchanged between you two before you claim to have retained him as a consulting expert.  Likewise, there is nothing reflecting communications you've had with Ernesto Chavez – another individual who TTC disclosed you conspired with.  I am willing to meet and confer with you if you are not willing to produce these materials.

Finally, we discussed my clients' efforts to subpoena Francisco Marquez, who we believe is a fact witness to this case. You indicated your intention to object to any subpoena to Mr. Marquez based on your belief that any individual you consult with in connection with the litigation, and communications exchanged with those individuals, is privileged under Rule 26(b)(4). You acknowledged no attorney-client privilege exists between you and Mr. Marquez and there are no issues which Mr. Marquez would testify about in this case other than facts. While I do not contest your right to ultimately assert your objections to the subpoena, we nonetheless must serve Mr. Marquez. Similar to Mr. Gavron and in light of the fact you are consulting with Mr. Marquez, there is no legitimate reason why my clients should have to go through the Court to obtain permission to simply serve Mr. Marquez. We know he has a home in Sahuarita and you disclosed the same information to the EEOC. We ask that Mr. Marquez accept service of the subpoena which he is undoubtedly aware of. As I expressed, I do not want to have to ask the Court to obtain alternative service on an individual you are consulting with and whose whereabouts you presumably know. Please let me know if Mr. Marquez will accept service, then you or Mr. Marquez are free to object from there.

Regards,

Travis

**Travis L. Tufts**

Profile | vCard

4801 East Broadway Boulevard | Suite 311 | Tucson, Arizona 85711

General: 520.790.5433 | Direct: 520.398.7466 | Fax: 520.790.5736

www.fmazlaw.com

EXHIBIT 4

FILED
TONI HELLON
CLERK, SUPERIOR COURT
8/19/2016 2:23:03 PM
By: Victoria Soto

ARIZONA SUPERIOR COURT, PIMA COUNTY
HON. GUS ARAGON                                    CASE NO.   C20161794

COURT REPORTER:   Bonnie Gray              DATE:       August 15, 2016
                  Courtroom - 814

MELISSA MARTIN MCBEATH                      In Proper Person
     Plaintiff
VS.

TUCSON TAMALE COMPANY,                      Travis L Tufts, Esq. and Robert C. Garcia, Esq.
TODD RUSSELL MARTIN,                        - Counsel for Defendants
SHERRY MARTIN,  and
LISA MARTIN
     Defendants

## M I N U T E   E N T R Y

**ORAL ARGUMENT:**

Plaintiff is present.  Defendant is not present.

As to the defendants' motion to strike,

Mr. Tufts argues to the Court.

The plaintiff argues to the Court in response.

The Court directs the plaintiff and counsel to meet and confer.  The Court will defer ruling on this matter.

As to the motion to dismiss,

Mr. Tufts makes statements to the Court.

IT IS ORDERED deferring consideration of the motion to dismiss pending any future amendments that may occur with respect to the complaint and those future amendments are yet to be determined.  The deferral of the motion to dismiss is without prejudice to reasserting it at a future date when it is more appropriate and timely.

As to the plaintiff's motion to strike new argument,

Mr. Garcia makes statements to the Court.

The plaintiff makes statements to the Court in response.

THE COURT FINDS that it is appropriate to defer ruling on the two motions to strike, one filed June 14, 2016 and one filed June 22, 2016.  Both motions deal with two separate topics, neither of which are timely.  Therefore, the Court will defer, without prejudice, to allowing the parties to reassert those motions if and when they become appropriate based upon any new set of pleadings that may exist.

Victoria Soto
Deputy Clerk

**M I N U T E   E N T R Y**

| Page  2 | Date:  August 15, 2016 | Case No.:  C20161794 |
|---|---|---|

The Court notes another motion, filed June 30, 2016 is the plaintiff 's motion to compel response to interrogatories.

There being no objection to deferring this matter,

The Court will defer, at plaintiff's request, the motion to compel without prejudice to the motion being reasserted later on if it becomes more appropriate or timely.

The Court notes that plaintiff has the motion to take non-party depositions filed July 8, 2016.

The plaintiff makes statements to the Court regarding the motion as to the three individuals stated in court (Shawn Kaylor, Delaney Hare, Meaghan Anderson).

Mr. Garcia makes statements to the Court in response.

The Court will allow the depositions of  the above-listed 3 individuals.

The Court informs the plaintiff that there is a statute that will require her to reimburse the defendant or employer for the time taken to take the depositions.

As to the three individuals mentioned,

IT IS ORDERED that the motion to preclude their depositions is DENIED.

The Court further informs the plaintiff that there are time limits with how long depositions can be and instructs the plaintiff to familiarize herself with those rules.

As to witness, Lindsey Welch, the plaintiff makes statements to the Court.

Mr. Garcia makes statements to the Court in response.

For the same reasons as stated with respect to the first three witnesses,

IT IS ORDERED  that plaintiff is permitted to take the deposition of Lindsey Welch.

As to Alejandra Valenzuela and Joshua Cooper,

The plaintiff makes statements to the Court.

Mr. Garcia defers to his previous argument.

Taking the prior arguments into account,

IT IS ORDERED that plaintiff is permitted to depose Alejandra Valenzuela.

As to Joshua Cooper,

The plaintiff argues to the Court.

Mr. Garcia argues to the Court in response.

The Court and counsel discuss the matter.

\*\*\*

Victoria Soto
Deputy Clerk

**M I N U T E   E N T R Y**

Page  3                                       Date:  August 15, 2016                                       Case No.:   C20161794

IT IS ORDERED granting the protective order with respect to Joshua Cooper and the plaintiff will not be permitted to depose him.  The plaintiff may have leave to request that the issue be reconsidered if it becomes necessary down the road.

As to the defendant's motions for Rule 56(f) relief filed on July 20, 2016, (Defendant filed 2 such motions on the same date).

The Court and counsel discuss the matter.

IT IS ORDERED that any motions for summary judgment shall be deferred.  The Court will not rule on those motions until the parties send a joint report indicating that at least one of the parties feels as though the issue of summary judgment needs to be addressed.  In the mean time, the Rule 56(f) requests are moot because the urgency of Rule 56 motions has been removed.

As to the defendant's motion for alternative subpoena duces tecum service,

Mr. Garcia makes statements to the Court.

The plaintiff makes statements to the Court in response.

The Court and counsel discuss the matters.

IT IS ORDERED the request is GRANTED.

IT IS FURTHER ORDERED that the parties meet and confer, and if possible, arrive at a stipulation as to what Mr. Gavron is required to provide by way of response to the subpoena.  The defendant may serve Mr. Gavron by posting a physical copy of the document at the Gavron residence and  to his email.  The plaintiff is also directed to notify Mr. Gavron that he has been subpoenaed.

Mr. Garcia notes for the Court that plaintiff filed a motion for protective order for Gavron and Marquez, and further presumes that the motion for protective order is moot until we have further discussion.

The Court states it will not address any protective orders with respect to Gavron and Marquez until the parties have had a chance to structure the issues as to what they might provide information on.

IT IS ORDERED that at least at the current time, Mr. Gavron shall not be required to provide information or testimony about those things upon which he has been consulted  as an expert, unless he is disclosed as an expert on the topic upon which discovery is being shought.

The Court notes again that the parties should meet and confer to determine whether they can come to some understanding as to what each other's position is.

IT IS ORDERED that the parties take 15 minutes at this time to meet and confer on the issue of the re-structuring and rewording of the complaint.

_____
Victoria Soto
Deputy Clerk

**M I N U T E   E N T R Y**

Page  4                          Date:  August 15, 2016                    Case No.:   C20161794

LATER IN COURT:

Same parties, counsel present.

Mr. Garcia informs the Court that they have reached some stipulations as stated on the record.

The plaintiff concurs with the agreements as stated by Mr. Garcia.

The Court notes that the parties have also stipulated to set a deadline for the plaintiff to submit a proposed amended complaint to the defendants by no later than August 23, 2016.  Defendants will provide their input on the proposed amended complaint by no later than August 26, 2016.  Thereafter the plaintiff will file the amended complaint

The Court further notes that the parties have agreed that at the end of this process, the plaintiff will file her amended complaint by no later than Friday, September 2, 2016.  There will be no need to file a motion to amend the complaint.  Plaintiff has been cautioned during the hearing that her current Complaint contains parts that are not in compliance with ARCP Rule 8 (short and plain statement of the claim); and that  her amended complaint should be significantly shorter.

Mr. Garcia informs the Court that the parties have also reached an agreement on the following: as to the subpoena for Mr. Gavron, the parties discussed and agree that Mr. Gavron will produce, and plaintiff will not object to, information throughout the entire relevant period both before and after the filing of the store communications act claims.  However, as to the plaintiff's claims that a witness privilege exists, the plaintiff and Mr. Gavron will withhold the information purportedly protected by this privilege and provide a privilege log.

The Court notes that the parties have stipulated as well that Mr. Gavron shall respond to the subpoena that has been discussed on the record and will produce documents generated  before and after a certain claim which the parties are calling the stored communications claim.  The parties further agree that Mr. Gavron or the plaintiff shall be permitted to withhold information that she claims is privileged.  The plaintiff shall follow the procedures set forth for a privilege log.

The parties have also agreed that the joint report under Rule 16(b) shall be due no later than September 16, 2016.

IT IS ORDERED that the parties submit along with the joint report, a proposed scheduling order for the Court's consideration by September 16, 2016.

IT IS FURTHER ORDERED that any motions that have not been ruled upon or stipulated to, and motions to which ruling has been deferred, are deemed withdrawn, with leave to reassert those motions at a later

_____
Victoria Soto
Deputy Clerk

**M I N U T E   E N T R Y**

| Page  5 | Date:  August 15, 2016 | Case No.:   C20161794 |
|---|---|---|

date.

The parties shall  list  any motion that they feel still remains to be resolved  in the Rule 16(b) joint

report.

LATER IN CHAMBERS:

Any motion that was not resolved this date and which is not listed as needing resolution in the Joint

Report shall be deemed denied.

cc:     Hon. Gus Aragon
        Robert C. Garcia, Esq.
        Travis L Tufts, Esq.
        Melissa Martin McBeath

        _____
                  Victoria Soto
                  Deputy Clerk

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that the above document was filed electronically with the Clerk of the United States District Court for the District of Arizona, and was served via hyperlink generated by the court's CM/ECF system, which was sent electronically to:

Roberto C. Garcia
*rgarcia@fmazlaw.com*
Travis L. Tufts
*ttufts@fmazlaw.com*
Farhang & Medcoff PLLC
4801 E Broadway Blvd., Ste. 311
Tucson, AZ 85711
520-790-5433

I declare under penalty of perjury, pursuant to 28 U.S.C. section 1746, that the foregoing is true and correct. Executed on March 31, 2017.

Dated:  March 31, 2017

_____
Melissa Martin McBeath

McBEATH DECLARATION ISO REPLY TO OPPOSITION
TO PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER
TO SHIELD EXPERTS CONSULTED INFORMALLY

-4-

CV-16-462-TUC-DCB(BPV)