FARHANG & MEDCOFF

4801 E. Broadway Boulevard, Suite 311
Tucson, Arizona 85711
T: 520.790.5433

Ali J. Farhang (#019456)
afarhang@fmazlaw.com

Roberto C. Garcia (#026246)
rgarcia@fmazlaw.com

Travis L. Tufts (#029373)
ttufts@fmazlaw.com

Attorneys for Defendants / Counterplaintiff

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Melissa Martin McBeath, an individual,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>Tucson Tamale Company, an Arizona corporation; Todd Russell Martin, an individual; Sherry Martin, an individual; and Lisa Martin, an individual,<br><br>　　　　　Defendants.<br><hr>Tucson Tamale Company, an Arizona corporation,<br><br>　　　　　Counterplaintiff,<br><br>　v.<br><br>Melissa Martin McBeath and John/Jane Doe Martin McBeath, husband and wife,<br><br>　　　　　Counterdefendants. | NO. CV 16-462-TUC-DCB (BPV)<br><br>**REPLY IN SUPPORT OF MOTION TO QUASH AND FOR PROTECTIVE ORDER PROTECTING THIRD-PARTY KOTY-LEAVITT INSURANCE AGENCY FROM PLAINTIFF'S SUBPOENA**<br><br>Assigned to Judge David C. Bury and Hon. Bernardo P. Velasco |

00318952.1

Plaintiff Melissa Martin McBeath's ("McBeath") Opposition (Doc. No. 59) to Defendants Motion to Quash (Doc. No. 55) ("Motion") provides no reason to deny Defendants' requested the relief.  Fundamentally, McBeath fails to identify the relevancy or proportionality of the subpoena she served on Defendants' third-party liability insurance broker, Koty-Leavitt Insurance Agency ("Koty-Leavitt").  McBeath's conclusive statement that she seeks "any information relevant to her employment claims" is inadequate to establish the relevancy of a subpoena served on an indemnitor/insurer when insurance, or its lack thereof, is immaterial to prove her employment based discrimination claims. Undoubtedly aware of Koty-Leavitt's possession of privileged documents and communications made in anticipation of her lawsuit, McBeath overwhelmingly failed to establish a substantial need for this information.

Rather than establish the relevancy of her subpoena, McBeath instead argues Defendants' counsel failed to meet and confer in good faith before filing an "acerbic,"[1] surprise Motion.  In making this argument, McBeath not only asks the Court to overlook her conduct that directly contributed to the Motion, but more importantly, she asks the Court to ignore the agreement reached by the parties that expressly called for judicial intervention if/when Koty-Leavitt produced objectionable material.

Because McBeath offers no compelling basis to deny the relief sought in the Motion, because Defendants complied with their good faith obligations before filing the Motion, and for the reasons set forth in the Motion and herein, Defendants Tucson Tamale Company ("TTC"), Todd Russell Martin, Sherry Martin, and Lisa Martin (collectively, "Defendants") request the Court grant the relief sought in the Motion.

---

[1] McBeath claimed in prior submissions and alludes in her opposition (Doc. No. 59), without basis, that undersigned somehow consistently lambasts or verbally insults her.  Undersigned encourages McBeath to produce anything other than unsubstantiated oral claims to support what amounts to unprofessional conduct.  Indeed, it is McBeath who references undersigned counsel as "pompous…Lord Farquaad" (see Doc. No. 36 at 1, n.1,) – apparently, a villain in a Disney movie – and directly insults the intelligence of counsel's entire office when Defendants object to the myriad discovery abuses. See Ex. A, M. McBeath Ltr, Mar. 30, 2017 ("I do not trust that you, your staff, or your clients have the basic technical prowess to understand what I request…[t]he colossal incompetence shown to date in complying with my simple document request has been nothing less than astonishing.") (emphasis added).

### A. **McBeath failed to establish the relevancy or proportionality of the Koty-Leavitt subpoena.**

McBeath's basis for serving the subpoena juxtaposed against the documents requested in the subpoena reveals the patent irrelevancy and disproportionality of her subpoena requests. McBeath provides a single, conclusive statement to identify the relevancy of the information sought from Koty-Leavitt. Specifically, she "seeks documents that are not related to Defendants' insurance decisions, but rather that are relevant to her employment claims and are therefore otherwise discoverable under the federal discovery rules." (See Opp. at 7:7-9.) Apart from her conclusory statement, McBeath fails to identify with any degree of specificity the documents or communications Koty-Leavitt *might* have related to her alleged employment claims or how that information will lead to admissible evidence establishing her Title VII and wrongful termination claims. Nor does she offer any reasonable belief that Koty-Leavitt had any involvement whatsoever in the facts or decisions giving rise to her employment claims. Moreover, if McBeath simply sought to discover "documents unrelated to insurance decisions," she could have narrowly tailored her records requests. Tellingly, she did not. (See Motion, Doc. No. 55 at Ex. 6, Doc. Request No. 4. (seeking "documents that relate to Tucson Tamale Company dated, created or that [Koty-Leavitt] received since January 2015...").) McBeath's basis for serving the subpoena simply does not reconcile with the breadth of information she seeks without basis.

McBeath's boilerplate recitation of the principles of discovery do not distract from the conclusion she seeks irrelevant and privileged documents. McBeath unconvincingly argues the principles of discovery enable her to broadly obtain discovery of nonprivileged matter. (See Opp. at 7:10 – 8:7.) Her argument necessarily overlooks the restriction that the discovery must be relevant and proportional to the claim. See, e.g., Fed. R. Civ. P. 26(b). McBeath's claims have nothing to do with insurance nor do the allegations of her Complaint even implicate insurance, Koty-Leavitt, or insurance decisions. The only reasonable inference to draw, consistent with McBeath's past oral representations to the undersigned, is that McBeath subpoenaed Koty-Leavitt hoping to determine the

- 3 -

representations Defendants made after they learned of her lawsuit, to decipher if Defendants made adequate disclosures in anticipation of her lawsuit, and to reveal a pattern or practice of wrongdoing.  None of these issues are irrelevant to establish her employment discrimination or wrongful termination claims and are otherwise privileged. See Fed. R. Evidence 411 ("evidence of insurance against liability is not admissible to prove the person acted "otherwise wrongfully."); see also Fed. R. Civ. P. 26(b)(3) ("a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representatives…including the other party's…indemnitor, insurer, or agent.").

### B. Defendants complied with L. R. Civ. P. 7.2(j).

The communications between the parties coupled with the factual and procedural background submitted in the Motion conclusively establishes Defendants complied with their good faith discovery obligations.  McBeath disingenuously argues Defendants failed to establish good faith conferment in its Certificate in Support of the Motion (Doc. No. 56). Her position amounts to a technical form-over-substance argument that has no merit. Defendants identified in extensive detail the efforts made to avoid motion practice, as required by the rule.  (See Motion at 3:7 – 6:16); see also Shuffle Master, Inc. v. Progressive Games, Inc., 170 F.R.D. 166, 171 (D. Nev. 1996) ("Counsel seeking court-facilitated discovery, instead, must adequately set forth in the motion essential facts sufficient to enable the court to pass a preliminary judgment on the adequacy and sincerity of the good faith conferment between the parties.") (emphasis added).  That Defendants did not reincorporate the factual and procedural statements into their Rule 26(c) and Local Rule 7.2(j) certificate, assuming they should have,[2] is harmless or inadvertent error, if error at all.

---

[2] Neither Rule 26(c) or L. R. Civ. 7.2(j) expressly require a party to identify the scope of the good faith efforts made in their certificate.  Indeed, the case cited by McBeath expressly states the party can provide this detail in the motion.

00318952.1

- 4 -

### C. **Defendants complied with their good faith discovery obligations until McBeath's discovery conduct necessitated the Motion.**

Defendants complied with their good faith obligations to resolve disputes prior to filing the Motion. McBeath's declaration of professionalism, reasonableness, and willingness to resolve disputes in support of her argument that Defendants failed to act in good faith are completely contradicted by her own communications.

The underlying dispute did not arise overnight, but rather has been the subject of numerous conferrals between the parties to resolve issues underlying the Koty-Leavitt subpoena. Shortly after serving her second subpoena on Koty-Leavitt (the first, served in the Superior Court matter, was quashed by order of the Superior Court Judge), the parties met to address, among other things, Defendants' belief that the subpoena seeks irrelevant and privileged material. Rather than immediately file for protective relief, the parties met and agreed to a reasonable discovery mechanism facilitating the production. Indeed, McBeath outlined the proposed agreement in a letter sent March 23, 2017. (See Motion at Ex. 9.[3]) Specifically, McBeath agreed "[to] ask Koty-Leavitt to send the documents to [counsel]…so that you may review them before I receive them." (Id. (emphasis added).) Further, McBeath agreed, "[i]f you believe there are documents that should not be produced, then please proceed with a motion to quash the production of those specific documents." (Id.)

Fundamentally, Defendants complied with the Subpoena Production Agreement reached after a good faith conferral between the parties. McBeath cannot now claim that Defendants failed to meet and confer before filing their Motion. She agreed Defendants should file a Motion if they determined the production contained irrelevant or privileged information. As more fully briefed in Defendants' Motion, the Koty-Leavitt subpoena seeks irrelevant and privileged information. After confirming that the production contains privileged documents and communications, Defendants sought immediate relief, just as McBeath suggested and agreed to in the Subpoena Production Agreement. (See id.) Even

---

[3] The terms of the McBeath's March 23, 2017 letter, cited *supra*, and found in Defendants Motion at Ex. 9 are hereinafter referred to as the "Subpoena Production Agreement."

00318952.1

assuming Defendants informed McBeath that Koty-Leavitt's production contained irrelevant and privileged information, it is disingenuous to suggest, as McBeath does, that she would agree to an alternative course of action contradicting her prior statement.

Even assuming Defendants had a further obligation to meet and confer with McBeath, Defendants made numerous attempts to resolve minor disputes with the Koty-Leavitt subpoena production, but McBeath's conduct ultimately necessitated the filing of the Motion. After sending Defendants' counsel the proposed Subpoena Production Agreement, <u>but before allowing counsel to review and confirm the Subpoena Production Agreement</u>, McBeath unilaterally contacted Koty-Leavitt on March 24, 2017, representing that the parties reached an agreement related to Koty-Leavitt's subpoena production. (<u>See</u> <u>id.</u> at Ex. 10.) Conveniently, McBeath also took the liberty of inserting a cost/fee shifting provision[4] and a "pick up"/production deadline to which the Defendants never agreed. The latter provision contributed to Defendants' urgency in filing the Motion.

Defendants' counsel made numerous good faith efforts to accommodate McBeath's unilateral insertion of a "pick up"/production deadline before filing the Motion. In her communication to Koty-Leavitt on March 24, 2017, McBeath indicated "I will come to your office before noon on Thursday, March 30, 2017, to pick up the documents responsive to the subpoena." (<u>Id.</u>) Notably, that deadline appears nowhere in the Subpoena Production Agreement (<u>see generally</u> <u>id.</u> at Ex. 9.) and indeed directly contradicts McBeath's agreement to allow Defendants' counsel to review the production first. (<u>See id.</u>) McBeath refused to rescind the "pick up"/production deadline despite counsel's request.[5] (<u>See</u>

---

[4] In her Opposition, McBeath unsurprisingly refused to address her unilateral insertion of the cost/fee-shifting provision she represented to Koty-Leavitt as part of the parties' Subpoena Production Agreement. (<u>See</u> <u>Motion</u> at Ex. 10 ("Please send a copy of the documents to [counsel] immediately. <u>His client will cover your costs</u>.") (emphasis added).) This cost/fee-shifting provision appears nowhere in the parties' Subpoena Production Agreement. (<u>Compare</u> <u>id.</u> at Ex. 9 <u>with</u> <u>id.</u> at Ex. 10.) Presumably, McBeath failed to explain the insertion of this cost/fee-shifting provision in her opposition hoping the Court would overlook this instance of gamesmanship.

[5] McBeath argues Defendants' counsel "demanded" she not pick up the documents, likely in an effort to portray counsel in a negative light. (<u>See</u> Opp. at 5:11-18.) Counsel asked Plaintiff to "please agree to forego any plan…to pick up the subpoena…" (<u>Motion</u> at Ex. 12.) Surely, this request conveys something other than a "demanding" tone. McBeath's argument, among others about Defendants' counsel alleged unprofessionalism, are nothing but self-serving statements that can be established by nothing other than her unsubstantiated oral statements.

1  Motion at Ex. 12 ("will you please agree to forego any plans or expectations you have to
2  pick up the subpoena tomorrow and instead honor our agreement…") Instead of foregoing
3  her plans, McBeath offered counsel only one day to perform what she deemed a
4  "perfunctory" privilege review despite counsel's explanation of Koty-Leavitt's production
5  delays, the fact Defendants' counsel had not yet reviewed the production, and a good faith
6  offer to expedite the privilege review on what was anticipated to be a "voluminous"
7  production. (see id. (identifying that Defendants' counsel had not seen the production one
8  day before McBeath's imposed "pick up"/production deadline and explaining Koty-
9  Leavitt's intent to produce "a voluminous number of documents.").) Faced with one day
10 to seek judicial relief or potentially risk disclosure of privileged communications,
11 Defendants had no choice but to seek relief. To suggest, as McBeath does, that she would
12 have provided further extension or made an effort to resolve additional disputes before
13 Defendants needed to file the Motion is undoubtedly self-serving, not to mention it
14 completely contradicts her previous demand that Defendants file a Motion if the Koty-
15 Leavitt production yielded privileged communications.

In the face of her prior statements and communications as well as the plain terms of the Subpoena Production Agreement, McBeath cannot legitimately claim the Motion came as a "surprise" or that Defendants failed to resolve discovery issues related to the Koty-Leavitt subpoena before filing the Motion.

### D. The Court should grant the relief sought in the Motion.

For the foregoing reasons, as well as those set forth in the Motion, Defendants request the Court quash McBeath's subpoena served on third-party Koty-Leavitt, enter a Protective Order shielding Koty-Leavitt from any further discovery from McBeath, and award Defendants' their fees and costs pursuant to Rule 26(c) and 37(a)(5).

00318952.1

RESPECTFULLY SUBMITTED this 11th day of April, 2017.

FARHANG & MEDCOFF

By /s/Travis L. Tufts
Ali J. Farhang
Roberto C. Garcia
Travis L. Tufts

Attorneys for Defendants / Counterplaintiff

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was filed electronically with the Clerk of the United States District Court for the District of Arizona, with notice of case activity generated and sent electronically this 11th day of April, 2017 to:

Melissa Martin McBeath
3463 E. Terra Alta Blvd.
Tucson, AZ 85716
mel.mcbeath@cox.net

/s/Letitia L. Wright

00318952.1