MELISSA MARTIN McBEATH
3463 E. TERRA ALTA BLVD.
TUCSON, AZ 85716
Ph: (520) 449-9753
*mel.mcbeath@cox.net*

Pro Se

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA, TUCSON DIVISION

| | |
|---|---|
| MELISSA MARTIN McBEATH, an individual, <br><br>Plaintiff, <br>v. <br><br>TUCSON TAMALE COMPANY, an Arizona corporation; <br>TODD RUSSELL MARTIN; an individual; <br>SHERRY MARTIN, an individual; and <br>LISA MARTIN, an individual, <br><br>Defendants. <br>_____ <br><br>AND TUCSON TAMALE COMPANY'S RELATED COUNTERCLAIMS | Case No. CV 16-462-TUC-DCB (BPV) <br><br>**REPLY TO TUCSON TAMALE COMPANY'S OPPOSITION TO MOTION TO DISMISS COUNTERCLAIMS IV, V & VI** <br><br>[Fed. R. Civ. P. 12(b)(6)] <br>_____ <br><br>Assigned to: Hon. David C. Bury <br><br>Complaint Filed: July 11, 2016 |

10389.1

**LEGAL DISCUSSION**

Plaintiff/Counterdefendant Melissa Martin McBeath hereby replies to the Opposition filed by Defendant/Counterclaimant Tucson Tamale Company ("***TTC***") to the Motion to Dismiss Counts IV, V and VI because TTC failed to plead violations of the Stored Communications Act (***"SCA"***). Hacking is the main mischief the SCA seeks to address.[1] TTC's rote recitation of SCA language that McBeath did not have authorized access to TTC's computers and its private computer network (or that she exceeded her authorization) is not enough to allege that she hacked a facility that provides an electronic service.[2] In fact, the terms "hacker" and "facility" nowhere even appear in TTC's counterclaims.

"[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[3] TTC's obligation "to provide the grounds of [its] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . ."[4]

---

[1] *Salyer v. Salyer Am. Fresh Foods*, 2006 WL 709018, at *3 (N.D. Cal. 2006) ("[T]he general purpose of [the SCA] was to create a cause of action against computer hackers and electronic trespassers.").

[2] *See Incorp Services Inc. v. IncSmart. Biz Inc.*, No. ll-CV-4660-EJD-PSG, 2012 WL 3685994 at *3 (N.D. Cal. 2012) (dismissing complaint where "factual allegations fail to 'flesh out' what the Ninth Circuit has described as hacking"); *In re Am. Airlines, Inc., Privacy Litig.*, 370 F. Supp. 2d 552, 559 n.14 (N.D. Tex. 2005) ("Although plaintiffs allege that AAI 'hacked' into American's electronic communication service or remote computing service . . . , this is a conclusory assertion that the court need not accept under Rule 12(b)(6).") (citations omitted).

[3] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[4] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) *citing* Wright & A. Miller, Federal Practice and Procedure § 1216, pp 235-236 (3d ed. 2004) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.").

1.  <u>TTC does not allege that McBeath accessed without authorization a facility that transmits or stores TTC's electronic communications.</u>

The SCA carries criminal penalties and imposes civil liability on hackers who "(1) intentionally *accesses without authorization a facility* through which an electronic communication service is provided; or (2) intentionally *exceeds an authorization to access that facility*; and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system."[5] An "electronic communication service" is "any service which provides to users thereof the ability to send and receive wire or electronic communications."[6]

The counterclaims allege that McBeath, without authorization, accessed TTC's computer network as well as what TTC calls "Protected Computers," which TTC asks this Court to construe to include the web-based services offered by Google Gmail and the Revel Point of Sale system. (TTC Opposition 7: 6-7).

That's too big an ask. First, nowhere does TTC actually allege that McBeath accessed Google or Revel. Second, while the computer systems of an email provider (*e.g.,* Google or Yahoo), a bulletin board system (*e.g.,* Facebook), or an ISP are uncontroversial examples of facilities that provide electronic communications services to multiple users, TTC's ***private*** computers and its network are not a "facility through which an electronic communication service is provided." TTC does not make its Protected Computers or its network available to the public.

Courts that have taken a close analytical look at what constitutes a "facility" under the SCA consistently have concluded that simply accessing a computer does not "provide[] an electronic communication service" simply by virtue of enabling use of electronic communication services.[7]

---

[5]  18 U.S.C. § 2701(a) (emphasis added); 18 U.S.C. § 2707(a)(creating a private right of action).
[6]  18 U.S.C. § 2510(15).
[7]  *Crowley v. Cybersource Corp.,* 166 F. Supp. 2d 1263, 1270-71 (N.D. Cal. 2001)

In *Crowley*, the plaintiff made a similar argument that "computers of users of electronic communication service, as opposed to providers of electronic communication service, are considered facilities through which such service is provided."[8] The *Crowley* court rejected the argument that a user's computer is a "facility" under the SCA because adopting plaintiff's construction would render other parts of the statute illogical.

Another provision of the statute authorizes access to a "facility" by a provider of an electronic communication service.[9] Following TTC's logic, a service provider could grant access to TTC's Protected Computers or private computer network (the "facility"). "It would certainly seem odd that the provider of a communication service could grant access to one's home computer to third parties, but that would be the result of [plaintiff's] argument."[10]

The court in *Chance v. Ave. A, Inc.* reached a similar conclusion.[11] In that case, the court first assumed that the plaintiffs' computers were "facilities" under the SCA for purposes of argument, but then quickly explained why "the subsequent implications of this rather strained interpretation of a 'facility through which an electronic communication service is provided' are fatal to [plaintiffs'] cause of action."[12] The *Chance* court explained that if an individual's personal computer is a facility under the SCA, then the web site is a "user" of the communication service provided by the individual's computer, and consequently any communication between the individual computer and the web site is a communication "of or intended for" that web site, triggering the exception for authorized access under Section 2701(c)(2) of the SCA.

---

[8] *Id.* at 1279.
[9] 18 U.S.C. § 2701(c)(1).
[10] *Crowley*, 166 F. Supp. 2d at 1279 (*citing* 18 U.S.C. § 2701(c)(1)).
[11] 165 F. Supp. 2d 1153 (W.D. Wash. 2001)
[12] *Chance*, 165 F. Supp. 2d at 1161.

Likewise here, if TTC's Protected Computers (used to access TTC's private computer network and third-party online web-based services) are facilities, then any computer or even a smartphone can operate as a "user" of that service for whom the communications are intended.[13] In other words, TTC misstates, as a threshold matter, the requirements of Section 2701 of the SCA, which prohibits "accessing a *facility* without authorization" (not unauthorized access to a *communication*). The most that can be inferred from TTC's counterclaims is that TTC received transmissions that were "transmitted" or "sent" directly from its Protected Computers to Google Gmail or the Revel Point of Sale system, much in the way an email or text message might be sent. This is not the same as hacking into a communication facility.

2. <u>The SCA does not apply to conduct authorized by a person or entity of an electronic communication service.</u>

Even if TTC's Protected Computers and its private computer network are deemed to be a "facility" under the SCA, TTC does not allege that McBeath accessed them without authorization or exceeded her authorization.[14] To violate Section 2701 of the SCA, a hacker must have accessed the "facility" in question "without authorization." The Ninth Circuit has held that the word "access" should be given its plain meaning, namely "to get at" or "gain access to."[15]

---

[13] *See In re iPhone Applic. Litig.*, 844 F. Supp. 2d 1040, 1057-58 (N.D. Cal. 2012) (dismissing SCA claim after concluding that the iPhones allegedly accessed by the defendants were not "facilities" within the meaning of the statute).

[14] *See Accenture LLP v. Sidhu,* No. C10-2977 TEH, 2011 WL 6057597 (N.D. Cal. Dec. 6, 2011) (holding that Accenture authorized its former employee to access its corporate computers when it hired him, even though the employee took confidential information to a competitor); *Shamrock Foods Co. v. Gast,* 535 F. Supp. 2d 962, 966 (D. Ariz. 2008) ("[T]he legislative history confirms that the CFAA was intended to prohibit electronic trespassing, not the subsequent use or misuse of information").

[15] *United States v. Smith*, 155 F.3d 1051, 1058 (9th Cir. 1998).

Applying this meaning, the court in *Crowley* dismissed the SCA claim because Crowley's information was sent to Amazon: "[Amazon] did not access the information as that term is used in the [SCA]."[16]

Beyond TTC's legal conclusion that McBeath's access was unauthorized, there are no factual allegations that her use of the Protected Computers or TTC's computer network were in any way restricted—*i.e.*, that she guessed a password, obtained a password under false pretenses, accessed unopened emails[17] or bypassed a security measure on her computer, or that her access to TTC's emails was conduct unauthorized by TTC's internet service provider.[18]

### 3. TTC does not allege that McBeath circumvented any technical or code-based barriers to gain unauthorized access to a facility that provides electronic communication services.

At most, all TTC can allege is that McBeath accessed TTC's Protected Computers and computer network with permission, but then acted in excess of that authorization. TTC argues in its Opposition (but nowhere expressly alleges in the counterclaims) that TTC's Protected Computers communicate through the Internet with TTC's external Gmail accounts and the Revel Point of Sale system, which are operated by facilities that provide electronic communication services. From there TTC makes the bald allegation that McBeath accessed these web-based services without authorization. This is not enough.

A party fails to allege a viable SCA violation where "there are no direct or clear allegations of 'hacking' . . . being broadly, the circumvention of techno-

---

[16] *Crowley*, 166 F. Supp. 2d at 1272-73.

[17] *Cruz Lopez v. Pena*, No. 2-12-CV-165-J, 2013 WL 2250127, at *3 (N.D. Tex. May 22, 2013) (mem. op.) ("§ 2510(17) has been clearly established to protect unopened emails").

[18] *See Sherman & Co. v. Salton Maxim Housewares, Inc.*, 94 F. Supp. 2d 817, 821 (E.D. Mich. 2000) (no SCA violation where Plaintiff never put a "clear [] and more explicit restriction on the authorized access.").

logical access barriers."[19]

Without alleging any facts to suggest that McBeath's conduct constituted misconduct under the SCA—that she took any steps to circumvent security measures, passwords, or other protocols imposed to restrict McBeath's access from email accounts or accounting software readily accessible to her via any computer—Counts IV, V and VI of the counterclaims fail to state a plausible SCA violation and should be dismissed.[20]

    4.    <u>TTC does not allege that McBeath obtained, altered, or prevented access to electronic communication services, as the SCA requires.</u>

TTC altogether fails to plead, and there are no facts from which the Court may infer, that McBeath "obtained, altered, or prevented access" to electronic communication services, which is required to state a claim under the SCA.[21]

TTC does not allege that its emails or Confidential Information were altered or could not otherwise be accessed, and there are no facts alleged from which it could be inferred that McBeath engaged in such conduct. That leaves TTC to allege facts that McBeath "obtained" TTC's emails and Confidential Information, but even there TTC fails to state any facts whatsoever.

TTC alleges that McBeath "accessed" TTC's Confidential Information and disclosed the information to "unaffiliated third parties," presumably via email. TTC does not allege how the Confidential Information was disseminated. These

---

[19] *Incorp Servs. Inc. v. Incsmart. Biz Inc.*, 2012 WL 3685994, at *3 (N.D. Cal. 2012) (*quoting United States v. Nosal*, 676 F.3d 854, (9th Cir. 2012)).

[20] *See Garcia v. Haskett*, 2006 WL 1821232, at *4-5 (N.D. Cal. 2006) (dismissing SCA claim where complaint failed to allege that defendant's access to the "facility" of her internet service provider exceeded authorization); *In re iPhone Application Litig.*, 2012 WL 2126351, at *9-10 (N.D. Cal. June 12, 2012) (dismissing SCA claim and finding that an individual's personal computer does not fit the statutory definition of a "facility through which an electronic communication service is provided").

[21] 18 U.S.C. § 2701(a)

1 bald allegations, which amount to nothing more than legal conclusions, fall short
2 of stating a plausible claim that McBeath "obtained" the emails. It is not sufficient
3 to merely allege that a defendant "accessed" the facility storing the communica-
4 tions to satisfy this element under the SCA.

5       Under fundamental canons of statutory construction, because the SCA uses
6 "access" in the first element and "obtain" in the third, the meanings cannot be the
7 same. Where Congress uses distinct terms within the same statute, the applicable
8 canons of statutory construction require that courts endeavor to give different
9 meanings to those different terms.[22]

10       While "obtained" is not defined in the statute, it should be construed by its
11 ordinary meaning.[23] To "obtain" an email is to "get," "acquire," or "secure
12 (something)," see Oxford Dictionaries (April 2017), suggesting more than mere
13 access or viewing, and instead some activity directed at the acquisition of the
14 email itself, such as downloading or saving the mails wrongfully acquired by
15 hacking another user's email account.

16       To ***disclose*** an electronic communication is not the same as to ***obtain*** it.[24]

---

[22] *See TRW Inc., v. Adelaide Andrews,* 534 U.S. 19, 32 (2001) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.").

[23] *See United States v. Maciel-Alcala,* 612 F.3d 1092, 1096 (9th Cir. 2010) ("A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning.") (citation omitted).

[24] *See Cardinal Health 414, Inc. v. Adams,* 582 F. Supp. 2d 967, 976 (D. Tenn. 2008) (the SCA does not punish the disclosure of information because disclosure is not tantamount to acquisition); *In re Am. Airlines, Inc., Privacy Litig.,* 370 F. Supp. 2d 552, 558-59 (N.D. Tex. 2005) (collecting cases and stating "the purpose of section 2701 is to prevent unauthorized access to a facility through which an electronic communication service is provided. … It appears evident that the sort of trespasses to which the [SCA] applies are those in which the trespasser gains

TTC's allegation that McBeath "accessed" emails and disclosed them without authorization is insufficient to state a claim under the SCA that she "obtained" this information.

### 5. TTC does not allege actual harm.

TTC also fails to allege any legally cognizable harm as a result of the alleged SCA violation. Failure to identify "actual harm" as contemplated by the SCA necessarily warrants dismissal.[25]

### 6. The plain statutory language and cases interpreting the language of the SCA forbid secondary liability.

The Ninth Circuit expressly rejected secondary liability under the SCA, to the extent it is alleged against ISP defendants, stating that there is "no textual support for [the] contention that Congress explicitly provided for aiding and abetting or conspiracy claims."[26]

TTC argues that the Ninth Circuit's decision in *Freeman* does not apply here because TTC does not allege that McBeath conspired with Google or the Revel Point of Sale service provider to violate the SCA, but with other conspirators and aiders and abettors who are not electronic service providers. (TTC Opposition 10: 1-27). This is a distinction without a difference.

---

access to information to which he is not entitled to see, not those in which the trespasser uses the information in an unauthorized way. …") (internal citation omitted).

[25] *See In re iPhone Application Litig.*, 2011 WL 4403963, *6 (N.D. Cal. 2011) (dismissing SCA claim, and noting that the SCA, in contrast to the Wiretap Act, requires a showing of injury); *Cornerstone Consultants, Inc. v. Prod. Input Solutions, LLC,* 789 F. Supp. 2d 1029, 1055 (N.D. Iowa 2011) (the SCA "requires proof of actual harm"); *Van Alstyne v. Elec. Scriptorium, Ltd.,* 560 F.3d 199, 204 (4th Cir. 2009) (holding that statutory damages cannot be awarded in the absence of proof of actual damages).

[26] *Freeman v. DirecTV, Inc.*, 457 F.3d 1001, 1005 (9th Cir. 2006).

Congress clearly identified a narrow, specific class of wrongdoers it intended to hold liable under the SCA and conspirators and aiders and abettors are not included. TTC invites the Court to read a cause of action for secondary liability into the language of a federal statute that is silent on the issue. Courts repeatedly have declined to do so when determining the scope of liability of statutes like the SCA because that would "extend liability beyond the scope of conduct prohibited by the statutory text."[27]

"When a statute is precise about who . . . can be liable courts should not implicitly read secondary liability into the statute."[28]

*Freeman* followed precisely the United States Supreme Court decision in *Central Bank of Denver N.A. v. First Interstate Bank of Denver, N.A. Bank*, looking for indications of how broadly Congress intended to extend the private right of action under 18 U.S.C. § 2707, which creates the right of action for all SCA claims, that TTC invokes here. Concluding that there was "no textual support for [the] contention that Congress explicitly provided for aiding and abetting or conspiracy claims,"[29] the Ninth Circuit could find nothing in the SCA's structure that suggested any intention to impose liability on those who were not enumerated in the statute. To the contrary, the Ninth Circuit ruled that the SCA "impose[s] civil liability on a defined group for specific conduct."[30]

Indeed, Section 2702 of the SCA—and Section 2701, which was not directly at issue in *Freeman* but for which the analysis is identical—precisely identifies the conduct that the statute seeks to outlaw.[31]

---

[27] 511 U.S. 164, 177 (1994).
[28] *Freeman*, 457 F.3d at 1006  (internal quotation omitted).
[29] Freeman, 457 F.3d at 1005
[30] *Id.*
[31] *See* 18 U.S.C. § 2701(a) (providing liability for those who, among others, intentionally access, without authorization, an electronic communications facility and obtain, alter, or prevent access to a stored communication).

1    Unlike statutes that impose liability on anyone who was "involved" in
2 particular wrongdoing, or that require courts to define the contours of that
3 liability using aiding and abetting or conspiracy theories, Congress itself defined
4 those contours in the SCA.[32] TTC's secondary liability claims under the SCA
5 must be dismissed without leave to amend.[33]

6    Accordingly, Counts IV, V and VI of TTC's counterclaims should be
7 dismissed for the reasons explained above and in the initial moving papers.

9    Dated:  April 17, 2017             Respectfully submitted,

11                *Melissa Martin McBeath*
                  Melissa Martin McBeath

---

[32] *Freeman*, 457 F.3d at 1008 (comparing SCA to anti-terrorism statute that imposes consequences on anyone "involve[d]" in particular activities).

[33] *See also Garback v. Lossing*, No. 09-CV-12407, 2010 WL 3733971, at *6 n.6 (E.D. Mich. Sept. 20, 2010) (Sections 2701 and 2707 do not include secondary liability); *Jones v. Global Info. Grp., Inc.*, No. 3:06-00246-JDM, 2009 WL 799745, at *3 (W.D. Ky. Mar. 25, 2009) ("[S]ince Congress did not criminalize the actions of aiding and abetting violations of 18 U.S.C. § 2701 as part of that statute, and § 2707 authorizes awards of damages to private parties but does not mention aiders and abettors or other secondary actors, this court will not infer secondary civil liability pursuant to 18 U.S.C. § 2707.").


## CERTIFICATE OF SERVICE

I hereby certify that the above document was filed electronically with the Clerk of the United States District Court for the District of Arizona, and was served via hyperlink generated by the court's CM/ECF system, which was sent electronically to:

> Roberto C. Garcia
> *rgarcia@fmazlaw.com*
> Travis L. Tufts
> *ttufts@fmazlaw.com*
> Farhang & Medcoff PLLC
> 4801 E Broadway Blvd., Ste. 311
> Tucson, AZ 85711
> (520) 790-5433

I declare under penalty of perjury under the laws of the State of Arizona and the United States of America that the foregoing is true and correct.

Dated: April 17, 2017            *Melissa Martin McBeath*
                                 Melissa Martin McBeath