MELISSA MARTIN McBEATH
3463 E. TERRA ALTA BLVD.
TUCSON, AZ 85716
Ph:  (520) 449-9753
*mel.mcbeath@cox.net*

Pro Se

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA, TUCSON DIVISION

| | |
|---|---|
| MELISSA MARTIN McBEATH, an individual, <br><br> Plaintiff, <br> v. <br><br> TUCSON TAMALE COMPANY, an Arizona corporation; <br> TODD RUSSELL MARTIN; an individual; <br> SHERRY MARTIN, an individual; and <br> LISA MARTIN, an individual, <br><br> Defendants. <br> _____ <br><br> AND TUCSON TAMALE COMPANY'S RELATED COUNTERCLAIMS | Case No. CV 16-462-TUC-DCB (BPV) <br><br> MOTION TO COMPEL DEFENDANTS (1) TO GIVE THEIR CONSENT TO GOOGLE TO PRODUCE RESPONSIVE EMAILS, (2) TO ALLOW SHAWN KAYLOR TO PRODUCE RESPONSIVE EMAILS, (3) TO DESTROY DOCUMENTS OBTAINED FROM PLAINTIFF'S PRIOR EMPLOYER, AND (4) TO NARROW SUBPOENA SERVED ON GLENN MURPHY <br><br> Fed. R. Civ. P. 34(b) and 37(a) <br> L. R. Civ. 7.2(j) <br> _____ <br> Assigned to Hon. David C. Bury <br><br> Complaint filed:  July 11, 2016 |

## LEGAL DISCUSSION

Melissa Martin McBeath moves under Fed. R. Civ. P. sections 34(b) and 37(a) for an order to compel Tucson Tamale Company (*"TTC"*), Todd Russell Martin, Sherry Martin and Lisa Martin:  (a) to give their consent to Google to produce responsive Gmail email messages; (b) to allow TTC employee, Shawn Kaylor, to produce emails requested in a properly-served subpoena; (c) to destroy irrelevant documents obtained from McBeath's prior employer that invade her right to privacy; and (d) to quash/narrow a subpoena issued to Glenn Murphy.

### A. Defendants should be compelled to give their consent to Google to produce responsive Gmail emails in electronic form.

This motion is not brought lightly. It has been preceded by months of meeting and conferring on numerous discovery issues that were generated by heated litigation. Defendants have delayed and blocked, so far successfully, McBeath's efforts to obtain all relevant, responsive emails in electronic form that she needs to prosecute her claims and to defend against TTC's counterclaims.[1]

Defendants have a duty to conduct a thorough and diligent search for responsive documents. This includes emails. "Electronic documents are no less subject to disclosure than paper records."[2] The parties have had an ongoing dispute with regard to Gmail email that goes back several months. Originally, even where Defendants agreed to produce responsive emails, they did not generally search for and produce the emails in their native electronic form as they are kept in the regular course of business.

 First Defendants complained that searching for the requested emails was too burdensome and costly. Later they complained that the electronic searches

---

[1]   Melissa Martin McBeath Declaration, dated May 1, 2017 (*"McBeath Dec."*) ¶2.

[2]   *Rowe Entertainment, Inc. v. William Morris Agency, Inc.*, 205 F.R.D. 421, 428 (S.D.N.Y. 2002).

1  could not be performed in the manner that McBeath had explained even after she
2  provided a step-by-step user guide that Google makes available online for how
3  to search and export selected emails. Now they want to require her to sit at the
4  law offices of defense counsel to search thousands of emails, "mark" the ones she
5  wants–one email at a time—and then Defendants will produce them after
6  defense counsel conducts a privilege review, which again, they complain will be
7  very-time consuming and burdensome.[3]

8      At this point, there is nothing more that McBeath can do than to ask this
9  Court to intervene and to grant her request to obtain the responsive emails
10 directly from Google.  Other federal courts that have confronted similar email
11 controversies have resolved the dispute by compelling the responding parties to
12 give their consent to Google to produce the requested emails. *See Lucas v. Jolin*,
13 Case No. 1:15-cv-108 (S.D. Ohio 2016) (ordering defendants to give their consent
14 to Google to produce the responsive emails) (courtesy copy attached as
15 Appendix A). McBeath requests an order that compels Defendants to follow the
16 protocol set out in *Flagg v. City of Detroit*, 242 F.R.D. 346 (E.D. 2008) where the
17 district court ruled that emails stored by a third party to be within the respond-
18 ing party's possession or control under Fed. R. Civ. P. 34, and directed the
19 responding party to request the electronic communications from the third party.
20     McBeath's accompanying declaration contains the subpoena for Google and
21 proposed written consent for Defendants to sign.[4] There is very little effort that
22 Defendants have to expend to comply. They simply have to sign the consent and
23 serve the subpoena on Google. Google has the technical expertise to conduct the
24 limited searches, which will avoid any further dispute between the parties
25 experts' regarding the most effective and accurate way to identify, cull and
26 produce the responsive emails.

27     [3]   McBeath Dec. ¶¶ 10-13 and Exhibit F.
28     [4]   McBeath Dec. Exhibit D.

### B. TTC employee, Shawn Kaylor, must produce all responsive emails requested that he has in his possession, custody or control.

Defendants refuse to allow TTC employee, Shawn Kaylor, to produce email messages requested in a subpoena duces tecum McBeath served on him on March 20, 2017.[5] Kaylor was supposed to produce all responsive documents by April 10, 2017. Defendants contend that Kaylor may not produce emails sent or received from his TTC email account because those emails belong to TTC.[6] A non-party witness, including one employed by a party, must produce all responsive emails in his possession, custody or control regardless of who is deemed to own them. In any event, it is too late for Defendants to object. Defendants should have filed a motion to quash the subpoena served on Kaylor no later than April 10, 2017. "It is well established that a failure to object to discovery requests within the time required constitutes a waiver of any objection."[7]

### C. TTC must destroy all documents received from McBeath's prior employer.

TTC requested the following employment records from Alliance Beverage Distributing Company, LLC, the disclosure of which violates McBeath's right of privacy.[8]

> Any and all documents and employment records relating or pertaining to Melissa Martin McBeath. Records should include, but are not limited to, job applications, interview notes, offer letters, compensation history and information, complaints, employment-related correspondence, disciplinary records, employee reviews, employee evaluations, pay stubs and payroll records, records relating to the termination of her employment, performance, reviews, personnel files, photographs, and supervisor's notes.

---

[5] McBeath Dec. - Exhibit C and Exhibit H.
[6] McBeath Dec. - Exhibit H.
[7] *Rich Mark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992).
[8] McBeath Dec. – Exhibit A.

The documents were produced before McBeath could have time to meet and confer with defense counsel, who explained that TTC requested McBeath's personnel file from her prior employer because Defendants hoped to find something to support an "after-acquired evidence" defense.[9] This is nothing more than grasping at straws and certainly does not support the broad subpoena served on Alliance Beverage.[10] TTC refuses to destroy McBeath's employment records that are not relevant to any of the parties' claims or defenses.

### D. The subpoena issued for non-party witness, Glenn Murphy, is overbroad and invades McBeath's right of privacy.

TTC issued a subpoena for Glenn Murphy that requests the following documents:[11]

> 1.   All documents and employment records relating or pertaining to Melissa Martin McBeath. Records should include, but are not limited to, job applications, interview notes, offer letters, actual or potential compensation history and information, employment-related corres-

---

[9] An after-acquired evidence defense comes into play where the employer alleges it discovered purported misconduct *after* the employee's termination that *would have* caused the employer to terminate the employee on that basis alone had it known of the alleged misconduct. To prove it, the employer "must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of discharge." *McKennon v. Nashville Banner Pub. Co.,* 513 U.S. 352, 362-363 (1995). That is, the employer must show that "as a matter of settled company policy, it would have fired [the plaintiff] immediately upon learning of" the alleged misconduct. If proven, the defense may limit front pay. *Id.*

[10] *See Blotzer v. L-3 Communs. Corp.,* 287 F.R.D. 507, 2012 U.S. Dist. LEXIS 184162 (D. Ariz. 2012) (quashing subpoena served on plaintiff-employee's prior employers because it was overbroad and sought information not relevant to the claims); see also Professional Recovery Services, 2009 U.S. Dist. LEXIS 3889, 2009 WL 127326 at *4 (discovery may be denied or narrowly tailored to balance the needs of the case against the employee's reasonable expectations of privacy).

[11] McBeath Dec. – <u>Exhibit B.</u>

pondence, resumes, personnel files, and photographs.

2. All documents and records that reflect communications between Glenn Murphy (and/or the entity, if any, known as Restaurant Bar Concepts) and Melissa Martin McBeath (in any capacity; i.e., in her individual capacity or as a former representative of Alliance Beverage) including, without limit, email correspondence, text messages, social media posts and communications, written correspondence, and notes from conversations.

McBeath turned down a job offer extended by Glenn Murphy so that she could go work for TTC.[12] The subpoena should be limited to documents that relate to this job offer, TTC or the individual Defendants. All other documents are not relevant and invade McBeath's right of privacy.

Dated: May 1, 2017                                    Respectfully submitted,

_____
Melissa Martin McBeath

---

[12] McBeath Dec. ¶ 4.

APPENDIX A

,

UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF OHIO WESTERN DIVISION

# Lucas v. Jolin

## Case No. 1:15-cv-108 (S.D. Ohio May. 16, 2016)

Decided May 16th, 2016

Bowman, M.J.

Black, J.
Bowman, M.J.

**MEMORANDUM ORDER**

The above captioned case, like an earlier closely related case filed by the same *pro se* Plaintiff,[1] involves Plaintiff's allegations of illegal telemarketing practices. Pursuant to local practice, this case has been referred to the undersigned magistrate judge for pretrial management and for initial consideration of any dispositive matters by report and recommendation ("R&R"). Currently before the undersigned are four non-dispositive motions: (1) Plaintiff's motion to stay ruling on the motion for summary judgment filed by Defendant Net VOIP Communications, Inc. (hereinafter "Net VOIP"), and/or for additional discovery under Rule 56(d); (2) Net VOIP's motion to quash a subpoena issued to a third party, Google; and (3) Plaintiff's motion to strike Net VOIP's motion to quash; and (4) Plaintiff's motion to exclude the affidavit of a non-appearing *2 witness filed by Net VOIP. In addition to these non-dispositive motions, two dispositive motions have been addressed in a separate Report and Recommendation filed this same day.

> 1. *See Lucas v. Telemarketer Calling From (407) 476-5680 and Other Telephone Numbers*, Case No. 1:12-cv-630. Alll further proceedings in Case No. 1:12-cv-630 have been indefinitely stayed pending an anticipated FCC ruling on a petition filed by Plaintiff. (Doc. 178).

**I. Background**

Plaintiff initiated this lawsuit on February 11, 2015, but Defendant Net VOIP was not named as a party until November 1, 2015, when Plaintiff filed a second amended complaint. Net VOIP is a company that provides "voice over internet protocol" which allows customers to use the internet as a telephone service. Plaintiff's claim against Net VOIP rests on Defendant's alleged business relationship with Victor Jolin, an individual Defendant against whom Plaintiff seeks a default judgment,[2] who resides in the Philippines. According to Plaintiff, Jolin made 12 illegal telemarketing calls to Plaintiff's residential phone number between the dates of November 24, 2014 and January 27, 2015. (Doc. 32 at ¶¶8-9).

> 2. *See* Report and Recommendation filed herewith.

Plaintiff's second amended complaint identifies Net VOIP as a "Florida corporation," and explains Net VOIP's liability for the calls as follows: "On information and belief, Victor Jolin is a Chief Technology Officer for Net VoIP Communications Inc, and was acting in his capacity as an officer of Net VoIP Communications Inc. when he performed each his actions described in ¶¶ 8-12." (Doc. 32 at ¶20). Plaintiff further alleges: "On information and belief, the actions of Jolin described in ¶¶ 8-12 were performed as an officer of Net VoIP Communications Inc., and within the scope of his duties as an officer of Net VoIP Communications Inc, and therefore Net VoIP Communications Inc. is liable for those actions." (*Id.* at ¶57). Last, Plaintiff alleges that *3 "Victor Jolin, Premium



Outsourced Solutions Inc., Shawn Wolmuth, Visram, Inc., and Net VoIP Communications Inc. are jointly and severally liable for the telemarketing calls described in ¶ 8. They owe $45,600 for those telemarketing calls." (Doc. 32).

A calendar order entered on February 10, 2016 set deadlines for disclosure of lay and expert witnesses, with all discovery to be completed by August 31, 2016. (Doc. 64). Although the dispositive motion deadline will not expire until September 15 of this year, Net VOIP promptly filed a motion for summary judgment on February 29, 2016, shortly after entry of the Court's calendar order. Defendant's motion asserts that Victor Jolin was an independent contractor for Net VOIP for a brief period in 2011 and 2012, but that Jolin and the Defendant have not had any type of relationship since 2012 - years before the alleged calls were made. (Doc. 74-2, Affidavit of Mohammed Ullah; *see also* Doc. 72-2 at 5). Because the sole basis for Net VOIP's liability rests on Plaintiff's allegation that Jolin was an officer of Net VOIP, the Defendant argues that it is entitled to judgment as a matter of law.

Defendant presents additional arguments on summary judgment that it cannot be held liable under the TCPA because the calls were not made on behalf of or at the direction of Net VOIP, because Net VOIP does not place calls on behalf of its customers, and because Net VOIP does not sell any services or products relating to the subject of the calls at issue in this litigation (banking, credit card, or financial services). Last, Net VOIP argues that it cannot be held vicariously liable under the TCPA for Jolin's conduct.

On March 24, 2016, Plaintiff filed a response in opposition to Net VOIP's motion for summary judgment, arguing in part that Plaintiff requires additional discovery under *4 Rule 56(d), Fed. R. Civ. P., in order to disprove Defendant's assertion that Jolin was not an officer or agent of Net VOIP during the relevant time period. Plaintiff sought an informal discovery conference with the Court in order to address a related discovery dispute. In that dispute, Plaintiff sought to compel Net VOIP to produce additional discovery and/or to execute a release to an email service provider (Google) in order to provide Plaintiff with additional discovery. Both parties submitted informal memoranda to the undersigned in anticipation of the telephonic conference, which memoranda have not been filed of record.

In addition to Plaintiff's request for an informal discovery conference, on March 17, 2016 Defendant Net VOIP filed a formal motion to quash a third-party subpoena issued by Plaintiff to Google, which subpoena seeks email communications between Defendant Net VOIP and Jolin. (Doc. 70). Plaintiff filed a response in opposition to the motion to quash, to which Defendant filed a reply. Both the fully briefed motion to quash and the parties' informal memoranda concern the same discovery issue, which relates to the pending motion for summary judgment.[3]

> 3. On April 6, 2016, the undersigned convened an informal telephonic discovery conference, but explained to the parties that a single ruling would issue on the dispute following full briefing on the Defendant Net VOIP's motion to quash.

**II. Analysis of Discovery Issues**

Defendant Net VOIP filed a motion to quash a subpoena issued by Plaintiff to non-party internet service provider Google, which seeks email correspondence between Net VOIP and Victor Jolin. Alternatively, Net VOIP seeks a protective order forbidding disclosure of the requested discovery. On April 5, 2016, both parties tendered informal memoranda *in camera*, in preparation for an informal discovery conference relating to *5 the same issue. Although the parties' informal memoranda have not been filed of record, the arguments presented therein have been fully considered and are discussed together with the motion to quash.

As stated above, Plaintiff seeks to hold Net VOIP liable for 12 specific telephone calls that he alleges were



made by Jolin in 2014 and 2015, based upon the allegation that Jolin "is a Chief Technology Officer for Net VoIP Communications Inc, and was acting in his capacity as an officer of Net VoIP Communications Inc." when he made those calls. Plaintiff's allegation appears to have been based upon representations made by Jolin on the social media website known as LinkedIn.com. According to Plaintiff, at the time Plaintiff filed his amended complaint against Net VOIP, Jolin's LinkedIn account stated that Jolin was employed as the "Chief Technology Officer" for "NetVOIP Communications Inc." and had been so employed since "September 2010" through the "Present," a period identified as five years and three months. According to Plaintiff, Jolin's LinkedIn account further represented that he performed the following duties for Net VOIP: Linux Server Administration, Database Management, Systems Development, VOIP systems integration and Development, and PHP programming.

In initial responses to Plaintiff's discovery requests, Defendant Net VOIP denied that Jolin ever has been an agent or officer of Net VOIP, including but not limited to "Chief Technology Officer," the title used on Jolin's LinkedIn account. Instead, Net VOIP states that Jolin was last employed as an independent contractor for Net VOIP in "early 2012," more than two years prior to the telephone calls at issue in this litigation.[4] *6 Net VOIP paid Jolin via Western Union and provided pay records beginning in August 2011 and ending in April 2012 to support its representations. In response to the statements allegedly made by Jolin on his personal LinkedIn account, Defendant Net VOIP states: "The title "Chief Technology Officer' was not agreed upon by Net VOIP and we are unaware why his LinkedIn Profile carries that title. He provided systems development and VOIP systems integration and development." An affidavit by Mohammed Ullah, identified as "President and owner" of Net VOIP, denies that Jolin has ever held any employment position with Net VOIP, and confirms that "[d]uring this litigation, Net VOIP learned for the first time" of Jolin's

"false" representations on his LinkedIn account, and asked Jolin to "remove the errant information" which Jolin thereafter did. (Doc. 74-2). According to Net VOIP, the only person familiar with Jolin's work, or involved in hiring or appointing Jolin, was Muhammad Ullah. Defendant Net VOIP moved for summary judgment based upon those discovery responses, including its unequivocal denial of any relationship with Jolin after 2012 that could give rise to its liability for Jolin's allegedly illegal telephone calls to the Plaintiff in 2014-2015.

> 4. Net VOIP also points out that Jolin's representation that he was employed by Net VOIP beginning in 2010 is at odds with the fact that Net VOIP was not formed until 2011. (Ullah Decl. ¶5).

Plaintiff does not believe the Defendant's discovery responses, and seeks additional discovery to prove that a genuine issue of material fact remains concerning the relationship between Net VOIP and Jolin, which would preclude summary judgment in Defendant's favor. Plaintiff speculates: "The Gmail records *could* disprove Net VoIP's claim that it has not had any relationship with Jolin since 2012, and *could* show that Jolin was an officer of Net VoIP, and acting in that capacity when he initiated the calls that are the subject of this lawsuit." (Doc. 72-1 at 3, Plaintiff's Affidavit, emphasis added). Plaintiff argues that either "Ullah or Jolin is lying" based on the discrepancy *7 between Jolin's prior unsworn alleged representations on his LinkedIn account and the Defendant's sworn discovery responses.

After receiving Net VOIP's initial responses, Plaintiff issued the referenced subpoena to Google as well as a second set of written discovery requests to Net VOIP. In his second set of requests to Net VOIP, Plaintiff seeks "[a]ll communications" between Jolin and Net VOIP "on or after January 31, 2013" as well as all communications in the same time frame between Jolin and Net VOIP "that are stored by a third party but which you could obtain by granting your consent to release such communications." Plaintiff has clarified that he



is seeking the production of "all emails between victor.jolin@gmail.com and Defendant Net VOIP or Mohammad Ullah since Jan 1, 2013 that are stored by Google Inc.

In response to Plaintiff's second set of discovery requests, Net VOIP produced a single email dated March 11, 2016 from Jolin to Mohammad Ullah, at the email address of mohammad@netvoipcommunications.com. The single email appears to be a "forwarded" copy of an email that originated from Google to Jolin, alerting Jolin to the existence of a subpoena issued to Google by Plaintiff Lucas. Net VOIP represents to this Court that it has produced "the email correspondence" responsive to Plaintiff's request for emails between Net VOIOP and Jolin any time after January 1, 2013. (Doc. 74 at 2). Net VOIP objects to producing additional responsive documents on grounds that Plaintiff's request is overly broad, seeks irrelevant information, and amounts to a fishing expedition. Net VOIP also argues that additional emails are not within its "possession or control" and that it would be unduly burdensome to require Net VOIP to request the emails from Google. *8

The subpoena issued by Plaintiff to Google seeks all electronic communications sent to or from any "netvoipcommunications.com" address from the email account of victor.jolin@gmail.com, as well as any document in the same Jolin email account that contains the words "net voipo," or "netvoip," or "ullah" or in which the to/from field contains the name "mohammad."

**A. Relevancy, Breadth, and Plaintiff's Rule 56(d) Motion**

In favor of a protective order preventing further disclosure, Defendant first argues relevancy and overbreadth. Defendant asserts that since the subject telephone calls were allegedly made by Jolin in late 2014 and early 2015, any request for emails dating back to January 1, 2013 is overly broad. Defendant notes that it produced all "payment records" (which ended in 2012), and has affirmed under oath that Jolin has not performed any work for Net VOIP since 2012. Thus, Defendant argues that any communications that may exist between Jolin and Defendant or Muhammed Ullah in 2014 or 2015 could not possibly be relevant to Plaintiff's claim. By contrast, Plaintiff argues that "the mere existence of any emails between Jolin and Net VOIP after 2012 would disprove their defense." (Doc. 73 at 4).

The undersigned finds the issue of whether Jolin and Net VOIP and/or Mohammed Ullah (at his Netvoip account) exchanged emails to be within the scope of discovery, at least for some period close in time to the subject phone calls. It is true that on the one hand, when a moving party supports an assertion of fact by citing to materials in the record, whether deposition testimony, affidavits, or interrogatory answers, the Court will accept that evidence under Rule 56(c) without questioning the veracity of the deponent or declarant offering the evidence. Under Rule 56(e), if a party *9 fails to properly address another party's assertion of fact (here, that Jolin and Net VOIP have had no relationship since 2012), the court may consider the fact undisputed. Ordinarily, it is not sufficient for the party opposing summary judgment to argue without admissible evidence "that testimony is false." Here, the only evidence that Plaintiff offers to dispute Defendant's evidence is an unverified and unsworn copy of what Plaintiff alleges is a "LinkedIn" page entirely created by Jolin - a social media profile created entirely by Jolin, and concerning which Net VIOP states it was unaware until the advent of this litigation.

On the other hand, if a party asserts - as Lucas does here - that he needs more time to present facts essential to justify his opposition to summary judgment, the court may allow extra time for discovery. Lucas's evidence that cause exists for additional discovery may be thin, but it is not non-existent. However, the time period for the discovery sought by Lucas is overbroad. The undersigned will limit the requests to a more rel-



evant time frame of January 1, 2014 through December 31, 2015. Having determined that Lucas should be permitted additional time to obtain relevant discovery from the Defendant under Rule 56(d), the undersigned turns now to the form of that discovery - specifically, through Plaintiff's subpoena to Google or through discovery directed to Net VOIP.

**B. The Stored Communications Act; Defendant's Motion to Quash**

The subpoena issued by Plaintiff to Google seeks all emails, text messages, and other communications contained in the Google account of victor.jolin@gmail.com and "any other Google account that Google knows to be owned by the same person" that were sent to or received from any "netvoipcommuincations.com" email account, or that *10 contain (anywhere in the document) the words "net voip" or "netvoip" or "ullah" or in which the to/from field contains the name "mohammed." (Doc. 70 at 8). The subpoena seeks "the complete contents" of all documents as to which "the originator or addressee or intended recipient of such communication has given lawful consent to divulge the contents," and otherwise seeks "the complete contents of the documents" that are responsive to the subpoena but "are not electronic communications within the meaning of 18 U.S.C. §2702." (Id.). For the reasons explained below, I conclude that the subpoena should be quashed in part.

The Stored Communications Act, 18 U.S.C. §2702, ("SCA"), generally prohibits any third party provider (such as Google) from releasing private communications to certain entities and individuals. Although the SCA does not address the issue directly, courts overwhelmingly have held that the SCA prevents a provider from releasing the "contents" of a user's stored communications in response to a civil subpoena from a third party. *In re Facebook, Inc.*, 923 F. Supp. 2d 1204, 1206 n. 4 (N.D. Cal. 2014)(collecting cases); *Suzlon Energy Ltd. v. Microsoft Corp.*, 671 F.3d 726 (9th Cir. 2011); *F.T.C. v. Netscape Communications Corp.*, 196 F.R.D. 559, 561 (N.D. Cal. 2000); *In re Subpoena Duces Tecum to AOL, LLC*, 550 F. Supp.2d 606 (E.D. Va. 2008); *Viacom Intern Inc. v. YouTube Inc.*, 253 F.R.D. 256 (S.D.N.Y. 2008); *J.T. Shannon Lumber Co., Inc. v. Gileo Lumbar Inc.*, 2008 WL 4755370 (N.D. Miss. 2008); *Thayer v. Chiczewski*, 2009 WL 2957317 (N.D. Ill. 2009). Nevertheless, an electronic communication service provider may release subscriber information that is not considered "content" under 18 U.S.C. §2702(c)(6). The "contents" of a communication are defined as "information concerning the substance, purport, or meaning of that *11 communication." 18 U.S.C. §§2711(1) and 2510(8). A provider may also release communications if the subscriber gives consent to the release of such communications.

Net VOIP persuasively argues that it cannot give consent for Google to release emails contained in the email account of the individual Defendant, Victor Jolin, as opposed to an email account controlled directly by Net VOIP. Even if Plaintiff were able to prove that Jolin is employed by Net VOIP, no authority supports the ability of Net VOIP to give consent for the release of communications from the individual email ("gmail") account to which the subpoena is directed. Of course, as discussed below, the fact that Net VOIP cannot consent to Google's release of Jolin's emails does not mean that Net VOIP cannot consent to the release of Net VOIP's own emails.

**1. Net VOIP's Standing to Challenge the Subpoena**

Even though the subpoena is directed to disclosure of Jolin's personal gmail account, and Net VOIP cannot consent for Jolin, the undersigned concludes that Defendant Net VOIP still has standing on the facts presented to challenge the subpoena. Such standing exists to the extent that Net VOIP asserts its personal right or privilege concerning any emails that were exchanged between Net VOIP and Jolin. Plaintiff points out that Net VOIP's discovery responses state that the Defendant has not had any communications with Jolin since 2012, and the subpoena seeks only emails af-



,

ter 2013. Plaintiff questions how standing could exist absent the existence of responsive communications (contrary to Defendant's discovery responses). Fundamentally, Plaintiff questions Net VOIP's motivation in seeking to quash the subpoena, arguing that the Google records could exonerate the Defendant and confirm the evidence submitted on summary judgment that Net VOIP and Jolin had no *12 relationship at the time Jolin made the offending phone calls, unless (as Plaintiff maintains) the Defendant is lying in order to escape liability.

The undersigned does not agree that the only rational basis for VOIP to file the motion to quash was some type of malfeasance - either to mislead this Court or otherwise to conceal the truth. A party that has valid legal grounds to object to an improper or invalid subpoena should not be inhibited from doing so, out of fear that the opponent seeking the unlawful discovery will cry, "well, he must be hiding something."[5] As a matter of law, Net VOIP has standing because the subpoena specifically seeks the private communications of Net VOIP, regardless of whether such communications ultimately are found to exist. *See generally Systems Products and Solutions, Inc. v. Scranlin*, 2014 WL 3894385, at *7 (E.D. Mich. Aug. 8, 2014); *Special Markets Ins. Consultants, Inc. v. Lynch*, 2012 WL 1565348 at *1 (N.D. Ill. May 2, 2012)(holding that party has standing to object to subpoenas to Microsoft and Yahoo that sought party's personal information both under Rule 45 and under Rule 26(c)(1)).

> 5. Defendant asserts that its opposition is based upon its efforts to limit its overall costs and fees in this litigation, and to "stop the fishing expedition of Plaintiff." (Doc. 74 at 8). For the reasons stated, the undersigned finds it inappropriate to examine the motivations behind a party's otherwise valid legal defense.

**2. Whether the Subpoena Should be Quashed or Modified**

Plaintiff asserts that the subpoena does not violate the SCA because it seeks only: (1) information that is not prohibited from disclosure under the SCA because it does not constitute the "contents" of a communication; (2) communications as to which Jolin or Net VOIP have given "consent" to disclose; and (3) communications that are not within the definition of "electronic communications" in the SCA. *13

To a limited extent, Plaintiff is correct. However, the undersigned concludes that the subpoena must be partially quashed to clarify what is sought. First, concerning information that is not the "contents" of a communication, Plaintiff is entitled to limited disclosure. Plaintiff argues that disclosure of an email's to and from fields and date/time fields would not reveal the "content" of the referenced communication. *See also Mintz v. Mark Bartelstein & Associates, Inc.* 885 F. Supp.2d 987, 993 (C.D. Cal. 2012)(holding SCA does not prohibit disclosure of date, time, originator and recipient fields). The undersigned can only partially agree. Plaintiff's search terms, seeking all emails or related communications that may include "net voip" or "muhammed" or "ullah" anywhere in the document, clearly are content-based. The "subject" field of an email also reveals the "contents" of a communication. However, non-content related metadata may be disclosed without violating the SCA. *Accord Systems Products and Solutions, Inc.*, 2015 WL 3894385, at *8-9 (modifying subpoena to permit disclosure only of metadata); *Schweickert v. Hunts Point Ventures, Inc.*, 2014 WL 6886630, at *12 (W.D. Wash. Dec. 4, 2014); *see also generally In re Zynga Privacy Litigation*, 750 F.3d 1098 (9th Cir. 2014)(discussing what constitutes content).

With respect to the second category, it is abundantly clear that neither Jolin nor Net VOIP have given implied or express consent to disclosure of the communications,[6] so the subpoena also should be quashed for that category. *Accord Suzlon Energy Ltd. v. Microsoft Corp.*, 671 F.3d at 726-728, 731 (declining to find implied consent, *14 upholding lower court's order



quashing subpoena to prevent plaintiff from obtaining email messages of foreign defendant); *see also generally Elcometer, Inc. v. TQC- USA, Inc.*, 2013 WL 5346382, at *3 (E.D. Mich. Sept. 23, 2013)(denying motion to compel third party to produce defendants' email even though defendants' own unresponsiveness thwarted plaintiff's ability to obtain discovery); *Bower v. Bower*, [808 F. Supp.2d 348](#) (D. Mass. 2011)(acknowledging "frustration" but refusing to find spouse who fled jurisdiction and refused to appear implied consent to disclose contents of stored communications).

> 6. Plaintiff briefly seems to argue a variation of implied consent by Jolin. He argues that Jolin "forfeited any expectation of privacy by using his [Google] account to conduct an illegal business." Plaintiff points to Google's contractual terms of service and privacy policy, which forbid the use of Google for unlawful purposes. However, the undersigned declines to find any breach of contract of Google's contractual terms by Jolin. Neither Google nor Jolin have appeared in this litigation, and their contractual agreement is not directly at dispute.

With respect to the third category listed in the subpoena, it is unclear what information would be within Google's possession that would fall outside of the scope of the SCA, other than - perhaps - the information that is non-content based. It is possible that Plaintiff is seeking documents created in Google Docs, but the SCA generally prohibits disclosure of any "record or other information pertaining to a subscriber" not merely "communications" as that term is defined. *See* [18 U.S.C. §2702(a)(3)](#). Absent more specific argument that any record or other information under Google's control and relating to Victor Jolin would fall outside of the SCA, the undersigned concludes that all such information falls within the scope of the SCA. Therefore, Google need not respond to the third category identified in the subpoena.

Thus, in the absence of any controlling authority supporting enforcement of the broad scope of the subpoena at issue, the undersigned finds it appropriate to modify the subpoena to require disclosure only of the to/from and date/time fields for emails in the account of victor.jolin@gmail.com, dating January 1, 2014 through December 1, 2015, that were exchanged between the referenced subscriber and anyone using an email *15 address identified as "@netvoipcommuincations.com" including but not limited to [mohammed@netvoipcommuincations.com](mailto:mohammed@netvoipcommuincations.com).

In a reply memorandum opposing further discovery, Net VOIP argues that the production of only limited non-content information would be insufficient to overcome the evidence submitted in support of Net VOIP's motion for summary judgment. While the validity of Defendant's presumption is untested, even if true, the production of the metadata may lead to the discovery of additional evidence that would be sufficient to create a genuine issue of material fact. For that reason, the undersigned has recommended the denial of Net VOIP's motion for summary judgment in the accompanying R&R, without prejudice to renew upon the completion of the discovery detailed by this Order.

**3. Net VOIP's Possession or Control of Relevant Emails**

Although this Court has partially quashed the subpoena issued by Plaintiff to Google for Jolin's account information, broader disclosure of the content of email communications between Net VOIP and Jolin is permissible through Net VOIP under Rule 34, rather than from Google directly. Plaintiff argues that this Court should simply direct Google to respond to the full subpoena by holding that Net VOIP has "consented" to the release of any emails sent to it from Jolin. Despite the extra step required, the undersigned finds more persuasive the approach set forth in *Flagg v. City of Detroit*, 242 F.R.D. 346 (E.D. 2008). In *Flagg*, the court found emails stored by a third party to be within the party's possession or control under Rule 34, and directed that party to request the electronic communications from the third party in lieu of enforcing any type of subpoena that might otherwise vio-



late the SCA. The court found it to be "immaterial *16 whether a party...might prefer not to give the necessary consent - if a party has the requisite control over a requested document, it must exercise this control in order to comply with the mandate of Rule 34." *Id.* at 355. As one treatise explains, the SCA effectively protects against disclosures obtained directly from third parties, not under traditional discovery rules, "which makes sense given that a non-party generally would not have an opportunity to appear to contest the scope or validity of a request." 4 E-Commerce and Internet Law Part IX, § 50.06[4][C][v] (December 2015 update).

Here, Net VOIP has the legal right to obtain any emails that it sent to or received from Victor Jolin. Net VOIP's defense is grounded on its representation that Jolin was not employed by Net VOIP and was not otherwise authorized to act on behalf of Net VOIP when Jolin allegedly made the offending 12 telephone calls in late 2014 and early 2015. Net VOIP additionally has represented that it has "not communicated with Jolin since 2012" other than the recent email concerning the subpoena, and matters relating to the motion to quash. Given these representations, the referenced emails (to the extent any exist) are both relevant and discoverable. *Accord Mintz v. Mark Bartelstein & Assoc., Inc.*, 885 F. Supp.2d 8987, 994 (C.D. Cal. 2012).

In a personal injury case, when a plaintiff seeks damages for claimed injuries, he or she is often directed to execute a release in order for the defendant to examine his or her medical records related to the injuries, including medical records that may prove pre-existing injuries or otherwise lend credence to the defense. In a similar way, Net VOIP will be compelled to request directly from Google the release of certain emails within the relevant time period, so that Plaintiff has some opportunity to discover relevant documents that may undermine the grounds on which Net VOIP seeks *17 summary judgment and help prove Plaintiff's claim. *Accord, Glazer v. Fireman's Fund Ins. Co.*, 2012 WL 1197167 at *3 (S.D. N.Y> 2012)(directing plaintiff to gather and produce her chats in her account); 2012 WL 5265170 at *1 (S.D. Ohio 2012).

**C. Plaintiff's Construed Motion to Strike Motion for Summary Judgment and Motion to Exclude Jolin's Affidavit**

In his response to Defendant's motion for summary judgment, Plaintiff asserts that the entire motion for summary judgment "should be stricken for non-compliance with Judge Black's Standing Order Governing Civil Motions for Summary Judgment." (Doc. 72 at 1). Plaintiff's response is construed as a motion to strike Defendant's dispositive motion on the procedural ground that Defendant failed to properly serve Notice to Plaintiff as a pro se litigant. Defendant states that its failure to serve Plaintiff with the requisite Notice was entirely inadvertent and had no prejudicial impact on Plaintiff. As Defendant points out, Plaintiff is a seasoned litigator who uses the email address vincentlucaslegal@gmail.com. The undersigned accepts Defendant's explanation that its failure to comply with the standing order was inadvertent, and agrees that striking the pending motion would not serve the interests of justice.

In addition to his construed motion to strike defendant's motion for summary judgment, Plaintiff has filed a motion seeking to exclude Net VOIP's inclusion of an affidavit authored by Jolin and attached to Defendant's reply memorandum in support of its motion for summary judgment. (*See* Doc. 74-1). Although Plaintiff criticizes the affidavit as unverified, he chiefly argues that the affidavit should be excluded "unless and until Defendant makes Jolin available for deposition upon oral questions and unless *18 Jolin complies with his duties to produce documents and things under Rule 34." (Doc. 75).

Technically, since the undersigned has by separate R&R recommended denial of the pending motion for summary judgment without prejudice to renew,





Plaintiff's motion to exclude the Jolin affidavit is moot. However, to the extent that the presiding district judge may decline to adopt that recommendation, and/or to the extent that Net VOIP would re-file the same affidavit in a later motion, the undersigned agrees that the affidavit should be excluded from any consideration by this Court in its present form. Although an affidavit may be used on summary judgment, an opposing party may support its factual position by "showing that the materials cited do not establish the absence ...of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Rule 56(c)(1)(B). In addition, it is permissible for a party opposing summary judgment to "object that the material cited to support or dispute a fact <u>cannot be presented in a form that would be admissible in evidence</u>." Rule 56(c)(2) (emphasis added). An affidavit submitted on summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Rule 56(c)(4).

To date, Net VOIP has failed to show that the same facts asserted by Jolin in his affidavit would be presented by Jolin "in a form that would be admissible in evidence" at trial, whether through deposition or live testimony. After all, Jolin resides in the Philippines and has refused to appear in this litigation to date.

Ironically, even though he opposes use of the affidavit by Defendant on summary judgment, Plaintiff argues that this Court should view Jolin's affidavit as akin to a court *19 appearance, such that the Court should order Jolin to consent to the Google subpoena. The undersigned previously has explained the rationale for ordering a party who has appeared in court to request the production of relevant electronic communications from a third party internet service provider under Rule 34. However, I do not agree that Jolin's affidavit is equivalent to the appearance of a party.[7]

7. For reasons that include the possibility that Jolin eventually will choose to appear, the undersigned has recommended denying Plaintiff's motion for default judgment against Jolin, without prejudice to renew. --------

### III. Conclusion and Order

Accordingly, **IT IS ORDERED THAT**:

1. Net VOIP's motion to quash the subpoena issued to Google (Doc. 70) and/or for a protective order is GRANTED IN PART;

> a. The referenced subpoena is hereby QUASHED except as modified in the paragraph below;
> b. In response to the subpoena, Google shall produce to Plaintiff Lucas, on or before June 15, 2016, the to/from fields and time/date fields, for any communications between the subscriber victor.jolin@gmailcom and any email address ending in "@voipcommunications.com" that was transmitted between January 1, 2014 and December 31, 2015;

2. Plaintiff's construed motion to strike the entirety of Defendant's motion for summary judgment (Doc. 72) is DENIED;

3. Plaintiff's motion to stay ruling on the pending motion for summary judgment until Plaintiff completes additional discovery under Rule 56(d) is GRANTED; *20

4. Plaintiff's prior oral motion to compel Defendant to produce additional discovery is GRANTED IN PART:

> a. Defendant Net VOIP shall, on or before June 1, 2016, provide its consent to Google and a request to release to Net VOIP any and all communications transmitted to or from any email address ending in "@voipcommunications.com" and Victor Jolin at victor.jolin@gmailcom, to the extent that any responsive communications (including but



not limited to emails) were transmitted between January 1, 2014 and December 31, 2015;

b. Within one week of receipt of the referenced communications from Google, Defendant shall transmit any responsive communications to Plaintiff. To the extent that Defendant Net VOIP withholds any documents, records, or communications produced to it by Google, Net VOIP shall produce to Plaintiff a privilege log explaining the basis for such withholding;

5. Plaintiff's motion to exclude the Jolin affidavit attached to Defendant's reply memorandum in support of its motion for summary judgment (Doc. 75) is GRANTED. Although undersigned declines to strike the affidavit from the record, the contents of the affidavit will not be further considered by this Court.

*s/Stephanie K* . *Bowman*

Stephanie K. Bowman

United States Magistrate Judge



## CERTIFICATE OF SERVICE

I hereby certify that the above document was filed electronically with the Clerk of the United States District Court for the District of Arizona, and was served via hyperlink generated by the court's CM/ECF system, which was sent electronically to:

Roberto C. Garcia
*rgarcia@fmazlaw.com*
Travis L. Tufts
*ttufts@fmazlaw.com*
Farhang & Medcoff PLLC
4801 E Broadway Blvd., Ste. 311
Tucson, AZ 85711
520-790-5433

I declare under penalty of perjury, pursuant to 28 U.S.C. section 1746, that the foregoing is true and correct.

Dated: May 1, 2017

_____
Melissa Martin McBeath