# Exhibit A

**Tish Wright**

| | |
|---|---|
| **From:** | mel.mcbeath@cox.net |
| **Sent:** | Monday, July 18, 2016 4:19 PM |
| **To:** | Robert Garcia; Travis L. Tufts |
| **Cc:** | Autumn Bonnell; Tish Wright; Jamie Archibald |
| **Subject:** | McBeath v. Tucson Tamale Co. et al (Motion to Compel ARCP 26.1 (a) Disclosures) |
| **Attachments:** | 2016-07-18 McBeath MTC ARCP 26.1 Disclosures.pdf; 2016-07-18 McBeath Dec. ISO MTC ARCP 26.1 Disclosures.pdf |

Gentlemen:

I just dropped off at your office a copy of the attached Motion to Compel ARCP 26.1(a) disclosures.

As a professional courtesy, I will not file this motion if your clients produce all documents and electronically stored information (ESI) that should have been produced on July 15, 2016. At minimum, your clients must produce the documents, and pay the expenses, discussed in the motion.

I must receive all unredacted documents and ESI via e-mail before the close of business on Wednesday, July 20.

I remain most willing to meet and confer with you regarding the stipulated protective order you sent last week. I simply need to know which documents, and how many, will be covered by the order. Unless and until you describe and itemize these documents, I will not blindly sign your proposed order, however "standard" you say it is.

I'm well aware that you may move for a protective order at any time. I invite you to work with me. I certainly am willing to work with you, but we must meet somewhere in the middle. If you decline, then I'll proceed with the Motion to Compel, which clearly explains my position on this matter.

Please let me know before noon tomorrow, July 19, 2016, if your clients will produce the documents and ESI no later than July 20, 2016.

I'm available to meet at your convenience.

Best Regards,

Mel

Exhibit B

## Tish Wright

| | |
|---|---|
| **From:** | Travis L. Tufts |
| **Sent:** | Wednesday, August 3, 2016 3:40 PM |
| **To:** | 'Mel McBeath' |
| **Cc:** | Robert Garcia; Autumn Bonnell; Tish Wright; Jamie Archibald |
| **Subject:** | RE: McBeath v. Tucson Tamale Company et al (7/26/2016 Meet and Confer) |

Ms. McBeath,

Thank you for the letter, but I do not agree with everything stated therein. First, I do not estimate a trial date in March 2017 in the federal court action. I believe we discussed and agreed to a one year period of discovery for both the state and federal cases, making the completion of discovery in July 2017 and a trial date sometime thereafter. We discussed expert disclosures beginning in March 2017. Second, with respect to your demands for electronically stored information ("ESI") in native form, I asked that you send me a formal Request for Production identifying exactly what you seek and the electronic format sought. We already provided copies of ESI in an acceptable format with our initial disclosures. Contrary to the authority provided, producing these e-mails in native form is not as simple as outlined, not to mention you are asking my clients to incur additional time and costs to perform what amounts to a very broad request - a request you indicated is based almost entirely on the fact you don't trust my clients, not because of any specific e-mails or documents in our disclosures. As I indicated, we do not necessarily object that you are entitled to discover the native form. However, we do not agree to engage in an expensive, overly broad, fishing expedition without basis. Once you produce a formal request for production, we will comply with the deadlines for responding to the same.

With respect to your motion to compel - signed and dated July 18, 2016 but not filed - there are multiple issues precluding the filing of that motion. Among them, you misstate the facts regarding the protective order. I did not refuse to make disclosures unless you sign the protective order. Rather, I said I would not make disclosures of those documents which are confidential and/or reflect trade secrets until a protective order is in place - court ordered or stipulated. TTC clearly and unequivocally complied with its disclosure obligations after our meet and confer, including the production of ESI, redacting only that information which it claims is privileged pending the entry of a protective order. There is absolutely no authority for your argument that TTC waives privilege objections by producing late disclosures. Additionally, to the extent you believe there are documents or communications that were overlooked or not produced, your remedy is to send me a Request for Production, not file a motion to compel. I asked you to send me that request the last time we met because we produced what we believe at this point in discovery is relevant and reasonably calculated to lead to admissible evidence. You have not sent me a formal Request for Production and are now seeking instead to file a motion to compel on issues that have either been resolved or are subject to ongoing good faith discussions to resolve - i.e. the production of ESI in a format which you informally requested for the first time after TTC made its initial disclosures. Similar to my position before you filed your last motion to compel, should you wish to file another motion to compel based on TTC's disclosures, I will seek sanctions because the motion is not well grounded in law or fact.

Sincerely,

Travis L. Tufts
Profile | vCard
4801 East Broadway Boulevard | Suite 311 | Tucson, Arizona 85711
General: 520.790.5433 | Direct: 520.398.7466 | Fax: 520.790.5736 www.fmazlaw.com

-----Original Message-----
From: Mel McBeath [mailto:mel.mcbeath@cox.net]
Sent: Friday, July 29, 2016 8:13 PM

To: Travis L. Tufts <ttufts@fmazlaw.com>
Cc: Robert Garcia <rgarcia@fmazlaw.com>; Autumn Bonnell <abonnell@fmazlaw.com>
Subject: McBeath v. Tucson Tamale Company et al (7/26/2016 Meet and Confer)

Travis,

I hope you're enjoying a restful vacation. Attached is the following
correspondence:

2016-07-29 Letter to Travis Tufts

I look forward to hearing from you when you return.

Best,

Melissa

# Exhibit C

MELISSA MARTIN McBEATH
3463 E. TERRA ALTA BLVD.
TUCSON, AZ 85716
Ph: (520) 449-9753
*mel.mcbeath@cox.net*

Pro Se

## SUPERIOR COURT OF ARIZONA
## COUNTY OF PIMA

MELISSA MARTIN McBEATH, an individual,

Plaintiff,

v.

TUCSON TAMALE COMPANY; an Arizona corporation, et al.,

Defendants.

TUCSON TAMALE COMPANY; an Arizona corporation,

Counterclaimant,

v.

MELISSA MARTIN McBEATH, an individual, *et al.*,

Counterdefendants.

Case No. C20161794

**PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT TUCSON TAMALE COMPANY**

Assigned to Hon. Gus Aragon

10209.1

C20161794

1    Under Ariz. R. Civ. P. 34, Plaintiff MELISSA MARTIN McBEATH requests
2    that Defendant TUCSON TAMALE COMPANY respond to this Request for
3    Production, Inspection and Copying of Documents and Tangible Things.

4    The requested documents must be produced to Plaintiff's address of record
5    indicated above no later than forty (40) days after the service of this request.

6                              **INSTRUCTIONS**

7    1.    This demand requires the responding party to produce all
8    documents that are in the responding party's possession, custody, or control,
9    whether actual or constructive, including documents that may be in the physical
10   possession of another entity holding the documents on behalf of responding
11   party, such as a business or a law firm. If any document was, but no longer is, in
12   the possession, custody, or control of the responding party, the response should
13   state whether it has been lost, destroyed, or transferred to another person either
14   voluntarily or involuntarily, or has been otherwise disposed of. In each instance,
15   explain the circumstances surrounding the disposition, and state the date or
16   approximate date.

17   2.    If the responding party contends that any document requested is
18   protected from disclosure by the attorney-client privilege, by the work product
19   doctrine, or by any other claimed privilege, in a ***privilege log*** the responding
20   party should:

21        (a)    Identify the document request to which the withheld
22   document is responsive;

23        (b)    Specify the nature of the protection claimed;

24        (c)    Describe the precise ground for the protection; and

25        (d)    Identify the document with particularity, including its author,
26   dates of authorship and publication, all recipients of the document, the subject
27   matter, and the number of pages.

28

1    3.    This demand requires the production of documents in the same form
2    and in the same order in which they existed before this demand for production.
3    The documents are to be produced in the boxes, file folders, bindings, or other
4    containers in which the documents are ordinarily kept. The titles, labels, or other
5    descriptions on the boxes, file folders, bindings, or other containers are to be left
6    intact. This demand is a continuing demand for all documents described below
7    and that may hereafter come into the possession, custody, or control of the
8    responding party.

9                        **DEFINITIONS**

10    1.    The word "COMMUNICATION" includes every manner or means
11    of disclosure, transfer, or exchange of information, whether orally, by
12    DOCUMENT, or in any other manner or whether face to face or by telephone,
13    mail, personal delivery, or otherwise.

14    2.    The word "DOCUMENT" means documents, papers, books,
15    accounts, letters, photographs, _**e-mails in their native form**_, log, social media
16    entries, diaries, journals, internet blogs, objects, and all other tangible things. It
17    specifically includes all originals, copies, duplicates, drafts, or other recordings of
18    any written, graphic, or otherwise recorded matter, however produced or
19    reproduced, whether inscribed by hand or by mechanical, electronic, microfilm,
20    photographic, phonic, or any other means. It includes abstracts; address books;
21    advertisements; affidavits or statements; agreements; analyses of any kind; and
22    appointment books. Please produce e-mails in the electronic format on a USB
23    drive in which they are commonly stored in the course of business including all
24    meta data contained within the email.

25    THE TERM "DOCUMENT" INCLUDES ALL COPIES OF A DOCUMENT
26    THAT CONTAIN ANY ADDITIONAL WRITING, UNDERLINING, NOTES,
27    DELETIONS, OR ANY OTHER MARKINGS OR NOTATIONS, OR ARE
28    OTHERWISE NOT IDENTICAL COPIES OF THE ORIGINAL.

3.      The word "RELATE" should be construed in the broadest possible sense, and include all information or documents regarding the subject matter of the discovery request, including all information or documents that embody reflect, reflect, concern, comprise, evidence, are relevant to, refer or have reference to, pertain to, support, oppose, describe, mention, study, analyze or discuss the subject matter of the discovery request

4.      "YOU" of "YOUR" mean Defendant TUCSON TAMALE COMPANY and its management, employees and agents.

## DOCUMENTS REQUESTED

**DOCUMENT REQUEST NO. 1:**

DOCUMENTS used, identified, or referred to in preparation of YOUR responses to all written discovery (e.g., interrogatories and request for admissions) that Plaintiff has served on YOU to date.

**DOCUMENT REQUEST NO. 2:**

DOCUMENTS that RELATE to COMMUNICATIONS between Sherry Martin, Lisa Martin and/or Todd Russell Martin that RELATE to Plaintiff between January 2015 through the date that YOU respond to this request for production of documents.

**DOCUMENT REQUEST NO. 3:**

DOCUMENTS that RELATE to COMMUNICATIONS between persons that YOU employ (or employed) that RELATE to Plaintiff between January 2015 through the date that YOU respond to this request for production of documents.

**DOCUMENT REQUEST NO. 4:**

DOCUMENTS that RELATE to COMMUNICATIONS between any third party that RELATE to Plaintiff between January 2015 through the date that YOU respond to this request for production of documents.

**DOCUMENT REQUEST NO. 5:**

DOCUMENTS that RELATE to COMMUNICATIONS between any third party that RELATE to Plaintiff between January 2015 through the date that YOU respond to this request for production of documents.

**DOCUMENT REQUEST NO. 6:**

DOCUMENTS that RELATE to confidential information that YOU contend Plaintiff misappropriated.

**DOCUMENT REQUEST NO. 7:**

All emails that have the terms "Mel" or "Melissa":

(a)     To and from Todd Russell Martin, Sherry Martin and Lisa Martin; and

(b)     To and from Lindsay Welch, Alejandra Valenzuela, Shawn Kaylor, Delaney Hare, Meaghan Anderson and Joshua Cooper.

**DOCUMENT REQUEST NO. 8:**

All content in the mailbox for *mel@tucsontamalecompany.com* **in its native form** and its archival or backup to include all dates of Plaintiff's employment (i.e., all emails Plaintiff sent or received to/from this email address).


Dated: September 20, 2016

Melissa Martin McBeath

1

2   COPY hand-delivered on September 20, 2016 to:

3   Roberto C. Garcia
    Travis L. Tufts
4   FARHANG & MEDCOFF
    4801 E. Broadway Blvd., Suite 311
5   Tucson, AZ 85711

6   Attorneys for:

7   Tucson Tamale Company, Todd Russell Martin, Sherry Martin and Lisa Martin

8

9
    Melissa Martin McBeath
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF
DOCUMENTS TO TUCSON TAMALE COMPANY

-5-

C20161794

Exhibit D

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FARHANG & MEDCOFF

4801 E. Broadway Boulevard, Suite 311
Tucson, Arizona 85711
T: 520.790.5433

Ali J. Farhang (#019456) (PAN 65507)
afarhang@fmazlaw.com

Roberto C. Garcia (#026246) (PAN 66152)
rgarcia@fmazlaw.com

Travis L. Tufts (#029373) (PAN 89943)
ttufts@fmazlaw.com

Attorneys for Defendants

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

**IN AND FOR THE COUNTY OF PIMA**

| | |
|---|---|
| MELISSA MARTIN MCBEATH, an individual,<br><br>                    Plaintiff,<br><br>          v.<br><br>TUCSON TAMALE COMPANY, an Arizona corporation; TODD RUSSELL MARTIN, an individual; SHERRY MARTIN, an individual; and LISA MARTIN, an individual,<br><br>                    Defendants. | No. C20161794<br><br>**DEFENDANT TUCSON TAMALE COMPANY'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION**<br><br>Assigned to the Hon. Gus Aragon |
| TUCSON TAMALE COMPANY, an Arizona corporation,<br><br>                    Counterclaimant,<br><br>          v.<br><br>MELISSA MARTIN MCBEATH, an individual; JOHN DOE MCBEATH, an individual; WHITE CORPORATIONS I-X; BLACK LIMITED LIABILITY COMPANIES I-X; GRAY PARTNERSHIPS I-X; and JOHN DOES I-X and JANE DOES I-X,<br><br>                    Counterdefendants. | |

FARHANG & MEDCOFF

00286758.1

FARHANG & MEDCOFF

1    Defendant Tucson Tamale Company ("TTC"), by and through undersigned counsel

2    and pursuant to Arizona Rule of Civil Procedure 34, hereby submits its objections and

3    responses to Plaintiff's First Set of Requests for Production ("Requests") as follows:

4                              **RESERVATION OF RIGHTS**

5         1.      TTC responds to Plaintiff's Requests to the best of its present knowledge,

6    information, and belief. TTC continues to investigate the matters that are the subject of this

7    litigation. The responses set forth herein are at all times subject to supplementation to the

8    extent additional responsive information and/or documents are revealed through discovery

9    or further investigation.

10        2.      Nothing herein shall be construed as an admission or waiver of (i) objections

11   regarding admissibility, competency, relevance, privilege, materiality, or authenticity or (ii)

12   TTC's right to object to the use of any document or other information during any subsequent

13   proceeding, including the trial of this or any other action.

14                              **GENERAL OBJECTIONS**

15        1.      TTC objects to these requests for production as being overly broad, unduly

16   burdensome, and not reasonably calculated to lead to admissible evidence. Plaintiff seeks

17   discovery of "any and all" communications that reference or relate to Plaintiff over the

18   course of nearly two years, including communications with non-party employees and

19   ambiguous third parties. The request requires Defendants to quell tens of thousands of e-

20   mails in their native form, copy them, and produce them for Plaintiff irrespective of their

21   relevancy and the costs associated with reviewing and preserving objections on thousands

22   of e-mails and/or communications.

23        2.      TTC further objects to these requests for production as being vexatious and

24   harassing. Plaintiff is unquestionably aware of the volume of e-mails falling within the

25   scope of her requests. Despite numerous requests for specificity, Plaintiff has not, and

26   apparently cannot, identify specific communications she believes elicit evidence reasonably

27   calculated to lead to admissible evidence in support of her claims. Further, her requests not

28   only ask for information about third-party individuals or entities who are not parties to this

00286758.1

FARHANG & MEDCOFF

1    suit, her requests implicate disclosure of these individuals' private, personal, and

2    confidential information, creating the need for Defendants to review for privilege thousands

3    of e-mails and communications with non-parties. Furthermore, the issues at stake, amount

4    in controversy, and parties' resources simply do not justify a boundless fishing expedition

5    completely disproportionate to the needs of the case. See 2016 Ariz. Ct. Order 0019 (C.O.

6    0019) (adopting the Federal Rules of Civil Procedure's "proportionality" limitation on the

7    scope of discovery, effective January 1, 2017). Plaintiff earned $50,000 per year when her

8    employment was terminated by TTC. That she now claims she is entitled to over ten times

9    that sum is bemusing, but also ignores the value of Defendants/Counterclaimants' claims

10   offsetting her claimed damages.

11   3.   Subject to the foregoing objections, which are incorporated herein by

12   reference, and any other objections including, but not limited to, attorney-client privilege,

13   work product privilege, Ariz. R. Civ. P. 26(b)(3), and privileged confidential or protected

14   information, TTC will produce its e-mail server for inspection. Because the inspection

15   requires producing a computer and involves granting access to TTC's computer servers,

16   exposure to passwords, confidential, and/or privileged information, in addition to security

17   concerns producing this at an individual's residence and the ability to monitor the inspection

18   properly, TTC objects to production of the server for inspection at the Plaintiff's address of

19   record. TTC will make a computer and server available for Plaintiff to inspect on December

20   16, 2016[1] from 1 p.m. to 5 p.m. at 4801 E. Broadway Blvd., Suite 311, Tucson, Arizona

21   85711, with a facility for copying available to Plaintiff should she request copies of

22   documents which are not otherwise confidential or subject to privilege. Defendants reserve

23   the right to seek reimbursement pursuant to Rule 34.

24   _____

[1] After TTC served its Requests for Production to Plaintiff on August 2, 2016, Plaintiff did not
25   provide written responses within the presumptive limit provided by the Rules of Civil Procedure.
     Plaintiff still has not served her responses or documents responsive to TTC's requests. She
26   nonetheless has indicated it is time consuming for her to put together comprehensive responses.
     The responses are now 87 days overdue. December 16, 2016 – the date of inspection – is 87 days
27   after Plaintiff served her Requests for Production on TTC. As Plaintiff will understand, quelling
     tens of thousands of e-mails is time consuming. Further, permitting inspection 87 days after the
28   requests were propounded is fair timeframe for production in light of onerous task of quelling tens
     of thousands of e-mails for inspection.

FARHANG & MEDCOFF

**TTC's RESPONSES TO REQUESTS FOR PRODUCTION**

**REQUEST NO. 1:** DOCUMENTS used, identified, or referred to in preparation of YOUR responses to all written discovery (e.g., interrogatories and request for admissions) that Plaintiff has served on YOU to date.

**RESPONSE**: TTC refers Plaintiff to TTC 000001 – 000291, disclosed in their Initial Disclosure Statement and supplemental disclosure statements.

**REQUEST NO. 2:** DOCUMENTS that relate to COMMUNICATIONS between Sherry Martin, Lisa Martin and/or Todd Russell Martin that RELATE to Plaintiff between January 2015 through the date that YOU respond to this request for production of documents.

**RESPONSE**: TTC incorporates its objections, *supra*. Without waiving objections and subject thereto, Plaintiff may inspect the computer and server on December 16, 2016.

**REQUEST NO. 3:** DOCUMENTS that relate to COMMUNICATIONS between persons that YOU employ (or employed) that RELATE to Plaintiff between January 2015 through the date that YOU respond to this request for production of documents.

**RESPONSE**: TTC incorporates its objections, *supra*. Without waiving objections and subject thereto, Plaintiff may inspect the computer and server on December 16, 2016.

**REQUEST NO. 4:** DOCUMENTS that relate to COMMUNICATIONS between any third party that RELATE to Plaintiff between January 2015 through the date that YOU respond to this request for production of documents.

**RESPONSE**: TTC incorporates its objections, *supra*. Without waiving objections and subject thereto, Plaintiff may inspect the computer and server on December 16, 2016.

**REQUEST NO. 5:** DOCUMENTS that relate to COMMUNICATIONS between any third party that RELATE to Plaintiff between January 2015 through the date that YOU respond

00286758.1

1   to this request for production of documents.

2   **RESPONSE**:  TTC incorporates its objections, *supra*.  Without waiving objections and

3   subject thereto, Plaintiff may inspect the computer and server on December 16, 2016.

4

5   **REQUEST NO. 6:**   DOCUMENTS that relate to confidential information that YOU

6   contend Plaintiff misappropriated.

7   **RESPONSE**:   TTC objects to this request as being vexatious, seeking personal and

8   confidential information, and not reasonably calculated to lead to discoverable information.

9   TTC will produce this information pursuant to a stipulated or Court ordered Protective

10  Order.  Without waiving objections, TTC previously disclosed TTC 000047 – 000060 and

11  TTC 000286 with their Initial Disclosure Statement.

12

13  **REQUEST NO. 7:**  All emails that have the terms "Mel" or "Melissa":

14          (a)      To and from Todd Russell Martin, Sherry Martin and Lisa Martin; and

15          (b)      To and from Lindsay Welch, Alejandra Valenzuela, Shawn Kaylor, Delaney

16                   Hare, Meaghan Anderson and Joshua Cooper.

17  **RESPONSE**:  TTC incorporates its objections, *supra*.  Without waiving objections and

18  subject thereto, Plaintiff may inspect the computer and server on December 16, 2016.

19

20

21  **REQUEST NO. 8:**  All content in the mailbox for mel@tucsontamalecompany.com **in its**

22  **native form** and its archival or backup to include all dates of Plaintiff's employment (i.e.,

23  all emails Plaintiff sent or received to/from this email address).

24  **RESPONSE**:  TTC incorporates its objections, *supra*.  Without waiving objections and

25  subject thereto, Plaintiff may inspect the computer and server on December 16, 2016.

26

27

28

FARHANG & MEDCOFF

00286758.1

1    DATED this 31st day of October 2016.

2                                        FARHANG & MEDCOFF

3

4                                        By /s/ Travis L. Tufts
                                            Ali J. Farhang
5                                           Roberto C. Garcia
                                            Travis L. Tufts
6

7

8    COPY of the foregoing served
     First-Class U.S. Mail this 31st day
9    of October 2016 upon:

10   Melissa Martin McBeath
11   3463 E. Terra Alta Blvd.
     Tucson, AZ 85716
12   mel.mcbeath@cox.net
     *Pro Se*
13   /s/Letitia L. Wright

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

00286758.1

- 6 -

# Exhibit E

# Melissa Martin McBeath

3463 E. Terra Alta Blvd. • Tucson, AZ 85716 • 520.449.9753 • *mel.mcbeath@cox.net*

<u>SENT VIA E-MAIL ONLY</u>

December 19, 2016

Travis L. Tufts
Farhang & Medcoff
4801 E. Broadway, Suite 311
Tucson, AZ 85711

Re:  *McBeath v. Tucson Tamale Company et al.*
     Pima County Superior Court Case No. C20161794

Dear Mr. Tufts:

Regrettably, my trip to your offices to inspect Tucson Tamale Company's Gmail account(s) proved to be an utter waste of time.

For the record, on December 15, 2016 you unilaterally postponed to December 19, 2016, the inspection of TTC's emails due to "unanticipated logistical difficulties." It is evident that those difficulties resulted from the rushed hack-job email production presented to me to review today. My expert's cursory inspection of the metadata of the emails revealed that the searches were not conducted until December 16. This tells me that your clients were not prepared, and indeed possibly expected never, to produce the emails on December 16 (a date that you picked without even consulting me).[1]

I requested, and am entitled to, the emails in their native form, which means they should be exported directly from Gmail.[2] The emails presented to me this afternoon for inspection were clearly not in their native form because they were:

      a.     Exported from Gmail using undefined filters;

      b.     Imported into Microsoft Outlook; and

      c.     Placed into randomly-named folders.

As soon as I sat down to conduct the searches, it quickly became apparent that I was facing some hurdles. First, the arbitrary naming of the folders made it difficult to understand what was where. Second, some folders were empty, and some had subfolders, and some had messages

---

[1]  *See* TTC's Objections and Responses to Plaintiff's First Set of Requests For Production, dated October 31, 2016.

[2]  I only produced emails in their native form (.eml). Contrary to your assertion, I did not produce them as .pst Outlook files because I do not have Outlook on my computer.

Travis L. Tufts
December 19, 2016
Page 2

and subfolders. Finally, to search the Microsoft Outlook .pst files required navigating a four-level hierarchy labyrinth of folders just to get to the email messages.

In turn, all this had to be done through the Microsoft Outlook graphical user interface and could not be automated nor applied by a computer program ("script"). These hurdles made the search process unnecessarily cumbersome, and can be avoided entirely if I am given direct access to the emails in their native form.

Topping off our search criteria were the unanswered questions:  How, when and by whom was the Outlook .pst file created?  When my expert asked Robert Garcia these questions he assured us searches were conducted in the offices; this is not responsive. When if this was a complete result of the production as per my request, he said yes. We do not know the search criteria ("filters") used, and Mr. Garcia was unable to provide them. We do not know what information was culled. We do not know the export-convert-import process used specifically to get the data from Gmail into Outlook .pst files.

This may seem unimportant except that if not done correctly, the export/conversion/import process will fail in a non-fatal manner. That means it will continue and appear to work, but some data will **_not_** be properly moved over. Specifically, several folders represented to be "people's mailboxes" (*e.g.* Alejandra Valenzuela, Shawn Kaylor, Todd Russell Martin, Sherry Martin, Lisa Martin, me, etc.) had the error "Sync Issue (This computer only) – foldername" (*e.g.* Todd). Underneath each it said "Local Error (This computer only) - foldername". This is apparently a bug in Outlook's handling of Gmail—further indicating that Outlook is absolutely the wrong format and program to use to access Gmail.[3]

Next, when we looked at date ranges we noted that the date ranges were a small subset of the requested production dates. Further, entire months were missing. For example, Lisa Martin's emails had no emails to me (or others) for the month of December 2015. The month of August 2015 had weeks of no email. These same lapses were evident all throughout the data.

There were three fundamental problems with the data we were shown today. First, it was not responsive to the production dates. Second, it was not responsive to the production filters, having excluded data that should have been there. Third and finally, it was not in native form, and, to further aggravate the inadequacy of the production, emails had been placed in folders having little relationship to the (lack of) content. By the way, none of these folders (aka Gmail labels) existed in my original email account. I want the data produced unchanged and exactly as it was stored in the course of business by individual account holder.

These fundamental flaws made any effort to search and cull data ultimately futile. I looked throughout various TTC employees' mailboxes and various folders and the consistency of the inconsistency (bad dates, missing time periods, *etc.*) did not get better.

---

[3]    *https://answers.microsoft.com/en-us/msoffice/forum/msoffice_outlook-mso_other/outlook-2013-sync-issues-8004010f-0-0-720/b3da93e8-39df-48a6-bf61-c1adb4f7f138*

Travis L. Tufts
December 19, 2016
Page 3

At this point, I do not believe your clients can, or maybe they simply will not, comply with their statutory obligation to produce the requested documents.

I see only one acceptable way to proceed.

By no later than December 21, 2016, I must be given direct access to TTC's Gmail accounts. I will only show up to your offices to perform the searches and to cull the responsive emails. I will not sit and review every email that has the word "Mel" or "Melissa" in it. Instead, I will export and save the responsive emails to a USB flash drive. You will retain an identical copy of the emails I retrieve.

As a gesture of good faith, I will give you 20 calendar days to provide me with a list of the emails that you believe are covered by the Protective Order. The manner in which the computer scripts will conduct the searches will specifically exclude any emails to/from your law firm. This means that you do not need to cull emails that contain attorney-client privilege communications or attorney-work product.

Please let me know by the end of the day tomorrow, December 20, 2016, if you're amenable to the above proposed inspection process. Feel free to call me to discuss this further if you wish.

Best Regards,

Melissa Martin McBeath

# Exhibit F

# Melissa Martin McBeath

3463 E. Terra Alta Blvd. • Tucson, AZ 85716 • 520.449.9753 • mel.mcbeath@cox.net

SENT VIA E-MAIL ONLY

December 21, 2016

Travis L. Tufts
Farhang & Medcoff
4801 E. Broadway, Suite 311
Tucson, AZ 85711

Re:    *McBeath v. Tucson Tamale Company et al.*
       Pima County Superior Court Case No. C20161794

Dear Mr. Tufts:

I write to respond to your email dated December 21, 2016, responding to my letter dated December 19, 2016.

You failed to address the issues I raised with your clients' Outlook .pst email files. Your clients must give me access to their actual Gmail accounts so that I can conduct the searches myself and export the responsive emails to a Gmail-readable file.

By the way, it is in your clients' best interest that a computer expert perform the searches, or at least someone who knows how to write computer scripts and understands how to perform Boolean searches. In my quick perusal of the emails your clients produced, I saw numerous exchanges between you and your clients. The person who created the .pst files obviously did not know how, or neglected, to exclude such emails from the production. Arguably, your clients have now waived the attorney-client privilege for every one of these emails that they voluntarily and selectively culled from their Gmail accounts and presented to me to review.

I believe that my in-person conversation with you on December 19 followed by our correspondence exchanges regarding your clients' incomplete production of responsive emails satisfies the statutory meet-and-confer requirement. If you disagree, then please call me immediately so that we may address whatever issues you wish to discuss further before I ask the Court to intervene.

Best Regards,

Melissa Martin McBeath

10259.1

# Exhibit G

MELISSA MARTIN McBEATH
3463 E. TERRA ALTA BLVD.
TUCSON, AZ 85716
Ph:  (520) 449-9753
*mel.mcbeath@cox.net*

Pro Se

## SUPERIOR COURT OF ARIZONA
## COUNTY OF PIMA

| | |
|---|---|
| MELISSA MARTIN McBEATH, an individual, | Case No. C20161794 |
| Plaintiff, | **MELISSA MARTIN McBEATH'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND SUPPLEMENTAL RESPONSES TO UNANSWERED WRITTEN DISCOVERY** |
| v. | |
| TUCSON TAMALE COMPANY; an Arizona corporation, *et al.*, | [Ariz. R. Civ. P. 37(a)] |
| Defendants. | Assigned to Hon. Gus Aragon Division 30 |
| TUCSON TAMALE COMPANY; an Arizona corporation, | |
| Counterclaimant, | |
| v. | |
| MELISSA MARTIN McBEATH, an individual, *et al.*, | |
| Counterdefendants. | |

10261.1

**LEGAL DISCUSSION**

Plaintiff Melissa Martin McBeath moves under Ariz. R. Civ. P. sections 34(b) and 37(a) for an order to compel Defendants Tucson Tamale Company ("*TTC*"), Sherry Martin and Lisa Martin to produce the documents that should have accompanied their Initial Disclosures provided on July 15, 2016 or TTC's Objections and Responses to McBeath's First Request for Production of Documents that was served on McBeath on October 31, 2016.

McBeath further requests that Defendants supplement their responses to any written discovery that they refused to answer until the entry of a Protective Order, which this Court issued on December 8, 2016.

A.   Defendants must produce e-mails in their native form as they are kept in the regular course of business.

After wrangling with Defendants for months over the scope of the documents they must produce, they continue to refuse to produce the e-mails in native form as they are kept in the regular course of business.

E-mails are undoubtedly discoverable. *See, e.g., Baez-Eliza v. Instituto Psicoterapeutico de Puerto Rico*, 275 F.R.D. 65, 70-71 (D.P.R. 2011) (imposing monetary sanction for employer's refusal to produce e-mails requested by former employee); *In re Estate of Long*, 229 Ariz. 458, 462, 276 P.3d 527, 531 (Ct. App. 2012) (discussing emails disclosed as a result of discovery).

Ariz. R. Civ. P. sections 34(a) states:

> Any party may serve on any other party requests (1) to produce and permit the party making the request, or someone acting on the requestor's behalf, to inspect, copy, test or sample any designated documents or ***electronically stored information***. . .

Ariz. R. Civ. P. sections 34(b) states:

> The request may specify the form or forms in which ***electronically stored information*** is to be produced.

1    Defendants use Gmail to send and receive e-mails. For this reason,

2  McBeath specifically requested for the e-mails to be produced in their native

3  form—i.e., a Gmail readable file and not Microsoft Outlook files. Counsel for

4  Defendants mistakenly assumes that producing emails in any electronic form is

5  the equivalent of producing the e-mails in native form. Not so. Defendants

6  exported selected e-mails to Microsoft Outlook, and by doing so altered the

7  manner in which they are received and stored in Gmail. The e-mails McBeath

8  was allowed to inspect were incomplete and even contained attorney-client

9  privilege communications, an astounding oversight that amounts to a total

10  dereliction of counsels' ethical and professional duties to their clients.

11    McBeath's computer expert can write computer scripts that will perform

12  Boolean searches that will accurately cull only responsive e-mails sent/received

13  during the relevant time period and will exclude all privileged communications

14  between Defendants and their attorneys.

15    B.    <u>Defendants have not supplemented their incomplete responses to</u>

16        <u>written discovery.</u>

17    On December 13, 2016, McBeath asked counsel for Defendants when they

18  were going to produce all the documents and supplement the responses to

19  written discovery they said they would provide once the Court signed their

20  proposed Protective Order.

21    The Court issued the Protective Order on December 8, 2016, and still they

22  have not complied. Defendants have had many months to gather the requested

23  information and should have turned it over immediately after the Protective

24  Order was entered.

25    Defendants refuse to give a date certain as to when McBeath can expect

26  this information. Unless and until this Court intervenes, Defendants will simply

27  not comply with their statutory obligation to produce the information McBeath

28  has been waiting to receive for months.

MOTION TO COMPEL PRODUCTION OF DOCUMENTS
AND SUPPLEMENTAL RESPONSES TO WRITTEN              -2-
DISCOVERY

1  B.  Request for sanctions.

2  McBeath requests that the Court impose sanctions against Defendants

3  and/or their attorneys to reimburse Plaintiff expenses incurred in connection

4  with bringing this motion (*e.g.*, TurboCourt filing fees, copy costs, gas and

5  parking fees paid when Plaintiff went to and from the Pima County Law Library

6  and University of Arizona Law Library).

7  McBeath also requests reimbursement for the law books she has had to

8  purchase.[1]

9  If the Court imposes sanctions, Plaintiff will submit a separate bill of costs.

10  Dated:  December 22, 2016      Respectfully submitted,

11

12

13  Melissa Martin McBeath

14

15  ORIGINAL filed via TurboCourt on December 22, 2016 with:
Clerk of the Court
16  Pima County Superior Court

17  COPY hand-delivered on December 22, 2016 to:
18  Roberto C. Garcia
*rgarcia@fmazlaw.com*
19  Travis L. Tufts
*ttufts@fmazlaw.com*
20

21  Attorneys for:
Tucson Tamale Company, Todd Russell Martin, Sherry Martin and Lisa Martin
22

23  Melissa Martin McBeath

24
25  [1]  *See* Ariz. R. Civ. P. 37(a)(4)(A)("If the motion is granted or if the disclosure
or requested discovery is provided after the motion was filed, the court shall,
26  after affording an opportunity to be heard, require the party or deponent whose
conduct necessitated the motion or the party or attorney advising such conduct
27  or both of them to pay the moving party the reasonable expenses incurred in
28  making the motion….").

Exhibit H

1

2   MELISSA MARTIN McBEATH
    3463 E. TERRA ALTA BLVD.
3   TUCSON, AZ 85716
    Ph:  (520) 449-9753
4   *mel.mcbeath@cox.net*

5

6   Pro Se

7

8

9                    UNITED STATES DISTRICT COURT
10          DISTRICT OF ARIZONA, TUCSON DIVISION

11

12                                      | Case No. CV-16-462-TUC-DCB (BPV)

13  MELISSA MARTIN MCBEATH,
      an individual,
14                                      **PLAINTIFF'S FIRST REQUEST FOR**
15              Plaintiff,              **PRODUCTION OF DOCUMENTS**

16         v.                           [Fed. R. Civ. P. 34]

17  TUCSON TAMALE COMPANY,
18    an Arizona corporation,           Assigned to:  Hon. David C. Bury

19              Defendant.              Complaint Filed:  July 11, 2016
20

21

22

23

24

25

26

27

28

10359.1

1

2    Rule 34 of the Federal Rules of Civil Procedure, Plaintiff MELISSA

3    MARTIN McBEATH requests that Defendant TUCSON TAMALE COMPANY

4    respond to this Request for Production, Inspection and Copying of Documents

5    and Electronically Stored Information (ESI).

6    The requested documents and ESI must be produced to Plaintiff's address

7    of record indicated above no later than forty (30) days after the service of this

8    request.

9    **INSTRUCTIONS**

10    1.    This demand requires the responding party to produce all

11    documents that are in the responding party's possession, custody, or control,

12    whether actual or constructive, including documents that may be in the physical

13    possession of another entity holding the documents on behalf of responding

14    party, such as a business or a law firm. If any document was, but no longer is, in

15    the possession, custody, or control of the responding party, the response should

16    state whether it has been lost, destroyed, or transferred to another person either

17    voluntarily or involuntarily, or has been otherwise disposed of. In each instance,

18    explain the circumstances surrounding the disposition, and state the date or

19    approximate date.

20    2.    If the responding party contends that any document requested is

21    protected from disclosure by the attorney-client privilege, by the work product

22    doctrine, or by any other claimed privilege, in a ***privilege log*** the responding

23    party should:

24    (a)    Identify the document request to which the withheld

25    document is responsive;

26    (b)    Specify the nature of the protection claimed;

27    (c)    Describe the precise ground for the protection; and

28

1        (d)    Identify the document with particularity, including its author,

2    dates of authorship and publication, all recipients of the document, the subject

3    matter, and the number of pages.

4        3.    This demand requires the production of documents in the same

5    form and in the same order in which they existed before this demand for

6    production. The documents are to be produced in the boxes, file folders,

7    bindings, or other containers in which the documents are ordinarily kept. The

8    titles, labels, or other descriptions on the boxes, file folders, bindings, or other

9    containers are to be left intact. This demand is a continuing demand for all

10   documents described below and that may hereafter come into the possession,

11   custody, or control of the responding party.

12   **DEFINITIONS**

13       1.    The word "COMMUNICATION" includes every manner or means

14   of disclosure, transfer, or exchange of information, whether orally, by

15   DOCUMENT, or in any other manner or whether face to face or by telephone,

16   mail, personal delivery, or otherwise.

17       2.    The word "DOCUMENT" means documents, papers, books,

18   accounts, letters, photographs, **_e-mails in their native form,_** log, social media

19   entries, diaries, journals, internet blogs, objects, and all other tangible things. It

20   specifically includes all originals, copies, duplicates, drafts, or other recordings of

21   any written, graphic, or otherwise recorded matter, however produced or

22   reproduced, whether inscribed by hand or by mechanical, electronic, microfilm,

23   photographic, phonic, or any other means. It includes abstracts; address books;

24   advertisements; affidavits or statements; agreements; analyses of any kind; and

25   appointment books. Please produce e-mails in the electronic format on a USB

26   drive in which they are commonly stored in the course of business including all

27   meta data contained within the email.

28

1    THE TERM "DOCUMENT" INCLUDES ALL COPIES OF A DOCUMENT
2    THAT CONTAIN ANY ADDITIONAL WRITING, UNDERLINING, NOTES,
3    DELETIONS, OR ANY OTHER MARKINGS OR NOTATIONS, OR ARE
4    OTHERWISE NOT IDENTICAL COPIES OF THE ORIGINAL.

5    3.    The word "RELATE" should be construed in the broadest possible
6    sense, and include all information or documents regarding the subject matter of
7    the discovery request, including all information or documents that embody
8    reflect, reflect, concern, comprise, evidence, are relevant to, refer or have
9    reference to, pertain to, support, oppose, describe, mention, study, analyze or
10   discuss the subject matter of the discovery request

11   4.    "YOU" of "YOUR" mean Defendant TUCSON TAMALE
12   COMPANY and its management, employees and agents.

13

14                        **DOCUMENTS REQUESTED**

15   **DOCUMENT REQUEST NO. 1:**

16   DOCUMENTS used, identified, or referred to in preparation of YOUR
17   responses to all written discovery (e.g., interrogatories and request for
18   admissions) that Plaintiff has served on YOU to date.

19   **DOCUMENT REQUEST NO. 2:**

20   DOCUMENTS that RELATE to COMMUNICATIONS between Sherry
21   Martin, Lisa Martin and/or Todd Russell Martin that RELATE to Plaintiff
22   between January 2015 through the date that YOU respond to this request for
23   production of documents.

24   **DOCUMENT REQUEST NO. 3:**

25   DOCUMENTS that RELATE to COMMUNICATIONS between persons
26   that YOU employ (or employed) that RELATE to Plaintiff between January 2015
27   through the date that YOU respond to this request for production of documents.

28

1   **DOCUMENT REQUEST NO. 4:**

2       DOCUMENTS that RELATE to COMMUNICATIONS between any third

3   party that RELATE to Plaintiff between January 2015 through the date that YOU

4   respond to this request for production of documents.

5   **DOCUMENT REQUEST NO. 5:**

6       DOCUMENTS that RELATE to COMMUNICATIONS between any third

7   party that RELATE to Plaintiff between January 2015 through the date that YOU

8   respond to this request for production of documents.

9   **DOCUMENT REQUEST NO. 6:**

10      DOCUMENTS that RELATE to confidential information that YOU contend

11  Plaintiff misappropriated.

12  **DOCUMENT REQUEST NO. 7:**

13      All emails that have the terms "Mel" or "Melissa":

14      (a)    To and from Todd Russell Martin, Sherry Martin and Lisa Martin;

15            and

16      (b)    To and from Lindsay Welch, Alejandra Valenzuela, Shawn Kaylor,

17            Delaney Hare, Meaghan Anderson and Joshua Cooper.

18  **DOCUMENT REQUEST NO. 8:**

19      All content in the mailbox for *mel@tucsontamalecompany.com* ***in its native***

20  ***form as stored by Gmail*** and its archival or backup to include all dates of

21  Plaintiff's employment (i.e., all emails Plaintiff sent or received to/from this email

22  address).

23  **DOCUMENT REQUEST NO. 9:**

24      DOCUMENTS that RELATE to COMMUNICATIONS between Sherry

25  Martin, Lisa Martin and/or Todd Russell Martin on the one hand and KOTY-

26  LEAVITT INSURANCE AGENCY, INC. and its management, employees and

27  agents on the other hand that RELATE to YOUR employment practices

28

1  insurance policy between January 2015 through the date that YOU respond to
2  this request for production of documents.

3  **DOCUMENT REQUEST NO. 10:**

4      DOCUMENTS that RELATE to COMMUNICATIONS between Sherry
5  Martin, Lisa Martin and/or Todd Russell Martin on the one hand and KOTY-
6  LEAVITT INSURANCE AGENCY, INC. and its management, employees and
7  agents on the other hand that RELATE to Plaintiff between January 2015 through
8  the date that YOU respond to this request for production of documents.

9

10 Dated: February 24, 2017

11                         *Melissa Martin McBeath*
12                         Melissa Martin McBeath

# CERTIFICATE OF SERVICE

I, Melissa Martin McBeath, declare as follows:

I am over the age of eighteen years and a party to this action.

---

**PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS**

---

On February 24, 2017, I served a true and correct copy of the within document(s):

☐ by **U.S. MAIL.** I placed the document(s) listed above in a sealed envelope, addressed as set forth below, with postage thereon fully prepaid, and deposited such envelope for collection.

☐ by **HAND DELIVERY.** I personally delivered the document(s) listed above, addressed as set forth below.

☒ by **ELECTRONIC SUBMISSION.** I electronically served the document(s) listed above to the following person(s) pursuant to Federal Rules of Civil Procedure 5(b)(2)(E). The parties have a written agreement to accept service electronically.

Roberto C. Garcia
*rgarcia@fmazlaw.com*
Travis L. Tufts
*ttufts@fmazlaw.com*
Farhang & Medcoff PLLC
4801 E Broadway Blvd., Ste. 311
Tucson, AZ 85711
520-790-5433

I declare under penalty of perjury under the laws of the State of Arizona that the foregoing is true and correct.

*Melissa Martin McBeath*

# Exhibit I

# Melissa Martin McBeath

---

3463 E. Terra Alta Blvd. • Tucson, AZ 85716 • 520.449.9753 • *mel.mcbeath@cox.net*

---

<u>SENT VIA E-MAIL ONLY</u>

March 20, 2017

Robert C. Garcia
Farhang & Medcoff
4801 E. Broadway, Suite 311
Tucson, AZ 85711

Re:    *McBeath v. Tucson Tamale Company*
       U.S. District Court of Arizona Case No. CV-16-462-TUS-DCB (BPV)

Dear Robert,

Thank you for the prompt and helpful recap e-mail regarding the issues we discussed when we met on Friday, March 17, 2017. Here are my thoughts.

      1.    <u>My Deposition set for March 22, 2017.</u>

After careful consideration, and as a professional courtesy to you, I will go forward with the deposition as scheduled. No need to trouble yourself asking the insurance adjuster to authorize continuing my deposition until after I retain substitute counsel. I understand the reasons why you're eager to proceed. Thank you for your candor. To be clear, however, the deposition was noticed in connection with the federal case. That means that the scope of TTC's inquiry will be limited to my two Title VII discrimination claims.

      2.    <u>Koty-Leavitt Insurance Agency, Inc. Subpoena Duces Tecum.</u>

I look forward to receiving your proposed joint letter to Koty-Leavitt that instructs them to cull communications covered by the attorney-client privilege or attorney work product doctrine. I request that Koty-Leavitt conduct the review and create the privilege log. I prefer to receive the documents responsive to my subpoena directly from Kotty-Leavitt, accompanied by the certification of their custodian of records.

      3.    <u>Consolidation of state and federal actions.</u>

I appreciate the creative path you propose for consolidating my claims and TTC's counterclaims in federal court. I researched the issue of removal of state claims to federal court and found that this discussion tends to appear mostly in diversity cases. It all seems very complicated and confusing. *See e.g., Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 530 (9th Cir. 2000) (disregarding earlier state court ruling based on state law because not binding in federal proceedings); *Granny Goose Foods, Inc. v. Teamsters,* 415 U.S. 423, 437 (1974) ("[O]nce a case has been removed to federal court, it is settled that federal rather than state law governs the future course of proceedings, notwithstanding state court orders issued prior to the removal.").

Robert C. Garcia
March 20, 2017
Page 2

Going off your idea of staying discovery, why don't we simply ask Judge Aragon to stay the state court action entirely pending resolution of all claims in one consolidated proceeding in federal court? This way, all parties retain their rights as they currently exist, and we avoid having to figure out complicated procedural issues. I propose that the parties simply file a Stipulation and Order with the federal court that stipulates to my Second Amended Complaint and allows TTC to file its related counterclaims. Alternatively, the parties can dismiss all claims pending in state court without prejudice (each side bears its own attorneys' fees and costs) and proceed in federal court in the normal course as the federal rules of civil procedure allow.

      4.    <u>Gmail and Production of Documents due on March 27, 2017</u>.

I conducted extensive research of third-party software and read the Google support site for exporting files to assist with eDiscovery. It appears that Google now offers a service called "Vault" that facilitates the search and export of emails. This makes specific email searches even easier to perform than the procedures I had previously suggested.

Google's comprehensive user guide that explains this process appears at:

      https://support.google.com/vault/answer/6161352?hl=en&ref_topic=2739742

As this online guide explains, the .MBOX archive file that Vault creates can be imported to the user's preferred mail client (such as Outlook, Apple Mail, Thunderbird, Entourage, etc.).[1] I want to be clear that all responsive emails should be produced as an .MBOX archive file created by Google and not an Outlook .PST file. This will ensure that all meta data is preserved. *See* https://support.google.com/vault/answer/6099459?hl=en

      5.    <u>Service of documents</u>.

The parties will serve and accept service of documents as attachments to email (and not links to Dropbox, Google Drive or other similar services). We agreed to serve documents electronically in the state and federal cases.

      6.    <u>Settlement</u>.

I did not know that federal judges are amenable to facilitating settlement discussions. Let's definitely explore this option after we complete discovery and the U.S. District Court has ruled on the parties' respective summary judgment motion(s). For the time being, however, I see no principled reason for reducing my initial demand based on the applicable law and the facts discovered to date. That said, I am always open to discussing settlement so I will seriously consider any settlement offer your clients wish to tender. I love your idea of including as part of the settlement terms a sizable donation to a charity that advances Latino literacy and education.

Best Regards,

*Melissa Martin McBeath*

Melissa Martin McBeath

---

[1]    You were correct that .MBOX is Gmail's email file extension.

10374.1

# Exhibit J

1

FARHANG & MEDCOFF

2
4801 E. Broadway Boulevard, Suite 311

3
Tucson, Arizona 85711
T: 520.790.5433

4

5
Ali J. Farhang (#019456)
afarhang@fmazlaw.com

6
Roberto C. Garcia (#026246)
rgarcia@fmazlaw.com

7

8
Travis L. Tufts (#029373)
ttufts@fmazlaw.com

9

10
Attorneys for Defendants / Counterplaintiff

11
**IN THE UNITED STATES DISTRICT COURT**

12
**FOR THE DISTRICT OF ARIZONA**

13

14
Melissa Martin McBeath,

15
              Plaintiff,

16
       v.

17
Tucson Tamale Company, an Arizona
corporation; Todd Russell Martin, an

18
individual; Sherry Martin, an individual;
and Lisa Martin, an individual,

19
              Defendants.

20

21
Tucson Tamale Company, an Arizona
corporation,

22

23
              Counterplaintiff,

24
       v.

Melissa Martin McBeath and John/Jane

25
Doe Martin McBeath, husband and wife,

26
              Counterdefendants.

27

28

NO. CV-16-00462-TUC-DCB (BPV)

**DEFENDANT'S OBJECTIONS AND
RESPONSES TO PLAINTIFF'S
FIRST SET OF REQUEST FOR
PRODUCTION OF DOCUMENTS**

Assigned to Judge David C. Bury and
Hon. Bernardo P. Velasco

       Defendant  Tucson  Tamale  Company  ("Defendant")  by  and  through  undersigned

00314195.1

1  counsel and pursuant to Fed. R. Civ. P. 34, hereby objects and responds to Plaintiff Melissa

2  Martin McBeath's ("Plaintiff") First Set of Request for Production of Documents.

3  **RESERVATION OF RIGHTS**

4  1.      Defendant responds to Plaintiff's Requests to the best of its present

5  knowledge, information, and belief.  Defendant continues to investigate the matters that are

6  the subject of this litigation.  The responses set forth herein are at all times subject to

7  supplementation to the extent additional responsive information and/or documents are

8  revealed through discovery or further investigation.

9  2.      Nothing herein shall be construed as an admission or waiver of (i) objections

10  regarding admissibility, competency, relevance, privilege, materiality, or authenticity or (ii)

11  Defendant's right to object to the use of any document or other information during any

12  subsequent proceeding, including the trial of this or any other action.

13  **OBJECTION TO REPRODUCTION OF DOCUMENTS**

14  On or about October 07, 2016, Plaintiff propounded Requests for Production ("State

15  Court Requests") in Pima County Superior Court Case No. C20161794 ("State Court

16  Matter").  The State Court Matter is based on similar facts and virtually identical causes of

17  action now pending in this Court.  The State Court Requests called for substantially similar

18  e-mail production from Defendant's e-mail server.  Compare State Court Requests at pp. 3-

19  4 with District Ct. Requests Production at pp 3-5.  Importantly, the State Court Requests

20  simply asked for e-mails *in their native form*."  See State Court Requests at 2:14-15.

21  On or about December 19, 2016, Defendant produced those e-mails in a .pst format

22  – an acceptable native format – for a fact-based inspection.  See Def's. Resp. State Court

23  Requests.[1]  Defendant produced the e-mails in this format due to limitations in their Google

24  Legacy e-mail subscription.  Defendant utilized, and continues to utilize, a grand-fathered

25  free-version of Google Legacy that limits the ability to perform e-discovery functions

26  ─────────────
[1] To avoid an anticipated motion to compel from Plaintiff, Defendants undertook production of the
27  documents and communications requested by M. McBeath despite the overbreadth and burden.
Due to the time consuming nature of responding to Plaintiff's request, including the production of
28  the documents and a pre-inspection privilege review, the inspection did not take place until
December 19, 2016.

00314195.1

directly from Google's server. In order to preserve the metadata Plaintiff seeks even though she cannot identify a relevant basis for seeking that data (discussed *infra*), Defendant employed a consulting expert who utilized Microsoft Outlook and a third-party application – IMAP – to access Defendant's server and copy the inboxes of the individuals requested by Plaintiff. The consulting expert performed the copying without interference from Defendant. Critically, the copies preserved all the metadata from the Google e-mail server.

Plaintiff brought her "consulting information technology expert"[2] – Ehud Gavron ("Gavron") – with her to the fact inspection on December 19, 2016. Rather than identify the e-mails that purportedly support the bases for her claims, Plaintiff and her information technology expert instead examined the data underlying the production (i.e. the use of Microsoft Outlook and IMAP) in addition to searches for attorney-client privileged communications. See generally M. McBeath Ltr., Dec. 21, 2016. Apparently deciding that the production itself did not meet their subjective expectations, Plaintiff and Gavron left the inspection without consulting Defendant's counsel to clarify any issues with production, their supposed inability to navigate Microsoft Outlook, or any other difficulties searching through the 50,000 plus e-mails produced in response to the State Court Requests. Shortly thereafter, Plaintiff demanded unfettered access to Defendants' e-mail server so that she and her supposed consulting expert could run scripts and quell whatever communications they unilaterally dictated as relevant. See id.

In a telling effort to remedy the ambiguity in the format of production underlying her State Court Requests for production, Plaintiff's Requests for Production in this Court explicitly request the production be in "native G-mail format." Importantly, the copy already produced by Defendant and available for inspection preserved that format for review. Moreover, Defendant expended substantial hours initially quelling responses to her State Court Requests, hired a consulting expert *at their own expense*, and performed an extensive review to remove privileged communications.

---

[2] Ehud Gavron's purported status as a consulting expert, his communications with Plaintiff during the course of her employment, and his subsequent involvement in this case are the subject of Plaintiff's Motion for a Protective Order (Doc. No. 39) and Defendants' Opposition (Doc. No. 48).

00314195.1

1       Plaintiff admitted in her deposition that she seeks native G-mail format only to

2   confirm that e-mails were actually sent and that communications were not fabricated after

3   her employment termination to support Defendant's defenses.  As indicated, the format

4   already produced enables her to confirm these facts.  Apart from seeking verification,

5   however, Plaintiff admitted she has no basis to believe that Defendant did not send the e-

6   mails produced throughout the case or that any grounds exist to believe Defendant

7   fabricated communications.  Indeed, the only basis provided at her deposition to support the

8   demand is Plaintiff's subjective belief the Defendant is not trustworthy.  This subjective

9   belief, however, exists in every litigation.  This lawsuit, like others, creates an adversarial

10  relationship whereby neither party trusts the other.  There are numerous mechanisms for

11  impeaching or questioning a party's credibility, but it is unreasonable and overly

12  burdensome to demand the reproduction of 50,000 plus e-mails based on nothing more than

13  a groundless claim your opponent cannot be trusted.

14      Hoping to avoid another motion to compel, Defendant conducted an investigation

15  into the time, costs, and resources necessary to reproduce the information in native G-mail

16  format as belatedly requested by Plaintiff.  Such a process would require Defendant to

17  upgrade its Google e-mail services suite from a free grand-fathered service to one requiring

18  a subscription costing $6.67 per user per month (as an introductory rate), increasing to $10

19  after 18 months.  Defendants currently maintain approximately 47 active accounts and will

20  need to activate additional e-mail accounts from inactive users to respond to Plaintiff's

21  demand.  This would result in ongoing costs to Defendant in the approximate amount of

22  $500/month or $6,000 per year, in addition to all the reproduction costs.  Even assuming

23  the cost of upgrading and the burden imposed upon Defendant to reproduce e-mails and

24  performing another privilege review were reasonable, which it is not, the upgrade will not

25  preserve any e-mails that may have been deleted by the respective account holders prior to

26  the upgrade.

27      Plaintiff's salary at the time of her employment termination was $50,000.  There is

28  ample evidence of after-acquired evidence of wrongdoing, including the violation of her

00314195.1

- 4 -

1   Confidentiality Agreement, which severely restricts Plaintiff's potential damages even
2   assuming she can prove any of her claims.  The burden or expense to reproduce the e-mails
3   and review them for privilege anew, coupled with the expenses already incurred to make
4   the initial production, are excessive in proportion to the claims stated.  Further, there are no
5   legitimate or worthwhile benefits that would result from the substantial cost in reproducing
6   materials in McBeath's preferred format.  The .pst production preserves the metadata sought
7   by Plaintiff.   Therefore, the burden of reproduction from Google itself produces no
8   additional benefits to Plaintiff.  Equally persuasive, McBeath cannot identify the relevant
9   evidence she has a reasonable belief will be shown from the metadata.  Defendant should
10  not be burdened with reproducing the entirety of e-mails including, but not limited to, e-
11  mails mentioning "Mel" over the course of two plus years having absolutely nothing to do
12  with the underlying claims.

13      Defendant will produce for inspection the e-mail boxes previously produced on
14  December 19, 2017.  Defendant will make such email boxes available at the office of
15  undersigned counsel – 4801 E. Broadway Boulevard, Suite 311, Tucson, Arizona 85711 –
16  on April 15, 2017 from 1:00 p.m. – 5:00 p.m.  Defendant will consider reasonable
17  alternatives to the proposed inspection.

18      As a further alternative, at Plaintiff's expense, Defendant will upgrade its Google
19  services suite, perform its privilege review, and reproduce the e-mails.

20  **REQUEST NO. 1**: DOCUMENTS used, identified, or referred to in preparation of YOUR
21  responses to all written discovery (e.g., interrogatories and request for admissions) that
22  Plaintiff has served on YOU to date.

23  **RESPONSE**:  Defendant incorporates its Objection to Reproduction of Documents, *supra*.
24  Additionally, Defendant objects to this request for production as being overly broad and
25  vague.  Plaintiff propounded written discovery in the State Court Matter and in this Court.
26  It is unclear whether Plaintiff seeks "DOCUMENTS" used, identified, or referred to in
27  preparation of written discovery in the State Court Matter or in this Court.  Without waiving
28  objections and subject thereto, Defendant refers Plaintiff to TTC 000001 – 000866,

00314195.1

disclosed in their Initial Disclosure Statement and supplemental disclosure statements in the State Court Matter, for documents responsive to this request.

**REQUEST NO. 2:**  DOCUMENTS that relate to COMMUNICATIONS between Sherry Martin, Lisa Martin and/or Todd Russell Martin that RELATE to Plaintiff between January 2015 through the date that YOU respond to this request for production of documents.

**RESPONSE**:  Defendant incorporates its Objection to Reproduction of Documents, *supra*. Additionally, Defendant objects to this request for production as being overly broad, unduly burdensome, irrelevant, and not proportional to the needs of the case, the issues at stake in the action, the amount in controversy, and the parties' resources. Plaintiff seeks discovery of "any and all" communications that reference or relate to Plaintiff over the course of over two years, including communications with ambiguous third-parties and/or parties with information not relevant to prove the claims asserted by Plaintiff.   Over the course of Plaintiff's employment, the named parties exchanged numerous e-mails daily related to the operation of Defendant's three local restaurants, its confidential and proprietary data, and their own personal and private information. Additionally, Plaintiff was included on e-mail chains with numerous third-party individuals who are not parties to this suit, implicating disclosure of these individuals' private, personal, and confidential information. Many, if not all, of the communications subject to this request have nothing to do with the factual bases underlying her claims.

In total, this request calls for production of tens of thousands of e-mails irrespective of their relevancy, thereby burdening Defendant with the costs associated with reviewing for confidentiality, privilege, and any attendant objections to the thousands of e-mails and/or communications. The issues at stake, amount in controversy, and parties' resources simply do not justify a boundless fishing expedition completely disproportionate to the needs of the case. Plaintiff earned $50,000 per year when her employment was terminated by Defendant.   That she now claims she is entitled to over ten times that sum is bemusing, but also ignores the value of Defendant's counterclaims offsetting her claimed damages in addition to its defenses of after-acquired evidence of wrongdoing.

00314195.1

1    Without waiving objections and subject thereto, Plaintiff may inspect Defendant's
2    e-mail server on April 15, 2017. The boxes in the e-mail server will contain all information
3    responsive to this request except privileged communications. Plaintiff may inspect and
4    identify the e-mails she believes are relevant and label them for formal production.
5    Thereafter Defendant will review and produce those e-mails subject to a privilege and
6    confidentiality review.

7    **REQUEST NO. 3:** DOCUMENTS that relate to COMMUNICATIONS between persons
8    that YOU employ (or employed) that RELATE to Plaintiff between January 2015 through
9    the date that YOU respond to this request for production of documents.

10    **RESPONSE**: Defendant incorporates its Objection to Reproduction of Documents,
11    *supra*. Additionally, Defendant objects to this request for production as being overly broad,
12    unduly burdensome, irrelevant, and not proportional to the needs of the case, the issues at
13    stake in the action, the amount in controversy, and the parties' resources.  Plaintiff seeks
14    discovery of "any and all" communications that reference or relate to Plaintiff over the
15    course of over two years, including communications with non-party employees or prior
16    employees.  Plaintiff sent numerous e-mails on a daily basis related to the day-to-day
17    operations of Defendant's three local restaurants, including communications related to
18    Defendant's confidential and proprietary data as well as the personal and private
19    information of the third-party employees. Many, if not all, of the communications subject
20    to this request have nothing to do with the factual bases underlying her claims.

21    In total, this request calls for production of tens of thousands of e-mails irrespective
22    of their relevancy, thereby burdening Defendant with the costs associated with reviewing
23    for confidentiality, privilege, and any attendant objections to the thousands of e-mails
24    and/or communications. The issues at stake, amount in controversy, and parties' resources
25    simply do not justify a boundless fishing expedition completely disproportionate to the
26    needs of the case. Plaintiff earned $50,000 per year when her employment was terminated
27    by Defendant.   That she now claims she is entitled to over ten times that sum is bemusing,
28    but also ignores the value of Defendant's counterclaims offsetting her claimed damages in

00314195.1

1    addition to its defenses of after-acquired evidence of wrongdoing.

2    Without waiving objections and subject thereto, Plaintiff may inspect Defendant's

3    e-mail server on April 15, 2017. The boxes in the e-mail server will contain all information

4    responsive to this request except privileged communications. Plaintiff may inspect and

5    identify the e-mails she believes are relevant and label them for formal production.

6    Thereafter Defendant will review and produce those e-mails subject to a privilege and

7    confidentiality review.

8    **REQUEST NO. 4:** DOCUMENTS that relate to COMMUNICATIONS between any third

9    party that RELATE to Plaintiff between January 2015 through the date that YOU respond

10   to this request for production of documents.

11   **RESPONSE**: Defendant incorporates its Objection to Reproduction of Documents, *supra*.

12   Additionally, Defendant objects to this request for production as being overly broad, unduly

13   burdensome, irrelevant, and not proportional to the needs of the case, the issues at stake in

14   the action, the amount in controversy, and the parties' resources. Plaintiff seeks discovery

15   of "any and all" communications that reference or relate to Plaintiff over the course of over

16   two years. Plaintiff was involved in numerous e-mail chains with third-parties related to

17   the day-to-day operations of Defendant's three local restaurants, including communications

18   related to Defendant's confidential and proprietary data. Further, the requests seek

19   information about third-party individuals or entities who are not parties to this suit,

20   implicating disclosure of these individuals' private, personal, and confidential information.

21   Many, if not all, of the communications subject to this request have nothing to do with the

22   factual bases underlying Plaintiff's claims. Additionally, these requests call for

23   communications between Defendant and third-parties made in anticipation of Plaintiff's

24   lawsuit and in preparation for trial. See Fed. R. Civ. P. 26(b)(3) and (4).

25   In total, this request calls for production of tens of thousands of e-mails irrespective

26   of their relevancy, thereby burdening Defendant with the costs associated with reviewing

27   for confidentiality, privilege, and any attendant objections to the thousands of e-mails

28   and/or communications. The issues at stake, amount in controversy, and parties' resources

00314195.1

- 8 -

1    simply do not justify a boundless fishing expedition completely disproportionate to the
2    needs of the case.  Plaintiff earned $50,000 per year when her employment was terminated
3    by Defendant.   That she now claims she is entitled to over ten times that sum is bemusing,
4    but also ignores the value of Defendant's counterclaims offsetting her claimed damages in
5    addition to its defenses of after-acquired evidence of wrongdoing.

6            Without waiving objections and subject thereto, Plaintiff may inspect Defendant's
7    e-mail server on April 15, 2017.  The boxes in the e-mail server will contain all information
8    responsive to this request except privileged communications.  Plaintiff may inspect and
9    identify the e-mails she believes are relevant and label them for formal production.
10   Thereafter Defendant will review and produce those e-mails subject to a privilege and
11   confidentiality review.

12   **REQUEST NO. 5:** DOCUMENTS that relate to COMMUNICATIONS between any third
13   party that RELATE to Plaintiff between January 2015 through the date that YOU respond
14   to this request for production of documents.

15   **RESPONSE**:  Defendant incorporates its Objection to Reproduction of Documents, *supra*,
16   and its objections to No. 4, *supra*.  Additionally, Defendant objects to this request as being
17   confusing.  This appears to be the same request as No. 4.

18   **REQUEST NO. 6:**   DOCUMENTS that relate to confidential information that YOU
19   contend Plaintiff misappropriated.

20   **RESPONSE**:  Defendant incorporates its Objection to Reproduction, *supra*.   Without
21   waiving objections and subject thereto, Defendant previously disclosed TTC 000047 –
22   000060, 000095 – 000098, 0000101, 000106 – 000108, 000226 – 000236, 000239, 000286
23   in the State Court Matter.   Defendant reserve the right to supplement their responses as the
24   full extent of misappropriation is subject to ongoing discovery.

25   **REQUEST NO. 7:** All emails that have the terms "Mel" or "Melissa":
26           (a)    To and from Todd Russell Martin, Sherry Martin and Lisa Martin; and
27           (b)    To and from Lindsay Welch, Alejandra Valenzuela, Shawn Kaylor, Delaney
28                  Hare, Meaghan Anderson and Joshua Cooper.

1    **RESPONSE**:  Defendant incorporates its Objection to Reproduction of Documents, *supra*.

2    Additionally, Defendant objects to this request for production as being overly broad, unduly

3    burdensome, irrelevant, duplicative of requests Nos. 2-6, and not proportional to the needs

4    of the case, the issues at stake in the action, the amount in controversy, and the parties'

5    resources.  Plaintiff seeks discovery of "any and all" communications that reference or

6    relate to Plaintiff over the course of over two years.  Plaintiff and the named third-party

7    individuals exchanged numerous e-mails daily related to the operation of Defendant's three

8    local restaurants, communications related to Defendant's confidential and proprietary data.

9    The request also seeks information about third-party individuals or entities who are not

10   parties to this suit, implicating disclosure of these individuals' private, personal, and

11   confidential information.  Many, if not all, of the communications subject to this request

12   have nothing to do with the factual bases underlying her claims.

13        In total, this request calls for production of tens of thousands of e-mails irrespective

14   of their relevancy, thereby burdening Defendant with the costs associated with reviewing

15   for confidentiality, privilege, and any attendant objections to the thousands of e-mails

16   and/or communications.  The issues at stake, amount in controversy, and parties' resources

17   simply do not justify a boundless fishing expedition completely disproportionate to the

18   needs of the case.  Plaintiff earned $50,000 per year when her employment was terminated

19   by Defendant.   That she now claims she is entitled to over ten times that sum is bemusing,

20   but also ignores the value of Defendant's counterclaims offsetting her claimed damages in

21   addition to its defenses of after-acquired evidence of wrongdoing.

22        Without waiving objections and subject thereto, Plaintiff may inspect Defendant's

23   e-mail server on April 15, 2017.  The boxes in the e-mail server will contain all information

24   responsive to this request except privileged communications. Plaintiff may inspect and

25   identify the e-mails she believes are relevant and label them for formal production.

26   Thereafter Defendant will review and produce those e-mails subject to a privilege and

27   confidentiality review.

28   **REQUEST NO. 8:**  All content in the mailbox for mel@tucsontamalecompany.com *in its*

1    *__native form as stored by Gmail__* and its archival or backup to include all dates of Plaintiff's

2    employment (i.e., all emails Plaintiff sent or received to/from this email address).

3    **RESPONSE**:  Defendant incorporates its Objection to Reproduction of Documents, *supra*.

4    Additionally, Defendant objects to this request for production as being overly broad, unduly

5    burdensome, irrelevant, and not proportional to the needs of the case, the issues at stake in

6    the action, the amount in controversy, and the parties' resources.  Plaintiff seeks discovery

7    of all content in Plaintiff's former TTC e-mail mailbox.  Plaintiff exchanged numerous e-

8    mails on a daily basis for nearly one year of employment related to the operations of

9    Defendant's three local restaurants.   The request implicates disclosure of Defendant's

10    confidential information and third-party individuals' private and personal information

11    exchanged over the course of her employment.  Many, if not all, of the communications

12    subject to this request have nothing to do with the factual bases underlying her claims.

13      In total, this request calls for production of tens of thousands of e-mails irrespective

14    of their relevancy, thereby burdening Defendant with the costs associated with reviewing

15    for confidentiality, privilege, and any attendant objections to the thousands of e-mails

16    and/or communications.  The issues at stake, amount in controversy, and parties' resources

17    simply do not justify a boundless fishing expedition completely disproportionate to the

18    needs of the case.  Plaintiff earned $50,000 per year when her employment was terminated

19    by Defendant.   That she now claims she is entitled to over ten times that sum is bemusing,

20    but also ignores the value of Defendant's counterclaims offsetting her claimed damages in

21    addition to its defenses of after-acquired evidence of wrongdoing.

22      Without waiving objections and subject thereto, Plaintiff may inspect Defendant's

23    e-mail server on April 15, 2017.  The boxes in the e-mail server will contain all information

24    responsive to this request except privileged communications. Plaintiff may inspect and

25    identify the e-mails she believes are relevant and label them for formal production.

26    Thereafter Defendant will review and produce those e-mails subject to a privilege and

27    confidentiality review.

28    **REQUEST NO. 9**:  DOCUMENTS that RELATE to COMMUNICATIONS between

1  Sherry Martin, Lisa Martin and/or Todd Russell Martin on one hand and KOTY-LEAVITT
2  INSURANCE AGENCY, INC. and its management, employees and agents on the other
3  hand that RELATE to YOUR employment practices insurance policy between January 2015
4  through the date that YOU respond to this request for production of documents.

5  **RESPONSE**: Defendant objects to this request because their communications with Koty-
6  Leavitt Insurance Agency, Inc. were made in anticipation of litigation and/or in preparation
7  for trial and are not relevant to Plaintiff's claims or proportional to the needs of Plaintiff's
8  case. See Fed. R. Civ. P. 26(b)(3) and (4). "Evidence that a person was or was not insured
9  against liability is not admissible to prove whether the person acted negligently or otherwise
10 wrongfully." See Fed. R. Evidence 411. Further, the request implicates disclosure of
11 Defendant's confidential information and third-party individuals' private and personal
12 information provided in connection with securing employment practices insurance policy.
13 Defendant has already disclosed its insurance policy and the basis for changes in the policy
14 in Counterclaimant's Objections and Responses to Counterdefendant's Third Set of Non-
15 Uniform Interrogatories in the State Court Matter, which are hereby incorporated by
16 reference. This request amounts to a fishing expedition for privileged communications
17 ultimately inadmissible at trial.

18 **REQUEST NO. 10**: DOCUMENTS that RELATE to COMMUNICATIONS between
19 Sherry Martin, Lisa Martin and/or Todd Russell Martin on the one hand and KOTY-
20 LEAVITT INSURANCE AGENCY, INC. and its management, employees and agents on
21 the other hand that RELATE to Plaintiff between January 2015 through the date that YOU
22 respond to this request for production of documents.

23 **RESPONSE**: Defendant objects to this request because its communications with Koty-
24 Leavitt Insurance Agency, Inc. were made in anticipation of litigation and/or in preparation
25 for trial and are not relevant to Plaintiff's claims or proportional to the needs of Plaintiff's
26 case. "Evidence that a person was or was not insured against liability is not admissible to
27 prove whether the person acted negligently or otherwise wrongfully." See Fed. R. Evidence
28 411. Further, the request implicates disclosure of Defendant's confidential information and

00314195.1

third-party individuals' private and personal information provided in connection with securing employment practices insurance policy.   Defendant has already disclosed its insurance policy and the basis for changes in the policy in Counterclaimant's Objections and Responses to Counterdefendant's Third Set of Non-Uniform Interrogatories in the State Court Matter, which are hereby incorporated by reference.   This request amounts to a fishing expedition for privileged communications ultimately inadmissible at trial.

DATED this 27th day of March, 2017.

FARHANG & MEDCOFF

By /s/Travis L. Tufts
Ali J. Farhang
Roberto C. Garcia
Travis L. Tufts

Attorneys for Defendants/Counterplaintiff

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was electronically served upon Melissa Martin McBeath this 27th day of March, 2017.

Melissa Martin McBeath
mel.mcbeath@cox.net

/s/Letitia L. Wright

00314195.1

# Exhibit K

# Melissa Martin McBeath

3463 E. Terra Alta Blvd. • Tucson, AZ 85716 • 520.449.9753 • mel.mcbeath@cox.net

<u>SENT VIA E-MAIL ONLY</u>

April 5, 2017

Travis L. Tufts
Farhang & Medcoff
4801 E. Broadway, Suite 311
Tucson, AZ 85711

Re:   *Melissa Martin McBeath v. Tucson Tamale Company, et al.*
       U.S. District Court of Arizona Case No. CV-16-462-TUS-DCB (BPV)

Travis:

I received your April 3, 2017 e-mail in which you agreed in principle to obtain directly from Google the e-mails I requested from your clients. This is how I propose we proceed:

1.     Enclosed is a completed Subpoena that you can serve on Google, Inc.  *See* https://support.google.com/faqs/answer/6151275?hl=en to obtain instructions on how to serve subpoenas on Google.

2.     Because your clients must give their consent to the subpoena, enclosed is a consent form that should accompany the subpoena. Modify it however you deem appropriate.

3.     I will send a separate subpoena to Google directly, asking for my entire Gmail box. According to case law, it appears I need to give my consent directly to Google.

4.     You will notify me within two (2) business days when your office receives the Mbox files from Google.

5.     Conduct your review of the e-mails and prepare a privilege log of any e-mails culled from Google's production within five (5) business days from receipt of the e-mail files from Google.

6.     Turn over the e-mail files to me no later than seven (7) business days from receipt of the e-mail files from Google.

After we complete these six steps, we can meet and confer about any e-mails you culled that I believe should be produced. Please serve on Google the subpoena and accompanying signed consent forms as soon as possible, but no later than April 7, 2017.

Because the protocol I'm suggesting is a bit complex, I want to document in writing the process we agree to follow for the sake of clarity. I welcome your thoughts.

Best Regards,

Melissa Martin McBeath

10387.1

# Exhibit L

**Tish Wright**

| | |
|---|---|
| **From:** | Robert Garcia |
| **Sent:** | Friday, April 7, 2017 5:09 PM |
| **To:** | 'Melissa Martin McBeath' |
| **Cc:** | Travis L. Tufts; Tish Wright |
| **Subject:** | McBeath v. TTC - 4/7/17 Meeting |

Hello Melissa:

This email follows up on our meeting and discussion earlier today.  Here's what we agreed to:

1.  We will serve a new subpoena on Glenn Murphy limiting the requested period to January 1, 2015 through December 31, 2016;
2.  At your request, the deposition of Shawn Kaylor is off the calendar.  We will send you the documents Mr. Kaylor has in response to the subpoena next week; and
3.  You will provide us at your earliest convenience the search phrase/terms that we will use to capture your requested emails inside of the Martins' email accounts (i.e., we want to be able to copy and paste the search into the Gmail search bar to capture everything you want).  We will then conduct our privilege review from within the emails responsive to the search.  Thereafter, we will together develop and put in place a protocol for review and production of emails you need to support your claims.  Putting together the protocol will help us avoid future discovery disputes.

I appreciated the opportunity to discuss settlement with you.  I hope we can continue our conversation soon.  In the event we cannot reach a resolution on our own, I suggest we file a joint motion asking Judge Velasco to refer us to another judge for a settlement conference.  If we do go the settlement conference route, to preserve resources and potential settlement funds, we would like to enter an informal stay of the proceedings pending the settlement conference.

Thank you.

Best regards,

**FARHANG  MEDCOFF**
——————— Attorneys ———————

**Robert C. Garcia**
Profile | vCard

4801 East Broadway Boulevard | Suite 311 | Tucson, Arizona 85711
General: 520.790.5433 | Direct: 520.396.2205 | Fax: 520.790.5736

# Exhibit M

# FARHANG & MEDCOFF
## ——— Attorneys ———

4801 E. Broadway Boulevard, Suite 311
Tucson, Arizona 85711
T: 520.790.5433 | F: 520.790.5736
www.fmazlaw.com

**Travis L. Tufts**
Direct: 520.398.7466
ttufts@fmazlaw.com

April 27, 2017

**VIA EMAIL ONLY**

Melissa McBeath
Francisco X. Marquez
mel.mcbeath@cox.net

   Re: <u>Discovery Issues</u> – McBeath v. Tucson Tamale Company, et al.
      District of Arizona Case No. CV-16-00462-TUC-DCB (BPV)

Dear Melissa and Francisco:

I hope you are doing well. I write in response to your letter to Robert Garcia dated April 21, 2017.

 1. <u>Google Subpoena</u>. As indicated previously, we are now able to obtain TTC emails in the .mbox format and made Melissa's TTC emails available for inspection. Let's discuss a protocol for this review. Once we agree upon search terms for the other target email accounts, we will produce same for inspection as well. Given we can accomplish together what you would ask Google to do via subpoena, we do not believe it is worthwhile to burden yet another third party with discovery issues.

  It comes as news to me that Melissa's "professional obligations" do not allow her to conduct an inspection during our regular office hours, especially given her recent testimony that she is not currently employed. In any event, we are willing to work with Melissa to accommodate her schedule. As for the search or "heuristic analysis" you mentioned, I'm confident we can reach a resolution regarding your search needs through a reasonable, mutually-agreeable inspection and review protocol.

 2. <u>Shawn Kaylor Documents</u>. You cannot circumvent the production process in the Rules by serving a subpoena upon a TTC employee. If you seek emails from TTC's systems, you must serve a RFP upon TTC to that effect. Further, your subpoena sought documents in the personal possession, custody, or control of Shawn Kaylor (defining "YOU" as Shawn Kaylor, not TTC). As such, Shawn will not be producing information in the possession, custody, or control of TTC.

  In response to your subpoena, Shawn produced to us the document attached hereto as Exhibit 1. I am certain Shawn would have produced this information to you himself had

00321905.1

Melissa McBeath
Francisco X. Marquez
April 27, 2017
Page | 2

you not unilaterally cancelled his deposition and formal production. As you will note, the
only document Shawn produced was the one you asked him to send you after TTC
terminated your employment. You are free to reschedule Shawn's deposition at a mutually
convenient time to ask him about his response.

3. Glenn Murphy Subpoena. Your request regarding the Glenn Murphy subpoena illustrates
the problem with meeting with Melissa, and making arrangements with Melissa, only to
then have reasonable agreements rescinded when Francisco has an opportunity to
intervene. Melissa previously agreed to the scope of the second Glenn Murphy subpoena.
We will not negotiate, make reasonable concessions to Melissa, only to then renegotiate
with Francisco. The subpoena will stand as-is.

4. Alliance Beverage Documents. Melissa testified under oath during her deposition that
Alliance terminated her employment because it was "dismantling the fine wine team" of
which she was a part. This is wholly inconsistent with the documents produced by
Alliance, which indicate Alliance terminated Melissa's employment for performance
issues similar to those that led to the termination of her employment with TTC. Melissa's
misrepresentation during her deposition made the Alliance production highly relevant, and
we will not destroy any of those documents as requested.

Sincerely,

FARHANG & MEDCOFF, PLLC

*Travis Tufts*

Travis L. Tufts