# Exhibit N

MELISSA MARTIN McBEATH
3463 E. TERRA ALTA BLVD.
TUCSON, AZ 85716
Ph:  (520) 449-9753
*mel.mcbeath@cox.net*

Pro Se

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA, TUCSON DIVISION

| | |
|---|---|
| MELISSA MARTIN McBEATH,<br>    an individual,<br><br>                Plaintiff,<br>        v.<br><br>TUCSON TAMALE COMPANY,<br>    an Arizona corporation,<br><br>                        Defendant. | Case No. CV 16-462-TUC-DCB (BPV)<br><br>**NOTICE OF PROOF OF SERVICE OF SUBPOENA SERVED ON SHAWN KAYLOR**<br><br>Assigned to Hon. David C. Bury<br><br>Complaint filed:  July 11, 2016 |

# UNITED STATES DISTRICT COURT

### for the

### District of Arizona

| | |
|---|---|
| MELISSA MARTIN McBEATH | ) |
| *Plaintiff* | ) |
| v. | )    Civil Action No.   CV 16-462-TUS-DCB (BPV) |
| TUCSON TAMALE COMPANY | ) |
| *Defendant* | ) |

## SUBPOENA TO APPEAR AND TESTIFY
## AT A HEARING OR TRIAL IN A CIVIL ACTION

To:                      SHAWN KAYLOR

---

*(Name of person to whom this subpoena is directed)*

**YOU ARE COMMANDED** to appear in the United States district court at the time, date, and place set forth below to testify at a hearing or trial in this civil action. When you arrive, you must remain at the court until the judge or a court officer allows you to leave.

| Place: United Court Reporters, Inc.<br>177 N. Church Ave,<br>Tucson, AZ 85701 | Courtroom No.: |
|---|---|
| | Date and Time: 04/10/2017 10:00 am |

You must also bring with you the following documents, electronically stored information, or objects *(leave blank if not applicable)*:

### SEE ATTACHED EXHIBIT A

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   3/20/17

**BRIAN D. KARTH**
*CLERK OF COURT*

                            OR

---
*Signature of Clerk or Deputy Clerk*                     *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____

_____ , who issues or requests this subpoena, are:

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

## EXHIBIT A
### SUBPOENA DUCES TECUM
*Melissa Martin McBeath v. Tucson Tamale Company*
U.S. District Court of Arizona – CV 16-462-TUS-DCB (PBV)

---

### DOCUMENTS REQUESTED

1.      The word "COMMUNICATION" includes every manner or means of disclosure, transfer, or exchange of information, whether orally, by DOCUMENT, or in any other manner or whether face to face or by telephone, mail, personal delivery, or otherwise.

2.      The word "DOCUMENT" means documents, papers, books, accounts, letters, photographs, _**e-mails in their native form**_, log, social media entries, diaries, journals, internet blogs, objects, and all other tangible things. It specifically includes all originals, copies, duplicates, drafts, or other recordings of any written, graphic, or otherwise recorded matter, however produced or reproduced, whether inscribed by hand or by mechanical, electronic, microfilm, photographic, phonic, or any other means.

Produce e-mails in electronic format on a USB drive in which they are stored in the course of business including all metadata contained within the email. Export Gmail emails into an archive .MBOX file. *See* **https://support.google.com/vault/answer/6161352?hl=en&ref_topic=2739742**

THE TERM "DOCUMENT" INCLUDES ALL COPIES OF A DOCUMENT THAT CONTAIN ANY ADDITIONAL WRITING, UNDERLINING, NOTES, DELETIONS, OR ANY OTHER MARKINGS OR NOTATIONS, OR ARE OTHERWISE NOT IDENTICAL COPIES OF THE ORIGINAL.

3.     The word "RELATE" should be construed in the broadest possible sense, and include all information or documents regarding the subject matter of the discovery request, including all information or documents that embody reflect, reflect, concern, comprise, evidence, are relevant to, refer or have reference to, pertain to, support, oppose, describe, mention, study, analyze or discuss the subject matter of the discovery request

4.     "YOU" means SHAWN KAYLOR.

**DOCUMENT REQUEST NO. 1:**

All *__e-mails__ __in__ __their__ __native__ __form__* (include any attached DOCUMENTS) that RELATE to COMMUNICATIONS between YOU and any of the following individuals:  Sherry Martin, Lisa Martin, Todd Russell Martin, and/or Lindsay Welsh.

Limit the *e-mails* solely to those that RELATE to Melissa Martin McBeath since January 2015 through the date that YOU respond to this subpoena.

**DOCUMENT REQUEST NO. 2:**

All *__e-mails__ __in__ __their__ __native__ __form__* (include any attached DOCUMENTS) that RELATE to COMMUNICATIONS between any third party that does not work with Tucson Tamale Company that RELATE to Plaintiff Melissa Martin McBeath since January 2015 through the date that YOU respond to this subpoena.

AO 88  (Rev. 02/14)  Subpoena to Appear and Testify at a Hearing or Trial in a Civil Action (page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

AO 88  (Rev. 02/14)  Subpoena to Appear and Testify at a Hearing or Trial in a Civil Action (page 2)

Civil Action No.  CV 16-462-TUS-DCB (BPV)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)*       SHAWN KALOR

on *(date)*      03/20/2017          .

☑ I served the subpoena by delivering a copy to the named person as follows:  Hand-Delivered to:

SHAWN KAYLOR

2545 E Broadway Blvd, Tucson, AZ 85716                  on *(date)*         03/20/2017         ; or

❏ I returned the subpoena unexecuted because:                                                                                         .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$                                         .

My fees are $                        for travel and $                        for services, for a total of $          0.00          .

I declare under penalty of perjury that this information is true.

Date:       03/20/2017

*Server's signature*

ERNESTO CHAVEZ
*Printed name and title*

3173 E. Terra Alta Blvd.
Tucson, AZ 85716

*Server's address*

Additional information regarding attempted service, etc.:

# Exhibit O

Search Date and Time:
**5/15/2017 12:03:00 PM**

File Number:
**14604539**

Corporation Name:
**TUCSON TAMALE COMPANY**

| Annual Report Email Reminders |
| :---: |
| eFile Annual Report |
| Print Annual Report Form |

Collapse | Expand

---

Corporate Inquiry ▲

| File Number | Corporation Name | Check Corporate Status |
| :--- | :--- | :--- |
| 14604539 | TUCSON TAMALE COMPANY | Check Corporate Status |

---

Domestic Address ▲

245 SOUTH PLUMER #35
TUCSON, AZ 85719

---

Statutory Agent Information ▲

**Agent Name:** TODD MARTIN

**Agent Mailing/Physical Address:**
245 SOUTH PLUMER #35
TUCSON, AZ 85719

**Agent Status:** APPOINTED 03/26/2015

**Agent Last Updated:** 04/24/2015

---

Additional Entity Information ▲

| | | |
|---|---|---|
| **Entity Type:** BUSINESS | | **Business Type:** RESTAURANT/BAR |
| **Incorporation Date:** 6/27/2008 | | **Corporation Life Period:** PERPETUAL |
| **Domicile:** ARIZONA | | **County:** PIMA |
| **Approval Date:** 7/1/2008 | | **Original Publish Date:** |

### Officer Information ▲

| Name | Title | Address | Date of Taking Office | Last Updated |
|---|---|---|---|---|
| TODD MARTIN | PRESIDENT/CEO | 245 S PLUMER STE 23 TUCSON, AZ 85719 | 06/27/2008 | 07/14/2016 |
| SHERRY MARTIN | SECRETARY | 245 S PLUMER STE 23 TUCSON, AZ 85719 | 06/27/2008 | 07/14/2016 |

### Director Information ▲

| Name | Title | Address | Date of Taking Office | Last Updated |
|---|---|---|---|---|
| TODD MARTIN | DIRECTOR | 245 S PLUMER STE 23 TUCSON, AZ 85719 | 06/27/2008 | 07/14/2016 |
| SHERRY MARTIN | DIRECTOR | 245 S PLUMER STE 23 TUCSON, AZ 85719 | 06/27/2008 | 07/14/2016 |

### Annual Reports ▲

**Next Annual Report Due:** 6/27/2017

| File Year | File Month | Date Received | Reason Returned | Date Returned | Extension |
|---|---|---|---|---|---|
| 2016 | 6 | 5/18/2016 | | | |
| 2015 | 6 | 6/4/2015 | | | |
| 2014 | 6 | 6/17/2014 | | | |
| 2013 | 6 | 9/3/2013 | | | |
| 2012 | 6 | 10/4/2012 | | | |
| 2011 | 6 | 5/19/2011 | | | |
| 2010 | 6 | 5/19/2011 | | | |
| 2009 | 6 | 10/22/2009 | | | |

# Exhibit P

**Jamie Archibald**

| | |
|---|---|
| **From:** | Mel <mel.mcbeath@cox.net> |
| **Sent:** | Wednesday, February 25, 2015 9:47 PM |
| **To:** | Todd Martin, Tucson Tamale Company |
| **Subject:** | Re: Position with TTC |

Hi Todd!

¡Felicidades! Of COURSE Connor is the cutest and best ever! You must both be over the moon!

Thank you for the opportunity to speak with you. Saturday is perfect at your leisure. Let me know your preferred app or software venue and we'll go from there.

I am truly looking forward to it. Congratulations again on your newest precioso addition...I have a feeling you and Sherry might not be such strangers to lack of sleep....you might just end up being the best abuelos ever... Congratulations again!

Best,

Mel


Melissa Martin McBeath
520.449.9753

Sent from my Verizon Wireless 4G LTE smartphone


-------- Original message --------
From: "Todd Martin, Tucson Tamale Company" <todd@tucsontamalecompany.com>
Date:02/25/2015 8:59 PM (GMT-07:00)
To: Mel <mel.mcbeath@cox.net>
Subject: Re: Position with TTC

Hi Mel,

Thanks so much for your interest in Tucson Tamale.  Let me start by letting you know our little arrival came on Sunday evening at 7:01pm.  Connor Paul was 7# 11oz and as all good grandparents will attest to, he's just the cutest ever!

I just got back from Phoenix and am reviewing now.  I would like the opportunity to have a short video interview you to start the process.  Are you available on Saturday morning between 9 and noon anytime?  Would only need about 30 minutes of your time at this point.  Please let me know.  Thanks again for thinking about Tucson Tamale and your love of our tamales.

Todd

On Mon, Feb 23, 2015 at 2:30 PM, Mel <mel.mcbeath@cox.net> wrote:

1

Hi Sherry and Todd,

Our mutual friend Jamie Rice suggested I send you my resume - please find it attached for your consideration. I'm very excited to discuss a potential opportunity with you. I've watched your business grow exponentially the last few years with much admiration – three locations now and tremendous wholesale growth as well! It must be incredibly exciting (and potentially overwhelming)!  Jamie mentioned you were looking for someone to possibly assist with overseeing the outlets with a more regional scope.  I am well-versed in all aspects of business analytics, cost control, logistics, team building and in particular, restaurant metrics.  I would welcome the opportunity to discuss your vision for the business and consider how I might contribute to your ongoing success.

I am a hospitality professional with 22 years of experience.  I started my career opening Kingfisher Bar and Grill and then ran Presidio Grill's catering business for 3 years. After I catered his wedding, Sam Fox recruited me as GM at his first restaurant City Grill - 1.7M in sales at the time – prior to him selling the concept to the Metro Restaurant Group.  In my capacity as a wine wholesaler, I have had the honor of working with hundreds of restaurateurs, as I deliberately directed my career towards opportunities to contribute to the success and profitability of our independent restaurants in and around Tucson. As a fourth generation southern Arizona native whose parents and grandparents were both small business owners, I am extremely passionate about what our local businesses contribute to the economy and unique lifestyle here.  In fact, I bring entrepreneurial experience to everything I do, having opened my own wine wholesale company.

Jamie also mentioned you are in the throes of all the excitement of welcoming a new family member. Congratulations to you both on the arrival (or eminent arrival) of a new grand baby! I'm looking forward to hearing from you at your earliest convenience after you enjoy some much-deserved special time with your familia. Please let me know if you'd like references prior to moving forward and I will be happy to provide them to you.  My very best to you both and thank you for your consideration.

Very Sincerely Yours,

Mel

**Melissa Martin McBeath**

**520.449.9753**

2

# Melissa Martin McBeath

3463 E. Terra Alta Blvd.          (520) 449-9753
Tucson, Arizona 85716          mel.mcbeath@cox.net

◆ **Management Executive**      ◆ **Strategic Planning and Execution**      ◆ **Brand Building**

## Executive Profile

- Performance-focused and effective leader in the restaurant hospitality industry providing growth, brand-building and profitability using high-level specific knowledge and metrics. Maximizing a sincere passion for exceeding expectations and interpersonal relationship skills to capture brand loyalty and customer retention. Versatile executive strategist for core market drivers using a quantitative approach to product planning, marketing and communication.

- Proven business acumen having launched and managed an independent wholesale wine sales and distribution company representing family-owned, boutique entities, capturing over 80 top-level accounts in first six months, reaching over $1M in sales year one, and securing distribution rights to over 80 wineries.

- Exceptional team-building, mentoring and influencing skills, creating teams of passionate, loyal and focused professionals; able to instill a shared vision to consistently exceed customer expectations and employ extensive training in industry metrics, coaching and motivating to drive results and consistently maintain the highest standards.

- Expert presenter and negotiator, forging solid and lasting relationships with suppliers and strategic high-level decision makers and customers at all levels, whether through personal interaction or through exceptional and persuasive business writing skills.

## Expertise

Entrepreneur Leadership                    Qualitative & Quantitative Marketing
Team Building and Coaching                 P & L, Operations, Budgeting & Forecasting Analysis
Solution and Consultative Selling          Competitive Analysis & Positioning
New Business Development & Revenue Growth   Engaging & Persuasive Influencer
                    Strategic Local and National Industry Partnerships

## Professional Experience

Alliance Beverage Distributing Company, Phoenix, AZ                    2010 to present
Account Development Specialist / Fine Wine Sales Manager – Southern Arizona

- Sales and brand manager for the Rebel Wine Division portfolio of wines calling on the top 100 restaurant/resort accounts in the region for the largest full-service distributor in Arizona.
- Leveraged long-term hospitality industry relationships, product knowledge and reputation to increase wine portfolio sales from low base to near $1M at year 2.
- Train, educate and mentor restaurant professionals on bar pour metrics and profitability, concept programming, marketing events and strategies, wine list design and consumer trends.
- Long-term follow-through partnering to achieve increased end-consumer traffic and excitement within the restaurant brand, while maximizing sales and profits. Ongoing staff training at all levels, designing and executing high-profile/high-energy personalized consumer events, and sharing a passion for wine, food and the ultimate customer experience.

**Integris Wine Partners, LLC, Phoenix, AZ**                                    2006 to 2010
Partner

- Founding member of this start-up wholesale fine wine distribution company specializing in family-owned, boutique wineries and importers. Managed all aspects of sales and operations – new business development, winery recruitment, sales and marketing, supplier market work and campaigns, IT, reporting, customer relations, logistics and purchasing, hiring, compliance and trade event planning.
- Co-authored and executed business plan, built organizational infrastructure, negotiated leasing contracts for warehouse, vehicles and CRM/database software, and contributed vision and leadership during startup and growth phases.
- Primary decision maker, researcher and strategist for wireless communications, data communications, security, and enterprise solutions. Only industry wholesale distributor in the West to utilize SaaS (Netsuite) to implement CRM, segmentation, database, invoicing and inventory solutions. Primary consultant for implementation team and ongoing technical reviews.
- Managed operations and transportation logistics, from PO creation, consolidation and delivery, utilizing 3PL provider relationships to ensure timely and accurate delivery to dock. Implemented efficient routing to trade customers, hired and trained driver team in efficiencies and outstanding customer service.
- Maintained pricing integrity by protecting margins, negotiating with wineries for marketing dollars and incentives to maintain profitability. Managed payroll, labor costs and cost-per-delivery metrics.

**Valley of the Sun Fine Wines** (previously Henry Wine Group)**, Phoenix, AZ**          2002 to 2006
Fine Wine Specialist

- Lead Sales Specialist for this high-growth driven company owned by both Henry Wine Group and Jess Jackson in the Tucson, Arizona market generating over $800,000 in year one and managing a customer base of over 60 accounts, including large retail, resorts and fine dining establishments. Held second-highest margins on a sales team of 12 during tenure.
- Beta test user for all new IT implementations, including order-entry software and new hardware. First industry wholesaler in the state to implement wireless handheld technology in conjunction with proprietary software. Sole trainer for sales team and management during implementation.
- Chosen as the sales team leader by GM as liaison during the merger and acquisition of HWG with Boutique Wines (below) and again during the subsequent divestiture of HWG and its infrastructure, communicating directly with Executive Management in California to implement efficiencies.

**Boutique Wines** (acquired by Henry Wine Group)**, Phoenix, AZ**                2001 to 2002
Fine Wine Specialist

- Personally recruited by Sales Manager to join Scottsdale-based start up wholesaler of fine wines looking to enter the Tucson market and mentor sales team.
- Built from a zero base, a 50-plus account base/ $450,000 territory year one with a portfolio of less than 100 wineries, including North Berkeley Imports, Martine's Wines, Terry Thiese, Dalla Valle, Grateful Palat
- Directly participated in inventory reduction strategy, identifying lines for discount or discontinuation to maintain profitability.
- Wrote all sales presentations, created all sales materials, market campaign collateral, developed launch strategies, analyzed and prioritized market segments. Provided pre and post-sale advisory services to management.

**Alliance Beverage Distributing** (formerly Arizona Beverage)**, Phoenix, AZ**          1998 to 2001

- Fine Wine/Spirits Specialist/Resort Specialist in Tucson market for the largest full-service distributor of wine and spirits in AZ. Awarded salesperson of the month three times.
- Began in hybridized position calling on resorts only and selling across the entire book. Promoted to Key Account Specialist in top 30 on-premise accounts, subsequently given an expanded territory serving as an adjunct to fine wine sales across all on-premise divisions. Chosen as Sam Adams Brand Champion 1998, Piper-Heidsieck Brand Champion 1999, and Cinnabar Winery Brand Champion 2000.

## Education, Development and Associations

Pomona College, Claremont Colleges – Claremont, California                     1984 to 1988
- Ranked one of top ten liberal arts colleges nationally – *U.S. News and World Report*
- History/English  double major

Advanced proficiency with Microsoft Office Suite, including Excel, Word, Power Point, Publisher, Access
Outlook, Salesforce and sales analytics, cloud computing proficiency

Native Spanish fluency


Court of Master Sommeliers – Certificate (2nd) Level
The Lacey Jarrell Foundation – Board of Directors
The Cristiani Foundation – Board of Directors
Share Our Strength – Member
Slow Food USA – Member
Certified Specialist of Wine
Certified Wine Educator
Local charities supported as a member of the alcohol beverage wholesale community through donation and volunteerism:
Boys and Girls Club of Tucson, Arizona Cancer Center, Ronald McDonald Charities, The Conquistadors, Tucson Museum of
Art, Tu Nidito, Diamond Children's Center, The Humane Society of Tucson, Tubac Rotary Club, Tubac Medical Center,
Bisbee Arts Council

# Exhibit Q

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

Melissa Martin McBeath,                )
                                       )
            Plaintiff,                 )
                                       ) No.
vs.                                    ) 4:16-CV-00462
                                       ) TUC-DCB (BPV)
Tucson Tamale Company,                 )
                                       )
            Defendants.                )
_____

VIDEOTAPED DEPOSITION OF:   MELISSA MCBEATH

Tucson, Arizona

March 22, 2017

Patricia Gerson, RMR
Certified Court Reporter #50429
KATHY FINK & ASSOCIATES
COURT REPORTERS
2819 East 22nd Street
Tucson, Arizona  85713
(520) 624-8644

Page 15

1    you're excited to talk about was someone to possibly

2    assist with overseeing the outlets with a more regional

3    scope; correct?

4        A.   Yes.

5        Q.   You don't say anywhere in this e-mail that you're

6    interested in a sales position with Tucson Tamale;

7    correct?

8        A.   Correct.

9        Q.   And when you sent this e-mail, you were in a

10   sales position, at that time; right?

11       A.   I was not.

12       Q.   You weren't working for Alliance Beverage

13   Distributing, at the time?

14       A.   I was not.

15       Q.   Were you employed, at all?

16       A.   No.

17       Q.   Do you know if you listed on your résumé that you

18   were then employed for Alliance Beverage Distributing?

19       A.   I don't recall.

20       Q.   You shared your résumé with Todd and Sherry

21   Martin; correct?

22       A.   Yes.

23       Q.   And if there's a misstatement on your résumé

24   about your current employment, would you agree with me

25   that that would be grounds to terminate somebody?

Page 16

```
 1      A.    I don't -- no, I would not agree with you on

 2   that.

 3      Q.    So if somebody made a misstatement on their

 4   résumé, that's not something that people are terminated

 5   for?

 6      A.    I think people take that on a case-by-case basis.

 7   I know that I was very honest with Todd and Sherry and

 8   told them that I -- when we were interviewing, that I was

 9   not employed with Alliance Beverage.

10      Q.    So you were unemployed.   Your prior employer was

11   Alliance Beverage; correct?

12      A.    Yes.

13      Q.    And you were in a sales position with them;

14   correct?

15      A.    Yes.

16      Q.    How much money were you making a year when you

17   worked for Alliance Beverage Distributing?

18      A.    As a commissioned sales person, that varied.   But

19   on average, anywhere between, over the years, 50 and 70

20   thousand.

21      Q.    Did you separate from Alliance Beverage?

22      A.    Separate from them?

23      Q.    Did you resign?

24      A.    No, I was terminated.

25      Q.    What for?
```

Page 17

1      A.   Well, they were dismantling the fine wine team at

2    that time, and there was a restructuring with a new vice

3    president, and he was -- he didn't see the value in

4    the fine wine team that was in place at the time, so he

5    placed -- there were about -- I think there were five of

6    us on the team at the time, so he placed each member

7    throughout the state with managers that were not fine wine

8    believers in the team, or believers in what we could bring

9    to the company.

10          And the manager that I happened to then answer to

11   was notoriously not a fan of the position and what we did.

12   So I was under her for five months before she terminated

13   me.  But I answered to her.

14      **Q.   Who is the supervisor that terminated that**

15   **employment?**

16      A.   Donna Summers, is her name.

17      **Q.   Is that D-o-n-n-a S-u-m-m-e-r-s?**

18      A.   Yes.

19      **Q.   What is Alliance Beverages' address?**

20      A.   I don't recall.  It's an address in Phoenix,

21   Arizona.  They're based out of Phoenix.

22      **Q.   What is the full name of the corporation?**

23      A.   Alliance Beverage Distributing Company.  However,

24   their name has now changed.

25      **Q.   What has the name changed to?**

# Exhibit R

# Melissa Martin McBeath

3463 E. Terra Alta Blvd. • Tucson, AZ 85716 • 520.449.9753 • *mel.mcbeath@cox.net*

<u>SENT VIA E-MAIL ONLY</u>

April 6, 2017

Robert C. Garcia
Farhang & Medcoff
4801 E. Broadway, Suite 311
Tucson, AZ 85711

Re:   *Melissa Martin McBeath v. Tucson Tamale Company, et al.*
       U.S. District Court of Arizona Case No. CV-16-462-TUS-DCB (BPV)

Dear Robert,

I write to meet and confer with you regarding the following two subpoenas duces tecum you issued last week.

A.   <u>Alliance Beverage Distributing Co., LLC, dated March 22, 2017</u>

   Documents requested:

   Any and all documents and employment records relating or pertaining to Melissa Martin McBeath. Records should include, but are not limited to, job applications, interview notes, offer letters, compensation history and information, complaints, employment-related correspondence, disciplinary records, employee reviews, employee evaluations, pay stubs, and payroll records, records relating to the termination of her employment, performance, reviews, personnel files, photographs, and supervisor's notes.

   Production date:  April 14, 2017

B.   <u>Glenn Murphy dba Restaurant Bar Concept, dated March 30, 2017</u>

   Documents requested:

   1.   All documents and employment records relating or pertaining to Melissa Martin McBeath. Records should include, but are not limited to, job applications, interview notes, offer letters, actual or potential compensation history and information, employment related, correspondence, resumes, personnel files, and photographs.

   2.   All documents and records that reflect communications between Glenn Murphy (and/or the entity, if any, known as Restaurant Bar Concepts) and Melissa Martin McBeath (in any capacity; i.e., in her individual capacity or as a former

10387.1

Robert C. Garcia
April 6, 2017
Page 2

representative of Alliance Beverage) including, without limit, email correspondence, text messages, social media posts and communications, written correspondence, and notes from conversations.

Production date:  April 19, 2017

Travis cited a case in the Motion to Quash he filed last week that alerted me to the protected privacy interests that employees have in the above private information. *See Blotzer v. L-3 Communs. Corp.,* 287 F.R.D. 507, 2012 U.S. Dist. LEXIS 184162 (D. Ariz. 2012) (quashing subpoena served on plaintiff-employee's prior employers because it was overbroad and sought information not relevant to the claims); *see also Professional Recovery Services,* 2009 U.S. Dist. LEXIS 3889, 2009 WL 127326 at *4 (discovery may be denied or narrowly tailored to balance the needs of the case against the employee's reasonable expectations of privacy).

The only relevant information that seems germane to my claims and Tucson Tamale Company's counterclaims is the annual salary that Glenn Murphy would have paid me had I accepted his job offer and not gone to work for TTC. Everything else the two subpoenas request is not relevant. Let's chat about how to narrow them when we meet tomorrow at your offices at 3:00 pm.

In the meantime, I'm going to contact Mr. Murphy and Alliance Beverage to inform them you and I are discussing the scope of the subpoenas and that shortly they will be instructed on how to proceed.

Best Regards,

Melissa Martin McBeath

10387.1

# Exhibit S

**Tish Wright**

| | |
|---|---|
| **From:** | Robert Garcia |
| **Sent:** | Thursday, April 6, 2017 12:36 PM |
| **To:** | 'Melissa Martin McBeath' |
| **Cc:** | Travis L. Tufts; Tish Wright |
| **Subject:** | RE: McBeath v. Tucson Tamale Co. (Alliance Beverage & Glenn Murphy subpoenas) |

Melissa:

We've already received the response from Alliance Beverage and are preparing a supplemental disclosure to produce it.  As of yesterday, Glenn Murphy has not been served with the subpoena.  Let's discuss tomorrow.

Best regards,

## FARHANG   MEDCOFF
———— Attorneys ————

**Robert C. Garcia**
Profile | vCard

4801 East Broadway Boulevard | Suite 311 | Tucson, Arizona 85711
General: 520.790.5433 | Direct: 520.396.2205 | Fax: 520.790.5736

**From:** Melissa Martin McBeath [mailto:mel.mcbeath@cox.net]
**Sent:** Thursday, April 6, 2017 12:11 PM
**To:** Robert Garcia <rgarcia@fmazlaw.com>
**Subject:** McBeath v. Tucson Tamale Co. (Alliance Beverage & Glenn Murphy subpoenas)

**Robert,**

**Please see attached letter.**

**Best Regards,**

**-Melissa**

# Exhibit T

## Notice of Corrective Action

| Company:   Alliance Beverage | Location:   Tucson | |
|---|---|---|
| Associate Name:   Melissa McBeath | | Date:   9/30/2014 |
| Position:   Account Development Specialist | Department:   Heritage | |

**THIS IS TO CONFIRM THE CORRECTIVE ACTION ISSUED TO YOU FOR THE REASON(S) BELOW:**

Date(s) of the occurrence(s):   6/30/14 – 9/29/14

**Description of the circumstances (please attach additional supporting documentation):**

Mel received counseling documentation on 5/30/2014 from her manager with explicit instructions on the expectations and obligations to respond to management requests and communication to management and business partners. Despite this documentation she failed improve her performance as required.

Mel received a written warning on 6/30/2014 for failing to acknowledge, communicate and respond to her manager in a timely fashion. During the meeting she was notified that further infractions of her insubordinate behavior would be regarded with zero tolerance and she would be facing termination.

Since then, Mel has continually failed to follow management instruction, report to required meetings and work-with visits, and has failed to acknowledge communications from her manager and business partners. Following are examples of the unacceptable performance and behavior Mel continues to exhibit:

- Mel has repeatedly failed to submit weekly pre-plans. In many cases she has failed to submit the pre-plans at all, and in other cases she has submitted them late.
- Mel has failed to respond to management requests to recap market activity to her manager and other partners. This was exemplified on 7/29/14 when Mel was instructed to provide a recap of Bisbee market activity and failed to complete the required overview.
- Mel has failed to reconcile travel and entertainment expenses on her company credit card, despite receiving numerous emails instructing her to complete the requirement. As a result, her company card has been suspended due to failure to follow company policy.
- Mel was instructed to provide daily activity recaps beginning 8/16/14. Since 8/26/14, she has failed to submit the required recaps with exception of 2 days.
- Mel was instructed to provide a detailed route schedule to her manager on 8/2/14. Despite multiple follow up requests from her manager, Mel has failed to meet this expectation.
- Mel has failed to respond to customer requests. This was exemplified with Omni and Desert Diamond Casino.

**Company Standards/What is expected of Associate (Use 2nd page if necessary):**

Mel has acknowledged her awareness of the requirement to communicate with her partners, leaders and customers. She has also acknowledged her awareness of the expectation to respond to management instruction and failure to do so is considered insubordination.

**Previous action of Associate and/or company:**

Mel received documented corrective counseling on 5/30/14 and on 6/30/14.

| Action Taken: | ☐ Documented Verbal Warning/Counseling | ☐ Written Warning | ☐ Final Written Warning  ☒ Termination |
|---|---|---|---|

**Future Action:** N/A
Due to Mel's consistent insubordinate and inappropriate behavior, Mel's employment is terminated effective 09/30/2014

Witness Signature: _M.J. Robley_   Associate's Signature: _____   Date: 9/30/14

**Associate's Comments:**

Manager's Signature: _Ronica C. Runnels_   Date: 9/30/14

Copies to:   ☒ Associate
             ☒ Human Resources

# Exhibit U

Page 86

1    not to pursue other employment, you still did it; is that

2    right?

3        A.    I still did?

4        Q.    You still pursued other employment --

5        A.    No, not after --

6        Q.    -- even though they were apparently --

7              Let me finish my question.

8        A.    Sorry.

9        Q.    Even though apparently they were inducing you not

10    to pursue other employment opportunities?

11       A.    No.  When we had that conversation, I gave them

12    my commitment that I would not -- that I was committed to

13    this process.

14       Q.    So the job interview process for you was a little

15    over one and a half months, almost two months; right?

16       A.    That sounds about right, yes.

17       Q.    When did you receive a more lucrative job offer

18    that you turned down to take the Tucson Tamale job?

19       A.    It was a standing potential job that would have

20    meant me a temporary move out of Arizona, which I was

21    considering.  But it wasn't -- it wasn't a formal

22    interview process with a large company, let's put it that

23    way.  It was with a consultant.

24       Q.    What is the name of the company?

25       A.    Bar Fixer.

Page 87

1    Q.   B-a-r F-i-x-e-r?

2    A.   Yes.

3    Q.   Where is that company based?

4    A.   California.

5    Q.   Where in California?

6    A.   Los Angeles.

7    Q.   And who were you speaking to at Bar Fixer about

8    this standing potential job offer?

9    A.   Glen Murphy.

10   Q.   You've disclosed Mr. Murphy in your responses to

11   our discovery; have you not?

12   A.   I believe I have, yes.

13   Q.   Can you tell me what his phone number is?

14   A.   I would have to get back to you.

15   Q.   Do you know where Bar Fixer's address?

16   A.   I can look it up.  Obviously, I can get all that

17   information for you, sure.

18   Q.   Were you offered this job in writing?

19   A.   No.

20   Q.   Do you have any written documents reflecting this

21   more lucrative job offer that you had?

22   A.   No.

23   Q.   And what were the terms and conditions of that

24   position that you were being offered?

25   A.   It was an opportunity to -- he has clients that

1   he consults for which are restauranteurs that need systems

2   and efficiencies and expertise to come in to help them

3   with profitability, with hiring all sorts of things that

4   they may not have the experience to have implemented.

5          So there was an opportunity for me to become a

6   consultant within his organization, where we could go in

7   as a team and shore up systems, training for clients, for

8   existing clients.

9      **Q.    When did that --**

10     A.    So that could be, you know, a three-month

11  position with a certain restaurant group, it could be six

12  months with another restaurant group, and that sort of

13  thing.

14     **Q.    When did this offer first arise?  When were you**

15  **first offered that position with Glen Murphy?**

16     A.    I have to say it was right around that time.

17  Because he had reached out to me.

18     **Q.    What time were you --**

19     A.    When he knew I was no longer with Alliance

20  Beverage.  So maybe winter of 2015, early 2016.

21     **Q.    So that offer came along before Tucson Tamale's**

22  **offer?**

23     A.    I don't know if we were actually talking

24  potential salary at that time.  It was kind of concurrent,

25  my conversations with Glen.

1      Q.      Okay.  Any reason why you haven't looked in

2    Phoenix, where TBK Beverage is located?

3      A.      Tucson is my home.  I have no desire to move

4    permanently.

5              I have certainly have looked at jobs where I

6    would travel quite a bit, as a regional salesperson and

7    those sorts of --

8      Q.      Have you contacted Glen Murphy about the position

9    he offered you prior to your employment with Tucson

10   Tamale?

11     A.      In the past few weeks, two weeks?  No.

12     Q.      At any point after you were terminated -- your

13   employment was terminated by Tucson Tamale?

14     A.      Yeah.  I mean, we've had just casual

15   conversations.  He's also a friend.

16             And he's, you know, he had smaller -- smaller,

17   little sort of positions now and then, you know, for a

18   week or so.  But I wasn't necessarily interested in

19   something that temporary.  I needed -- I was really hoping

20   to find something with more longevity, as I am currently.

21     Q.      Have you received any psychological counseling

22   after the termination --

23     A.      No.

24     Q.      -- from Tucson Tamale?

25     A.      No.

# Exhibit V

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### District of Arizona

| | |
|---|---|
| Melissa Martin McBeath | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No.  4:16-cv-00462 |
| Tucson Tamale Company, et al. | ) |
| | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

### Glenn Murphy dba Restaurant Bar Concepts

To:

_____

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Exhibit A

| Place: Pettit Kohn Ingrassia & Lutz PC<br>9841 Airport Blvd. #1100<br>Los Angeles, CA 90045 | Date and Time:<br><br>04/19/2017 10:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: ____03/30/2017____

| *CLERK OF COURT* | | OR | |
|---|---|---|---|
| _____ | | | _____ |
| *Signature of Clerk or Deputy Clerk* | | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Tucson Tamale Company, et al. _____ , who issues or requests this subpoena, are:

Farhang & Medcoff, 4801 E. Broadway Blvd., Suite 311, Tucson, AZ 85711; rgarcia@fmazlaw.com; (520) 790-5433

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  4:16-cv-00462

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____   on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**EXHIBIT A**

1.      All documents and employment records relating or pertaining to Melissa Martin McBeath.  Records should include, but are not limited to, job applications, interview notes, offer letters, actual or potential compensation history and information, employment-related correspondence, resumes, personnel files, and photographs.

2.      All documents and records that reflect communications between Glenn Murphy (and/or the entity, if any, known as Restaurant Bar Concepts) and Melissa Martin McBeath (in any capacity; i.e., in her individual capacity or as a former representative of Alliance Beverage) including, without limit, email correspondence, text messages, social media posts and communications, written correspondence, and notes from conversations.

# Exhibit W

AO 88  (Rev. 02/14)  Subpoena to Appear and Testify at a Hearing or Trial in a Civil Action (page 2)

Civil Action No.  4:16-cv-00462

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)*   Glenn Murphy dba Restaurant Bar Concepts

on *(date)*   03/30/2017     .

☑ I served the subpoena by delivering a copy to the named person as follows:  personal, in hand to

Glenn Murphy at 2212 Ocean Park Blvd, Apt E, Santa Monica, CA 90405

at 8:38PM                          on *(date)*     04/13/2017        ; or

☐ I returned the subpoena unexecuted because:

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ not tendered per attorney  .

My fees are $                      for travel and $        155.00        for services, for a total of $        155.00        .

I declare under penalty of perjury that this information is true.

Date:     04/14/2017

_____
*Server's signature*

Rigo Tellez #2014283953 Los Angeles
*Printed name and title*
RANCHO ATTORNEY SERVICE OF CALIFORNIA
28465 Old Town Front St #318
Temecula, CA 92590
(951) 693-0165
*Server's address*

Additional information regarding attempted service, etc.:
Attempts made 3/31/17 at 4:23PM (green apartment building; defendant/witness not listed; no answer at door); 4/2/17
at 8:08AM - no answer; 4/5/17 at 9:11PM (no answer); 4/8/17 at 6:37AM (no answer, no access to utility meters for
verification; no vehicles present);

Personally served on 4/13/17 at 8;38PM after one hour wait to Glenn Murphy.  Described as a
Caucasian-male-50-5'8"-165#-grey hair-hazel eyes.

Also served:  Exhibit A, Subpoena Letter, Affidavit of Custodian of Records.

# Exhibit X

# Melissa Martin McBeath

3463 E. Terra Alta Blvd. • Tucson, AZ 85716 • 520.449.9753 • mel.mcbeath@cox.net

<u>SENT VIA E-MAIL ONLY</u>

April 21, 2017

Robert C. Garcia
Farhang & Medcoff
4801 E. Broadway, Suite 311
Tucson, AZ 85711

Re:     *Melissa Martin McBeath v. Tucson Tamale Company, et al.*
        U.S. District Court of Arizona Case No. CV-16-462-TUS-DCB (BPV)

Dear Robert,

I thought more about the various discovery issues we discussed when we met on April 7, 2017. Here is how I wish to proceed.

> 1.     <u>Google Subpoena.</u>

I wish to obtain the emails directly from Google in the manner set out in my letter dated April 5, 2017. Google will conduct the searches in the most accurate and efficient manner.

You informed me that your clients were not going to produce the emails digitally because they (and you) have concerns about confidentiality. I appreciate your invitation to come to your offices to search, review and "mark" the emails responsive to my document request. My personal and professional obligations, however, do not permit me to work around your law firm's regular business hours. More importantly, I cannot run computer scripts in an email client. I require the raw email content (including original unaltered metadata) to run my own heuristic analysis. Having it "uploaded" using any GUI client definitionally limits that discovery.

Please serve the subpoena duces tecum on Google along with the executed consent forms I sent to Travis no later than April 27, 2017.

> 2.     <u>Shawn Kaylor Document Production</u>

I still have not received the documents responsive to the subpoena duces tecum served on Shawn Kaylor. He must produce all responsive documents in his possession, custody, or control. That includes emails that were sent to/from his TTC email account, not just his personal email account(s). Your clients waived whatever objections they have to this subpoena because they failed to file a timely motion to quash before the designated April 10, 2017 production date. The emails must be made available in native format. If Shawn is unable (or not allowed) to perform these searches, then I will obtain these emails directly from Google as well.

10391.1

Robert C. Garcia
April 21, 2017
Page 2

3.    Glenn Murphy Subpoena

I request that the subpoena that will be served on Mr. Murphy be limited only to documents that relate to (i) the job offer he made to me, and (ii) Tucson Tamale Company. Our friendship goes back many years. As you conceded, my personal and professional communications with Mr. Murphy that predate my employment with Tucson Tamale Company have no relevance to any of the issues in this case.

4.    Alliance Beverage Documents Already Produced

I request that your office destroy all documents that Alliance Beverage produced that do not relate to Tucson Tamale Company or the reason why my prior employer elected to terminate my employment. You explained that your clients are fishing for "after-acquired evidence" to defeat my claims, however far-fetched that may be. This is nothing more than grasping at straws and certainly does not support the broad subpoena served on Alliance Beverage. *See Blotzer v. L-3 Communs. Corp.,* 287 F.R.D. 507, 2012 U.S. Dist. LEXIS 184162 (D. Ariz. 2012) (quashing subpoena served on plaintiff-employee's prior employers because it was overbroad and sought information not relevant to the claims); *see also Professional Recovery Services,* 2009 U.S. Dist. LEXIS 3889, 2009 WL 127326 at *4 (discovery may be denied or narrowly tailored to balance the needs of the case against the employee's reasonable expectations of privacy).

Defendants' Initial Disclosures should be amended to omit references to any of the irrelevant documents obtained from Alliance Beverage.

Please let me know no later than April 27, 2017, which of the above tasks your clients will not perform so that I may proceed accordingly.

Best Regards,

Melissa Martin McBeath

10391.1

# Exhibit Y

## Social Media, Social Networking, and Online Etiquette

Tucson Tamale understands the prevalence of Social Media and Social Networking today. These digital channels of communication can drive business and engage guests. These same channels can also lead to loss of business and can compromise Tucson Tamale's reputation when used carelessly or irresponsibly.

While team members' rights to free speech protect online activity conducted on personal social network accounts, it is important to note that if your account or profile can be linked to Tucson Tamale in any way, personal activities, opinions, pictures, and videos should not be attributed to Tucson Tamale and expressed as the individual's own opinion.

Any material posted online is public domain and may be considered when performing individual accountability. This applies whether material was posted on or off the clock and on or off Tucson Tamale premises. This also includes activities that may not pertain to Tucson Tamale specifically but could be linked to the company through association with your profile.

Online posts should never reveal proprietary or confidential information. They should never compromise the safety or well-being of our business, team members, or guests. Posting material that casts a negative light on our business, team members, or guests is grounds for consequences up to and including termination.

## Company Computer Use

Company computers are for business use only. Do not download or install any files. Do not visit inappropriate websites or websites that might compromise the security of company computers.

## "Hot Tamales"

This is our battle cry! It lets team members know that you are moving in the restaurant with hot, possibly dangerous product. It lets guests know that they we are committed to serving fresh, hot food throughout the day and that they have been here longer than their food has.

If you are removing fresh, hot tamales from the steamer, it is your responsibility to shout, "Hot Tamales!" while bringing them to the line.

If you hear another team member shout, "Hot Tamales!" it is your responsibility to shout "Hot Tamales!" back to let them know you have heard them and are aware of movement in the restaurant.

## Parking

Each Tucson Tamale location has a designated team member parking area. Your Manager will explain the Parking Policy for your individual store.

# Exhibit Z

## Tish Wright

| | |
|---|---|
| **From:** | Robert Garcia |
| **Sent:** | Tuesday, March 21, 2017 6:16 PM |
| **To:** | 'Melissa Martin McBeath' |
| **Cc:** | Tish Wright; Travis L. Tufts |
| **Subject:** | McBeath/TTC - Protective Order |
| **Attachments:** | TTC (USDC) - Protective Order (00316345xC01F0).PDF |

Hello Melissa:

Attached is a slightly modified version of the Protective Order already in place in the state court action for filing in the federal case.  Will you please stipulate to this order in advance of your deposition tomorrow, 3/22?  We can record a stipulation to bind the parties to the attached order on the record pending the Court's entry and approval.

We will proceed with the deposition whether the Protective Order is in place or not, but would appreciate your cooperation on this.  In any event, a stipulation on this order it will make the deposition go by more quickly and efficiently.  Thank you.

Best regards,

## FARHANG  MEDCOFF
———— Attorneys ————

**Robert C. Garcia**
Profile | vCard

4801 East Broadway Boulevard | Suite 311 | Tucson, Arizona 85711
General: 520.790.5433 | Direct: 520.396.2205 | Fax: 520.790.5736