FARHANG & MEDCOFF

4801 E. Broadway Boulevard, Suite 311
Tucson, Arizona 85711
T: 520.790.5433

Ali J. Farhang (#019456)
afarhang@fmazlaw.com

Roberto C. Garcia (#026246)
rgarcia@fmazlaw.com

Travis L. Tufts (#029373)
ttufts@fmazlaw.com

Attorneys for Defendants / Counterplaintiff

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Melissa Martin McBeath, an individual, | NO. CV 16-462-TUC-DCB (BPV) |
| Plaintiff, | **MOTION FOR ORDER TO SHOW CAUSE AND EVIDENTIARY HEARING** |
| v. | |
| Tucson Tamale Company, an Arizona corporation; Todd Russell Martin, an individual; Sherry Martin, an individual; and Lisa Martin, an individual, | **[ORAL ARGUMENT REQUESTED]** |
| Defendants. | |
| Tucson Tamale Company, an Arizona corporation, | Assigned to Judge David C. Bury and Hon. Bernardo P. Velasco |
| Counterplaintiff, | |
| v. | |
| Melissa Martin McBeath and John/Jane Doe Martin McBeath, husband and wife, | |
| Counterdefendants. | |

00323577.1

Plaintiff Melissa Martin McBeath ("McBeath") is not who she appears to be. McBeath would like the Court to believe she is a *pro se* litigant masterminding her own litigation campaign – one that has involved, without limit: the filing of 19 motions,[1] including six thus far unsuccessful motions to compel; service of over 200 discovery requests; fabrication of myriad, frivolous discovery disputes arising from approximately 200 communications; filing of duplicative motions in two separate venues; and the transparent, convenient argument that fact witnesses should be shielded from Defendants' discovery because they are McBeath's "consulting experts." McBeath's appearance as a *pro se* litigant, however, distorts reality.

In reality, McBeath employs a supposed "consulting expert" – disbarred attorney Francisco X. Marquez ("Marquez") – to advise, assist, and prosecute her claims and defenses. Free from the ethical constraints, professional considerations, and duties to the Court by which licensed attorneys are bound, Marquez has been able to make a mountain out of a mole hill, turning a simple case into an overwrought, vexatiously-litigated dispute while appearing in disguise as a *pro se* litigant. That Marquez has engaged and continues to engage in the unauthorized practice of law is not only obvious on the face of McBeath's submissions, but his intimate involvement in this case is not disputed by McBeath. Together, Marquez and McBeath have perpetrated a fraud on the court, abused the judicial process, and grossly prejudiced Defendants' ability to prosecute their claims and defenses. All this, among other things, justifies this Court's entry of an order to show cause why: a) Marquez should not be enjoined from further unauthorized practice of law in this Court; b) McBeath should not be enjoined from her continued employment of an individual not authorized to practice law to litigate this action; c) McBeath should not be labelled a vexatious litigant and sanctioned.

Marquez's latest abuse, ratified by McBeath, resolves any doubt that he and his supposed client are motivated to harass the Defendants through the judicial process. On May 4, 2017, McBeath served interrogatories directly upon Defendants, purposefully and

---

[1] McBeath's total motion count includes motions filed in her recently stayed Pima County Superior Court case, Case No. C20161794.

00323577.1

- 1 -

maliciously circumventing counsel of record, seeking to discover, among other things, if Defendants are aware they can file a legal malpractice action against their counsel, file bar complaints against their counsel, and have their attorneys' fees covered by counsel's malpractice insurance.  No attorney bound by professional norms or even a rationale *pro se* litigant would disagree – the interrogatory requests exceed the bounds of ethical and professional conduct, are wholly irrelevant, and were served with complete disregard of substantive and procedural law.  Even assuming Marquez and McBeath could legitimize their historical misconduct, the interrogatories conclusively establish Marquez and McBeath have no regard for the judicial process and that their singular goal in this litigation is, as McBeath has previously stated, to harass Defendants and exact revenge on them by making them incur unnecessary fees.

This Court cannot allow such misconduct to continue.  To that end, Defendants Todd Russell Martin, Sherry Martin, Lisa Martin, and Defendant/Counterplaintiff Tucson Tamale Company ("TTC") (collectively, "Defendants"), by and through undersigned counsel, submit this Motion for Order to Show Cause and for Evidentiary Hearing (the "Motion") and ask that the Court grant the relief requested herein.  The following Memorandum of Points and Authorities together with the pleadings and papers on file with the Clerk of this Court and on file with the Clerk of the Arizona Superior Court (Pima County), case no. C20161749 ("Superior Court Case"), which Defendants ask the Court take Judicial notice of and which are incorporated herein by reference, support this Motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

**A. Marquez's History of Involvement in McBeath's Legal Actions.**

Marquez was licensed to practice law in the State of California on December 8, 1994. See Ex. A, Cal. State Bar Attorney Status.  On May 10, 2014 – nearly one year before Defendants hired McBeath – Marquez was ordered inactive and ineligible to continue the practice of law in California.  See id.  Following a hearing addressing Marquez's misappropriation of $419,595 and two alcohol-related driving convictions, Marquez was

formally disbarred from the practice of law on October 16, 2014.  See id.; see also Ex. B, State Bar Ct. of Cal. Decision, Apr. 10, 2014.

Notwithstanding his disbarment, Marquez has acted as McBeath's "counsel" in her lawsuits against Defendants.  On April 12, 2016 – days before filing her Superior Court Case – McBeath sent a letter to the Defendants indicating "I have retained advisory counsel to assist me with the preparation of a lawsuit for wrongful discharge."  Ex. C, M. McBeath Letter, April 12, 2016.  McBeath enclosed a four-page litigation hold letter demanding Defendants take extensive pre-litigation measures.  See generally id.

Days later, on April 20, 2016, McBeath filed an Equal Employment Opportunity Commission Charge of Discrimination against Defendants.  When asked to identify an alternative contact in the related intake questionnaire, McBeath did not name one of her numerous children, including those known to reside with her, but instead named Marquez and listed his address in Sahuarita, Arizona.[2]  See Ex. E, Intake Questionnaire, MM66.

Before Defendants discovered the full scope of Marquez's involvement, he did little to disguise his involvement in this case.  Marquez personally hand-delivered copies of McBeath's filings and submissions directly to defense counsel's office.  See Ex. D, M. McBeath Dep. Tr.,[3] 138:11-13.  Tellingly, however, Marquez utilized a pseudonym on the certificates of service – "Xavier Molina" – as well as his e-mail account.  See Ex. F, McBeath's Cert. Service Mot. Strike, June 14, 2016; see also Ex. G, McBeath's Cert. Service Mot. Dismiss, May 27, 2016; Ex. D at 137:15-18 (agreeing "Xavier" is Marquez's middle name); Ex. H, X. Molina Disc. E-mail, June 14, 2016 (e-mail from Xavier Molina).  Despite her acknowledgement that Marquez is not a lawyer and that no attorney-client privilege exists between her and Marquez, McBeath refused to answer questions about Marquez's supposed involvement in this case as a "consultant," including Marquez's use

---

[2] Despite listing Marquez's address in Sahuarita on the intake questionnaire, McBeath now claims that 451 W. Calle Bolita, Sahuarita, AZ, is not Marquez's residence but that of his mother.  See Ex. D, McBeath Dep. Tr., 137:21-23.  Public records reveal Marquez is the owner of the residence, casting further doubt on McBeath's credibility and highlighting the exhaustive efforts she has undertaken to shield Marquez from Defendants' discovery, including lying under oath.

[3] McBeath's deposition transcript is hereinafter cited as "Dep. Tr." followed by pagination and line number.

of a pseudonym intended to mislead this Court and Defendants regarding his true identity. See Ex. D, Dep. Tr. 138:17 – 141:25 (claiming Defendants are not entitled to discovery of her "expert" consultants or why Marquez utilized a pseudonym to disguise his identity). Despite McBeath's refusal to answer questions, Marquez is clearly practicing law before this Court without authorization by, for example, drafting McBeath's papers, researching and interpreting law for her, calendaring discovery deadlines, providing advice on the Rules of Civil Procedure, and coordinating with McBeath's other supposed "consulting expert," Ehud Gavron ("Gavron"). See Ex. I, E. Gavron E-mail, June 27, 2016 (copying "'Francisco X. Marquez' <fxm@marquezlegal.com>" and discussing Arizona Rules of Procedure).

After Defendants discovered Marquez's involvement, he avoided Defendants' discovery requests (see, e.g., Ex. J, Marquez Subpoena Service Attempts and Proof of Service) and stopped personally delivering McBeath's papers to counsel's office, but he nonetheless continued to be involved in this litigation behind the scenes. Most recently, on April 5, 2017, Marquez contacted undersigned counsel directly regarding a pending discovery dispute. See Ex. K, F. Marquez E-mail, April 5, 2017 (signed "F"). In his e-mail, Marquez apologized for his delayed response because "[he] was otherwise engaged yesterday." See id. It was no coincidence that "yesterday," – April 4, 2017 – McBeath filed her Opposition to Defendants' Motion to Quash a subpoena served on TTC's insurance broker. (See M. McBeath's Opp., Doc. No. 59, April 4, 2017.)

In addition to avoiding discovery, Marquez has counseled McBeath to refuse to answer questions about his involvement in this case by citing and abusing litigation privileges. As more fully set forth in Defendants' Opposition to McBeath's Motion for Protective Order (Doc. No. 48), which is incorporated herein by reference, McBeath has refused to provide any details relating to Marquez's knowledge of the facts of this case, the information McBeath shared with him about Defendants' business *during her employment*, or the information she shared with him to prosecute her claims. Marquez has surely counseled Gavron – the other individual TTC alleges McBeath impermissibly shared its Confidential Information with – on how to avoid Defendants' discovery under the

00323577.1

protective cloak of Rules 26(b)(3) and (b)(4). Gavron conveniently and quickly became McBeath's supposed "consulting expert" after his role in McBeath's violation of her confidentiality agreement was fully discovered by Defendants. Absurdly, McBeath has taken Marquez's advice to its logical extreme, claiming she can consult with her neighborhood garbage man and, so long as she determines her communication was *in anticipation of litigation or preparation for trial*, Defendants are not entitled to know the substance of her communications. See Ex. D, Dep. Tr., 141:6 -142:14.

Despite evading discovery, Marquez's fingerprints are all over this case. McBeath's pleadings unquestionably suggest the involvement of a trained legal professional. The pleadings are rife with legal citations mirroring the conventions of The Bluebook and are maintained using a document management system. (See, e.g., Pl.'s Mot. Part. Summ. J., Doc. No. 52.) Tellingly, McBeath is unaware of the name of her supposed document management system (see Ex. D, Dep. Tr., 148:15 – 149:24) despite signing her name on hundreds of communications and filings. As further evidence Marquez, and not McBeath, prepares Court submissions, McBeath admits she did not pay for the document management system and that the "people that are helping [her] with this litigation are the ones that have access to the document management system." See id. Additionally, despite her obligation to mitigate damages, McBeath would not and could not provide an estimate on the amount of time she supposedly has spent litigating this case. See Ex. D, Dep. Tr. at 348 – 349.

**B. Marquez and McBeath's History of Vexatious Litigation.**

As McBeath will testify at the evidentiary hearing requested herein, her stated goal in filing and pursuing legal action against Defendants has been to exact a pound of flesh from the Defendants, i.e. to make them spend money on fees unnecessarily and make them personally liable for damages.[4] To accomplish her end, McBeath employs Marquez to exploit and generate frivolous disputes and motion practice in bad faith, without regard to the prospect of success or judicial and legal resources. Among other things:

---

[4] McBeath has admitted on numerous occasions to defense counsel her stated intention is to exhaust Defendants' insurance policy, that "it is not her fault" Defendants do not have higher insurance limits, and that "it is not fair" Defendants have indemnification coverage.

00323577.1

- Marquez drafted and filed a Complaint laced with patently inflammatory allegations then, after being admonished to remove those allegations, proceeded to refile the same allegations in District Court months later. See Ex. L, State Court Compl., ¶¶ 90, 94 – 95, 100 – 106; see also Ex. M, Min. Entry Order, Aug. 15, 2016, p. 4 ("Plaintiff has been cautioned during the hearing that her current Complaint contains parts that are not in compliance with ARCP Rule 8…and that her amended complaint should be significantly shorter."); Compare Ex. L at ¶¶ 34, 44-47, 55, 90-95, 99-108 with (Sec. Am. Compl., Doc. No. 44, at ¶¶ 34, 40-44, 53, 88-89; 91-94, 97-103 (containing identical inflammatory paragraphs)).

- Marquez propounded 16 sets of discovery requests,[5] including harassing and irrelevant interrogatories. See infra Sec. I.C; see also Ex. N, M. McBeath Second Set Non-Uniform Interrogs., Nos. 10 – 20, Oct. 7, 2016 (raising questions about the Affordable Care Act and a U.S. Department of Agriculture food recall occurring *seven months after* McBeath's employment termination); see also Ex. O, Min. Entry Order, Oct. 31, 2016, p.3 ("the Court states it will strike any request for information regarding a recall of products from last month relating to this case as it has no relevance to this case.").

- Marquez has fabricated statements to satisfy the good faith discovery obligations. See Ex. P, M. McBeath Mot. Compel Resp. Interrogs., June 30, 2016 (seeking to compel answers to interrogatories nine days overdue); see also id. at 1:16:17 (stating counsel "declined to meet" and confer before filing the motion); Ex. Q, T. Tufts E-mail Exchanges (indicating counsel's out-of-office absence but willingness to meet the following week).

- Marquez has utilized motion practice or the threat of motion practice to exact leverage in discovery. See Ex. R, M. McBeath Letter, July 18, 2016 ("the motion to compel will not be withdrawn until I receive complete, unqualified and

---

[5] Defendants do not attach the requests because they are voluminous. Defendants anticipate McBeath will not genuinely dispute the number of discovery requests propounded. Defendants will submit the totality of the requests at the Court's request.

unequivocal responses without any objections.[6]"); see also Ex. S, M. McBeath E-mail, July 18, 2016 ("As a professional courtesy, I will not file this motion if your clients produce all documents…that should have been produced on July 15, 2016."); see also Ex. T, Mot. To Compel, July 18, 2016, p. 9 (delivered and signed on July 18, 2016 but not filed until August 3, 2016); Ex. U, T. Tufts E-mail Mot. to Compel, August 3, 2016 (discussing Defendants disclosure of documents *before* McBeath's electronically stored information ("ESI") demand).

- Marquez filed and litigated in two separate venues to exploit discovery and evade unfavorable rulings in one venue. See also Ex. V, Min. Entry Order, Feb. 28, 2017, p. 3 (quashing a subpoena on third-party insurance broker Koty-Leavitt); see also Ex. W, M. McBeath Letter, Mar. 2, 2017 (claiming two days after the Court's ruling that "in my reading of the federal rules…I am entitled to" serve a substantially similar subpoena on Koty-Leavitt); Ex. X, M. McBeath Letter, Mar. 6, 2017 (less than one week after the Superior Court ordered "no further motions will be permitted without leave of court" (Ex. V, p. 2) Marquez stated "I would like to revisit your clients' offer to consolidate my state and federal actions into one."); *infra* at I.C. (propounding interrogatory requests taunting "are [Defendants/Sherry Martin] aware that all the motions your attorneys filed or opposed in Pima County Superior Court will have no bearing in the federal proceeding? In other words, the case started anew when the state claims and federal claims were consolidated…")

- Marquez filed duplicative and frivolous motions in two separate venues. See, e.g., (Defs. Opp. (Second) Mot. For Prot. Order, Doc. No. 35, 2:23-4:2.) (filed in opposition to McBeath's second request to have ex parte communications with

---

[6] McBeath argued that TTC waived its objections to her interrogatories by producing late interrogatory responses. Though the federal rules provide a party waives his/her objections if they produce untimely discovery responses absent good cause (Fed. R. Civ. P. 33(b)(4)), the Arizona Rules of Civil Procedure did not contain a similar potential waiver provision in 2016, though the Arizona Rules have been recently amended to mirror the federal rules. Notwithstanding, the impetus for her motion was to compel Defendants to produce their responses, which Defendants did, not to enforce a waiver of objections.

TTC's general managers)); Ex. Y, <u>Min. Entry Order</u>, Jan. 17, 2017, p.2 (ordering that Plaintiff "may not have contact with defendants' employees or former employees except through defense counsel"); see also (<u>Mot. to Quash Koty-Leavitt Subpoena</u>, Doc. No. 55 (filed after a dispute related to the relevancy of the second Koty-Leavitt subpoena)); Ex. Z, <u>Mot. Leave to Take Non-Party Dep.</u>, July 8, 2016 (demanding to take non-party depositions, but not taking any depositions thereafter); Ex. AA, <u>Mot. To Compel Lisa Martin Sit for Dep.</u>, Oct. 6, 2016 (seeking to compel a Colorado resident to sit for a deposition in Arizona without citing any legal authority).

- Marquez has fabricated and continues to fabricate factual assertions as discovery progresses. <u>Compare</u> Ex. BB, <u>McBeath's Sup. Ct. Initial Discl.</u>, July 5, 2016, 2:21-28 (stating "[i]n September 2015, *Defendant Todd Russell Martin asked [McBeath] to meet and interview the person he intended to hire as the business development manager* for TTC's expanded wholesale business." (emphasis added)) <u>with</u> Ex. CC, <u>M. McBeath Resp. Interrogs.</u>, Sept. 12, 2016, No. 1, 2:25 – 3:2 (stating two months later that, "Ms. Welch called Todd [Martin] to lament her situation and he offered her the [Business Development] position. *There was no interview process*; the position was never posted internally or externally, no communications were made to staff prior to her hiring, and *no conversations occurred with [McBeath] regarding her hiring until after the fact*." (emphasis added)); (<u>Sec. Am. Compl.</u> at ¶ 113) (stating on March 20, 2017 that, "*Plaintiff had no idea that Defendants had decided to hire someone* else for the [Business Development] position until they announced that Lindsay Welch was coming on board. When Ms. Welch was first introduced to TTC employees, *Defendants said she was going to serve as catering sales manager and corporate gifting marketing manager*." (emphasis added).

**C. <u>Marquez's Harassing Interrogatories.</u>**

On May 4, 2017, McBeath e-mailed her First Set of Interrogatories to Sherry Martin

00323577.1

- 8 -

1  ("Interrogatories") directly to Defendants' e-mail addresses, despite multiple requests that
2  she not contact Defendants directly. See Ex. DD, M. McBeath E-mail, May 4, 2017
3  (copying Todd Martin, Sherry Martin, and Lisa Martin); see also Ex. Q, T. Tufts E-mail,
4  July 7, 2016, at p. 2 ("You copied my clients, Todd Martin, Sherry Martin, and Lisa Martin,
5  on that e-mail correspondence. You shall not contact my clients on any matters related to
6  this lawsuit from this point forward. They do not wish to communicate with you regarding
7  this matter."); Ex. EE, T. Tufts E-mail, July 12, 2016 ("I notice that, again, you copied my
8  clients…As I indicated in my e-mail correspondence July 7, 2016, my clients do not wish
9  to be contacted by you on any matters related to this lawsuit….").

10  Among other things, McBeath asks Sherry Martin, "Are you aware that your
11  attorneys, Ali Farhang and Travis Tufts, were ordered to appear before Judge Gus Aragon
12  of the Pima County Superior Court to explain why they committed a fraud on the court at a
13  hearing held on February 28, 2017?" Ex. FF, Interrogs., No. 1. She attached a minute entry
14  order from Judge Aragon that makes clear the Judge sought clarification on
15  communications between counsel and McBeath's prior attorney[7] regarding pending
16  motions, not to set a hearing for counsel "to explain why they committed fraud on the court"
17  as McBeath suggested. See id. at Ex. 1, p. 2. McBeath goes on to request/suggest, "[a]fter
18  the federal court rules on the pending motions, Plaintiff will report your attorneys'
19  misconduct to the Arizona State Bar. Are you aware that you may do so as well at any
20  time?" Id. at No. 3. McBeath concludes her Interrogatories by asking, "[a]re you aware
21  that if you have a viable malpractice claim against your attorneys, their malpractice
22  insurance can pay your attorneys' fees if you retain new counsel?" Id. at No. 9.

23  **II.   LAW AND ANALYSIS**
24      **A. An Order to Show Cause is appropriate.**

---

[7] McBeath ostensibly hired Ruchit Agrawal ("Agrawal") to represent her in the Superior Court Case. Agrawal is a recent law school graduate that lives/practices in San Jose, California – not coincidently Marquez's second known place of residence. After Agrawal failed to show up for the February 28, 2017 hearing, the Court ordered he provide an affidavit regarding his non-appearance and face potential sanctions. See Ex. V at p. 3. Thereafter, Agrawal was forced to withdraw as *pro hac* counsel after McBeath's local counsel revoked his sponsorship. McBeath's litigation strategy and the form of communications did not change despite hiring Agrawal.

00323577.1

- 9 -

1    Unlike the Arizona Rules of Civil Procedure, the Federal Rules do not expressly
2    authorize an Order to Show Cause hearing. See, e.g, Ariz. R. Civ. P. 7.3. Notwithstanding
3    that distinction, this Court has the inherent authority to issue the order to show cause
4    requested herein. See, e.g., In re Poole, 222 F.3d 618, 621 (indicating a show cause hearing
5    *must* be afforded in the context of disciplining attorneys appearing before the federal court);
6    Fink v. Gomez, 239 F.3d 989 (9th Cir. 2000) (reviewing the District Court's issuance of an
7    order to show cause and remanding for a determination of appropriate sanctions); In re
8    Nordstrom, Inc., 719 F.3d 1129, 1130 (9th Cir. 2013) (ordering counsel for the petitioner
9    to show cause why monetary sanctions should not be imposed for filing a frivolous petition).

10   The Court has jurisdiction over Marquez. Fundamentally, Marquez is a resident of
11   Arizona, notwithstanding McBeath's latest effort to shield Marquez from Defendants'
12   discovery (*supra* at fn. 2). See, e.g., Ex. E (identifying Marquez's residence in McBeath's
13   EEOC intake questionnaire); see also Int'l Shoe Co. v. State of Wash., Office of
14   Unemployment Comp. & Placement, 326 U.S. 310, 316 (1945) (presence within the
15   territorial jurisdiction of court was prerequisite to its rendition of a judgment personally
16   binding him). But even assuming Marquez is a non-resident, he has purposefully availed
17   himself to the Court's jurisdiction. See, e.g., CE Distribution, LLC v. New Sensor Corp.,
18   380 F.3d 1107, 1111 (9th Cir. 2004) (personal jurisdiction exists when a non-resident (1)
19   directs his activities or performs some act by which he purposefully avails himself of the
20   privileges of conducting activities in the forum; (2) the claim arises out of or relates to the
21   forum-related activities; and (3) the exercise of jurisdiction is reasonable). Among other
22   things, Marquez is engaging in the unauthorized representation of McBeath, including
23   drafting and submitting papers to this Court, and has contacted Defendants' counsel directly
24   on numerous occasions, including his recent communication to discuss a discovery dispute
25   (see Ex. K). Marquez has unquestionably directed his activities towards residents of this
26   state and availed himself of the privileges afforded to residents pursuing legal claims in this
27   jurisdiction. See Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991) ("a federal court has
28   the power to control admission to its bar and to discipline attorneys who appear before it.").

00323577.1

Assuming any doubt remains, Marquez's residency and/or activities within this forum will be established by McBeath and Marquez's testimony at the evidentiary hearing. Because Defendants anticipate Marquez will evade service of the Order to Show Cause, Defendants request alternative means of serving Marquez, discussed *infra* at p. 17, No. 3.

**B. The Court has the power to enjoin Marquez's unauthorized practice of law in this Court and with regard to this action.**

The Court is vested with inherent power to proscribe Marquez's unauthorized practice of law. "In the sphere which encompasses the regulation of the practice of law, it is not merely [the] Court's function to redress past injury but to prevent harm in the future as well. Thus, neither the public's blissful acquiescence nor the bar's confessed lethargy can clothe the activities with validity. There is no prescriptive right to practice law and [unauthorized practitioners] have acted 'at their peril' since the time when the practices condemned here were initiated." State Bar of Ariz. v. Arizona Land Title & Trust Co., 90 Ariz. 76, 93, 366 P.2d 1, 13 (1961).

McBeath cannot and will not legitimately dispute that Marquez has been practicing law without authorization in this Court. By McBeath's own admissions, she considers Marquez a "consulting expert," unquestionably engaged to assist her understand the law once practiced by Marquez during his former career. See, e.g., Ex. D. Together with McBeath's own admissions, the volume of motion practice, sophistication of papers presented, and Marquez's direct and indirect contact with counsel throughout this case lead to only one conclusion: Marquez is drafting and editing McBeath's papers and consulting with her on strategical matters. Because Marquez is not a licensed attorney, however, as a matter of law he is not authorized to engage in the rendition of these services to McBeath. See Marchant v. U.S. Collections West, Inc., 12 F.Supp.2d 1001, 1006 (Ariz. Dist. Ct. 1998) ("the Arizona Supreme Court has defined the 'practice of law' generally as 'those acts, whether performed in the court or in the law office…' includ[ing] 'the preparation for another of matters for courts,' and the drafting of instruments 'purporting to create legal rights or impose legal responsibilities…" (citing State Bar of Ariz., 90 Ariz. at 96, 366 P.2d

00323577.1

1  at 15). Further, to state the obvious, there is no such thing as a "consulting expert" in the
2  law in Arizona or in this Court – a "consulting expert" on the law necessarily practices law
3  and must be properly authorized.

4  Marquez's unauthorized practice of law has created a substantial burden on this
5  Court sufficient to restrain his ongoing involvement in this case. At its core, Marquez has
6  fraudulently appeared as a *pro se* litigant on this Court's docket, rendering him subject to
7  the Court's judicial authority. See Ready Transp., Inc. v. AAR Mfg., Inc., 627 F.3d 402,
8  404 (9th Cir. 2010) ("It is well established that '[d]istrict courts have inherent power to
9  control their docket.'" (internal citations omitted)). Exploiting his position, Marquez has
10 generated numerous filings that, among other things, patently disregard prior judicial orders
11 proscribing frivolous discovery and motion practice. See, e.g., Ex. V (quashing a subpoena
12 issued on TTC's liability insurance broker in an employment discrimination and wrongful
13 termination case); Ex. W (issuing a substantially similar District Court subpoena on the
14 liability insurance broker days after the Superior Court quashed a similar subpoena); Ex. Y
15 (ordering McBeath shall not have ex parte contact with Defendants' employees or former
16 employees); (Defs. Opp. (Second) Mot. For Prot. Order, Doc. No. 35 (seeking leave in
17 District Court to engage in ex parte communications after the Superior Court denied the
18 request)); (Sec. Am. Compl. (refiling allegations he was admonished to remove by the
19 Superior Court)). As a matter of law, Marquez's disregard for prior judicial orders alone
20 presents sufficient grounds for the Court to exercise its inherent power to sanction and stop
21 his unauthorized practice of law. See Chambers, 501 U.S. at 43 (the Court's "power
22 reaches both conduct before the court and that beyond the court's confines, for "[t]he
23 underlying concern that gave rise to the contempt power was not ... merely the disruption
24 of court proceedings. Rather, it was disobedience to the orders of the judiciary, regardless
25 of whether such disobedience interfered with the conduct of trial." Id. at 44.).

26 Marquez's history as an attorney and blatant disregard for the ethical rules further
27 justifies the exercise of this Court's inherent powers. Marquez's involvement in this case
28 has enabled him to exploit his knowledge of the law without regard to the ethical constraints

00323577.1

attendant to the privilege of practicing law; specifically, candor towards the tribunal. See Model R. Professional Conduct R. 3.3. Among other things, Marquez has refused to correct a false statement of material fact made to the Superior Court when he incorrectly stated Defendants' counsel "declined to meet" with McBeath (see id. at (a)(1)), he has abused the discovery rules by sending numerous frivolous and harassing interrogatories (see id. at (a)(2)), and has consistently offered false evidence supporting the most important set of facts relevant to McBeath's claims – the hiring of Lindsay Welch as Business Development Manager (see id. at (a)(3)). Unlike laypersons who may be unfamiliar with attorneys' obligations to the tribunal, Marquez can claim no such ignorance, and has evaded standard ethical restrictions to accomplish the vexatious and burdensome motion practice in this case.

### C. The Court has inherent authority to impose sanctions against McBeath.

Because McBeath affirmatively employed the counsel of Marquez and has implicitly authorized his conduct throughout the matter, she should be sanctioned for Marquez's vexatious conduct, up to and including dismissal of her claims with prejudice.

"There is strong precedent establishing the inherent power of federal courts to regulate the activities of abusive litigants by imposing carefully tailored restrictions under the appropriate circumstances." De Long v. Hennessey, 912 F.2d 1144, 1147 (9th Cir. 1990) (internal citations omitted). "Under the power of 28 U.S.C. § 1651(a) (1988), enjoining litigants with abusive and lengthy histories is one such form of restriction that the district court may take." Id. (internal citations omitted).

"It is incumbent on the court to make 'substantive findings as to the frivolous or harassing nature of the litigant's actions.'" De Long, 912 F.2d at 1148 (internal citations omitted). "To make such a finding, the district court needs to look at 'both the number and content of the filings as indicia of the frivolousness of the litigant's claims.'" Id. (internal citations omitted). As an alternative to frivolousness, the district court may make an alternative finding that the litigant's filings "show a pattern of harassment." Ringgold-Lockhart v. County of Los Angeles, 761 F.3d 1057, 1064 (9th Cir. 2014).

"The district court has the inherent authority to impose sanctions for bad faith, which

includes a broad range of willful improper conduct." Fink, 239 F.3d at 992. "A finding of bad faith 'does not require that the legal and factual basis for the action prove totally frivolous" but can be supported by a finding a litigant is "substantially motivated by vindictiveness, obduracy, or mala fides" despite the assertion of a colorable claim. Id.

The Court's inherent powers also "include[] the power to strike items from the docket as a sanction for litigation conduct." Ready Transp., Inc., 627 F.3d at 404; see also Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 586–87, 588 (9th Cir.2008). "Indeed, the inherent powers permit a district court to go as far as to dismiss entire actions to rein in abusive conduct." Ready Transp., Inc., 627 F.3d at 404.

### D. McBeath's conduct merits the severest sanction – dismissal.

McBeath's cumulative conduct over the course of one year overwhelmingly establishes that she has employed frivolous litigation tactics in bad faith for the sole purpose of harassing Defendants. McBeath's vindictive motivation appears boldly on the face of her numerous Complaints and is underscored by her hiring of a disbarred attorney with whom she has collaborated to manufacture discovery disputes while misleadingly appearing as *pro se* litigant. That she has filed 19 motions, propounded over 200 discovery requests, generated at least 293[8] documents, and engaged in written correspondence with Defendants' counsel approximately 200 times in slightly more than a year unequivocally establishes that McBeath's singular motivation is to exhaust Defendants financial resources rather than to vindicate her own rights.

Beyond the numbers, the substance of McBeath's actions reflect an indicia of frivolousness and a pattern of harassment. A consistent tactic through McBeath's campaign to exhaust Defendants' legal resources has been to utilize motion practice or the threat of motion practice to exact concessions. For example, McBeath has twice utilized motion practice to demand Defendants waive objections to her discovery demands. McBeath's usage of the judicial process to accomplish an ulterior motivation is, as a matter of law,

---

[8] McBeath's First Set of Interrogatories to Sherry Martin contains the document number 10393.1. Her litigation hold letter sent at the outset of this matter is labeled document number 10100.1. Compare Ex. FF with Ex. C.

1  vexatious bad faith litigation conduct. See In re Itel Sec. Litig., 791 F.2d 672, 675 (9th Cir.
2  1986) (holding that [counsel's] admission that he filed objections to…exact fee concessions
3  in an action pending before another court is alone sufficient to support a finding of bad
4  faith."). Even assuming McBeath's motion practice was proper, McBeath's frivolous and
5  harassing motivations are clearly reflected in her latest set of Interrogatories which, at a
6  minimum, support a finding she is substantially motivated to harass Defendants through the
7  judicial process. See Fink, 239 F.3d at 992 ("A finding of bad faith…can be supported by
8  a finding a litigant is substantially motivated by vindictiveness…").

9  McBeath's anticipated attempt to substantiate her litigation behavior is disingenuous
10 and does not preclude a finding that she is a vexatious litigant. This Court can and should
11 look beyond McBeath's anticipated claim of legitimacy to discern her bad faith motive.
12 See, e.g., Molski v. Evergreen Dynasty Corp., 500 F.3d 1047, 1059 ("while Molski's
13 complaints may have stated a legitimate claim for relief, it was not clearly erroneous for the
14 district court to find that the claims of injury contained in those complaints were patently
15 without merit.") Not only has McBeath admitted to undersigned counsel her intention to
16 exhaust Defendants' legal resources, but her conduct resolves any doubt. Further,
17 immediately following an order restricting her ability to engage in further motion practice
18 in the Superior Court, she tellingly shifted her focus to this Court, propounded subpoenas
19 previously quashed in the Superior Court Case, refiled duplicative motions, and served
20 patently abusive Interrogatories brazenly suggesting she can start anew with her harassment
21 of Defendants. Though McBeath may attempt to legitimize her behavior, her conduct
22 undermines any such claim.

23  **E. McBeath must be sanctioned for propounding harassing Interrogatories.**

24  McBeath's abusive Interrogatories merit Rule 26(g)(3) sanctions irrespective of the
25 Court's decision to sanction McBeath as a vexatious litigant. Rule 26(g)(3) requires:

26  "every discovery request, response, or objection must be signed by…the party
    personally, if unrepresented…[b]y signing, an attorney or party certifies that to the
27  best of the person's knowledge, information, and belief formed after a reasonable
28  inquiry…with respect to a discovery request, response, or objection, it is…consistent

00323577.1

- 15 -

> with these rules and warranted by existing law…not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and…[is] neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action."

Fed. R. Civ. P. 26(g)(1).

"If a certification violates this rule without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer..." Fed. R. Civ. P. 26(g)(3).

McBeath cannot point to any justification, much less a substantial justification, to legitimize her obviously abusive interrogatory requests. McBeath's claims lie in Title VII discrimination, wrongful discharge, breach of employment agreement, and fraudulent/negligent inducement to enter the employment relationship. (See, e.g., Sec. Am. Compl. at pp. 18-27.) None of McBeath's claims require proof of Defendants' counsel's alleged litigation conduct, the Arizona State Bar's complaint mechanisms, or the merits of a legal malpractice action. Nor do TTC's Counterclaims based in breach of employment contract, breach of fiduciary obligations, and violation of the Arizona Trade Secrets Act implicate the facts sought to be discovered by the Interrogatories. Even assuming the Interrogatories are not harassing on their face, which they clearly are, the requests are clearly irrelevant and unduly burdensome as a matter of law – a clear violation of Rule 26(g). See, e.g., RQ Const., Inc. v. Ecolite Concrete U.S.A., 09-CV-2728-BEN WVG, 2010 WL 3069198, at *1 (S.D. Cal. Aug. 4, 2010) ("if the sought-after documents are not relevant, nor calculated to lead to the discovery of admissible evidence, then any burden whatsoever imposed would be by definition 'undue.'").

Simply, there is no justification for these Interrogatories other than to harass Defendants, drive a wedge between them and their counsel, and to needlessly increase the cost of litigation by forcing Defendants to respond to frivolous Interrogatories.

### III. CONCLUSION

Marquez and McBeath do not seek to vindicate McBeath's supposed rights. Rather,

00323577.1

- 16 -

they intend to systematically harass Defendants through the improper use of the judicial process.  Defendants thus request that this Court:

1. Grant Defendants' Motion and set an evidentiary hearing on the earliest date convenient for the Court;

2. Order that McBeath and Marquez appear at the evidentiary hearing to provide testimony;

3. Order that Defendants may serve Marquez by making three attempts to serve him personally at his residence 451 W. Calle Bolita, Sahuarita, Arizona 85629.  If unsuccessful, Defendants may serve Marquez by posting notice on the door of his residence in Sahuarita, Arizona, by e-mailing him at his last known e-mail address, fxm@marquezlegal.com, and by mailing copies of the Motion and Order to Marquez's residence in Arizona and his other known residence – 855 N. 17th Street, San Jose, California 95115.

4. Following the hearing, enjoin Marquez from the unauthorized practice of law in this Court and/or enjoin McBeath from obtaining legal services of any kind from Marquez relating to this action;

5. Provide Defendants with meaningful discovery and procedural mechanisms by which they can confirm Marquez's and/or McBeath's compliance with an injunction;

6. Label McBeath a vexatious litigant, dismiss or strike her pleadings as a sanction, and/or preclude her from filing any further discovery motions unless she engages in an in-person consultation with Defendants' counsel, followed by a telephonic conference with the Court seeking leave to file motions;

7. Sanction McBeath for propounding frivolous and harassing Interrogatories;

8. Award Defendants their taxable costs and attorneys' fees for bringing this motion, appearing and attending the evidentiary hearing, and for fees and costs incurred in furtherance of the relief sought in this Motion; and

9. Grant Defendants any other relief the Court deems appropriate.

00323577.1

RESPECTFULLY SUBMITTED this 26th day of May, 2017.

FARHANG & MEDCOFF

By /s/ Travis L. Tufts
  Ali J. Farhang
  Roberto C. Garcia
  Travis L. Tufts

Attorneys for Defendants / Counterplaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was filed electronically with the Clerk of the United States District Court for the District of Arizona, with notice of case activity generated and sent electronically this 26th day of May, 2017 to:

Melissa Martin McBeath
mel.mcbeath@cox.net

/s/ Lynn Salcido

00323577.1