FARHANG & MEDCOFF
4801 E. Broadway Boulevard, Suite 311
Tucson, Arizona 85711
T: 520.790.5433

Ali J. Farhang (#019456)
afarhang@fmlaw.law

Roberto C. Garcia (#026246)
rgarcia@fmlaw.law

Travis L. Tufts (#029373)
ttufts@fmlaw.law

Attorneys for Defendants / Counterplaintiff

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

Melissa Martin McBeath, an individual,

Plaintiff,

v.

Tucson Tamale Company, an Arizona corporation; Todd Russell Martin, an individual; Sherry Martin, an individual; and Lisa Martin, an individual,

Defendants.

---

Tucson Tamale Company, an Arizona corporation,

Counterplaintiff,

v.

Melissa Martin McBeath and John/Jane Doe Martin McBeath, husband and wife,

Counterdefendants.

NO. CV 16-462-TUC-DCB (BPV)

**REPLY IN SUPPORT OF TTC'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

Assigned to Judge David C. Bury and Hon. Bernardo P. Velasco

In Plaintiff Melissa Martin McBeath's ("McBeath") view, so long as she *claims* she acted within the scope of her employment when she disclosed Counterplaintiff Tucson Tamale Company's ("TTC") Confidential Information,[1] she has raised a genuine issue of material fact sufficient to withstand summary judgment. Simply, the law does not support McBeath's oversimplified view. A non-moving party cannot create a genuine issue of *material fact* relying solely upon her own self-serving, conclusive declarations. Because McBeath relies solely upon her own testimony without reference to any probative evidence supporting her assertions, there is no genuine dispute of material fact: McBeath violated her Confidentiality Agreement ("Agreement") when she disclosed TTC's Confidential Information to her ex-husband Ernesto Chavez ("Chavez").

McBeath unconvincingly devotes the bulk of her Combined Reply and Opposition, Doc. No. 72, ("Opposition") arguing TTC has not suffered any damages. McBeath again failed to produce any evidence supporting her disbelief that TTC diverted its employees' time and its resources away from its business to discover her breach and that the amount it sustained in damages is not readily ascertainable. Because Arizona law expressly provides an award of fees and costs incurred to discover a breach of contract, no genuine issue of material fact precludes a finding that McBeath's breach caused TTC's damages. That TTC has not been able to establish the full extent of its damages at this stage, in large part due to McBeath's refusals to consent to non-party depositions and her supposed "consultants'" refusal to comply with their discovery obligations, does not mean TTC has not established damages.

The mere scintilla of evidence McBeath relies upon to raise a genuine issue of fact is insufficient to overcome a finding she breached her Agreement when she contacted third-parties without authorization, that TTC has incurred damages, and that summary judgment should be entered in TTC's favor.

**A. <u>McBeath waived her right to Reply in support of her Partial Motion for Summary Judgment (Doc. No. 52).</u>**

[1] TTC incorporates the definition of "Confidential Information" found in the Confidentiality Agreement by this reference. (<u>See</u> <u>TTC's Stmnt. Facts</u>, Doc. No. ¶ 13, Ex. D.)

00326694.1

McBeath combined with her Opposition an untimely reply in support of her own Partial Summary Judgment Motion ("PSJM"). McBeath's deadline to file a reply in support of her PSJM was May 11, 2017. (See TTC Combined Opp., Doc. No. 68, April 26, 2017) (served electronically); see also LRCiv. 56.1 (providing 15 days to file a reply); Fed. R. Civ. P. 6(d) (providing no additional time when a party is served electronically). Her Opposition was filed on May 15, 2017 and, therefore, was untimely. Because McBeath's Opposition contains new arguments and case law citations supporting her PSJM related to TTC's trade secrets, because those claims not relevant in TTC's Motion, and because McBeath's filing is untimely, TTC requests the Court disregard arguments supporting McBeath's PSJM.

**B. The undisputed material facts establish McBeath violated the Agreement.**

Though McBeath denies numerous material facts, without basis, the undisputed material facts nonetheless establish she breached the Agreement. McBeath does not dispute that she shared TTC's Confidential Information with Chavez without any obligation imposed by law. (See M. McBeath Resp. to TTC's Stmnt Facts, Doc. No. 72-1, ¶¶ 20-21, 30, 33 (failing to identify evidence she had TTC's written permission to disclose Confidential Information and admitting she was not compelled by law to disclose the information to Chavez). Simply, the plain terms of the agreement prohibited her disclosure. (See Confidentiality Agreement, Doc. No. 69, ¶ 13 at Ex. D (stating "I will not use or disclose to any other person or entity any confidential information or materials (either written or unwritten) except when I am required to do so as required by law." (the Non-Disclosure Provision"))). Nor did McBeath identify any evidence suggesting Defendants waived this provision, apart from the conclusory statement that Defendants consented or knew of her disclosure. (See M. McBeath Resp. to TTC's Stmnt. Facts, Doc. No. 72-1, ¶¶ 20-21, 30, 33.)

McBeath unconvincingly suggests she was entitled to disclose Confidential Information to Chavez in the course of employment, and, because she was acting in the course and scope of her employment, she cannot be liable for breach. Her argument fails

for two primary reasons.

First, McBeath failed to establish she was acting in the scope of her employment when she contacted Chavez. McBeath conclusively suggests she "was a member of TTC's Executive Team," contacted Chavez "while performing her duties as Area Manager, and that "she did not need to obtain anyone's written consent to disclose confidential information to the professionals she consulted…to assist with business-related issues." (See M. McBeath Combined Reply and Opp., Doc. No. 72, 1:15-21; see also Resp. to Counterpl. Stmnt. Facts, ¶¶ 20-21 (conclusively stating she showed Chavez Confidential Information "while performing her duties as Area Manager for TTC.")) Apart from McBeath's statements, the record is completely devoid of any corroborating probative evidence that an Area Manager had *carte blanche* authority to share financial information with unaffiliated third-parties when TTC had its own accountants and experts. Notably absent is any testimony, affidavit, or declaration from Chavez suggesting he understood that McBeath's disclosure came in the course and scope of her employment. Nor does McBeath point to any documentary evidence to suggest she contacted Chavez while performing her duties or that TTC knew she contacted him while performing her duties. Indeed, the only probative evidence unequivocally establishes that TTC and its owners were wholly unaware of McBeath's disclosures and would have prohibited her conduct had they known of it at the time. (See Counterpl. Controverting Stmnt. Facts, Doc. No. 69, at ¶ 29, 32 (Defendants did not authorize McBeath's disclosure of information to Chavez or Gavron either orally or in writing and were not contemporaneously aware of her disclosures.)) McBeath's conclusory statements unsubstantiated by probative evidence cannot, as a matter of law, enable a reasonable jury to find in her favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (a nonmoving party must produce evidence "such that a reasonable jury could return a verdict for the nonmoving party" and cannot overcome summary judgment "without 'any significant probative evidence tending to support the [claim]'" (internal citations omitted); see also Hansen v. United States, 7 F.3d 137, 138 (9th Cir. 1993) (a party "cannot rely on conclusory allegations unsupported by

factual data to create an issue of material fact.”).

Second, McBeath relies upon unpersuasive circumstantial evidence to establish she acted in the course and scope of her employment when she contacted Chavez. Seemingly contradicting McBeath’s longstanding argument that Ehud Gavron (“Gavron”) is her “consulting expert,” McBeath now places her reliance on his declaration to suggest she acted in the course and scope of her employment *when she contacted Chavez*. By virtue of McBeath’s conduct in discovery, Gavron’s declaration should be considered a false declaration.[2] Assuming the truth of Gavron’s assertions, however, the fact McBeath consulted Gavron in the course of her employment does not, by inference and extension, prove that she also contacted Chavez while performing her duties at TTC. See Barnes v. Arden Mayfair, Inc., 759 F.2d 676, 680–81 (9th Cir. 1985) (“A reasonable inference is one which ‘support[s] a viable legal theory…’ which by necessary implication cannot be supported by ‘only threadbare conclusory statements instead of ‘significant probative evidence.’” (internal citations omitted). At best, Gavron’s declaration creates a genuine issue of material fact precluding a finding that McBeath violated the Agreement *when she contacted Gavron*, not Chavez. Because Gavron has no direct knowledge of McBeath’s purpose for contacting Chavez, it would be unreasonable to draw an inference that McBeath always discloses Confidential Information in the course of her employment or

[2] McBeath has taken the position that Gavron is her consulting expert and that Defendants are precluded from discovering evidence from Gavron pursuant to Fed. R. Civ. P. 26(b)(3) and (b)(4). (See, e.g., Pl.’s Motion Protective Order to Shield Experts Consulted Informally, Doc. No. 39.) That she now relies on his declaration is a tacit admission Gavron is a fact witness, not an expert consultant. More importantly, McBeath has steadfastly refused to disclose the full extent of Gavron’s access to TTC’s computer systems and has refused to provide consent to take Gavron’s deposition – a requirement under the Arizona Rules of Civil Procedure. See, e.g., Ex. A, R. Agrawal Letter, Feb. 7, 2017, p.2 (refusing to consent to Gavron’s deposition). That she argues TTC had ample time to discover Gavron’s damaging conduct is overwhelmingly misleading. McBeath’s persistent objection to Defendants’ discovery efforts and refusal to consent to his deposition rendered it impractical to depose Gavron until McBeath’s efforts to shield him from discovery are resolved by the Court. Because McBeath and Gavron have refused to comply with their discovery obligations and have exploited a litigation privilege to evade discovery, the Court should strike his declaration. See Laukus v. Rio Brands, Inc., 292 F.R.D. 485 (N.D. Ohio 2013) (discovery misconduct merited the exercise of the Court’s inherent powers to issue sanctions).

that she was performing her duties when she contacted her ex-husband Chavez.

Simply, McBeath failed to identify any probative evidence apart from her own declarations to preclude summary judgment; she breached the Agreement when she disclosed TTC's Confidential Information to Chavez.

**C. McBeath does not dispute TTC incurred damages as a result of her breach of the Agreement.**

While the full extent of TTC's damages remains unknown and subject to ongoing discovery, McBeath does not rebut or dispute the probative evidence establishing TTC suffered damages as a result of her breach. McBeath concedes "[she] has no personal knowledge regarding" Defendants Todd Russell Martin, Sherry Martin, and Lisa Martin's investigation of McBeath's e-mail account, that the investigation was outside the scope of Defendants' employment, and that the review was undertaken expressly to discover McBeath's breach. (See M. McBeath Resp. to TTC's Stmnt. Facts, ¶¶ 18-19.) Apart from a wholly conclusory statement (see M. McBeath Combined Reply and Opp., 8:4-6), McBeath offers no evidence to suggest Defendants' investigation and the fees and costs attendant to it were unforeseeable. Because Arizona law unequivocally provides for the recovery of foreseeable fees and costs incurred by TTC to discover her breach, there are no genuine issues of fact precluding a finding TTC has been damaged. See Desert Mountain Properties Ltd. P'ship v. Liberty Mut. Fire Ins. Co., 225 Ariz. 194, 209, 236 P.3d 421, 436 (Ct. App. 2010) ("[W]hen one party's breach of contract places the other in a situation that makes it necessary to incur expenses to protect his interest, such costs and expenses, including attorneys' fees, should be treated as the legal consequences of the original wrongful act and may be recovered as damages.").

McBeath has also failed to raise a genuine issue of fact on the amount of damages TTC has incurred. McBeath attempts to diminish the extent of damages by suggesting, on the one hand, "TTC cannot put a monetary value on its ostensible losses," then, one paragraph later, suggesting "[o]nly TTC can determine whether and to what extent it has suffered financial losses." (See id. at 5:1-13.) Fundamentally, McBeath failed to provide

any evidence rebutting the amount of time and money TTC spent investigating McBeath's unauthorized disclosures and cannot, through her own conclusive testimony, dispute the amount of damages sustained. See, e.g., Hansen, 7 F.3d at 138 (conclusory statements do not create a genuine issue of fact). Furthermore, contrary to her assertions, TTC's damages are not speculative, contingent, or unascertainable. (See id. at 2:15-20.) Defendants hourly rates as well as the expenditures incurred to consult their attorneys are unquestionably subject to precise calculation and are expressly recoverable under Arizona law. See, e.g., Desert Mountain Properties Ltd. P'ship, 225 Ariz. at 209, 236 P.3d at 436.

**D. McBeath does not dispute that she violated her fiduciary obligations to TTC.**

McBeath failed to address TTC's argument that no genuine issue of material fact precludes a finding that her conduct vis-à-vis her disclosure of Confidential Information with Chavez and Gavron violated her fiduciary obligations. TTC requests Court enter judgment finding McBeath violated her fiduciary obligations and, for the reasons outlined in Sec. B., *supra*, also find that Defendants have been damaged by McBeath's conduct.

**E. Defendants are entitled to partial summary judgment.**

McBeath unquestionably violated her Agreement and her fiduciary obligations when she admittedly disclosed TTC's Confidential Information to third-party Chavez, without being required to do so by law. Even assuming McBeath's interpretation of the Agreement authorized her to disclose Confidential Information to Chavez while performing her duties at TTC, she nonetheless failed to produce any probative evidence apart from her own conclusory statements to support a finding that she was acting in the course of her employment when she disclosed Confidential Information to Chavez. As a result of her breach, TTC unquestionably sustained recoverable damages and, accordingly, for these reasons as well as those set forth herein and in TTC's Motion for Partial Summary Judgment, TTC requests the Court find McBeath breached the Agreement and that TTC has sustained damages as a result of her breach.

RESPECTFULLY SUBMITTED this 31st day of May, 2017.

FARHANG & MEDCOFF

By /s/Travis L. Tufts
Ali J. Farhang
Roberto C. Garcia
Travis L. Tufts

Attorneys for Defendants / Counterplaintiff

00326694.1

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was filed electronically with the Clerk of the United States District Court for the District of Arizona, with notice of case activity generated and sent electronically this 31st day of May, 2017 to:

Melissa Martin McBeath
3463 E. Terra Alta Blvd.
Tucson, AZ 85716
mel.mcbeath@cox.net

/s/Letitia L. Wright