WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Melissa Martin McBeath, | No. CV-16-00462-TUC-DCB (BPV) |
| Plaintiff, | **ORDER** |
| v. | |
| Tucson Tamale Company, et al., | |
| Defendants. | |
| Tucson Tamale Company, | |
| Counterplaintiff, | |
| v. | |
| Melissa Martin McBeath, and John/Jane Doe Martin McBeath, husband and wife, | |
| Counterdefendants. | |

Pending before the Court are the following discovery-related motions: (1) Plaintiff's two motions seeking protective orders (Docs. 30, 39); (2) Defendant Tucson Tamale Company's Motion to Quash and for Protective Order Protecting Third-Party Koty-Leavitt Insurance Agency from Plaintiff's Subpoena (Doc. 55); and (3) Plaintiff's Motion to Compel (Doc. 70). Although Defendants have requested oral argument, the Court, upon consideration of the parties' extensive briefing of the issues, has determined that oral argument is unnecessary to resolve the instant motions. *See* LRCiv 7.2(f), Local Rules of Practice of the U.S. District Court for the District of Arizona ("The Court may decide motions without oral argument.").

1  ## I.        Introduction

2          On April 15, 2016, Plaintiff filed a pro se[1] complaint in Arizona Superior Court

3  alleging state law claims against Tucson Tamale Company ("TTC"), Todd and Sherry

4  Martin, TTC's co-founders, and Lisa Martin, who works at TTC.   *See* Complaint,

5  *McBeath v. Tucson Tamale Company, et. al.,* No. C20161794 (Arizona Superior Court,

6  Pima County April 15, 2016) ("the state action").[2]  Plaintiff's state claims arose from her

7  employment at TTC and subsequent termination.   (*See Id.*).   TTC filed several

8  counterclaims.  (May 26, 2016 Answer to Verified Complaint and Counterclaims; June

9  13, 2016 Amended Counterclaims *filed in* the state action).

10          While the state litigation was ongoing, Plaintiff filed this pro se action against

11  TTC, alleging employment discrimination in violation of the Age Discrimination in

12  Employment Act, 29 U.S.C. § 631.  (July 11, 2016 Complaint (Doc. 1)).   After TTC

13  unsuccessfully sought to dismiss this action based upon a theory of claim-splitting (*see*

14  Defendant's Motion for Judgment on the Pleadings (Doc. 18); Report and

15  Recommendation (Doc. 29); Order adopting Report and Recommendation (Doc. 31)), the

16  parties agreed that Plaintiff could file a Second Amended Complaint ("SAC") with this

17  Court essentially combining her state and federal claims, and that the state court action

18  would be stayed pending resolution of the federal court action.[3]  (*See* Plaintiff's Notice of

19  Withdrawal of Motion for Leave to Amend the Complaint (Doc. 43); Plaintiff's Notice of

20  Entry of Order Staying Pima County Superior Court Proceedings (Doc. 50)).   Where, as

21  here, the plaintiff wishes to amend the complaint after the time period for amendment

22  allowed by the rules has passed, and the defendant agrees to the amendment, there is no

23  —————————————

24          [1] At some point during the state litigation, Plaintiff obtained counsel.  (*See* TTC's

25  Opposition to Plaintiff's (Second) Motion for a Protective Order (Doc. 35) at 4).

26          [2] Under Rule 201 of the Federal Rules of Evidence, the Court may take judicial notice of court filings and other matters of public record.  *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n. 6 (9th Cir. 2006).

27

28          [3] The state court order staying the matter reflects that the state court will apply principles of res judicata based on "the determinations/resolutions/judgments" in this action.  (Doc. 50 at 3).

need to obtain court approval.  *See*  Fed.R.Civ.P. 15(a)(2).  *See also, American States Ins. Co. v. Dastar Corp.,* 318 F.3d 881, 888 (9th Cir. 2003) (parties who obtain consent to amendment of pleadings need not obtain court approval).

In her Second Amended Complaint ("SAC"), Plaintiff added the Martins as co-defendants and alleges:  (Count One) violation of the Age Discrimination in Employment Act against TTC; (Count Two) national origin, race and ancestry discrimination against TTC; (Count Three) retaliatory discharge against all Defendants; (Count Four) fraud against all Defendants; (Count Five) negligent misrepresentation against all defendants; (Count Six) failure to pay earned wages against TTC; (Count Seven) breach of employment agreement against TTC;  and (Count Eight) restitution/unjust enrichment against all defendants.  (SAC (Doc. 44)).

TTC has filed the following counter claims: (Count I) breach of contract; (Count II) violation of the Arizona Uniform Trade Secrets Act, A.R.S. § 44-401, *et seq.*; (Count III) breach of fiduciary duty; (Count IV) violation of the Stored Communications Act, 18 U.S.C. §§ 2510, 2711; (Count V) civil conspiracy; and (Count VI) Aiding and Abetting.[4] (Defendants' Answer to SAC and Counterclaims (Doc. 45)).

The Court has thoroughly reviewed the parties' briefs together with the voluminous exhibits in support of same that reflect in great detail the factual and procedural path of the parties' discovery efforts and issues.

## II.   The pending discovery-related motions

### A.   Plaintiff's "Motion for a Protective Order that Protects Defendant's Employees from Intimidation and Declares that Plaintiff may have Ex Parte Contact with Them" (Doc. 30) (all capitalization omitted).

Plaintiff requests a protective order that:  (1) will shield TTC's employees "from harassment, intimidation and retaliatory adverse actions for speaking with [her]"[5]; and (2)

---

[4] TTC's counterclaims alleged here are essentially the same as those alleged in the state action.

[5] Plaintiff submits her declaration statement that she is "informed and believe[s] that TTC has threatened at least one of its employees not to speak with me regarding my

"declares that she, as a pro se litigant, may have *ex parte* contact with TTC's employees." (Doc. 30 at 2[6]).  According to Plaintiff, "TTC has threatened [her] with sanctions if she contacts TTC's current and former employees."  (*Id.*).  Although Plaintiff does not identify the employees whom she wishes to contact by name, she refers to them as "witnesses" who are not "officers", "directors", or "managing agents".  (*Id.* at 3). Plaintiff also requests permission for her attorney, should she retain counsel in the future, to speak with current and former TTC employees outside the presence of defense counsel.  (*Id.* at 4).

TTC contests Plaintiff's motion for a variety of reasons, including that the state court denied essentially the same motion.[7]  TTC goes on to state that defense counsel has "met with these general managers for purposes of securing legal advice in connection with both the Superior Court Matter and the underlying matter[,]" although TTC has not identified the general managers.  (Doc. 35 at 10).  TTC also asserts that defense counsel "has had various communications regarding this case with TTC and each of the employees with which McBeath seeks to communicate."  (*Id.* at 11).  TTC has offered "to allow [Plaintiff] to record informal conversations in the presence of [defense] counsel so that she could save money taking depositions."  (*Id.* at 11 and Exh. H).  However, Plaintiff rejected this offer because she felt defense counsel's presence would disrupt the free flow of conversation.  (*Id.*).

case."  (Doc. 30 at 8, ¶3).

[6] Unless otherwise noted, page citations to documents filed with the Court refer to the page numbers assigned to the document by the Court's electronic filing system ("CM/ECF").

[7] Plaintiff advanced essentially the same motion in state court.  (*See* Doc. 35 at 6 and Exh. D)).  The state court ruled that "plaintiff may not have contact with TTC's employees or former employees except through defense counsel."  (Doc. 35, Exh. F (the state court's order also reflects that Plaintiff was represented by counsel when the court entered this ruling)).  Although TTC contends that the doctrine of issue preclusion bars relitigation of this issue (*see* Doc. 35 at 6-7), that is not the case in light of the fact that the state action has not "ended with a final judgment on the merits" which is required for issue preclusion to apply.  *See Reyn's Pasta Bella, LLC*, 442 F.3d at 746 (citation omitted).  Additionally, TTC's request that the court abstain from ruling on the motion in light of then on-going state litigation (*see* Doc. 35 at 7-8) is moot given that the state court litigation is now stayed pending resolution of this action.

Plaintiff frames her request as a motion for a protective order.  Under Rule 26(c) of the Federal Rules of Civil Procedure, in pertinent part:  "A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending. . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Fed.R.Civ.P. 26(c)(1).  "A party asserting good cause bears the burden, for each particular [item] it seeks to protect, of showing that specific prejudice or harm will result if no protective order is granted." *Foltz v. State Farm Mut. Auto Ins. Co.,* 331 F.3d 1122, 1130 (9th Cir. 2003) (citation omitted); *see also Beckman Indus., Inc. v. Int'l Ins. Co.,* 966 F.2d 470, 476 (9th Cir. 1992) ("[B]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test.") (internal quotation marks and citation omitted).  The district court should "identify and discuss the factors it considered in its 'good cause' examination to allow appellate review of the exercise of its discretion." *Foltz,* 331 F.3d at 1130 (citation omitted).

Here, Plaintiff is not subject to a discovery request.  Instead, she is the party desiring to question others.  Consequently, Plaintiff has not shown that she is entitled to a protective order.  To some extent, TTC's response may be construed as a request for a protective order in that TTC seeks to prevent Plaintiff from speaking to "general managers and employees."  (Doc. 35 at 9-11).  Although TTC indicates that defense counsel "has had various communications regarding this case with . . . each of the employees" Plaintiff wishes to interview (*Id.* at 11), TTC has not suggested that the present and former non-managerial employees play any role other than as potential percipient witnesses.

The Arizona Rules of Professional Conduct "apply to attorneys admitted or otherwise authorized to practice before the United States District Court for the District of Arizona." LRCiv. 83.2(e). Arizona Rule of Professional Conduct 4.2 ("ER 4.2") provides:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by

- 5 -

another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

As the parties have acknowledged (*see* Doc. 30 at 2-3; Doc. 35 at 6), "[t]he prohibition is intended to (1) prevent unprincipled attorneys from exploiting the disparity in legal skills between attorneys and lay people, (2) preserve the integrity of the attorney-client relationship, (3) help to prevent the inadvertent disclosure of privileged information, and (4) facilitate settlement." *Lang v. Superior Court*, 170 Ariz. 602, 604, 826 P.2d 1228, 1230 (Ariz. Ct. App. 1992).  "Where an organization is involved, Rule 4.2 prohibits attorneys from communicating with three groups of individuals: '(1) those having a managerial responsibility on behalf of the organization; (2) any person whose act or omission in connection with the matter may be imputed to the organization; and (3) any person whose statement may constitute an admission[8] on the part of the organization.'"  *Dream Team Holdings, LLC v. Alacron,* 2016 WL 5408318, at *2 (D. Ariz. Sept. 28, 2016) (quoting *Lang* 170 Ariz. at 604-05, 826 P.2d at 1230-31).  "Importantly, this ethical obligation is triggered if the statement of the employee 'might' be admissible—it need not be demonstrated that the statement is, in fact, admissible." *Id.* (quoting *State ex re. Ariz. Dept. of Health Servs. v. Gottsfield*, 146 P.3d 574, 577 (Ariz. Ct. App. 2006)); *see also Kaiser v. AT&T,* 2002 WL 1362054 (D. Ariz. April 5, 2002) (restricting ex-parte access to high ranking former employees).  After *Lang* was decided, the Arizona State Bar issued an ethics opinion recognizing in pertinent part, that whether the testimony of the current (or former) employee may be detrimental to the employer (or former employer) is not determinative.  State Bar of Arizona Ethics Opinion No. 95-07 (1995).

The "district court 'has wide latitude in controlling discovery, and its rulings will not be overturned in absence of a clear abuse of discretion.'"  *Lane v. Dep't of Interior*, 523 F.3d 1128, 1134 (9th Cir. 2008) (quoting *White v. City of San Diego,* 605 F.2d 455,

---

[8] Rule 801(d)(2)(D) of the Federal Rules of Evidence exempts from the hearsay rules statements "made by the party's agent or employee on a matter within the scope of that relationship and while it existed[.]"

461 (9th Cir.1979)); *see also Little v. City of Seattle,* 863 F.2d 681, 685 (9th Cir. 1988) (same). Although the parties have presented no Arizona authority to support the contention that Plaintiff, who is unrepresented, is bound by the ethical rules that govern attorneys, the policy reasons advanced by the promulgation of ER 4.2 support extension of the parameters of the Rule to this case.

In light of the applicable authority discussed *supra,* Plaintiff shall not be permitted to speak to TTC's current and former general managers outside the presence of defense counsel.  Plaintiff may speak outside the presence of defense counsel to other TTC former and current employees who are not or were not employed in a managerial or supervisory capacity; however, to do so, Plaintiff or any investigative representative must inform the employee or former employee at the beginning of any contact:

> (1)  of Plaintiff's reason for seeking the interview;
>
> (2)  the right of the employee or former employee to refuse the interview as there is no legal obligation to consent to the informal interview; and
>
> (3)  the right of the employee or former employee to have counsel of his or her choice present during the interview.

Plaintiff is advised that should she fail to abide by this Order, Defendants may file an appropriate motion requesting to preclude such testimony and/or other information gained from the communication and may request any other sanctions they deem are in order.

Plaintiff's request for permission for future counsel she may retain to speak *ex parte* with TTC employees is denied as premature.  Plaintiff's request to protect any employees who choose to speak with her from intimidation by Defendants does not appear to fall within the realm of a protective order.  Moreover, even if it did, Plaintiff's declaration (*see* Doc. 30 at 8) fails to provide a sufficient evidentiary basis as to why such protection would be required.

**B.**      **Plaintiff's Motion for a Protective Order to Shield Experts Consulted Informally (Doc. 39)**

Plaintiff requests that the Court order TTC:  (1) to cease all efforts to identify any experts she has or is consulting informally; (2) cease all efforts to discover the nature and content of the advice/services provided by these experts; and (3) neither mention nor comment on individuals in court filings whom Plaintiff has indicated she has consulted or may be consulting informally.  (Doc. 39 at 2).

Plaintiff's motion concerns Francisco Marquez and Ehud Gavron, and it appears that TTC has issued at least one subpoena duces tecum directed to Gavron.  (*See* Doc. 48, Exhs. 12, 13).

TTC's theory is that Plaintiff disclosed to Gavron and Marquez "TTC's protected information in violation of her employment duties and contractual obligations." (Defendants' Opposition to Plaintiff's Motion for a Protective Order to Shield Experts Informally Consulted (Doc. 48 at 2)).  TTC references both men in its First Supplemental Disclosure Statement filed with this Court.  (*See* Doc. 48, Exh. 4 at ¶¶7, 8).  According to TTC:

> Mr. Marquez is a disbarred California attorney who, upon information and belief, is providing legal services and advice to McBeath without a license, coordinated with McBeath before the lawsuit to obtain relevant information to build a case against TTC, is in possession of protected confidential information belonging to TTC that McBeath provided to him without authorization, and who is aware of the facts and legal theories raised in Plaintiff's Complaint.  He is expected to testify regarding his knowledge of the subject lawsuit, the facts and circumstances surrounding the events that occurred before the filing of this lawsuit, TTC's confidential information obtained in his possession, actions taken by him in collaboration with Plaintiff, any communications with Plaintiff or Defendant, or any witnesses with knowledge of the disputed facts. . . . Mr. Marquez may provide foundation for the admission of evidence, as necessary.

(*Id.* at 7) (emphasis omitted).

TTC identifies Gavron as "a friend of the Plaintiff and one of the individuals [sic] McBeath disclosed TTC's confidential information."  (*Id* at ¶8).  TTC anticipates that Gavron will provide testimony along the same lines as TTC expects from Marquez.  (*Id.*).

According to TTC, over the course of Plaintiff's employment at TTC, Plaintiff sent Gavron over 100 e-mails.  (Doc. 48 at 4).  Further according to TTC, Plaintiff violated her confidentiality agreement when she sent Gavron information to access TTC's Revel Point of Sale system where TTC stores its business operational data."  (*Id.* at 5 (citing Doc. 48, Exh. 6 (October 21, 2015 e-mail from Plaintiff to Gavron))).  Defendants also assert that Plaintiff sought advice from Gavron to circumvent mandatory liquor license training, one of her alleged improper acts forming the basis of Defendants' affirmative defense based on after-acquired evidence of wrongful acts.  (*Id.* at 6 (citing Doc. 48, Exh. 8 (Aug. 12 2015 e-mail from Plaintiff to Gavron))).  According to Defendants, when Plaintiff sent these e-mails, the factual basis supporting her claim of wrongful termination had not occurred.  (*Id.*).

Plaintiff has not disclosed either Gavron or Marquez as experts whom she intends to call to testify at trial.  (*See* Plaintiff's Reply (Doc. 58 at 4, 7)).  Gavron has stated that he is Plaintiff's friend and assists her in her lawsuit as her friend.  (Doc. 48, Ex. 9).  In addition to providing "generic legal information…direct[ing] [Plaintiff] to resources where she may find more information, . . ." Gavron, who has worked as a "computer expert", is a providing free assistance to Plaintiff "as a computer technology consulting expert."  (*Id.* (Letter written sometime between October 14, 2016 and November 4, 2016)).  He does not expect to testify at trial.  (*Id.; see id.* (Gavron also helps Plaintiff by proofreading documents for accurate grammar, spelling, and punctuation)).  According to Defendants, Plaintiff claimed in state court that Gavron was acting as a consultant regarding TTC's counterclaims arising under the Stored Communication Act ("SCA").  (Doc. 48 at 8).

Plaintiff does not dispute that TTC may discover Gavron's "personal knowledge of any material facts at issue in this case that predate his retention as an expert[,]" although she fails to identify the date and circumstances of his retention.  (Doc. 58 at 2).  Additionally, Defendants are clear that they "do not seek information relating to the narrow scope of [Gavron's] purported expertise. . . . Defendants do not seek discovery on

any such after-the-fact-, narrowly-construed consultation and advice [re the SCA]. Defendants do, however, seek discovery on all other aspects of interaction between Gavron and McBeath, including her underlying conduct, in which Gavron participated, violative of the SCA including, without limit, her dissemination and disclosure of TTC's legally and contractually protected information to various third-parties not authorized to receive said information."  (Doc. 48 at 8).

Rule 26(b)(4)(D) of the Federal Rules of Civil Procedure governs disclosures from experts who are employed for trial preparation but are not expected to testify:

> Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial. But a party may do so only:
>> (i) as provided in Rule 35(b); or
>> (ii) on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means.

In pertinent part, the advisory committee notes to the rule reflect that:

> It should be noted that the subdivision does not address itself to the expert whose information was not acquired in preparation for trial but rather because he was an actor or viewer with respect to transactions or occurrences that are part of the subject matter of the lawsuit. Such an expert should be treated as an ordinary witness.

Fed.R.Civ.P. 26(b)(4)(D) advisory committee's note to 1970 amendment.

Rule 26(b)(4)(D) "'creates a safe harbor whereby facts and opinions of non[-]testifying, consulting experts are shielded from discovery, except upon a showing of exceptional circumstances.'"  *U.S. Inspection Servs., Inc. v. NL Engineered Solutions, LLC,* 268 F.R.D. 614, 617 (N.D. Cal. 2010) (quoting *Plymovent Corp. v. Air Tech. Solutions, Inc.,* 243 F.R.D. 139, 143 (D. N.J. 2007)).  Plaintiff, as the party asserting the protection of Rule 26(b)(4)(D), "bears the initial burden of showing that the protection applies." *Id.*  Once Plaintiff has met that burden, Defendants "carr[y] a heavy burden of proving the existence of exceptional circumstances." *Id.*  Courts may find exceptional circumstances to justify discovery under Rule 26(b)(4)(D) when it is impracticable for the

party seeking discovery to obtain facts or opinions on the same subject by any other means; the object or condition at issue is destroyed or has deteriorated after the non-testifying expert observed it but before the moving party's expert has an opportunity to observe it; or when it is possible to replicate the non-testifying expert's discovery, but the costs would be judicially prohibitive. *See Id.; Higher One, Inc. v. Touchnet Information Sys.,* 298 F.R.D. 82 86-87 (W.D.N.Y. Feb. 24, 2014).

According to Plaintiff, Rule 26(b)(4)(D) prevents TTC from inquiring "into the nature and scope of the services Gavron is providing as a non-testifying expert helping McBeath prepare for trial.  Rule 26(b)(4)(d) shields the disclosure of specified information about non-witness experts retained or employed in anticipation of litigation or preparation for trial." (Doc. 58 at 3).  Although Plaintiff goes on to argue that the Rule also precludes discovery directed at experts who are "informally consulted in preparation for trial, but not retained or specially employed[]" (*id.*) (citation omitted), Plaintiff has not suggested that Gavron or Marquez fall within that category.

Factors for consideration when determining the status of an expert can include: (1) the manner in which the consultation was initiated; (2) the nature, type and extent of information or material provided to, or determined by, the expert in connection with his review; (3) the duration and intensity of the consultative relationship; (4) the terms of the consultation, if any (e.g., payment, confidentiality of test data or opinions, etc.); and (5) any other relevant factors.  *See e.g. Ager v. Jane C. Stormont Hosp. and Training Sch. for Nurses,* 622 F.2d 496, 501 (10th Cir. 1980).  Plaintiff is clear that she has retained Gavron.  (*See* Doc. 58 at 3; *see also* Doc. 48, Exh. 9 (Gavron states that he is assisting Plaintiff as a computer technology expert "pro bono")).  Plaintiff provides this Court with little information about the scope of Gavron's consultation.  The record supports the conclusion that this is an ongoing relationship.  The record also supports the conclusion that Gavron's claimed expertise is sought with regard to Defendants' counterclaim alleging violation of the SCA.  (*See* Doc. 48 at 8 and Exh. 13 at internal page 4 (Doc. 48-

1 at 58) (parties' agreement regarding Gavron's disclosures referenced counterclaim involving the SCA)).

As to Defendants' claim that a misdirected e-mail that Gavron intended for Plaintiff and Marquez in June 2016 but sent to TTC[9] waived any privilege, Defendants have the burden of establishing waiver. *U.S. Inspection Servs., Inc,* 268 F.R.D. at 617-18. Defendants' reliance on waiver is questionable given that "some courts have reasoned that waiver does not apply to Rule 26(b)(4)(B)[10] because it is rooted in the fairness doctrine and is not a species of work product." *Id.* at 625 (citing *Vangaurd Savings & Loan Ass'n.,* 1995 WL 71293, at *2; *Ludwig v. Pilkington N. Amer. Inc.,* 2003 WL 22242224, at *3 (N.D. Ill. Sept. 29, 2003); *see also* Fed.R.Civ.P. 26 advisory committee's note to 1970 amendment (the drafters "reject[ed] as ill-considered the decisions which have sought to bring expert information within the work-product doctrine" and instead "adopt[ed] a form of the more recently developed doctrine of 'unfairness.'"). In any event, there is simply no basis on which to conclude that the message conveyed in the e-mail had any relation to Gavron's claimed expertise on computer technology issues related to the SCA claim. Instead, the e-mail, at best, consisted of communication about coordinating efforts to edit documents and track litigation-related deadlines, all of which do not appear to have anything to do with

---

[9] The June 27, 2016 misdirected e-mail from Gavron to Marquez and Plaintiff reads:

> 6/13 we received the RFAs but not the UIs. Calendar spreadsheet shows UIs.
>
> I don't want to "edit this out from under you" so please advise if in the future if we see something like this to correct it or TELL YOU so you can correct it.
>
> Also, they are late. All inters due 6/24 and there's no way they snail-mailed them [because to effect Rule 4 service they'd have to Certified/Registered return-receipt…and that obviates the agreement to electronic service]

(Doc. 48, Exh. 10). Plaintiff has requested defense counsel to destroy the e-mail. (*See* Doc. 58 at 6-7).

[10] The Rule was later renumbered to 26(b)(4)(D). *See* Fed.R.Civ.P. 26 advisory committee's note to 2010 amendment.

Gavron's opinions relating to the SCA claim.  *See e.g. U.S. Inspection Servs, Inc.* 268 F.R.D. at 625 (collecting cases declining to extend waiver to undisclosed portions of a non-testifying expert's reports and to all other documents involving the same subject matter).  The Court declines to find a waiver in this circumstance.  Likewise, for these same reasons, Plaintiff has failed to establish any reason why fairness or issues of privilege would require that the document be stricken from the record as Plaintiff requests.

While it is debatable whether on the instant record Plaintiff has carried her burden in the first instance to show that Gavron falls within the protection of Rule 26(B)(4)(D), Defendants make clear that they do not seek to discover facts known or opinions held by Gavron with regard to the SCA counterclaim.  (Doc. 48 at 8).  That counterclaim was filed in state court in May 2016. Defendants have provided substantiated reasons, including e-mail exchanges between Plaintiff and Gavron occurring during Plaintiff's employment, supporting the conclusion that Gavron may have discoverable information relating to this action.  Discovery may be obtained from "a non-testifying expert concerning matters that pre-date his retention by the opposing party, 'like an ordinary witness,' subject to the relevancy requirements and any privileges that may apply." *Higher One Inc.* 298 F.R.D. at 87 (citing *Millsaps v. Aluminum Co. of Amer.,* MDL No. 875, EDPA Civil No. 10-84924, 2012 WL 203458 at *2 (E.D.Pa. Jan. 24, 2012)).  The record reflects that in the state case, Plaintiff agreed to permit Gavron to make disclosures of information "throughout the entire relevant period both before and after the filing of the [SCA] claims[,]" subject to the ability to withhold privileged information reflected in a privilege log.  (Doc. 48, Exh. 13 at internal page 4 (Doc. 48-1 at 58)).  Defendants have represented to this Court that they do not seek facts known or opinions held by from Gavron in anticipation of litigation of the SCA claim.

Accordingly, Plaintiff's Motion with regard to Gavron is granted in part and denied in part.  The motion is granted to the extent that Defendants may not seek discovery from Gavron related to facts known or opinions held by him with regard to the

1   SCA claim after May 26, 2016.[11]  If Plaintiff believes that Defendants have treaded into

2   an area in which she claims a privilege exists with regard to the SCA claim, Plaintiff and

3   Gavron shall withhold the information Plaintiff contends is protected and Plaintiff shall

4   provide a privilege log.  The Motion is denied in all other respects.

5         With regard to Marquez, the record reflects that he is not a licensed attorney and,

6   therefore, the attorney-client privilege does not apply.  As Defendants point out, at best,

7   Marquez is a legal document preparer to whom the attorney-client privilege does not

8   apply.  (Doc. 48 at 10 (citing A.R.S. §7-208)).  Plaintiff has provided no basis on which

9   to believe Marquez is acting as an expert with regard to any matter in this case.  Because

10  Plaintiff has failed to establish that Marquez qualifies for the protections of Rule

11  26(b)(4)(D), Plaintiff's motion is denied in its entirety with regard to Marquez.

12        Plaintiff also argues that Defendants should not be permitted to refer to Marquez

13  or Gavron by name in court filings.  Because not all of Gavron's participation in this

14  action is as a non-testifying expert witness and because Marquez does not fall under the

15  Rule's protection at all, the request is denied.  Moreover, even if the Rule applied, it is

16  unlikely that such relief would be permissible in light of Ninth Circuit authority that Rule

17  26(b)(4)(D) "does not prevent disclosure of the identity of a nontestifying expert, but

18  only 'facts known or opinions held' by such an expert."  *Ibrahim v. Dep't of Homeland*

19  *Sec.,* 669 F.3d 983, 999 (9th Cir. 2012).  *Cf. Wreal LLC v. Amazon.com, Inc.,* 2014 WL

20  12160650, at *4 (S.D. Fla. Nov. 14, 2014) ("Not only have several courts concluded that

21  the identity of a non-testifying expert is not automatically off limits, but a very recent

22  article in the ABA's Litigation News, entitled 'Your Opponent Can Discover Your

23  Experts' noted the case law permitting the discovery . . . .").

24       **C.**    **Defendants' Motion to Quash and for Protective Order Protecting**

25  **Third Party Koty-Leavitt Insurance Agency from Plaintiff's Subpoena (Doc. 55)**

26        Defendants seek to quash Plaintiff's subpoena directed to TTC's insurance broker

27  

28       [11] The disclosure ordered here shall include Gavron's disclosure made pursuant to
the state court's August 15, 2016 Order.  (*See* Doc. 48, Exh. 13).

Koty-Leavitt Insurance Agency ("Koty-Leavitt").  The briefs and accompanying exhibits reflect in great detail the parties' attempts to resolve this dispute informally.

Under Rule 45(d)(3), a party may move to quash or modify a subpoena if, among other things, it requires the disclosure of "privileged or other protected matter, if no exception or waiver applies[]" or "subjects a person to undue burden."  Fed.R.Civ.P. 45(d)(3)(A)(iii),(iv).  "A party has standing to challenge a subpoena served on another entity only if the party can show it has a personal right or privilege regarding the subject matter of the subpoena." *Blotzer v. L-3 Communications Corp.,* 287 F.R.D. 507, 509 (D. Ariz. 2012) (citing *Delta Mechanical, Inc. v. Garden City Group, Inc.,* 2010 WL 2609057, at *2 (D. Ariz. 2010) (third party had standing to object based on attorney-client and work-product privileges)).  Discovery may be denied or narrowly tailored to balance the needs of the case against a party's reasonable expectations of privacy.  *RQ Construction, Inc. v. Ecolite Concrete U.S.A.,* 2010 WL 3069198, at *1 (S.D. Cal. Aug. 4, 2010).

Defendants contend that Plaintiff seeks irrelevant information and privileged communications, and that her request is overbroad.   As to relevance, Defendants stress that Defendants' liability insurance is not relevant to any of the claims at issue.  Rule 26(a)(1)(A)(iv) requires initial disclosure only regarding "any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment." Affirmative obligations to disclose insurance coverage serve the purpose of providing each party the opportunity to make a realistic appraisal of the case so that settlement and litigation are based on knowledge, not speculation.  *See* Fed.R.Civ.P. 26, advisory committee's notes to 1970 amendment to subd.(b)(2).  Defendants represent that their disclosure in the state action included "a copy of their employment practices liability insurance policy."  (Doc. 55 at 3).

The record reflects that Defendants discussed the subpoena with Plaintiff and that Plaintiff "agreed to a reasonable mechanism to alleviate Defendants' concerns and avoid

- 15 -

motion practice."   (Doc. 55 at 4).   Plaintiff then notified Koty-Leavitt about the agreement, adding that TTC would "cover your costs" and that she would pick up the documents from Koty-Leavitt on March 30, 2017 –two points not discussed and/or agreed upon by defense counsel.  (*Id.*; Doc. 55, Exhs. 10, 11)).  Also, at some point, due to the volume of documents, Plaintiff agreed to narrow request number 4 to TTC's employment practices liability policy, and Koty-Leavitt apparently produced the documents to defense counsel.  (Doc. 55 at 5 (citing Doc. 55, Exh. 12)).  On March 29, 2017, defense counsel informed Plaintiff that although efforts were underway to locate the documents, they had not agreed to a March 30th deadline and that more time was required.  (Doc. 55, Exh. 12).  Plaintiff allowed one additional day for defense counsel's privilege review.  (Doc. 55, Exh. 13).  Defendants then filed the instant motion.

Plaintiff argues that defense counsel should not be able to renege on their agreement just because she did not agree to an additional five calendar days for him to "conduct a simple privilege review of the documents."   (Plaintiff's Opposition to Defendant's Motion to Quash Subpoena Served on Koty-Leavitt Insurance Agency, Inc., and for a Protective Order (Doc. 59 at 7)).  She urges the Court to enforce the mechanism they agreed upon:  defense counsel can review the documents and provide a privilege log of the documents he wishes to omit from production.  (*Id.*).  Plaintiff stresses that she is not seeking documents that related to Defendants' insurance decisions, "but rather that are relevant to her employment claims and are therefore otherwise discoverable under the federal discovery rules."  (*Id.* at 8).

Because the subpoena potentially seeks privileged materials as outlined by Defendants, Defendants have standing to object.  *See Blotzer,* 287 F.R.D. at 509.  The record reflects that the parties initially reached an agreement as to disclosure.  Plaintiff then informed Koty-Leavitt of additional terms to which defense counsel did not agree. It also appears that Plaintiff refused to allow defense counsel adequate time to review the documents.  While the Court acknowledges defense counsel's frustration with Plaintiff's conduct and her apparent lack of awareness or appreciation of practice demands on

defense counsel's time including that required to conduct the necessary privilege review, the Court declines at this point to sanction Plaintiff by excusing Defendants from complying with the previously agreed-upon mechanism for disclosure.   Defendants' Motion is denied to the extent that Plaintiff's agreement to limit the scope of Request Number 4 shall remain in effect and Defendant shall be required to comply with the mechanism set out for disclosure in Plaintiff's March 23, 2017 Letter at Doc. 55, Exh. 9 (Doc. 55-1 at 47).  Defendants shall have 60 days to comply with this Order.  The motion is granted in that the subpoena is quashed to the extent that Plaintiff seeks information that the parties previously agreed would not be disclosed.   Nonetheless, the Court is greatly concerned by Plaintiff's communication to Koty-Leavitt of additional terms to those agreed upon by defense counsel, as well as her failure to provide defense counsel reasonable time to respond to her proposed terms for informal resolution of discovery issues.  (*See* Doc. 55 at 5).  Plaintiff is advised that any similar conduct in the future will likely result in sanctions.

**D.     Plaintiff's Motion to Compel Defendants: (1) to give their consent to Google to produce responsive e-mails; (2) to allow Shawn Kaylor to produce responsive e-mails; (3) to destroy documents obtained from Plaintiff's prior employer; and (4) to narrow subpoena served on Glenn Murphy (Doc. 70)**

**1.     Google Subpoena**

Plaintiff requests that the Court compel the Martins to consent to allow Google to conduct limited searches of their TTC e-mail accounts.  (Doc. 70 at 2-3).  The consent forms prepared for the Martins' signatures authorizes Google to release to defense counsel "all e-mails I sent from, and all e-mails I received into, my Gmail account that are responsive to the attached subpoena duces tecum issued by my attorney to Google, Inc." (Doc. 70, Exh. D).  Plaintiff's proposed subpoena is for e-mail accounts belonging to Todd, Sherry and Lisa Martin at TTC, including where each address appears in the "to", "from", "cc" or "bcc" fields.  (*Id.*)  The proposed search includes: all e-mails where any of the Martins' e-mail addresses appear in the "from", "to", "cc" and "bcc" fields that

mention that mention variations of Plaintiff's name and were sent from January 1, 2015 to April 12, 2016; and would include e-mails deleted by the user and any attached documents.  (*Id.*).  The subpoena directs Google to provide the e-mails as separate mbox[12] files to defense counsel and the corresponding user.[13]  (*Id.*).  Plaintiff contests Defendants' standing to object to the subpoena.

There is a view that even if the Court could compel Defendants to consent to the disclosure of e-mails, the provider would still only be permitted, but not required, to turn over the contents under the SCA.  *See e.g. Schweickert v. Hunts Point Ventures, Inc.*, 2014 WL 6886630, at *13 (W.D. Wash. Dec. 4, 2014) (citing SCA, in addition to other reasons, for quashing subpoenas directed to Apple and Google for e-mails). *See also* 18 U.S.C. § 2702(b)(3) (a provider "*may* divulge the contents of a communication" with the "lawful consent of the originator or an addressee or intended recipient of such communication . . . .") (emphasis added).  In any event, the Court must limit the extent of discovery if it "can be obtained from some other source that is more convenient . . . ." Fed.R.Civ.P. 26(b)(2)(C)(i).  In exercising discretion whether to grant or deny a motion to compel, the Court may limit discovery under Rule 26(b). *See Trunk v. City of San Diego,* 2007 WL 1110715, at *7 (S.D. Cal. Apr. 2, 2007).   Given Defendants' representation that they can produce the e-mails in Plaintiff's requested format (*see* Doc. 71 at 6), it appears that the requested e-mails are best obtained from Defendants in the first instance.

Accordingly, Plaintiff's Motion to Compel Defendants to give their consent to Google to produce responsive e-mails is granted in part and denied in part.  The Motion is granted to the extent that Defendants are directed to produce the requested e-mails following the search directives set out in Plaintiff's exhibit A attached to her proposed

---

[12] Mbox files contain details and contents of the exported messages.  *See* https://support.google.com/vault/answer/6099459?hl=en. (last visited on July 20, 2017).

[13] The subpoena and consent forms attached to Plaintiff's Motion (Doc. 70, Exh. D) moots Defendants' argument that Plaintiff fails to identify the parameters of the search she wishes performed.  (*See* Defendant's Opposition to Plaintiff's Motion to Compel (Doc. 71 at 3 n.3)).

1    subpoena for Google (*see* Doc. 70, Exh. D (Doc. 70-1 at 24)), subject to privilege review.

2    Defendants shall maintain a privilege log for any documents they claim are privileged.

3    Defendants are granted 60 days to comply with this Order.  Plaintiff's Motion is denied to

4    the extent that she seeks an order compelling the Martin Defendants to consent to Google

5    performing the requested searches.

6                    **2.    Shawn Kaylor**

7    Plaintiff served a subpoena duces tecum on TTC employee Shawn Kaylor

8    requesting documents, including e-mails in their native form exported using mbox, that:

9    (1) relate to communications between Kaylor and Sherry Martin, Lisa Martin, Todd

10   Martin, or Lindsay Welsh that relate to Plaintiff since January 2015; and (2) relate to

11   communications between Kaylor and any third party that does not work with TTC that

12   relate to Plaintiff since January 2015.   (Doc. 70, Exh. C).   Plaintiff argues that

13   Defendants' objection is untimely.

14   Defendants argue that the e-mails are in the control of TTC, not Kaylor.  (Doc. 71

15   at 11). Defendants also assert that there is no issue regarding timeliness of the objection

16   given that TTC did not need to object because Kaylor did not possess private,

17   confidential information outside the scope of employment.  (*Id.*).

18   Under Rule 45, a party who is subject to a subpoena may be directed through the

19   subpoena to, among other things, "produce designated documents, electronically stored

20   information, or tangible things in that person's possession, custody, or control[.]"[14]

21   Fed.R.Civ.P. 45(a)(1)(A)(iii).  *See* Charles Alan Wright and Arthur R. Miller, 9A *Federal*

22   *Practice and Procedure*[15] § 2452 (2008 & Supp.) ("[A] subpoena is necessary to compel

23   someone who is not a party . . . for the production of various material things or electronic

---

[14] While Rule 45 addresses obtaining documents in the "possession, custody, or control" of a non-party, Rule 34 addresses obtaining documents in the "possession, custody, or control" of a party.  *See Kissinger v. Reporters Committee for Freedom of the Press,* 445 U.S. 136, 164 (1980) (J. Stevens concurring in part and dissenting in part).  The same standard applies to both Rules.  *Id.* (citing Charles Alan Wright and Arthur R. Miller, 8 *Federal Practice and Procedure* § 2210 (1970)).  Therefore, in discussing this issue the Court considers cases applying both Rules 34 and 45.

[15] Hereinafter referred to as "*Federal Practice and Procedure*"

information.").  Plaintiff, as the party seeking production of documents, has the burden of proving that Kaylor has possession, custody, or control of the e-mails under the meaning of Rule.  *Cf. U.S. v. International Union of Petroleum & Indus. Workers, AFL-CIO,* 870 F.2d 1450, 452 (9th Cir. 1989) (citation omitted).  "'[F]ederal courts have consistently held that documents are deemed to be within [a party's] 'possession, custody or control' for purposes of Rule 34 if the party has *actual* possession, custody, or control, or has the legal right to obtain the documents on demand.'" *Superior Comms. v. Earhugger, Inc.,* 257 F.R.D. 215, 217 n.3 (emphasis in original) (quoting *In re Bankers Trust Co.,* 61 F.3d 465, 469 (6th Cir.1995)); *see also In re Citric Acid Litigation,* 191 F.3d 1090, 1108 (9th Cir. 1999) (adopting legal control test enunciated in *In re Bankers Trust Co.*)).  *Cf.* 8B *Federal Practice and Procedure,* § 2210 (2010 & Supp) (Under Rule 34, "[a] party may be required to produce documents and things that it possesses even though they belong to a third person who is not a party to the action.").

The record, at best, suggests that that Kaylor may have the ability to possess the subject e-mails while at work on TTC premises using TTC's computer.  Neither party has provided authority that would support a finding that in this situation Kaylor is or is not in *actual* possession of the e-mails.  Nor does the Court need to resolve that question in this instance because, on the instant record, the discovery sought is improper under Rule 26(b)(1) and (2).

Federal Rule of Civil Procedure 26(b)(1) provides:
Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed.R.Civ.P. 26(b)(1).  The Rule goes on to provide that the court, on motion or on its own, "*must* limit the frequency or extent of discovery otherwise allowed by these rules or

by local rule if it determines . . .", among other things, that the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive or the proposed discovery is outside the scope permitted by Rule 26(b)(1). Fed.R.Civ.P. 26(b)(2)(C)(i),(iii) (emphasis added). In resolving Plaintiff's motion to compel, the Court may limit discovery under Rule 26(b). *See Trunk,* 2007 WL 1110715, at *7.

Plaintiff's request is duplicative and moot to the extent that she seeks e-mails to/from/cc'ing/bcc'ing the Martins given that Defendants have been ordered to disclose non-privileged e-mails pertaining to the Martins that mention Plaintiff as discussed above. Presumably this disclosure would involve e-mails regarding the Martins' accounts that went to or came from Kaylor as well. At this point in the litigation, there is no indication how or why the remainder of the e-mails Plaintiff seeks are in any way relevant to this action. Plaintiff has not identified how Kaylor, other than working for TTC, is relevant to this action, yet she has served an invasive subpoena seeking e-mails between Kaylor and "any third party that does not work with [TTC]" that mention Plaintiff dating back to January 2015. (Doc. 70, Exh. C). Nor does Plaintiff explain how e-mails between Kaylor and Lindsay Welsh[16] are remotely relevant. Accordingly, Plaintiff's Motion to Compel is denied to the extent she seeks to compel Defendants to allow Shawn Kaylor to produce the requested e-mails, and the subpoena is quashed to this extent as well.

### 3.   Employment Files

Plaintiff seeks a protective order: (1) directing Defendants to destroy documents from Plaintiff's former employer Alliance Beverage Distributing Co., LLC ("Alliance"); and (2) to narrow the subpoena served on Glen Murphy ("Murphy").

Rule 26(c) provides that a court may limit discovery to protect from annoyance, embarrassment, oppression, undue burden, or expense. *Sanchez v. City of Santa Ana,* 939

---

[16] Plaintiff alleges that a "Lindsay Welch" was hired for the position promised to Plaintiff. (*See* SAC at ¶¶106-07, 111-13). Even assuming Welch and Welsh refer to the same person, Plaintiff still fails to establish relevance with regard to the e-mails sought.

F.3d 1027, 1033 (9th Cir. 1990).  To the extent Plaintiff seeks to quash or modify the relevant subpoenas, "courts have repeatedly found that an individual possesses a personal right with respect to information contained in employment records and, thus, has standing to challenge such a subpoena." *Blotzer.* 287 F.R.D. at 509 (collecting cases); *cf. Sanchez,* 936 F.3d 1027 (recognizing that employee personnel files are not absolutely privileged but are confidential in nature).  When evaluating privacy objections, the Court must balance the party's need for the information against the individual's privacy right in his or her employment files. *Guitron v. Wells Fargo Bank, N.A.*, 2011 WL 4345191, at *1 (N.D. Cal. Sept. 13, 2011) (citation omitted).

Defendants have asserted an after-acquired evidence defense.  (Doc. 45 at 11, ¶6).  With regard to discovery related to an after-acquired evidence defense, the District Court for the Northern District of California has explained that:

> Former employment records are relevant to the after-acquired evidence defense available in Title VII employment discrimination cases. *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 363, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995). "The 'after-acquired evidence' doctrine precludes or limits an employee from receiving remedies for wrongful discharge if the employer later 'discovers' evidence of wrongdoing that would have led to the employee's termination had the employer known of the misconduct." *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1071 (9th Cir. 2004) (citing *McKennon,* 513 U.S. at 360–63). "An employer can avoid backpay and other remedies by coming forward with after-acquired evidence of an employee's misconduct, but only if it can prove by a preponderance of the evidence that it would have fired the employee for that misconduct." *O'Day v. McDonnell Douglas Helicopter Co.*, 79 F.3d 756, 761 (9th Cir. 1996). However, the Supreme Court in *McKennon* cautioned against the potential for abuse of the discovery process by employers seeking to limit their liability through an after-acquired evidence defense, noting the ability of courts to curb such abuses through the Federal Rules of Civil Procedure. 513 U.S. at 363. Some lower courts have held that the after-acquired evidence defense cannot be used to pursue discovery in the absence of some basis for believing that the after-acquired evidence of wrong-doing will be revealed. *See, e.g., First v. Kia of El Cajon,* 2010 WL 3245778, at *2 (S.D. Cal. Aug.17, 2010); *Chamberlain v. Farmington Sav. Bank,* 2007 WL 2786421, at *2 (D.Conn. Sep.25, 2007); *Maxwell v. Health Ctr. of Lake City Inc.*, 2006 WL 1627020, at *5 (M.D.Fla. Jun.6, 2006).

*Guitron,* 2011 WL 4345191, at *2 (declining to resolve the issue within the context of a

discovery dispute and because the referring district judge had not ruled on the defense).

### a.    Alliance

With regard to Alliance, Plaintiff's former employer, Defendants requested "any and all documents and employment" records relating or pertaining to Plaintiff, including "job applications, interview notes, offer letters, compensation history and information, complaints, employment-related correspondence, disciplinary records, employee reviews, employee evaluations, pay stubs and payroll records, records relating to the termination of her employment, performance [sic], reviews, personnel files, photographs, and supervisor's notes."    (Doc. 70 at 4).   According to Plaintiff, Alliance produced the documents before Plaintiff had time to object; however, Plaintiff did not raise an objection until two weeks after service of the March 22, 2017 subpoena. (*Id.* at 5; Doc. 71 at 11).[17]

Defendants assert that Plaintiff indicated on her resume submitted to TTC that she was employed with Alliance when she applied for work with TTC. (Doc. 71 at 7 (citing Doc. 70, Exh. P)).   Defendants also cite Plaintiff's deposition testimony that she was unemployed when she applied for work at TTC and that her employment at Alliance was terminated because of restructuring under a new vice president. (*Id.* (citing Doc. 71, Exh. Q at   15-17)).   Defendants assert that Alliance's records indicate that Plaintiff was terminated on September 30, 2014, "approximately five months before she first applied to TTC", and reasons for termination included that she "'continually failed to follow management instruction, report to required meetings and work-with visits, and has failed to acknowledge communications from her manager and business partners.'" (*Id.* (quoting Doc. 71, Exh. T)).

---

[17] *See* Fed.R.Civ.P. 45(d)(2)(B) (written objection to a subpoena must be served before the *earlier* of the time specified for compliance or 14 days after the subpoena is served).   Alliance had until April 14, 2017 to comply with the subpoena. (*See* Notice of Intent to Serve Subpoena Duces Tecum (Doc. 47).  In calculating 14 days after service of the subpoena, "the day of the event that triggers the period" is excluded.   *See* Fed.R.Civ.P. 6(a)(1)(A).  Thus, the deadline for filing an objection fell on April 5, 2016, and Plaintiff advanced her objection one day later on April 6, 2017.  (*see* Doc. 71 at 11; *see also id.* at 7 (citing Doc. 71 Exhs. R, S)).

On the instant record, the Court excuses any untimeliness of Plaintiff's objection. Moreover, narrowing the scope is appropriate in light of the lack of relevance of the majority of the information sought. Plaintiff's motion is denied in part to the extent she seeks an order requiring destruction of records produced by Alliance that relate to the termination of her employment, including records that would reflect the date her employment with Alliance terminated. Plaintiff's motion is granted in part as to all other records produced by Alliance.

### b.    Glen Murphy

Plaintiff argues that the subpoena served on Murphy is overbroad.

Plaintiff alleges that she "turned down a more lucrative job offer she had received . . .." based upon "the exiting [sic] and promising opportunities for professional growth at TTC that Todd, Sherry, and Lisa described to her." (SAC at ¶¶24; *see also id.* at ¶140)). Plaintiff testified at her deposition that before February 2015, possibly around September 2014, she received a more lucrative job offer from a company called Bar Fixer, which is owned and operated by Murphy. (Doc. 71 at 8 & n 4 (citing Doc. 71, Exh. U at 86-88)).

On March 30, 2017, Defendants issued a subpoena to Murphy, a California resident, seeking

> []     All documents and employment records relating or pertaining to [Plaintiff]. Records should include, but are not limited to, job applications, interview notes, offer letters, actual or potential compensation history and information, employment-related correspondence, resumes, personnel files, and photographs.
> []     All documents and records that reflect communications between [Murphy]. . . and [Plaintiff]. . . (in any capacity…), including, without limit, email correspondence, text messages, social media posts and communications, written correspondence, and notes from conversations.

(Doc. 70 at 5-6). Thereafter, Plaintiff and Defendants agreed to narrow the scope of documents and communications to those occurring between January 1, 2015 and December 31, 2016, which at the time appeared to be the relevant period when Plaintiff allegedly received Murphy's offer. (Doc. 71 at 8; *see also id.* at 13). However, Plaintiff thereafter requested that the subpoena be limited only to documents that relate to the job

offer Murphy extended to her.  (Doc. 71. at 9).  "Because this contradicted the agreement reached with McBeath, Defendants declined to renegotiate the limitation's on Murphy's subpoena, which resulted in McBeath's [instant] motion."  (*Id.*).  Defendants now do not wish to abide by the narrower scope previously negotiated because documents encompassing a broader time-period are necessary "to determine the veracity of McBeath's claim. . . . Given McBeath's uncertainty about the exact timeframe and the general issues with her credibility, it is equally likely that this supposed offer occurred well before her interview process with TTC in early 2015." (Doc. 71 at 14).  Defendants also point to Plaintiff's testimony that she and Murphy, who is a friend, had "just casual conversations" about employment.  (*Id.*; Doc. 71, Exh. U at 86-88, 344).  Defendants contend the information they seek goes to credibility/impeachment and mitigation. Information pertaining to the job offer Murphy allegedly extended to Plaintiff is relevant to this action.  Accordingly, Plaintiff's motion is denied in part to the extent Defendants seek job applications by Plaintiff, offer letters, or other correspondence, including e-mails, text messages, social media posts and communications, and notes from conversations, reflecting or discussing an offer of employment extended to Plaintiff, including information relating to compensation for said offer.  Plaintiff's motion is granted as to all other relief.

**E.     Good faith attempts to resolve discovery disputes without Court intervention**

LRCiv 7.2(j) requires parties who file discovery motions to certify "that after personal consultation and sincere efforts to do so, counsel[18] have been unable to satisfactorily resolve the matter.  Any discovery motion brought before the Court without prior personal consultation with the other party and a sincere effort to resolve the matter, may result in sanctions."  *See also* Fed.R.Civ.P. 37(a).  Defendants contend that Plaintiff has failed to "meet and confer" in good faith in that although she may have

---

[18] LRCiv 83.3(c)(1) provides that:  "Anyone appearing before the court is bound by these Local Rules.  Any reference in these Local Rules to 'attorney' or 'counsel' applies to parties not represented by an attorney unless the context requires otherwise."

communicated with defense counsel, she refuses "to consider reasonable solutions in order to file motions that she knows will increase TTC's legal costs."  (Doc. 35 at 11).  Elsewhere, the record reflects that Plaintiff has appeared to unilaterally change terms previously agreed upon (*see* Doc. 55 at 5), or continues to request to change the terms after an agreement has been reached (*see* Doc. 71 at 9, 13).  The record at this point does not support a finding that Plaintiff has failed to attempt a sincere resolution of the various issues presently before the Court in violation of the Local Rule.  However, Plaintiff is advised that she must accord defense counsel a reasonable amount of time to respond to her suggested terms for informal resolution and she must adhere to agreements she reaches with defense counsel.  Plaintiff is also advised that future conduct that indicates that she is not abiding by this directive can result in sanctions, which can ultimately result in dismissal of this action.

Accordingly,

IT IS ORDERED that:

1.     Plaintiff's Motion for a Protective Order that Protects Defendants' Employees from Intimidation and Declares that Plaintiff may have Ex Parte Contact with Them (Doc. 30) is DENIED IN PART and GRANTED IN PART.  The Motion is denied to the extent that Plaintiff shall not be permitted to speak to TTC's current and former general managers outside the presence of defense counsel.  The Motion is granted to the extent that Plaintiff may speak outside the presence of defense counsel to TTC former and current employees who are not or were not employed in a managerial or supervisory capacity; however, to do so, Plaintiff or any investigative representative must inform the employee or former employee at the beginning of any contact:

(a)     of Plaintiff's reason for seeking the interview;

(b)     the right of the employee or former employee to refuse the interview as there is no legal obligation to consent to the informal interview; and

(c)      the right of the employee or former employee to have counsel of his or her choice present during the interview.

2.      Plaintiff's Motion for a Protective Order to Shield Experts Consulted Informally (Doc 39) is GRANTED IN PART and DENIED IN PART.  The Motion with regard to Ehud Gavron is granted to the extent that Defendants may not seek discovery from Gavron related to facts known or opinions held by him after May 26, 2016 with regard to the Stored Communications Act ("SCA") counterclaim.  If Plaintiff believes that Defendants have ventured into an area she claims is privileged with regard to the SCA claim, Plaintiff and Gavron shall withhold the information Plaintiff contends is protected and Plaintiff shall provide a privilege log.  The Motion with regard to Gavron is denied in all other respects.  The Motion is also denied in full with regard to Francisco Marquez and to Plaintiff's request that Defendants not mention Gavron or Marquez in Court filings.

3.      Defendants' Motion to Quash and for Protective Order Protecting Third Party Koty-Leavitt Insurance Agency from Plaintiff's Subpoena (Doc. 55) is DENIED IN PART and GRANTED IN PART.  The Motion is denied to the extent that Plaintiff's agreement to limit the scope of Request Number 4 shall remain in effect and Defendant shall be required to comply with the mechanism set out for disclosure in Plaintiff's March 23, 2017 Letter at Doc. 55, Exh. 9 (Doc. 55-1 at 47).  Defendants shall have 60 days to comply with this Order.  Defendants shall disclose all information pursuant to the parties' agreement concerning the subpoena, subject to privilege.  The motion is granted in that the subpoena is quashed to the extent that Plaintiff seeks information that the parties previously agreed would not be disclosed.

4.      Plaintiff's Motion to Compel Defendants: (1) to give their consent to Google to produce responsive e-mails; (2) to allow Shawn Kaylor to produce responsive e-mails; (3) to destroy employment files obtained from Plaintiff's prior employer; and (4) to narrow subpoena served on Glenn Murphy (Doc. 70) is DENIED IN PART and GRANTED IN PART as follows:

(a)      The Motion is granted to the extent that Defendants are directed to produce the requested e-mails following the search directives set out in Plaintiff's exhibit

A attached to her proposed subpoena for Google (*see* Doc. 70, Exh. D (Doc. 70-1 at 24)), subject to privilege review.  Defendants are granted 60 days to comply with this Order. Plaintiff's Motion is denied to the extent that she seeks an order compelling the Martin Defendants to consent to Google performing the requested searches.

(b)     The Motion is denied to the extent that Plaintiff seeks to compel Defendants to allow Shawn Kaylor to produce the requested e-mails, and the subpoena is quashed to this extent as well.

(c)     The Motion is denied to the extent Plaintiff that seeks an order requiring destruction of records produced by Alliance that relate to the termination of her employment, including records that would reflect the date her employment with Alliance terminated.  Plaintiff's motion is granted as to all other records produced by Alliance and Defendants are directed to destroy those records within five days of the date of this Order and provide a notice of compliance to Plaintiff within seven days of destruction.

(d)     Plaintiff's Motion is denied in part to the extent that Defendants seek from Glen Murphy, job applications by Plaintiff, offer letters, or other correspondence, including e-mails, text messages, social media posts and communications, and notes from conversations, reflecting or discussing an offer of employment extended to Plaintiff, including information relating to compensation for said offer. Plaintiff's Motion is granted as to all other relief with regard to Murphy.

Dated this 20th day of July, 2017.

Bernardo P. Velasco
United States Magistrate Judge

- 28 -