FARHANG & MEDCOFF

4801 E. Broadway Boulevard, Suite 311
Tucson, Arizona 85711
T: 520.790.5433

Ali J. Farhang (#019456)
afarhang@fmlaw.law

Roberto C. Garcia (#026246)
rgarcia@fmlaw.law

Travis L. Tufts (#029373)
ttufts@fmlaw.law

Attorneys for Defendants / Counterplaintiff

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Melissa Martin McBeath, an individual, | NO. CV 16-462-TUC-DCB (BPV) |
| Plaintiff, | **REPLY IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL** |
| v. | |
| Tucson Tamale Company, an Arizona corporation; Todd Russell Martin, an individual; Sherry Martin, an individual; and Lisa Martin, an individual, | Assigned to Judge David C. Bury and Hon. Bernardo P. Velasco |
| Defendants. | |
| Tucson Tamale Company, an Arizona corporation, | |
| Counterplaintiff, | |
| v. | |
| Melissa Martin McBeath and John/Jane Doe Martin McBeath, husband and wife, | |
| Counterdefendants. | |

00339510.1

1   Not surprisingly, Plaintiff Melissa Martin McBeath ("McBeath") continues to object
2   to the production or disclosure of damaging communications reflecting the nature of her
3   relationship with Francisco Xavier Marquez ("Marquez") and friend-turned-expert Ehud
4   Gavron ("Gavron"); both of whom Counterplaintiff Tucson Tamale Company ("TTC")
5   alleges McBeath disclosed its confidential information to without authorization.  Lacking a
6   compelling legal basis to object,[1] McBeath now claims that the requested documents and
7   communications between them, among other trial witnesses, simply do not exist.
8   McBeath's claim, bolstered by another sham affidavit, defies common sense, experience,
9   and does nothing to explain the documentary evidence produced by
10  Defendants/Counterplaintiff establishing McBeath communicates with both Marquez and
11  Gavron via e-mail.  There are three possible conclusions to draw from McBeath's discovery
12  responses and refusal to produce communications with Marquez and unprivileged
13  communications with Gavron: 1) McBeath is withholding production, rendering her
14  discovery responses evasive, non-responsive, and incomplete; 2) McBeath has conducted
15  nearly two years of litigation by only communicating via telephone with her supposed
16  experts Marquez and Gavron, in which case her responses remain incomplete; or 3)
17  McBeath has deleted the damaging communications and Defendants/Counterplaintiff are
18  entitled to an inference of spoliation.

19  **I.      McBeath's responses are evasive, non-responsive, and incomplete.**

20  It is difficult to reconcile McBeath's actions with her latest avowal that no e-mail
21  communications exist between her, Marquez, and/or Gavron.  (See M. McBeath Opp., Doc.
22  No. 95, at ¶ 7.)  McBeath spent almost two years arguing that her communications with
23  Marquez and Gavron are privileged from Defendants' discovery, including the filing of at
24  least two separate motions for protective order.  After having failed to convince the Court
25  that a privilege exists (see, e.g., Order, Doc. No. 84, p. 8-14), her convenient suggestion

---

[1] Throughout the course of her lawsuits against Defendants, McBeath has argued her communications with Marquez and Gavron are shielded under Fed. R. Civ. P. 26(b)(3) and (4). The Court, in its July 21, 2017 Order (Doc. No. 84), rejected McBeath's argument that communications with Marquez fall under the privilege and found a narrow privilege applied to certain communications with Gavron.  (See, Order, Doc No. 84, p. 8-14.)

00339510.1

that no communications exist begs the question why McBeath made a privilege argument in the first place, then subsequently engaged in costly motion practice to protect non-existent e-mail communications.

McBeath's actions not only contradict her recent claim, but numerous facts disprove her assertion that she does not communicate with Marquez and Gavron via e-mail, text messages, or other electronic communications.[2]  First, McBeath, Gavron, and Marquez have a history of communicating via e-mail about this lawsuit.  (See, e.g., Defs.' Motion, Ex. P. (E. Gavron e-mail regarding discovery deadlines) ("Gavron's First E-mail").)  The timing and content of Gavron's First E-mail is particularly telling, suggesting far more communications pre-dated Gavron's First E-mail.  Gavron not only suggested that he and/or Marquez *had already* edited or drafted documents "out from under [McBeath]," but also implied there was at least some coordination about monitoring deadlines *and* that the coordination took place over e-mail and the exchange of spreadsheets.  Given the far more significant stages of litigation preceding Gavron's First E-mail – i.e. the drafting and filing of McBeath's Complaint against Defendants and the six-page litigation hold letter she served simultaneously – it is highly likely much more detailed communications pre-date Gavron's misdirected e-mail–namely, McBeath's communications disclosing TTC's confidential information–and that McBeath has refused to produce those e-mails.

Second, there is evidence that McBeath, Marquez, and Gavron continued to communicate by e-mail about this lawsuit *after* Defendants discovered Gavron and Marquez's involvement.  On July 14, 2016, Gavron misdirected another e-mail ("Gavron's Second E-mail") to McBeath's former TTC address.  See Ex. A, E. Gavron E-mail, July 14, 2017 ("Had you given this *pro se* the same professional courtesy you'd have given any professional counsel you'd have **asked** me about this.  Instead you went all over the board filing complaints with the Arizona State Bar Association and filing even more motions in

---

[2] Attached to McBeath's Opposition are her responses to Defendant's Second Request for Production requesting any and all documents, including text messages and other electronic communications.  (See generally M. McBeath Opp., Ex. A.)  While Defendants' Motion pertains to McBeath's e-mails only, Defendants reference text messages and electronic communications in light of McBeath's questionable declaration that no documentary evidence whatsoever exists between her, Marquez, and Gavron.

Judge Aragon's court.")  Notably, Gavron's Second E-mail does not relate to his purported role as an information technology consulting expert, though it does relate to this lawsuit and his knowledge of the facts of this lawsuit.  McBeath, however has never produced this e-mail or Marquez's response to that e-mail.  See id. (asking Gavron to communicate directly with McBeath without copying Marquez).  Gavron's Second E-mail, however, was not his final salvo.  On August 1, 2016, Gavron invited McBeath to join him for a video conference via Google Hangouts.  See Ex. B, E. Gavron E-mail, Aug. 1, 2017.[3]  These communications in their entirety completely undermine any suggestion that McBeath, Gavron, and Marquez ceased communicating via e-mail after Defendants discovered their collective efforts in this case.

Third, not only has McBeath communicated directly with Gavron and Marquez about this lawsuit but she has a history of communicating with them by e-mail.  With respect to Gavron, Defendants have disclosed hundreds of e-mails she exchanged with him over the course of her employment.  McBeath also previously corresponded with Marquez via e-mail, presumably because he claims to live in San Jose and electronic communications are a convenient method to communicate.  In light of her prior practice, as well as Gavron's misdirected e-mails, there is little reason to disbelieve that the pattern of communicating via e-mail about TTC continued after her employment, the initiation of her lawsuits, and after Defendants discovered the involvement of Marquez and Gavron.

Fourth, Marquez, McBeath, and/or Gavron unquestionably exchanged drafts of documents in this case.  Gavron not only alluded to drafting documents for McBeath in Gavron's First E-mail, but McBeath utilizes a document management system.[4]  And despite being the party responsible for the content of her submissions, McBeath admits she did not

---

[3] Because Defendants did not intend to utilize Gavron's Third E-mail to support its defenses or TTC's Counterclaims, but rather for impeachment purposes only, Defendants have not previously disclosed Gavron's Third-Email.  See Fed. R. Civ. P. 26(a)(1)(A)(ii) (excluding from the category of required disclosures documents used solely for purposes of impeachment).  Defendants attach Gavron's Third E-mail to impeach McBeath's claims that she does not communicate with Gavron or Marquez via e-mail.  (See, e.g., M. McBeath Opp. at ¶¶ 7-8.)

[4] Interestingly, McBeath's opposition to Defendants' Motion to Compel does not have a document tracking number, suggesting she removed it or no longer has access to the document management system.  Notwithstanding, her prior submissions contain document tracking numbers.

00339510.1

pay for the document management system and that the "people that are helping [her] with this litigation are the ones that have access to the document management system." Ex. C, Dep. Tr., 148:15 – 149:24 (affirming the statement). Without access to the document management system, McBeath would be unaware of what to sign and submit to the Court, the content of her declarations and affidavits, or her legal arguments without viewing those documents outside the document management system. Unless McBeath admits that Marquez, for example, affixes her signature to his work product, there must have been some transmittal of the documents from the management system to McBeath directly for review. That transmittal, more likely than not, took place via e-mail, just like prior communications.

Last, ignoring the documentary evidence of e-mail communications and assuming McBeath communicated with her consulting experts via telephone only,[5] McBeath's discovery responses remain inadequate. Defendants have consistently requested *all* documentary evidence of her communications with Marquez and Gavron, among other witnesses in this case. (See M. McBeath Opp., Ex. A (discovery requests seeking any and all documents reflecting communications with Marquez); see also Defs.' Motion, Ex. J (Defendants' initial requests for communications with Marquez and Gavron in August 2016.).) Despite the fact that McBeath presumably has possession, custody, or control over her own phone records and those records reflect communications between them her, Marquez, and Gavron, she has nonetheless refused to produce her phone records. Accordingly, McBeath's failure to produce those records render her discovery responses incomplete.

Simply, McBeath has refused to produce any records related to Gavron and Marquez, among the other named witnesses McBeath communicated with about this lawsuit, despite ample evidence presented by Defendants.

/ / /

/ / /

---

[5] McBeath implies that she does not exchange e-mail with Marquez. See M. McBeath Opp. at ¶ 7. Because McBeath has never declared that she no longer consults with Marquez, and based on the fact she relies on his former legal expertise to prosecute her claims, it is reasonable to infer she communicates with him using alternative methods, like the telephone.

00339510.1

## II.     McBeath has deleted critically relevant evidence.

If McBeath no longer possesses communications from of the potential witnesses in this case, despite both formal and informally obtained evidence that she contacted one of TTC's general managers post-employment, the only inference to draw is that she deleted e-mails when she knew, or reasonably should have known, that she had a duty to preserve evidence.  Shortly before filing her first lawsuit in April 2016, McBeath demonstrated her awareness of the duty to preserve relevant evidence or evidence reasonably calculated to lead to admissible evidence.  See Ex. D, M. McBeath Lit. Hold Letter, April 12, 2016. Notwithstanding McBeath's claim that she deleted e-mails with TTC's general managers and employees before her lawsuit because "she had no reason to keep them" (see M. McBeath Opp. at ¶ 8), Defendants have presented numerous attempts to communicate via e-mail between, at a minimum, Gavron and Marquez related to this suit *and* that those communications were exchanged after McBeath's April 2016 litigation hold letter. Accordingly, if McBeath truly does not possess any communications with TTC general managers, Gavron, or Marquez, the only inference that can be drawn is that she deleted those communications she knew or reasonably should have known would be relevant in this suit.

## III.     Defendants' requested relief.

Defendants modify their request for relief based on the events transpiring after they filed their Motion.  McBeath submitted her discovery responses after Defendants were forced filed their Motion (compare Defs.' Motion, Doc. No. 94-1, Aug. 3, 2017 with M. McBeath Opp., Ex. B, M. McBeath Supp. Disc. Resp., Aug. 15, 2017) claiming that no communications exist between her, Marquez, and Gavron despite evidence to the contrary. Additionally, during McBeath's deposition, she refused to answer questions about Marquez and Gavron but understood she would be subjecting herself to subsequent deposition if the Court ruled no privilege applied to her communications with Marquez and Gavron.  See, e.g., Ex. C; Ex. E, Dep. Tr., p. 140; 281-282.  Despite Defendants' separate requests to take

00339510.1

McBeath's deposition at a mutually convenient time, she has not responded to Defendants' requests.  See Ex. F, T. Tufts E-mail, Aug. 17, 2017.

Because McBeath has consistently refused to provide responses about Marquez and Gavron and because her discovery responses appear evasive and incomplete based on the evidence presented,  Defendants request the Court grant Defendants leave to depose McBeath on all the matters discussed herein including, but not limited to, McBeath's relationship with Marquez, the scope of her unprivileged relationship with Gavron, their methods for communicating about this lawsuit and the facts related thereto, and the veracity of McBeath's affidavit and discovery responses.  Thereafter, Defendants propose to submit a report to the Court requesting what information McBeath should produce based on the evidence presented herein and McBeath's responses in deposition, as well as a request for any additional relief necessary, including, but not limited to, a request for a spoliation instruction at trial and/or an award of attorneys' fees and costs incurred in to compel McBeath's compliance with the Federal Rules of Civil Procedure.

Additionally, Defendants request an award of their attorneys' fees for filing their Motion and this Reply.  As McBeath alludes in her declaration (see M. McBeath Opp. at ¶ 4), she agreed to supplement her discovery responses after a meet and confer with counsel discussing the deficiencies of her initial responses.  (See Defs.' Motion, 5:13 – 6.)  And although McBeath's supplement responses indicated she does not possess any responsive e-mail communications, she nonetheless refused to provide her responses until after Defendants filed the underlying Motion.  See Fed. R. Civ. P. 37(a)(5)(A) ("if the disclosure or requested discovery is provided after the motion was filed – the court must, after giving an opportunity to be heard, require the party [] whose conduct necessitated the motion…to pay the movant's reasonable expenses incurred…including attorney's fees.")  Further, because McBeath's responses continue to be evasive and incomplete, Defendants request a full recovery of their fees and costs incurred after McBeath's belated and incomplete production, including the fees and costs incurred to prepare this Reply.

/ / /

00339510.1

Respectfully submitted this 24th day of August 2017.

FARHANG & MEDCOFF

By /s/ Travis L. Tufts
Ali J. Farhang
Roberto C. Garcia
Travis L. Tufts

Attorneys for Defendants / Counterplaintiff

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was filed electronically with the Clerk of the United States District Court for the District of Arizona, with notice of case activity generated and sent electronically this 24th day of August 2017 to:

Melissa Martin McBeath
3463 E. Terra Alta Blvd.
Tucson, AZ 85716

/s/ Letitia Wright

00339510.1

- 8 -