# Exhibit A

---------- Forwarded message ----------
From: **Francisco X. Márquez** <fxm@marquezlegal.com>
Date: Thu, Jul 14, 2016 at 10:06 PM
Subject: Re: letter
To: Ehud Gavron <gavron@wetwork.net>
Cc: Mel McBeath <mel@tucsontamalecompany.com>

**Mr. Gavron:**


**Please communicate directly with Ms. McBeath and do not copy me on any emails to/from her.**


**-Fco.**


On Thu, Jul 14, 2016 at 9:45 PM, Ehud Gavron <gavron@wetwork.net> wrote:

You inferred all this from an innocuous letter?

Had you given this *pro se* the same professional courtesy you'd have given any professional counsel you'd have **asked** me about this.  Instead you went all over the board filing complaints with the Arizona State Bar Association and filing even more motions in Judge Aragon's court.

# Exhibit B

---------- Forwarded message ----------
From: **Google Hangouts** <noreply@google.com>
Date: Mon, Aug 1, 2016 at 8:22 PM
Subject: Ehud Gavron is inviting you to join his video call
To: mel@tucsontamalecompany.com

## Incoming video call from:



### Ehud

Missed the call? Get the apps and never miss a call again!
Open Hangouts to see any missed messages.

Exhibit C

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

Melissa Martin McBeath,                    )
                                           )
            Plaintiff,                     )
                                           ) No.
vs.                                        ) 4:16-CV-00462
                                           ) TUC-DCB (BPV)
Tucson Tamale Company,                     )
                                           )
            Defendants.                    )
_____

VIDEOTAPED DEPOSITION OF:  MELISSA MCBEATH

Tucson, Arizona

March 22, 2017

Patricia Gerson, RMR
Certified Court Reporter #50429
KATHY FINK & ASSOCIATES
COURT REPORTERS
2819 East 22nd Street
Tucson, Arizona  85713
(520) 624-8644

1    about.  One lived with me, so I don't know how much we

2    talked or discussed casually over dinner.  The other two

3    did not live with -- don't live with me, and did not live

4    with me at the time.

5        Q.    I'm going to show you what we'll label as

6    Exhibit 14.

7              Oh, sorry.

8              (Exhibit 14 marked for identification.)

9    BY MR. TUFTS:

10       Q.    Do you recognize Exhibit 14?

11       A.    I do.

12       Q.    These are your responses to Tucson Tamale

13   Company's first set of interrogatories?

14       A.    Mm-hmm.

15       Q.    I'm going to direct your attention to the bottom

16   left corner.  Do you see that number, 10218.1?

17       A.    Yeah.

18       Q.    What is that number?

19       A.    It's a document tracking number, basically.

20       Q.    So you have a document management system?

21       A.    I have software, yes, that is available to me to

22   use.

23       Q.    Who makes the software available to you?

24       A.    I'm not at -- I don't have to answer to you what

25   consultants that I use that help me with software that

1    helps me write -- do pleadings -- filings.

2        Q.   **What is the name of the software that you use?**

3        A.   I can't even remember what the name of it is,

4    right now.

5        Q.   **You agree you filed numerous motions, discovery**

6    **responses, letters and things of that sort; correct?**

7        A.   Yeah.

8        Q.   **And they're all in your document management**

9    **system?**

10       A.   Yes.

11       Q.   **And you can't remember today what the name of**

12   **your document management system is?**

13       A.   I cannot remember today what the name of it is.

14       Q.   **Did you pay for document management system?**

15       A.   I did not.

16       Q.   **How did you obtain access to a document**

17   **management system without paying for it?**

18       A.   That has to do with my consultants, so I'm not

19   going to answer.  Through people that I consult, have

20   been --

21       Q.   **So people that are helping you with this**

22   **litigation are the ones that have the access to the**

23   **document management system?**

24       A.   Yes.

25       Q.   **When Tucson Tamale Company terminated your**

Exhibit D

# Melissa Martin McBeath

3463 E. Terra Alta Blvd, Tucson, AZ 85716 • 520.449.9753 • *mel.mcbeath@cox.net*

<u>VIA E-MAIL ONLY</u>
*Todd@TucsonTamaleCompany.com*
*Sherry@TucsonTamaleCompany.com*
*Lisa@TucsonTamaleCompany.com*

April 12, 2016

Todd Martin
Sherry Martin
Lisa Martin
Tucson Tamale Company
2550 N. Dragoon Street, Suite 12
Tucson, Arizona 85745

Re:     <u>Demand for Preservation of Evidence</u>

Dear Todd, Sherry and Lisa:

I have retained advisory counsel to assist me with the preparation of a lawsuit for wrongful discharge. That will be filed shortly in Pima County Superior Court.

In the meantime, I have been advised to serve on you this "litigation hold" letter. You should anticipate that much of the information subject to disclosure or responsive to discovery in my case is stored on the company's current and former computer systems and other media and devices (including personal digital assistants, voice-messaging systems, online repositories and cell phones). Inform Tucson Tamale staff immediately of their obligation of the anticipated litigation to preserve not only documents and tangible things, but also **_all_** electronically stored information including e-mails. In particular, you must not destroy unique, relevant information that might be useful to the case.

You and Tucson Tamale have a duty to preserve information you know, or reasonably should know:

(i)      is relevant to the parties' claims or defenses or the subject matter involved in the lawsuit;

(ii)     is reasonably calculated to lead to the discovery of admissible evidence; or

(iii)    I am reasonably likely to request during discovery.

This duty to preserve extends to employees likely to have relevant information—the "key players" in the case. The duty encompasses items made by those key players that Tucson Tamale may use to support its defenses, and any such items made for them to the extent the items can be readily identified (*e.g.*, the "to" field in e-mails).

10100.1

Todd Martin
Sherry Martin
Lisa Martin
April 12, 2016
Page 2

Litigation Hold

Effective immediately, Tucson Tamale _must_ suspend its routine information retention/destruction/recycling policy and put in place a "litigation hold" to ensure the preservation of appropriate information. Ensure that, at a minimum, that you and staff take the following steps to comply with this demand:

1.   Immediately determine all sources of potentially relevant information and place them "on hold," and please communicate the details of that "hold" to me in writing.

2.   Immediately notify all the key players in writing that they must place on "hold" and preserve all information potentially relevant to this litigation.

3.   Please refrain from deleting the potentially relevant information of the key players from active files and transferring it to backup tapes or media _only._

4.   In particular, regarding backup disks and media for electronically-stored information (including, but by no means limited to, e-mails), under the litigation hold, they _must_ be identified, segregated, stored and preserved (_i.e.,_ not recycled) separate and apart from other backup disks and media in two instances:

     (i)    If they are "accessible" (_i.e.,_ actively used for information retrieval);

     (ii)   With respect to _all_ backup disks or media—regardless whether they are "accessible" or "inaccessible" (_i.e.,_ those typically maintained solely for the purpose of disaster recovery)—those disks or media storing relevant information of the key players.

Attached is a document titled "DEMAND FOR PRESERVATION OF EVIDENCE" that I request you provide to staff to ensure strict and full compliance with this demand. Please confirm _no later than April 22, 2016_, that all employees have been notified of this demand and have taken the steps outlined in this letter to preserve all information and tangible documents potentially relevant to the parties' claims and defenses.

Best regards,

Melissa Martin McBeath

10100.1

**DEMAND FOR PRESERVATION OF EVIDENCE**

Melissa Martin McBeath will be filing a lawsuit against Tucson Tamale Company, Todd Martin, Sherry Martin and Lisa Martin. In anticipation of litigation, the parties must preserve all information that they may need to assert their respective claims and defenses. Below is the demand she has made that we are required to follow by law. We request your cooperation in complying with this request.

For the purpose of this demand, "you" and "your" means Tucson Tamale's officers, directors, agents, attorneys, accountants, employees, partners and other persons occupying similar positions or performing similar functions. Electronically stored information ("ESI") should be afforded the broadest possible meaning and includes (by way of example and not as an exclusive list) potentially relevant information electronically, magnetically, optically or otherwise stored as:

- Digital communications (e-mail, voice mail, instant messaging, text messages)
- E-Mail Server Stores (e.g., Lotus Domino .NSF or Microsoft Exchange .EDB)
- Word processed documents (e.g., Word or WordPerfect files and drafts)
- Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets)
- Accounting Application Data (e.g., QuickBooks, Money, Peachtree data)
- Image and Facsimile Files (e.g., .PDF, .TIFF, .JPG, .GIF images)
- Sound Recordings (e.g., .WAV and .MP3 files)
- Databases (e.g., Access, Oracle, SQL Server data, SAP);
- Contact and Relationship Management Data (e.g., Outlook, ACT!);
- Calendar and Diary Application Data (e.g., Outlook PST, blog entries);
- Online Access Data (e.g., Temporary Internet Files, History, Cookies);
- Presentations (e.g., PowerPoint, Corel Presentations)
- Network Access and Server Activity Logs;
- Computer Aided Design/Drawing Files; and
- Backup and Archival Files (e.g., Veritas, Zip, .GHO).

ESI resides not only in areas of electronic, magnetic and optical storage media reasonably accessible to you, but also in areas you may deem not reasonably accessible. You are obliged to preserve potentially relevant evidence from both sources of ESI, even if you do not anticipate producing such ESI.

**NOTHING IN THIS DEMAND FOR PRESERVATION OF ELECTRONICALLY STORED INFORMATION SHOULD BE UNDERSTOOD TO DIMINISH THE CONCURRENT OBLIGATION TO PRESERVE DOCUMENTS, TANGIBLE THINGS AND OTHER POTENTIALLY RELEVANT EVIDENCE.**

10100.1

<u>Preservation Requires Immediate Intervention</u>

You must act immediately to preserve potentially relevant ESI, including, without limitation, information with the earlier of a Created or Last Modified date on or after January 3, 2015 through the date of this demand and concerning:

1. Marketing, advertising, and sales materials regarding Tucson Tamale products.

2. The tasks that Melissa Martin McBeath performed while she worked at Tucson Tamale.

3. ESI that Melissa Martin McBeath may use to support claims for (and that you or Tucson Tamale may support your defenses against):

   - Retaliatory discharge in violation of Arizona's Employment Protection Act.

   - Fraud in the inducement regarding the terms of her employment.

   - Negligent misrepresentation regarding the terms of her employment.

   - Breach of the terms of her employment agreement as outlined in the offer letter and other written and oral representations made to her.

   - Failure to pay earned bonuses (wages) in violation of Arizona's Wage Act.

   - Conversion.

   - Restitution / unjust enrichment.

Adequate preservation of ESI requires more than simply refraining from efforts to destroy or dispose of such evidence. You must intervene to prevent loss due to routine operations or malfeasance and employ proper techniques and protocols to preserve ESI. Booting a drive, examining its contents or running any application may irretrievably alter the evidence it contains and constitute unlawful spoliation of evidence. Preservation requires action.

<u>Suspension of Routine Destruction</u>

You are directed to immediately initiate a litigation hold for potentially relevant ESI, documents and tangible things and to act diligently and in good faith to secure and audit compliance with such litigation hold. You are further directed to immediately identify and modify or suspend features of your information systems and devices that, in routine operation, operate to cause the loss of potentially relevant ESI.

Examples of such features and operations include:

- Purging the contents of e-mail repositories by age, capacity or other criteria;

- Using data or media wiping, disposal, erasure or encryption utilities or devices;

- Overwriting, erasing, destroying or discarding backup media;

- Re-assigning, re-imaging or disposing of systems, servers, devices or media;

2

- Running antivirus or other programs effecting wholesale metadata alteration;
- Releasing or purging online storage repositories;
- Using metadata stripper utilities;
- Disabling server, packet or local instant messaging logging; and
- Executing drive or file defragmentation or compression programs.

Act to Prevent Spoliation

You should take affirmative steps to prevent anyone with access to your data, systems and archives from seeking to modify, destroy or hide ESI on network or local hard drives and on other media or devices (such as by deleting or overwriting files, using data shredding and overwriting applications, defragmentation, re-imaging, damaging or replacing media, encryption, compression or the like).

Preservation in Native Form

All ESI, including but not limited to spreadsheets and databases, must be preserved in the form or forms in which it is ordinarily maintained (i.e., native form). Accordingly, you should preserve ESI in such native forms, and you should not employ methods to preserve ESI that remove or degrade the ability to search the ESI by electronic means or that make it difficult or burdensome to access or use the information. You should additionally refrain from actions that shift ESI from reasonably accessible media and forms to less accessible media and forms if the effect of such actions is to make such ESI not reasonably accessible.

Metadata

You must preserve system and application metadata. System metadata is information describing the history and characteristics of other ESI. This information is typically associated with tracking or managing an electronic file and often includes data reflecting a file's name, size, custodian, location and dates of creation and last modification or access. Application metadata is information automatically included or embedded in electronic files, but which may not be apparent to a user, including deleted content, draft language, commentary, collaboration and distribution data and dates of creation and printing. For electronic mail, metadata includes all header routing data and Base 64 encoded attachment data, in addition to the To, From, Subject, Received Date, CC and BCC fields. Metadata may be overwritten or corrupted by careless handling or improper preservation, including by moving, copying or examining the contents of files.

Servers

With respect to servers used to manage e-mail (e.g., Microsoft Exchange, Lotus Domino) and network storage (often called a "network share"), the complete contents of each user's network share and e-mail account must be preserved.

Home Systems, Laptops, Online Accounts and Other ESI Venues

To the extent that you have sent or received potentially relevant e-mails or created or reviewed potentially relevant documents away from the office, you must preserve the contents of systems, devices and media used for these purposes (including not only potentially relevant data from portable and home computers, but also from portable thumb

3

drives, CD- R/DVD-R disks and the user's PDA, smart phone, voice mailbox or other forms of ESI storage.). Similarly, if you used online or browser-based e-mail accounts or services (such as Gmail, AOL, Yahoo Mail or the like) to send or receive potentially relevant messages and attachments, the contents of these account mailboxes (including Sent, Deleted and Archived Message folders) must be preserved.

### Ancillary Preservation

You must preserve documents and other tangible items that may be required to access, interpret or search potentially relevant ESI, including logs, control sheets, specifications, indices, naming protocols, file lists, network diagrams, flow charts, instruction sheets, data entry forms, abbreviation keys, user ID and password rosters and the like. You must preserve passwords, keys and other authenticators required to access encrypted files or run applications, along with the installation disks, user manuals and license keys for applications required to access the ESI. You must preserve cabling, drivers and hardware, other than a standard 3.5" floppy disk drive or standard CD or DVD optical disk drive, if needed to access or interpret media on which ESI is stored. This includes tape drives, bar code readers, Zip drives and other legacy or proprietary devices.

### Paper Preservation of ESI is Inadequate

As hard copies do not preserve electronic searchability or metadata, they are not an adequate substitute for, or cumulative of, electronically stored versions. If information exists in both electronic and paper forms, you should preserve both forms.

### Agents, Attorneys and Third Parties

Your preservation obligation extends beyond ESI in your care, possession or custody and includes ESI in the custody of others that is subject to your direction or control. Accordingly, you must notify any current or former agent, attorney, employee, custodian and contractor in possession of potentially relevant ESI to preserve such ESI to the full extent of your obligation to do so, and you must take reasonable steps to secure their compliance.

4

# Exhibit E

1   specific question, and that is, you do not have an

2   attorney-client privilege with Francisco Marquez; correct?

3       A.   Correct.

4       Q.   Which of your claims require testimony from an

5   expert with a background in law?

6       A.   Testimony?  I've never claimed that he was going

7   to be -- to testify as an expert.  I have people that I

8   consult informally who are experts on many, many areas of

9   my claims.

10      Q.   What areas does Mr. Marquez consult with you on?

11      A.   You're not entitled to know that.

12      Q.   Ms. McBeath, I'm entitled to know what

13  Mr. Marquez's involvement is in this case, and what

14  information that you have shared with him in connection

15  with this case.

16           And if you do not answer the questions that I'm

17  asking, be aware and be on notice that I will move the

18  court to compel you to respond to those questions.  And I

19  reserve the right to take your deposition again, should

20  you choose to refuse to respond to the questions I have

21  about Mr. Marquez.

22           Okay?

23      A.   Understood.

24      Q.   Oh.  What is the nature of the privilege that

25  exists between you and Mr. Marquez?

```
 1      A.   A discovery calendar spreadsheet, for me?  No.

 2      Q.   Because it says in his e-mail 6/13, we received

 3   the RFAs, but not the UIs.  Calendar spreadsheet shows

 4   UIs?

 5      Q.   Is it your understanding that RFA there means

 6   request for admission?

 7      A.   Yes.

 8      Q.   And that's a request for admission from Tucson

 9   Tamale; right?

10      A.   Yes.

11      Q.   So why is an IT expert -- or, how does an IT

12   expert's experience -- let me strike that.

13           Let's move on to what he states further.

14           He says, in the third paragraph:  Also, they're

15   late.  All inters due 6/24.  No way they snail-mailed

16   them, he says in brackets, because to effect Rule 4

17   service they have to certified/registered return receipt,

18   and that obviates the agreement to electronic service.

19           What about Mr. Gavron's training requires him to

20   be an expert on the Arizona Rules of Civil Procedure,

21   regarding discovery -- regarding service of discovery

22   under Rule 4?

23      A.   Well, I'm not going to answer any more questions

24   about my experts.  As you know, Travis, there's a motion

25   pending in this case requesting --
```

Page 282

1     Q.    What information --

2     A.    -- requesting that the privilege be honored.  So,

3  until that gets resolved, I'm not going to answer anymore

4  questions about my consultants in this capacity.

5          I'm happy to answer questions about Mr. Gavron

6  while I was employed at Tucson Tamale Company, as we

7  previously discussed.  But I think you understand my

8  position.

9     Q.    Okay.

10    A.    If you want to, you know, you can avail yourself

11  of whatever you need to do.

12    Q.    You shared the bases for the claims you intended

13  to bring against Tucson Tamale with Mr. Gavron; right?

14    A.    I'm not going to answer anymore questions about

15  that.

16    Q.    Okay.  But that was before you would have known

17  that an IT expert was necessary --

18    A.    I don't know what I shared with whom at the time.

19  Getting fired from Tucson Tamale Company, those two months

20  were very difficult for me.

21          And I was trying to understand what my rights

22  were, my legal rights were.  I spent a lot of time

23  researching.  So, I don't know who I said what to whom at

24  that time.

25    Q.    Okay.  You wouldn't have shared Tucson Tamale's

# Exhibit F

**Tish Wright**

| | |
|---|---|
| **From:** | Travis L. Tufts |
| **Sent:** | Thursday, August 17, 2017 12:13 PM |
| **To:** | 'Mel McBeath' |
| **Cc:** | Robert Garcia; Tish Wright; Lynn Salcido; Jamie Archibald |
| **Subject:** | FW: McBeath v. Tucson Tamale Co. |

Good Afternoon Ms. McBeath,

Following up on my e-mails from July 21 and August 3, below, I have not received a response from you on some of the items discussed in the e-mails, including dates you are available for deposition.  Please let me know some dates of availability as soon as possible.

Regards,

Travis

**FARHANG  MEDCOFF**
Attorneys

**Travis L. Tufts**
Profile | vCard
4801 East Broadway Boulevard | Suite 311 | Tucson, Arizona 85711
General: 520.790.5433   Direct: 520.398.7466 | Fax: 520.790.5736
www.fmlaw.law

**From:** Travis L. Tufts
**Sent:** Thursday, August 3, 2017 3:27 PM
**To:** 'Mel McBeath' <mel.mcbeath@cox.net>
**Cc:** Robert Garcia <rgarcia@fmlaw.law>; Jamie Archibald <jarchibald@fmlaw.law>; Tish Wright <twright@fmlaw.law>; Lynn Salcido <lsalcido@fmlaw.law>
**Subject:** RE: McBeath v. Tucson Tamale Co.

Hello Ms. McBeath,

Following up on my e-mail below, we would like to schedule your deposition on September 13, 2017.  Please let me know if this date works for you.

Thanks,

Travis

**FARHANG  MEDCOFF**
Attorneys

**Travis L. Tufts**
**Effective May 1, 2017:** ttufts@fmlaw.law
Profile | vCard
4801 East Broadway Boulevard | Suite 311 | Tucson, Arizona 85711
General: 520.790.5433 | Direct: 520.398.7466 | Fax: 520.790.5736
www.fmlaw.law

**From:** Travis L. Tufts
**Sent:** Friday, July 21, 2017 3:51 PM
**To:** 'Mel McBeath' <mel.mcbeath@cox.net>
**Cc:** Robert Garcia <rgarcia@fmlaw.law>; Jamie Archibald <jarchibald@fmlaw.law>; Tish Wright <twright@fmlaw.law>;
Lynn Salcido <lsalcido@fmlaw.law>
**Subject:** McBeath v. Tucson Tamale Co.

Ms. McBeath,

I write to follow up on a few matters in this case.  First, when we met two weeks ago to discuss your responses to Sherry Martin's requests for production, I narrowed the scope of the request and you agreed to a production within 10 days of that meeting.  I confirmed this in an e-mail, attached, and received no response from you indicating your inability to produce the e-mails within the stated timeframe.  My calendar shows that the 10 day deadline expired on Monday of this week (July 17, 2017).  We have not received your responses and/or the privilege log.  When can we expect your responses?  We prefer not to file a motion to compel on this issue but will be forced to do so if you do not produce the e-mails within 1 week from today.

Second, as I am sure you have seen or will see in the Court's Order, attached, the Court denied your Motion for a Protective Order to Shield Francisco Marquez from discovery in its entirety.  Additionally, the Court granted your motion to shield Ehud Gavron but only with respect to discovery "related to facts known or opinions held by him with regard to the [Stored Communications Act] claim after May 26, 2016."  In light of the Court's rulings and with regard to your anticipated production from your cochesitos@gmail.com address, please include all correspondence with Francisco Marquez and all non-SCA correspondence with Mr. Gavron within 1 week from today.  I assume that, since you were initially planning on identifying this correspondence in a privilege log, the correspondence is readily available for production without further delay.

Third, attached please find Defendant's Second Set of Requests for Production in this case.  Please let me know if you are unable to open the attachment.  We will send a hard-copy in the mail as well.

Fourth, and as we discussed and agreed in your deposition, we want to schedule your deposition on the matters now deemed discoverable by the Court.  Please provide us a set of dates you are available the week of August 13th and the week of August 20th.

And last, the Court's Rule 16 Scheduling Order, attached, sets a Rule 16 scheduling conference on August 1, 2017.  Therein, the Court asks the parties to confer at least 21 days in advance of the conference to discuss Rule 26(f) topics and then file a joint report reflecting the discussions five (5) days before the hearing.  By my calendar that makes our joint report due next Thursday, July 27, 2017.  Since we are facing a short turnaround time to prepare the joint report, can you meet with either us early next week to discuss Rule 26(f) and the proposed deadlines requested in the Order?  Please let us know your availability as soon as possible.

Thanks and have a nice weekend.

Travis


FARHANG   MEDCOFF
Attorneys

**Travis L. Tufts**
**Effective May 1, 2017:** ttufts@fmlaw.law
Profile | vCard

4801 East Broadway Boulevard   Suite 311   Tucson, Arizona 85711
General: 520.790.5433   Direct: 520.398.7466   Fax: 520.790.5736
www.fmlaw.law