1
2
3

# FARHANG & MEDCOFF

4801 E. Broadway Boulevard, Suite 311
Tucson, Arizona 85711
T: 520.790.5433

4
5

Ali J. Farhang (#019456)
afarhang@fmlaw.law

6

Roberto C. Garcia (#026246)
rgarcia@fmlaw.law

7
8

Travis L. Tufts (#029373)
ttufts@fmlaw.law

9

Attorneys for Defendants / Counterplaintiff

10

## IN THE UNITED STATES DISTRICT COURT

11

## FOR THE DISTRICT OF ARIZONA

12

13

Melissa Martin McBeath, an individual,

14

Plaintiff,

15

v.

16

Tucson Tamale Company, an Arizona
corporation; Todd Russell Martin, an
individual; Sherry Martin, an individual;
and Lisa Martin, an individual,

17

18

19

Defendants.

20

Tucson Tamale Company, an Arizona
corporation,

21

22

Counterplaintiff,

23

v.

24

Melissa Martin McBeath and John/Jane
Doe Martin McBeath, husband and wife,

25

Counterdefendants.

26

NO. CV 16-462-TUC-DCB (BPV)

**DEFENDANTS' RULE 16 AND 26(f)
REPORT**

Assigned to Judge David C. Bury and
Hon. Bernardo P. Velasco

27

28

     Pursuant to Rules 16 and 26(f) of the Federal Rules of Civil Procedure and by order

of this Court dated July 21, 2017 (Doc. No. 85) ("Order"), as amended on July 25, 2017

00340185.1

1  (Doc. No. 90) ("Amended Order"), Defendant/Counterplaintiff Tucson Tamale Company

2  ("TTC") and Defendants Todd Russell Martin, Sherry Martin, Lisa Martin (collectively,

3  "Defendants"), submit this separate report for the reasons outlined herein.

4        Both the Order and Amended Order required the parties to submit a joint report and

5  made it "the responsibility of the Plaintiff to initiate the communications necessary to

6  prepare this joint report." (Order, Doc. No. 85, 3:15-18; see also Amended Order, Doc. No.

7  90, 3:16-19.)   Notwithstanding, defense counsel approached Plaintiff Melissa Martin

8  McBeath ("McBeath") to organize a convenient date and time to discuss the items

9  enumerated in the Order.  See Ex. A, T. Tufts E-mail, July 21, 2017.  McBeath did not

10  respond to counsel's e-mail.  Shortly after counsel's e-mail, the Court issued its Amended

11  Order,[1] again placing responsibility for initiating communications on Plaintiff and ordering

12  the parties to confer "at least 21 days prior to the [scheduling] conference" on August 29,

13  2017.  (See Amended Order at 2:9-11.)

14        McBeath did not contact defense counsel 21 days prior to the scheduling conference–

15  August 8, 2017–nor did she respond to any of defense counsel's subsequent e-mails,

16  including one e-mail following up on numerous discovery issues and the Rule 26(f)

17  discussion.  See Ex. B., T. Tufts E-mail, Aug. 17, 2017.  Because Defendants have not

18  received a response from Plaintiff regarding the Rule 26(f) issues, Defendants hereby

19  submit this separate report discussing the matters enumerated in the Amended Order to the

20  best of their ability:

21  **I.      STATEMENTS OF THE CASE**

22        **A.      Plaintiff's Brief Statement**

23        None provided.

24        **B.      Defendants' Brief Statement**

25        TTC is a Tucson-based company owned by Defendants Todd and Sherry Martin.

26  TTC is engaged in the operation of three restaurants and a wholesale food production

27  facility.  Among other things, TTC produces and sells award-winning, unique, gourmet

28  _____
[1] The Amended Order amended the date of the Scheduling Conference from August 1, 2017 to August 29, 2017.

tamales.  On or about February 23, 2015, Plaintiff Melissa Martin McBeath ("McBeath") applied for the position of Area Manager and was subsequently hired as its Area Manager. At all times relevant to her employment, McBeath was an at-will employee pursuant to Arizona common law and A.R.S. § 23-1501.  McBeath's job duties and responsibilities included evaluating the performance of TTC managers at three separate restaurants, developing performance metrics for the restaurants and employees, developing and implementing a beverage plan to increase sales and profitability, ensuring equipment is operational and properly maintained, reducing costs of labor and services through operationalizing and standardizing processes, and working with TTC management to further increase the success of TTC's business.

On or about February 22, 2016, TTC lawfully terminated McBeath's employment because she failed to perform the duties and responsibilities of Area Manager.  Among other things, McBeath failed to meet performance expectations, sales metrics, did not adequately oversee the operations of the restaurants, and refused to comply or timely comply with numerous directives from her managers.  Defendants did not, as McBeath alleges, promise or guarantee a promotion to Business Development Manager, discriminate against her when they hired a Business Development Manager, nor did they terminate McBeath's employment for allegedly reporting violations of Arizona law, inquiring about a discretionary bonus, or because of her alleged protected classes.

TTC alleges McBeath breached her Confidentiality Agreement, violated Arizona Uniform Trade Secrets Act, breached her employment-related fiduciary duties, violated the Stored Communications Act, and engaged in a conspiracy with her son to remove TTC's confidential information and aided and abetted his removal of TTC's Confidential Information.

Specifically, in the course of her employment with TTC, McBeath had access to, among other things, TTC's private, confidential, and/or proprietary information, which includes, without limit, trade secrets (as defined in A.R.S. § 44-401, *et. seq.* and as discussed below), processes, sales and profit information, customer lists, contractor and supplier lists,

current and anticipated client preferences, methods of operation, and business development data (collectively, the "Confidential Information"). The Confidential Information includes sales and performance data and customer lists aggregated in a proprietary manner to reflect best TTC's markets and customers, and to gain valuable business information thereon. TTC uses its Confidential Information to solicit customers, and to gain a competitive advantage, which TTC does/did indeed realize, over other competing businesses. The aforementioned trade secrets include recipes and food-making techniques and/or processes (and/or a combination thereof) on which TTC's core, tamale-making business is based. Such recipes, food-making techniques and/or processes (and/or a combination thereof) are novel and unique in the restaurant business, and TTC developed them to produce award-winning, unique, gourmet tamales, which are highly desirable, highly sought after, unique, and of excellent quality and taste. Such recipes, food-making techniques and/or processes, as well as the entirety of TTC's Confidential Information, are the subject of substantial efforts that are reasonable under the circumstances to maintain their secrecy.

In consideration for her employment with TTC, McBeath entered into a Confidentiality Agreement (the "Confidentiality Agreement") with TTC on March 19, 2015. As provided more fully in the Confidentiality Agreement, and as independently required by her fiduciary duties as an employee, McBeath agreed, among other things, she would not disclose TTC's Confidential Information to third parties, she would not remove or copy TTC's Confidential Information except in the scope of her employment or with TTC's written permission, she would not use TTC's Confidential Information for her own benefit, and she would not assist others in obtaining TTC's Confidential Information. Despite her agreement, on at least four separate occasions, McBeath utilized TTC's "Protected Computer" network[2] (as defined in 18 U.S.C. §§ 2510 and 2711) (hereinafter "Protected Computer[s]") to provide Confidential Information, including, but not limited to, sensitive store maintenance data, technical support software, data and sales history, financial and payroll data, and restaurant processes, to unaffiliated third-parties, including

---

[2] TTC's Protected Computer systems are used in and/or affect interstate commerce or communication.

her friend Ehud Gavron and ex-husband Ernesto Chavez.  McBeath's actions were without written permission from TTC and in violation of her fiduciary duties, her Confidentiality Agreement, the Arizona Trade Secrets Act, and the Stored Communications Act.

Shortly after TTC terminated McBeath's employment, McBeath and her son, Maximillian Ivankovich ("Ivankovich") – a then Shift Lead for TTC with access to certain TTC Confidential Information – entered into an agreement, express or implied, to engage in a scheme or artifice to access, copy, print, and remove TTC's Confidential Information stored on TTC's Protected Computers.  Between February 22, 2016 and March 17, 2016, Ivankovich, in furtherance of his scheme with McBeath, and which McBeath facilitated, utilized TTC's Protected Computers to access, copy, print, and remove TTC's Confidential Information outside of the scope of his employment and for his and McBeath's use and benefit.   Ivankovich removed, without limit, sales and financial records, payroll records and transferred them to McBeath.  McBeath then utilized, and continues to utilize, TTC's Confidential Information to, among other things, damage the reputation of TTC in the community, impugn the character of TTC's owners, and use as leverage in McBeath's wrongful termination lawsuit.

## II.	FACTUAL AND LEGAL DISPUTES

The facts underlying McBeath's claims and TTC's counterclaims are wholly in dispute.  Defendants maintain McBeath fails to state a claim upon which relief can be granted for Retaliatory Discharge (Count Three), Failure to Pay Earned Wages (Count Six), and Breach of Employment Agreement (Count Seven).  Defendants anticipate filing dispositive motions addressing these disputes, among others.

## III.	JURISDICTION

Jurisdiction is proper based on the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, the Stored Communications Act, 18 U.S.C. § 2701 *et seq.*, the presence of federal questions, 28 U.S.C. § 1331, and supplemental jurisdiction over the Arizona law claims under 28 U.S.C. § 1367(a).

**IV.    PARTIES NOT SERVED**

All parties have been served.

**V.     ADDITIONAL PARTIES**

Pending the resolution of discovery disputes underlying TTC's Counterclaims and the discovery of evidence related thereto, Defendants may add additional parties involved in the conspiracy to remove TTC's Confidential Information and the aiding and abetting of the misappropriation of its Confidential Information.

**VI.    DISPOSITIVE MOTIONS**

Defendants anticipate filing wholly dispositive motions on each of Plaintiff's affirmative claims for relief, namely, claims based on age and protected class discrimination, retaliatory discharge, fraud and negligent representation, failure to pay earned wages, breach of employment agreement, and unjust enrichment.

Currently there are pending cross-motions for partial summary judgment on TTC's Counterclaims related to the Stored Communications Act, Arizona Uniform Trade Secrets Act, and breach of contract and fiduciary obligations claims.  See, e.g., Doc. Nos. 52, 68.

**VII.   SUITABILITY FOR TRIAL BY MAGISTRATE OR ARBITRATION**

The parties have had various discovery disputes in the past.  Reference to a special master for discovery matters may be appropriate in the future, depending on the volume of disputes that may arise.  A party to this action withheld its consent to proceed to trial before a Magistrate Judge.

**VIII.  RELATED CASES**

There is a concurrent matter pending in Pima County Superior Court titled *McBeath v. Tucson Tamale Company, et al.*, case number C20161794 ("State Court Case"), which is identical to this case in many respects.  By agreement of the parties and order of the State Court, the State Court Case is stayed pending the outcome of this matter.  Further, by agreement of the parties and order of the State Court, the outcome of this case will have *res judicata* effect on matters pending in the State Court Case, as legally appropriate.

**IX.   INITIAL DISCLOSURES**

Plaintiff served her Initial Disclosure Statement on or about July 20, 2017. Defendants served their Initial Disclosure Statement on August 16, 2016.

**X.   SUGGESTED DISCOVERY LIMITATIONS**

Because numerous discovery requests and responses have already been exchanged by the Parties in the State Court Matter as well as this matter, Defendants request this Court consider the discovery already exchanged towards the presumptive limits imposed under the Federal Rules of Civil Procedure, as necessary.

**XI.   PROPOSED DEADLINES**

Defendants propose the following deadlines for discovery:

**A.**   Motions to Amend Complaint and Join Parties: November 29, 2017

**B.**   Pretrial Witness Disclosure Cut-Off:

Lay Witness Disclosures: September 25, 2017

Plaintiff's Initial Expert Disclosure: September 25, 2017

Defendant's Initial Expert Disclosure: October 25, 2017

Rebuttal Expert Disclosures: 30 days after Initial Expert Disclosures

Expert Discovery Cut-Off: December 22, 2017

**C.**   Complete Discovery Cut-Off: March 1, 2018.

**D.**   Dispositive Motions: March 29, 2018.

**E.**   Proposed Joint Pretrial Order: April 30, 2018 if there are no pending dispositive Motions.  If there are pending dispositive motions, 30 days after a ruling is issued on those motions.

Joint Letter/status of Settlement Discussions: December 29, 2017 and every two months thereafter for filing joint letter/status regarding settlement discussions.

**XII.   ESTIMATED DATE AND LENGTH OF TRIAL**

The parties will be ready for trial by May 2018 and anticipate the trial will take 5 days.

1   **XIII.   JURY TRIAL REQUESTED**

2        A jury trial has been requested.

3   **XIV.   SETTLEMENT PROSPECTS**

4        Defendants believe a settlement conference before another Magistrate Judge or

5   United States District Court Judge would substantially assist in the settlement efforts.  To

6   date, Defendants have made numerous efforts toward settlement without success.

7   **XV.   UNUSUAL, DIFFICULT OR COMPLEX PROBLEMS OR ISSUES**

8        Not applicable.

9   **XVI.   OTHER MATTERS FOR THE COURT**

10       Apart from the issues outlined in Defendants Motion for Order to Show Cause (Doc.

11   No. 75), Defendants are aware of no other matters that would help dispose of the matter in

12   an efficient and economical manner.

13       RESPECTFULLY SUBMITTED this 24th day of August, 2017.

14                                      FARHANG & MEDCOFF

15

16                                      By /s/ Travis L. Tufts

17                                         Ali J. Farhang
                                           Roberto C. Garcia
18                                         Travis L. Tufts

19                                      Attorneys for Defendants / Counterplaintiff

20

21

22

23

24

25

26

27

28

00340185.1                              8

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was filed electronically with the Clerk of the United States District Court for the District of Arizona, with notice of case activity generated and sent electronically this 24th day of August, 2017 to:

Melissa Martin McBeath
3463 E. Terra Alta Blvd.
Tucson, AZ 85716

/s/ Letitia Wright